UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. <br> ) |
| MARK J. VARACCHI and <br> SENTINEL GROWTH FUND <br>     MANAGEMENT, LLC, | ) <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** |
| Defendants, <br> and | ) <br> ) <br> ) |
| RADAR ALTERNATIVE FUND LP and <br> RADAR ALTERNATIVE MASTER FUND SPC, | ) <br> ) <br> ) |
| Relief Defendants. | ) <br> ) |

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission") alleges the following against Defendants Mark J. Varacchi ("Varacchi") and Sentinel Growth Fund Management, LLC ("Sentinel") (collectively, "Defendants"), and Relief Defendants Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC") (collectively, "Relief Defendants" or "Funds"), and hereby demands a jury trial:

## SUMMARY OF THE ACTION

1. Between at least December 2015 and November 2016, Sentinel and Varacchi misappropriated at least $3.95 million of investor assets intended for or held by the Funds, which were two private funds they advised. Sentinel and Varacchi used investor money for personal

and business expenses and to pay prior investors. In so doing, they breached their fiduciary duties as investment advisers to the Funds and defrauded the Funds' investors.

2. Through the activities alleged in this Complaint, Defendants have engaged in:

    a. fraud in connection with the purchase or sale of securities, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder;

    b. fraud in the offer or sale of securities, in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act");

    c. fraudulent conduct by an investment adviser, in violation of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"); and,

    d. fraudulent conduct by an investment adviser to a pooled investment vehicle, in violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

3. Varacchi has also aided and abetted Sentinel's violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act and Rule 206(4)-8 promulgated thereunder.

4. The Commission seeks:

    a. entry of a permanent injunction prohibiting Defendants from further violations of the relevant provisions of the federal securities laws;

    b. disgorgement of Defendants' and Relief Defendants' ill-gotten gains, plus pre-judgment interest; and,

    c. imposition of civil penalties due to the egregious nature of Defendants' violations.

## JURISDICTION AND VENUE

5. The Commission seeks a permanent injunction and disgorgement pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)]. The Commission seeks the imposition of a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

6. The Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d), 77v(a)], Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa], and Sections 209(d), 209(e) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), 80b-14].

7. Venue is proper in this District under Section 27 of the Exchange Act [15 U.S.C. § 78aa], Section 214 of the Advisers Act [15 U.S.C. § 80b-14] and 28 U.S.C. § 1391(d) because, among other things, certain acts or transactions constituting the violations of the federal securities laws detailed herein occurred in this district and because, at all relevant times, Sentinel maintained offices in Connecticut and Varacchi maintained a residence in Connecticut.

8. In connection with the conduct described in this Complaint, Defendants directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

9. Defendants' conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial loss, or significant risk of substantial loss, to other persons.

**DEFENDANTS**

10.     **Mark J. Varacchi ("Varacchi")**, age 47, lives in Norwalk, Connecticut. He is the founder, Chief Executive Officer, managing member, and portfolio manager of Sentinel. In that capacity, he has served as an investment adviser to individual clients and to pooled investment vehicles, and has engaged in the business of directly or indirectly advising others as to the value of securities and/or as to the advisability of investing in, purchasing, or selling securities, for compensation.

11.     **Sentinel Growth Fund Management, LLC** ("Sentinel") is a Delaware limited liability company located in Stamford, Connecticut. Sentinel is the investment adviser to the Funds. Sentinel is not registered with the Commission or any state as an investment adviser.

**RELIEF DEFENDANTS**

12.     **Radar Alternative Fund LP ("Radar LP")** is a private fund incorporated in the state of Delaware in April 2013.

13.     **Radar Alternative Master Fund SPC ("Radar SPC")** is a private fund formed in approximately September 2014 under the laws of the Cayman Islands.

**FACTUAL ALLEGATIONS**

**A. SENTINEL AND VARACCHI'S MISREPRESENTATIONS ABOUT THE SENTINEL INVESTMENT PLATFORM AND THE FUNDS' STRUCTURE**

14.     From 2013 to 2016, Sentinel and Varacchi purported to offer investors a platform to invest with up-and-coming hedge fund managers (the "Allocation Managers"). Sentinel and Varacchi purported to offer a master fund that included multiple series managed by the Allocation Managers. Sentinel and Varacchi would allocate investors' assets to certain series in the master fund.

15. The first deposit in a brokerage account for Radar LP was on September 25, 2013. The first deposit in a brokerage account for Radar SPC was on December 9, 2015. Various Fund documents list Sentinel as the General Partner of Radar LP. In addition, Sentinel is the Managing Member of Radar SPC.

