# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) Plaintiff, ) ) v. ) ) MARK J. VARACCHI and ) SENTINEL GROWTH FUND ) MANAGEMENT, LLC, ) ) Defendants, ) and ) ) RADAR ALTERNATIVE FUND LP and ) RADAR ALTERNATIVE MASTER FUND SPC, ) ) Relief Defendants. ) ) | Civil Action No. 3:17-cv-00155-VAB |

## RECEIVER'S MOTION FOR AN ORDER AUTHORIZING RECEIVER TO FILE TIME RECORDS EXHIBITS TO QUARTERLY FEE APPLICATIONS UNDER SEAL

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to Fed. R. Civ. P. 5.2(d) and District of Connecticut Local R. Civ. P. 5(e)(4), respectfully moves (the "Motion to Seal") for an order authorizing the Receiver to file under seal Exhibits D-1 through D-5 to the Receiver's quarterly fee applications, which contain the detailed time records of Z&Z. Sealing these documents is necessary in order to preserve the Receiver's ability to investigate and potentially prosecute causes of action on behalf of the receivership estate and to protect the value of the receivership estate's assets.

In support of the Motion to Seal, the Receiver respectfully states the following:

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Receivership Proceeding and Appointment of the Receiver

1.   On February 2, 2017, the Commission commenced this Receivership Proceeding by filing its Complaint against the defendants, Varacchi and Sentinel Growth Fund Management, LLC ("Sentinel," and together with Varacchi, the "Defendants"), and the relief defendants, Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC," and together with Radar LP, the "Relief Defendants," and the Relief Defendants together with the Sentinel, the "Receivership Defendants").

2.   The Commission's Complaint alleges that the Defendants engaged in a fraudulent scheme to misappropriate investor assets, and that in the course of their scheme, the Defendants commingled their assets with investor assets. According to the Complaint, between at least December, 2015, and November, 2016, the Defendants misappropriated at least $3.95 million of investor assets intended for or held by the Relief Defendants, which were two private funds that the Defendants advised.  The Defendants commingled their assets with investors' assets and made withdrawals from the Relief Defendants that investors did not authorize, which the Defendants used for personal and business expenses and to pay prior investors.  Sentinel's bank account included funds that Sentinel and Varacchi obtained from their investors or the Relief Defendants' investors for purposes of investment as well as deposits from the Relief Defendants.  Withdrawals from Sentinel's bank account included payments to investors and payments for Varacchi's personal expenses.

3.   While the Complaint specifically alleged a narrower fraud of at least $3.95 million, it appears to the Receiver that a more far-reaching scheme had been perpetrated.  The Complaint

alleged that Sentinel received $42.6 million in third-party deposits between August, 2013, and December, 2016, but that Sentinel transferred only $24.8 million to the Relief Defendants, and that the Relief Defendants received another $21.1 million directly from third parties.

4.  Upon information and belief, approximately 25 investors who deposited funds with Sentinel or the Relief Defendants have unredeemed principal investments totaling over $19.6 million. Six investors who deposited funds with Sentinel or the Relief Defendants received redemptions of their original investment amount or more. The Defendants also commingled the proceeds of purported "loans" with investor funds, by depositing such "loan" proceeds into Sentinel's account or the Relief Defendants' accounts.

5.  On April 18, 2017, the Commission filed its Assented to Motion for Appointment of a Receiver (the "Motion to Appoint"), requesting that the Court take exclusive jurisdiction and possession of all property of whatever kind of the Receivership Defendants, including the Receivership Defendants' remaining assets, the Private Investments (as hereinafter defined), and any additional assets of the Receivership Defendants that may be recovered (collectively, the "Receivership Assets") and appoint the Receiver, pursuant to the proposed receivership order, to assume control of, marshal, pursue, and preserve the Receivership Assets with the objective of maximizing the recovery of such assets and, to the extent that assets recovered are inadequate to make defrauded investors whole, ensuring that the distribution of those assets is as just and equitable as practicable. (Doc. No. 10.)

6.  More specifically, the Commission requested appointment of the Receiver to perform, *inter alia*, the following functions: (i) assess the optimal treatment of assets held by the Relief Defendants for the eventual return of assets to investors or creditors, including those investors who may have been harmed by the misconduct alleged in the Complaint, and to prevent

waste and dissipation of the Relief Defendants' assets to the detriment of investors, and, where necessary, to operate the Relief Defendants, and to manage, maintain, and/or wind-down business operations of the Relief Defendants, pending further order of the Court; (ii) determine the value of certain investments that were made in the name of Sentinel and/or Varacchi with funds from Sentinel or the Radar Funds (the "Private Investments"), and to marshal and ultimately liquidate those Private Investments; and (iii) after obtaining leave of the Court, institute such actions and legal proceedings as the Receiver deems necessary and appropriate to recover funds transferred from Sentinel or the Radar Funds.

7. On April 18, 2017, the Commission filed its Assented to Motion for Entry of Judgment against the Defendants and the Relief Defendants (the "Judgment Motion"). (Doc. No. 11.) The Judgment Motion requested that the Court enter Judgment against the Receivership Defendants in a form in which the Receivership Defendants had agreed. (*See* Consent to Entry of Judgment of Defendants, Doc. No. 11-1, and proposed Judgment (the "Judgment"), Doc. No. 11-2.) The Court entered both the Receivership Order and the Judgment on May 1, 2017. (Doc. Nos. 12, 13.)

### B. The Receivership Estate and the Receivership Assets

8. On July 27, 2017, the Receiver filed his First Quarterly Status Report and Liquidation Plan (the "Report and Liq. Plan"). (Doc. No. 22.) The Receiver's Report and Liq. Plan discusses the work that the Receiver and his counsel have undertaken since the Court's entry of the Receivership Order. (*See* Report and Liq. Plan at 1-9.)

