UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARK J. VARACCHI and ) <br> SENTINEL GROWTH FUND ) <br> MANAGEMENT, LLC, ) <br> ) <br> Defendants, ) <br> and ) <br> ) <br> RADAR ALTERNATIVE FUND LP and ) <br> RADAR ALTERNATIVE MASTER FUND SPC, ) <br> ) <br> Relief Defendants. ) <br> ) | Civil Action No. <br> 3:17-cv-00155-VAB |

**RECEIVER'S MOTION *ON CONSENT* FOR LEAVE TO COMMENCE
LITIGATION AGAINST TARAN ASSET MANAGEMENT, LLC, *ET AL*.**

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC"), by and through his undersigned counsel, Zeisler & Zeisler, P.C., pursuant to this Court's Order Appointing Receiver (Doc. No. 12, the "Appointment Order"), respectfully moves (the "Motion")—with the consent of the SEC and the defendant, Mark J. Varacchi ("Varacchi")—that this Court grant the Receiver leave to commence litigation asserting causes of action to recover certain fraudulent transfers and for unjust enrichment against Taran Asset Management, LLC ("TAM"), Christopher Gleason ("Gleason"), and Baseline Advisors,

LLC ("BA"), for the benefit of the Receivership Estate[1] and its creditors. In support of this Motion, the Receiver respectfully represents the following:

I. **BACKGROUND**

   A. **The Receivership Proceeding**

   1. On February 2, 2017, the SEC commenced this civil enforcement action by filing its Complaint against the defendants, Varacchi and Sentinel Growth Fund Management, LLC ("Sentinel," and together with Varacchi, collectively, the "Defendants"), and the relief defendants, Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC," and together with Radar LP, collectively, the "Relief Defendants," and the Relief Defendants together with the Sentinel, collectively, the "Receivership Defendants").

   2. The Receiver has determined that from its inception in approximately September, 2013, through its discovery in December, 2016, Varacchi operated a classic Ponzi scheme defrauding various individuals and businesses (the "Investors") into investing in certain "programs" maintained through the Radar Funds, and then using the fruits of such fraud to repay prior investors and, thereby, perpetuate the Ponzi scheme. He also misappropriated or diverted such funds to pay his own personal expenses and other personal liabilities—including the transfers the Receiver here requests permission to seek to avoid and recover.

   3. The Defendants also commingled their assets with the Investors' assets. Sentinel's bank account included funds that Sentinel and Varacchi had obtained from their Investors or the Relief Defendants' Investors for purposes of investment as well as deposits from the Relief Defendants.

---

[1] Any capitalized terms not defined herein shall adopt the definitions set forth in the Receivership Order (defined below).

4. Varacchi also caused the commingling of the proceeds of purported "loans" with Investors' funds, by depositing such "loan" proceeds into Sentinel's account or the Relief Defendants' accounts.

5. While, to a limited extent, Varacchi and various other participants used the Radar Funds to trade in securities, the revenues generated could not repay the aggregate amounts due investors or even significant withdrawals when requested by investors.

6. Furthermore, at all relevant times, the aggregate amount of the Receivership Entities' liabilities far exceeded the value of their unencumbered assets.

7. While the SEC's Complaint specifically alleged a narrower fraud of at least $3.95 million, it appears that Varacchi's Ponzi scheme was more far-reaching. Upon information and belief, Sentinel received $42.6 million in third party deposits between August 2013, and December 2016, and transferred only $24.8 million to the Relief Defendants. The Relief Defendants received another $21.1 million directly from third parties.

8. Upon information and belief, approximately 25 investors who deposited funds with the Receivership Defendants have unredeemed principal investments totaling approximately $20 million.

9. On April 18, 2017, the SEC filed in this action its Assented to Motion for Appointment of a Receiver (Doc. No. 10).

10. On May 1, 2017, this Court entered its Order Appointing Receiver (the "Receivership Order") which, *inter alia*, appointed the Receiver to serve as receiver for the Receivership Entities "to assume control of, marshal, pursue, and preserve the Receivership Assets with the objective of maximizing the recovery of assets… ." (Receivership Order ¶ 2.)