16. In addition to forming the Funds, Sentinel also sold membership interests in a Delaware limited liability company called Radar Alternative Onshore Fund LLC (the "Radar Onshore Fund") to at least one investor. Sentinel and Varacchi represented in offering documents given to the investor and to a prospective investor that Radar Alternative Onshore Fund LLC would invest its assets through a master-feeder fund structure in separate segregated portfolios of Radar SPC. Sentinel deposited the investor's funds in a brokerage account for Radar SPC.

17. Sentinel and Varacchi represented to Allocation Managers that Sentinel and Varacchi would provide access to leverage from the prime broker for the Funds and to additional investor assets. Allocation Managers in turn agreed to invest their or their clients' assets in the series they managed, and could earn a portion of incentive fees on profits earned by the series.

18. Sentinel and Varacchi offered two investment programs. One program purported to be an initial public offering investment program allocated across Allocation Managers. The second was a long-short or event-driven strategy also allocated across Allocation Managers.

19. Sentinel and Varacchi represented to some investors and prospective investors that their assets would be invested in separately managed accounts and sub-advised by Allocation Managers, rather than invested in a private fund. Those representations were false. Instead, Sentinel and Varacchi either misappropriated those investors' assets or invested the assets in Radar LP.

5

20. Sentinel's offering documents for the Funds and its investment management agreements for purported separately managed accounts provided for compensation to Sentinel and the Allocation Managers in the form of investment management or advisory fees, and incentive fees.

**B. SENTINEL AND VARACCHI'S MISAPPROPRIATION SCHEME**

21. Sentinel and Varacchi engaged in a misappropriation scheme by diverting investor money intended for investment in the Funds or in purported separately managed accounts and by making unauthorized withdrawals from the Funds. In each of the following instances, investor money was meant for investment in a private fund or separate account advised by Sentinel and Varacchi. At least $2.95 million of these investors' funds were never invested in the Funds or a separate account, and at least $1 million was redeemed from the Funds without authorization.

22. First, on December 23, 2015, an investor ("Investor A") deposited $600,000 with Sentinel for allocation to five Allocation Managers. Prior to Investor A's deposit of $600,000 into Sentinel's business banking account, the account had a balance of $2,616.35. Immediately upon receiving the $600,000 deposit, Sentinel initiated transfers out of the account in amounts exceeding its previously available funds. For example, on December 23, 2015, there was a wire of $500,000 from Sentinel's account to the account of an unrelated investor. On December 24, 2015, there was a wire of $15,000 from Sentinel's account to Varacchi's personal account. Sentinel did not transfer any portion of Investor A's $600,000 deposit to the Funds' brokerage accounts or any other custodian.

23. Second, on May 2, 2016, an investor ("Investor B") deposited $5,000,000 into Sentinel's bank account for purposes of investment. That day, Sentinel transferred $3,250,000 to

the Radar LP brokerage account. Sentinel expended the remaining $1,750,000 for a variety of uses, including $1.1 million transferred to a law firm that represented Sentinel and Varacchi in litigation brought by Varacchi's prior employer. In settlement of that litigation, Varacchi agreed in May 2016 to pay $1.08 million to the plaintiff. Before Investor B's $5 million deposit, there were not sufficient funds in Sentinel's bank account to transfer $1.1 million to the law firm, as the prior account balance was only $153,418. Sentinel also transferred $50,000 to Varacchi's personal bank account in the ten days following Investor B's deposit.

24. Third, on May 21, 2016, an Allocation Manager deposited $600,000 into the Sentinel bank account. The Allocation Manager's principal understood that the funds would be deposited with Sentinel's prime broker. Sentinel and Varacchi did not transfer any portion of the Allocation Manager's $600,000 deposit to any of the Funds' brokerage accounts or to any other custodian. Prior to the Allocation Manager's deposit, the Sentinel bank account had a balance of $39,203. Following the Allocation Manager's deposit, there were multiple withdrawals from the account, including $70,000 transferred to Varacchi's personal bank account.

25. Fourth, in November 2016, Sentinel transferred $1 million from the brokerage account for Radar SPC to the Sentinel banking account. No portion of that transfer was returned to investors whose funds had been deposited into the Radar SPC brokerage account. Following transfer of the $1 million from the brokerage account to Sentinel's bank account, there were transfers from the Sentinel account to unrelated investors and Allocation Managers, to pay business expenses, and to Varacchi, among other payments, for total distributions exceeding the Sentinel account balance that existed prior to the $1 million transfer. Investors in Radar SPC did not request or receive any portion of the November 2016 redemption.