9. The Report and Liq. Plan also generally describes the Receivership Assets presently known to the Receiver. These include, *inter alia*, causes of action that could result in monetary

4

recoveries, which causes of action are property of the Receivership Estate (the "Causes of Action"). (*See id.* at 13-14.)

10. The Receiver is presently investigating these Causes of Action. Pursuant to the Receivership Order, the Receiver will request the Court's permission before commencing litigation on any such claims.

### C. The Required Quarterly Fee Applications

11. The Receivership Order requires, within forty-five (45) days of after the end of each calendar quarter, that the Receiver and his retained professionals apply to the Court for compensation and expense reimbursement from the Receivership Estate (the "Quarterly Fee Applications") and that such Quarterly Fee Applications be provided to the Commission in advance, together with all exhibits and relevant billing information, for the Commission's review. (Receivership Order at ¶ 36.)

12. The Receivership Order further requires that the Quarterly Fee Applications comply with the requirements contained in the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines"). (*Id.* at ¶ 39.)

13. The SEC Guidelines require that the Receiver and his retained professionals file, in support of their Quarterly Fee Applications:

> [t]ime records … set[ting] forth in reasonable detail an appropriate narrative description of the services rendered. Without limiting the foregoing, the description should include indications of the participants in, as well as the scope, identification and purpose of the activity that is reasonable in the circumstances.

14. Last month, the Receiver and Z&Z provided a draft of their First Interim Application for Professional Fees and Expenses Incurred by the Receiver and His Professionals

(the "First Fee Application") to the Commission and the Commission has indicated that it does not object to the First Fee Application.

15. The First Fee Application, which the Receiver intends to file in the near future, includes exhibits D-1 through D-5, which are comprised of time records summarizing the work performed by legal professionals and paraprofessionals employed by the Receiver (collectively, the "Time Records Exhibits"). The Time Records Exhibits contain privileged and confidential material, protected attorney work-product and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding and his and his professionals' investigation of the Causes of Action.

16. The Receiver's future Quarterly Fee Applications will likewise include Time Records Exhibits describing the work performed during the preceding quarter. These Time Records Exhibits will likewise contain privileged and confidential material, protected attorney work-product and other sensitive information.

## II.   BASIS FOR THE REQUESTED RELIEF

17. Federal Rule of Civil Procedure 5.2(d) provides that the "court may order that a filing be made under seal without redaction."

18. District of Connecticut Local R. Civ. P. 5(e)(4) contains procedures for requesting the Court's permission to file a document under seal. Pursuant to Local R. Civ. P. 5 (e)(4)(b), counsel may e-file a motion to seal without the documents sought to be sealed and request that the Court grant permission to file documents under seal.

19. As required by the Receivership Order and the SEC Guidelines, the Time Records Exhibits in the First Fee Application contain detailed descriptions of services rendered and narrative accounts of work performed by the Receiver and his counsel. Future Quarterly Fee

Applications will likewise be required to include Time Records Exhibits that contain such information.

20. The Receiver and Z&Z are presently investigating and analyzing: (a) the nature and the extent of the fraud that gave rise to this Receivership Proceeding; (b) Causes of Action including potential avoidance actions and other claims against persons not yet named as parties; and (c) the value of the Private Investments and other property that is part of the Receivership Assets.

21. Public disclosure of the Time Records Exhibits would compromise these investigations for numerous reasons. Public disclosure would disclose, *inter alia*, potential defendants and others suspected to be part of the fraud prior to the filing of any lawsuit, as well as information about the Receivership Assets that could subject the Receivership Estate to financial harm or cause it to suffer a competitive disadvantage.

22. Further, public disclosure of the Time Records Exhibits would impair the attorney-client relationship. Descriptions and narratives contained in these exhibits reveal privileged and confidential attorney-client communications, attorney work product, attorney mental impressions and conclusions, ongoing legal strategy, and continued investigations of, *inter alia*, adversaries in potential future litigation.

23. The Receiver therefore submits that it is appropriate to file the Time Records Exhibits under seal.

24. It is not possible, or would be unduly burdensome, inefficient or useless, to file redacted versions of the Time Records Exhibits. The type and quantity of information requiring redaction would render the final result useless. Good cause exists in the instant case warranting filing of the Time Records Exhibits to the Quarterly Fee Applications under seal.

25. The Receiver has consulted with the Commission, which has consented to the proposed authorization.

## III.  REQUESTED RELIEF

WHEREFORE, the Receiver respectfully requests that the Court: (a) grant this Motion to Seal; (b) authorize the Receiver to file Exhibits D-1 through D-5 to the First Fee Application under seal; (c) authorize the Receiver to file Time Records Exhibits to all future Quarterly Fee Applications under seal; (d) direct any parties objecting to this Motion to Seal to file any motions for reconsideration within 5 days of the entry of an order granting this Motion to Seal; and (e) grant the Receiver such other and further relief as is just and proper.

Dated at Bridgeport, Connecticut, this 9th day of August, 2017.

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER

By: */s/ Patrick R. Linsey*
　　Stephen M. Kindseth (ct14640)
　　Patrick R. Linsey (ct29437)
　　Zeisler & Zeisler, P.C.
　　10 Middle Street, 15th Floor
　　Bridgeport, CT  06604
　　Telephone: 203-368-4234 X 245
　　Facsimile: 203-549-0903
　　Email: skindseth@zeislaw.com
　　　　　 plinsey@zeislaw.com
　　His Attorneys

## **CERTIFICATE OF SERVICE**

I, Patrick R. Linsey, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Patrick R. Linsey*
Patrick R. Linsey (ct29437)