11. The Receivership Order further authorizes, empowers and directs the Receiver, with this Court's prior approval and in consultation with the SEC, to "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Assets." (*Id.* ¶ 19.)

B. **The Receivership Estate's Causes of Action against TAM,** *et al.*

12. Since the Receiver's appointment, the Receiver and his counsel have investigated, among other matters, certain transactions that occurred among TAM and Gleason, on the one hand, and Varacchi, Sentinel, Radar LP, and BA, on the other, which the Receiver has determined constitute avoidable fraudulent transfers and give rise to a claim for unjust enrichment that may be recovered for the benefit of the Receivership Estate and its creditors.

13. These causes of action arise from (i) that certain Confidential Settlement Agreement (the "Settlement Agreement") which Varacchi entered into on his own behalf and on behalf of Sentinel and Radar LP, to settle claims against him personally, and (ii) the actual settlement payment Varacchi caused Sentinel to make to TAM in the amount of $1,080,000 (the "Settlement Payment").

14. The Settlement Agreement and Settlement Payment followed and ostensibly resolved that certain civil action commenced on April 5, 2016, brought by TAM against, among other defendants, Varacchi, in the U.S. District Court for the Northern District of Illinois. The case was captioned *Taran Asset Management, LLC v. Mark Varacchi, et al.*, Civil Action No.: 1:16-cv-04011 (the "TAM Action").

15. The Complaint filed in the TAM Action (the "TAM Complaint") alleged that TAM was an "asset management company" for a separate hedge fund, and that Varacchi served as TAM's chief operations officer.

16. The TAM Complaint alleged that between February 2012 and June 2013, Varacchi and that certain entity, Concept Fund Services, LLC ("Concept"), through the individual, Jason Rhodes ("Rhodes"), embezzled over $430,000.00 from TAM by coordinating payments to "Sham Vendors" to pay invoices for services that were never provided to TAM.

17. The TAM Complaint further alleged that through a series of "ATM transactions, payroll manipulations and accounting falsifications," Varacchi embezzled additional amounts totaling over $550,000.00 from TAM.

18. Thus, the TAM Complaint asserted that in total, between February 2012 and December 2013, Varacchi and Concept, through Rhodes, embezzled over $980,000.000 from TAM.

19. The TAM Complaint also alleged that on or around April 2013, TAM ceased its operations.

20. TAM also named Sentinel and Radar LP as defendants in the TAM Action.

21. TAM did not claim that Sentinel or Radar LP embezzled any funds from TAM.

22. Rather, TAM made the general allegation that "[o]n information and belief, Varacchi and Rhodes used certain funds that they embezzled from TAM to create Sentinel." No specific dates, amounts or methods of transfer were alleged.

23. The TAM Complaint also did not make any other specific factual allegations against Sentinel or Radar LP.

24. Notwithstanding, TAM made general conclusory allegations against Sentinel, Radar LP and/or BA (along with certain other defendants) as part of various counts asserting causes of action for (i) violation of Section 1030(a)(4) of the Computer Fraud and Abuse Act, (ii) violation of the Racketeer Influenced and Corrupt Organizations Act, (iii) aiding and abetting breach of fiduciary duty, (iv) unjust enrichment, and (v) civil conspiracy.

25. After the commencement of the TAM Action, on or about April 25, 2016, TAM's and Gleason's attorney e-mailed Varacchi to solicit an "offer to resolve" the lawsuit and threatening that "[i]f the parties cannot reach an agreement in principle [within three days] we hereby reserve our right to forward the [TAM] Complaint, and its supporting documents, to the proper authorities."

26. While TAM's attorneys had apparently referred to Varacci's fraudulent activities while with TAM, Varacchi immediately became concerned that TAM's prosecution of its claims in the TAM Action would result in the scrutiny of his current scheme through the Receivership Entities, and likely reveal its fraudulent nature. This concern was significantly exacerbated by the threat from TAM's counsel that they would contact the "proper authorities" absent a quick settlement of the TAM Action.