26. Deposits into Sentinel's bank account included funds that Sentinel and Varacchi obtained from their investors or the Funds' investors for purposes of investment as well as deposits from the Funds. Withdrawals from Sentinel's bank account included payments to investors as well as approximately $10 million in payments for personal expenses, including:

- a. Approximately $500,000 in cash withdrawals;
- b. Approximately $50,000 in debit card withdrawals;
- c. Approximately $3.1 million in transfers to Varacchi's personal bank accounts;
- d. Approximately $33,000 in payments to Varacchi's family members;
- e. The $1.1 million related to the litigation settlement described above;
- f. Approximately $3.7 million in private equity investments or loans on behalf of Varacchi;
- g. Approximately $425,000 in payments to business partners or associates of Varacchi;
- h. Approximately $640,000 in payments to persons or entities who made personal loans to Varacchi; and
- i. Approximately $50,000 to a foundation that is a 501(c)(3) nonprofit organization, for which Varacchi served as a board member.

**C. SENTINEL AND VARACCHI'S ADDITIONAL ACTS TO CONCEAL AND FURTHER THE SCHEME**

27. Sentinel and Varacchi furthered their scheme by misrepresenting to investors the status of and returns on investments purportedly managed by Sentinel and its Allocation Managers. After misappropriating Investor A's funds, Varacchi made misrepresentations to Investor A concerning monthly performance of the supposed investment. Sentinel and Varacchi

8

concealed the misappropriation of $1,750,000 of Investor B's May 2, 2016 investment of $5 million by establishing a $5 million balance in a subaccount for that investor, funded by margin borrowing. Similarly, six days after Sentinel and Varacchi misappropriated $600,000 from the Allocation Manager in May 2016, Sentinel and Varacchi concealed the misappropriation by establishing a $600,000 balance in a subaccount for the Allocation Manager, again funded by margin borrowing. The margin borrowing to fund these respective subaccounts was not disclosed to Investor B or the Allocation Manager.

28. To the extent that investors had any transparency into their investments, investors would only see information from the subaccount(s) purporting to hold their investment. Sentinel and Varacchi used margin and transfers among accounts to make it appear to investors with limited transparency that their investment was intact. In reality, subaccounts that investors did not see would hold significant margin debts such that the investors' *pro rata* portion of the master fund was worth significantly less than what they thought based on viewing the balance in one or more subaccounts.

29. Moreover, in December 2016, Sentinel and Varacchi provided an investor in Radar SPC with limited online access to that fund's brokerage account so the investor could check the account value. Unbeknownst to the investor, Varacchi manipulated account activity to conceal the unauthorized withdrawal of $1 million in November 2016.

**D. RELIEF DEFENDANTS' RECEIPT OF INVESTORS' FUNDS DERIVED FROM THE UNLAWFUL ACTS OR PRACTICES OF THE DEFENDANTS.**

30. As described above, Sentinel and Varacchi commingled their assets with investors' assets and made withdrawals that the Funds' investors did not authorize, which Sentinel and Varacchi used for personal and business expenses and to pay prior investors.

9

31. In total, Sentinel received $42.6 million in third party deposits between August 2013 and December 2016, and transferred $24.8 million to the Funds. The Radar Funds received another $21.1 million directly from third parties.

**FIRST CLAIM FOR RELIEF**

**Sentinel and Varacchi's Fraud in Connection with the  
Purchase or Sale of Securities in Violation of  
Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

32. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 31 above as if set forth fully herein.

33. As detailed above, Defendants engaged in a fraudulent scheme through a series of fraudulent acts, statements, and material omissions through which investor funds were misappropriated for the Defendants' personal and business uses.

34. By engaging in the conduct described above, Defendants, directly or indirectly, acting intentionally, knowingly or recklessly, by the use of means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities: (a) have employed or are employing devices, schemes or artifices to defraud; (b) have made or are making untrue statements of material fact or have omitted or are omitting to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) have engaged or are engaging in acts, practices or courses of business which operate as a fraud or deceit upon certain persons.

35. Defendants' conduct involved fraud, deceit, manipulation, and/or deliberate or reckless disregard of regulatory requirements and directly or indirectly resulted in substantial losses to other persons.

36. As a result, Defendants have violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**SECOND CLAIM FOR RELIEF**

**Sentinel and Varacchi's Fraud in the Offer or Sale of Securities
In Violation of Section 17(a) of the Securities Act**

37. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 31 above as if set forth fully herein.

38. Defendants, directly and indirectly, acting intentionally, knowingly, recklessly, in the offer or sale of securities by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails: (a) have employed or are employing devices, schemes or artifices to defraud; (b) have obtained or are obtaining money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) have engaged or are engaging in transactions, practices or courses of business which operate as a fraud or deceit upon purchasers of the securities.