27. The Receiver has concluded that Varacchi, in order to perpetuate the Ponzi scheme and continue the fraud operated through the Receivership Entities, settled the TAM Action within weeks thereafter using funds Sentinel had received from investors Varacchi defrauded as part of his Ponzi scheme.

28. After receiving the e-mail from Gleason's and TAM's attorneys threatening to go to the "proper authorities" in the absence of a settlement, Varacchi quickly negotiated and entered

into, and caused, through his domination and control, Sentinel, Radar LP and BA to enter into, the Settlement Agreement with Gleason and TAM.

29. The Settlement Agreement provided that it was effective May 27, 2016.

30. The Settlement Agreement required Varacchi to pay TAM $1,080,000 within 14 days of its effective date.

31. The Settlement Agreement further provided that each of Varacchi, Sentinel, Radar LP and BA were jointly and severally liable to TAM and Gleason for Varacchi's payment obligations under the Settlement Agreement.

32. Revealing Varacchi's true purpose in promptly settling with Gleason and TAM, the Settlement Agreement included the following representation and warranty: "Gleason and Taran represent and warrant that, notwithstanding Taran's filing of the Complaint in this Lawsuit, as of the date of execution of this Agreement, neither of them has notified any government investigators, regulators or stock and security exchanges of the Complaint of this Lawsuit."

33. Gleason executed the Settlement Agreement on his own behalf and as the "managing member" of TAM.

34. Varacchi executed the Settlement Agreement personally and as the "managing member" of each of Sentinel, Radar LP and BA.

35. On May 20, 2016, Varacchi caused Sentinel to transfer $1.1 million to its counsel's fiduciary account, who then, on June 3, 2016, forwarded the $1,080,000 Settlement Payment to TAM.

36. Varacchi caused Sentinel and Radar LP to agree to the Settlement Agreement and caused Sentinel to transfer the Settlement Payment to TAM despite the fact that (i) Varacchi

personally engaged in the alleged wrongful conduct and was obligated to make the Settlement Payment, and (ii) Gleason and TAM held no valid claim against Sentinel or Radar LP.

37. Varacchi entered into the Settlement Agreement because he knew that defending the TAM Action would have ultimately revealed the Ponzi scheme he then operated through the Receivership Entities.

38. Thus, while settling the TAM Action quickly, quietly and without discovery furthered Varacchi's interest in perpetuating the Ponzi scheme, neither Sentinel nor Radar LP received any meaningful value in consideration for relinquishing the $1,080,000 Settlement Payment and for binding themselves to the Settlement Agreement.

## II. THE COURT SHOULD GRANT THE RECEIVER LEAVE TO COMMENCE LITIGATION AGAINST TARAN ASSET MANAGEMENT, LLC, *ET AL*.

39. The contemplated lawsuit against TAM, Gleason and BA furthers the Receiver's continuing effort to trace, recapture and return investor proceeds misappropriated from investment funds managed and operated as a Ponzi scheme by Varacchi and other individuals affiliated with the Receivership Entities.

40. The Receiver has conducted a diligent and thorough investigation into the facts and circumstances surrounding the Settlement Agreement and Settlement Payment.

41. Based thereon and after determining the occurrence of the conduct and transactions set forth above, the Receiver requests leave of this Court to commence a civil action to avoid that certain Settlement Agreement entered into by Varacchi, among others, for Varacchi's own personal benefit, and, in particular, to recover the $1,080,000 Settlement Payment paid by Sentinel to TAM pursuant to the Settlement Agreement, and any subsequent transferees.

42. The settlement provided Varacchi with a release of TAM's and Gleason's claims of fraud and embezzlement based on conduct that he engaged in primarily (if not entirely) prior to

the Ponzi scheme he orchestrated through the Receivership Entities. The settlement allowed Varacchi to avoid TAM's and Gleason's scrutiny of the "business" he then operated—later admitted by Varacchi, in both civil and criminal proceedings, to be a Ponzi scheme. The source of Sentinel's funds used by Varacchi to make this Settlement Payment had been the investments made by investors defrauded by Varacchi in furtherance of his Ponzi scheme.