39. As a result, Defendants have violated and, unless enjoined, will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**THIRD CLAIM FOR RELIEF**

**Sentinel and Varacchi's
Fraudulent Conduct by an Investment Adviser in
Violation of Sections 206(1) and 206(2) of the Advisers Act**

40. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 31 above as if set forth fully herein.

41. At all relevant times, Sentinel and Varacchi were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)]. Sentinel and Varacchi each were in the business of providing investment advice concerning securities for compensation. Varacchi was also an investment adviser due to his ownership, management and control of Sentinel.

42. As set forth above, Sentinel and Varacchi misappropriated money from their advisory clients through a scheme to defraud and through transactions, practices, and courses of business which operated as a fraud or deceit upon their advisory clients.

43. Sentinel and Varacchi, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly or recklessly: (a) have employed or are employing devices, schemes, or artifices to defraud clients and/or potential clients; or (b) have engaged or are engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon a client or prospective client.

44. As a result, Sentinel and Varacchi have violated and, unless enjoined, will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) & (2)].

## FOURTH CLAIM FOR RELIEF

**Sentinel and Varacchi's Fraudulent Conduct
as an Investment Adviser to a Pooled Investment Vehicle in
Violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder**

45. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 31 above as if set forth fully herein.

46. At all times relevant to this Complaint, the Defendants acted as investment advisers to the Funds, which are pooled investment vehicles as defined in Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)].

47. Defendants, while acting as investment advisers to pooled investment vehicles, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts, practices, or courses of businesses which were fraudulent, deceptive or manipulative. The Defendants made untrue statements of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in the pooled investment vehicles, and otherwise engaged in acts, practices, or courses of businesses that were fraudulent, deceptive or manipulative with respect to investors or prospective investors in the pooled investment vehicles.

48. By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [15 C.F.R. 275.206(4)-8].

## FIFTH CLAIM FOR RELIEF

**Varacchi Aided and Abetted Sentinel's
Violations of Sections 206(1) and 206(2) of the Advisers Act and Section 206(4) of the
Advisers Act and Rule 206(4)-8 Thereunder**

49. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 31 above as if set forth fully herein.

50. Varacchi knew or recklessly disregarded that Sentinel's conduct was improper and knowingly rendered to Sentinel substantial assistance in this conduct.

51. As a result, Varacchi aided and abetted, and unless enjoined will continue to aid and abet, Sentinel's violations of Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) & (2)] and Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [15 C.F.R. 275.206(4)-8].

13

## SIXTH CLAIM FOR RELIEF

### Other Equitable Relief, Including Unjust Enrichment and Constructive Trust
### (Relief Defendants)

52. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 31 above as if set forth fully herein.

53. Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)] states: "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."

54. The Relief Defendants have received investors' funds derived from the unlawful acts or practices of the Defendants under circumstances dictating that, in equity and good conscience, they should not be allowed to retain such funds.

55. Further, specific property acquired by the Relief Defendants is traceable to Defendants' wrongful acts and there is no reason in equity why the Relief Defendants should be entitled to retain that property.

56. As a result, the Relief Defendants are liable for unjust enrichment and should be required to return their ill-gotten gains, in an amount to be determined by the Court. The Court should also impose a constructive trust on property in the possession of the Relief Defendants that is traceable to Defendants' wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court:

A. Enter a permanent injunction restraining Defendants and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them

who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. § 80b-6(1), (2), & (4)] and Rule 206(4)-8 thereunder [17 C.F.R § 275.206(4)-8];

B. Require Defendants to disgorge their ill-gotten gains and losses avoided, plus pre-judgment interest, with said monies to be distributed in accordance with a plan of distribution to be ordered by the Court;

D. Require the Relief Defendants to disgorge all unjust enrichment and/or ill-gotten gain received from Defendants, plus prejudgment interest, with said moneys to be distributed in accordance with a plan of distribution to be ordered by the Court;

E. Require Defendants to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

F. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered;

G. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Commission hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

/s/ Michael C. Moran
Martin F. Healey (Mass. Bar No. 227550)
  Regional Trial Counsel
Michael C. Moran (Mass. Bar No. 666885,
  CT phv08741)
  Enforcement Counsel
Cynthia Storer Baran (Illinois Bar No. 6230347)
  Senior Enforcement Counsel
Naomi Sevilla (Mass. Bar No. 645277)
  Senior Advisor
Robert Baker (Mass. Bar No. 654023)
   Assistant Regional Director
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA  02110
(617) 573-8931 (Moran direct)
(617) 573-4590 (fax)
moranmi@sec.gov (Moran email)

*Local Counsel*:
John B. Hughes (Fed. Bar No. CT 05289)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, CT  06510
(203) 821-3700
(203) 773-5373 (fax)

DATED:  February 2, 2017