43. Accordingly, the Receiver submits that the Settlement Agreement and the Settlement Payment constitute intentional and constructive fraudulent transfers pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552 *et seq*. ("CUFTA"). Accordingly, the Receiver, by the proposed civil action, may avoid these fraudulent transfers and recover their value for the benefit of the Receivership Estate and their creditors. *See* Conn. Gen. Stat. §§ 52-552e, 52-552f, 52-552h & 52-552i(b). *See, also, Eberhard v. Marcu*, 530 F.3d 122, 128-135 (2d. Cir. 2008) (expressly adopting principle that a receiver possesses standing to pursue fraudulently transferred assets when one of the entities in the receivership is a creditor of the transferor); *Carney v. Horion Inv. Ltd.*, 107 F.Supp.3d 216, 227-29 (D. Conn. 2015) (same); *Carney v. Montes*, No. 3:12-cv-00183(SRU), 2014 U.S.Dist.LEXIS 21769 at *16-*29 (D. Conn. Feb. 21, 2014) (Underhill, J.) (same) (copy attached hereto as **Exhibit A**).

44. Alternatively, the Receiver represents that he may recover for unjust enrichment against the TAM and Gleason because they unjustly failed to pay the Receivership Entities for the benefits received for the Settlement Payment and Settlement Agreement, and equity and good conscience require the full restitution of the Settlement Payment paid by Sentinel to TAM so it may be distributed by the Receiver to the creditors of the receivership estates.

45. The Receiver further requests leave to assert such other claims and causes of action against TAM, Gleason, BA, and any other appropriate persons, arising out of, at least in part, the

facts and circumstances set forth above (including all subsequent transferees of the Settlement Payment), to the extent that the Receiver, in the exercise of his reasonable judgment, and after consultation with the SEC, determines such would be in the best interest of the Receivership Estate.

46. Prosecuting these causes of action will likely help to mitigate the harm caused by Varacchi by allowing the Receivership Estate to recover funds that may be used to return to Investors a portion of the money they lost due to Varacchi's operation of the Ponzi scheme.

47. The Receiver, therefore, submits that bringing a civil action as described herein is in the best interest of the Receivership Estate.

48. The Receiver has provided a copy of this Motion to Varacchi, through his counsel, and his counsel has represented that Varacchi consents to the relief requested herein.

49. The Receiver has consulted with the SEC concerning the relief requested herein and provided a copy of this Motion to the SEC, and the SEC has stated that it has no objection.

50. The Receiver will continue to consult with and inform the SEC as to the prosecution and any potential compromise of the Receivership Estate's claims against TAM, Gleason, and BA should this Court grant this Motion.

51. Finally, this Court will have the opportunity to monitor the progress of any litigation against TAM and Gleason and the costs incurred thereby via the status reports and fee applications that the Receiver will continue to file on a quarterly basis in this Receivership Proceeding.

**WHEREFORE**, for the foregoing reasons, Jed Horwitt, Esq., Receiver, respectfully requests that this Court grant him leave to commence a civil action against Taran Asset Management, LLC, Christopher Gleason, Baseline Advisor, LLC, and others, as more fully set forth herein, and such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 26th day of October, 2017.

        Respectfully submitted,

        JED HORWITT, ESQ., RECEIVER

By: */s/ Stephen M. Kindseth*
    Stephen M. Kindseth (ct14640)
    Patrick R. Linsey (ct29437)
    Zeisler & Zeisler, P.C.
    10 Middle Street, 15th Floor
    Bridgeport, CT  06604
    Telephone: 203-368-4234 X 245
    Facsimile: 203-549-0903
    Email: skindseth@zeislaw.com
           plinsey@zeislaw.com
    His Attorneys

## **CERTIFICATE OF SERVICE**

   I, Stephen M. Kindseth, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                  */s/ Stephen M. Kindseth*
                  Stephen M. Kindseth (ct14640)