# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 3:17-cv-00155-VAB |
| MARK J. VARACCHI and | ) |
| SENTINEL GROWTH FUND | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants, | ) |
| and | ) |
| | ) |
| RADAR ALTERNATIVE FUND LP and | ) |
| RADAR ALTERNATIVE MASTER FUND SPC, | ) |
| | ) |
| Relief Defendants. | ) |

## SECOND INTERIM APPLICATION FOR PROFESIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to the Court's Order Appointing Receiver entered May 1, 2017 (the "Receivership Order"), respectfully submits this second interim application (the "Application") for professional fees and expenses incurred by the Receiver, Z&Z, and the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L"), on behalf of the Receivership Estate (as defined in the Receivership Order), during the period commencing July 1, 2017, through and including September 30, 2017 (the "Compensation Period"), plus such amounts incurred by V&L prior to the Compensation Period

as more fully set forth herein.  In advance of filing, the Receiver shared this Application with counsel for the Commission, and the Commission's counsel has stated that it has no objections to this Application.

In support of this Application, the Receiver, Z&Z and V&L respectfully represent as follows:

## I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED

1.    This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines") and the Receivership Order.

2.    Pursuant to the SEC Guidelines, the following exhibits are attached to this Application:

a.    The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

b.    A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c.    A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as Exhibit C;

d.    Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as Exhibits D-1; D-2, D-3, D-4, D-5; D-7, and D-8[1];

_____

[1] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding, and pursuant to the Court's Order entered August 11, 2017 (Doc. No. 25), Ex. D-1 through D-8 are filed under seal.  Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

    e.      A Certification of Compliance with the SEC Guidelines by V&L is attached hereto as <u>Exhibit E</u>;

    f.      A summary of total expenses for which reimbursement is requested for V&L is attached hereto as <u>Exhibit F</u>; and

    g.      Time records summarizing the work performed by V&L's accounting professionals and paraprofessionals for each of its Activity Categories (as hereinafter defined) are attached hereto as <u>Exhibits G-1</u>; <u>G-2</u>, <u>G-3</u> and <u>G-4</u>.

3.      The Receiver and Z&Z attorneys and paraprofessionals have expended a total of 281.60 hours working on this matter during the Compensation Period.  The Receiver and Z&Z seek allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $79,024.40, and reimbursement of actual and necessary expenses in the amount of $1,787.08.

4.      The Receiver's accountant and financial advisor V&L's professionals and paraprofessional have expended a total of 156.40 hours working on this matter during and immediately prior to the Compensation Period.  V&L seeks allowance of compensation of services rendered during and immediately prior to the Compensation Period on behalf of the Receivership Estate in the amount of $29,203.60, and reimbursement of actual and necessary expenses in the amount of $293.61.

5.      The Receiver, Z&Z and V&L acknowledge that their fee compensation is subject to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Order.

6.      The fees assessed reflect the hours worked by the Receiver, Z&Z attorneys and paraprofessionals and V&L professionals and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z and V&L (described below).

7.      These amounts also take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Order.

8.      A narrative description of the particular services provided by the Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as Ex. D-1 through D-8.  A narrative description of the particular services provided by V&L's professionals and paraprofessionals is included in the time records attached as Ex. G-1 through G-4.  Section IV below summarizes the Receiver's administration of the Receivership Estate since his appointment.

9.      Z&Z's expense reimbursements requested are modest and principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) shipping charges; (iii) expenses associated with the Receiver's website; and (iv) lien-search fees incurred investigation the Receivership Estate's assets.  (*See* Ex. C.)

10.     V&L's expense reimbursements requested are especially modest and principally consist of the following: (i) storage charges; (ii) shipping charges; and (iii) one expense for mileage.[2]

---

[2] V&L's requested expense reimbursements include one expense – a mileage expense in the amount of $154.44 – incurred prior to the Compensation Period.  *See* Ex. G-4.  This expense was not included in the First Interim Fee Application (as hereinafter defined), because V&L had only recently commenced services prior to the filing of such application and the services provided to that point were limited.   Accordingly, V&L and the Receiver respectfully request that this

11.     The Receiver, Z&Z and V&L have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime.  Nor have the Receiver, Z&Z or V&L requested reimbursement for any meals during the Compensation Period.

12.     The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies.  V&L has not requested reimbursement for photocopying during the Compensation Period.

### A.     Discounts

13.     As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Order, the Receiver, Z&Z and V&L have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

14.     More specifically, and as shown in the fee schedules set forth below, Z&Z and V&L have consented to 20% public service discounts to their regularly applicable hourly rates for all legal and accounting professionals and paraprofessionals.

15.     The Receiver has further discounted his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver (rather than primarily providing legal services) to $250 per hour, reflecting a 50% discount.  Where the Receiver provided primarily legal services, the 20% discount applies.

---

expense be included in this Application.

16.    However, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time during this period.

**B.    Fee Schedules**

17.    The fee schedule for the Receiver, showing: his name; the hourly rate applied to his services in this Receivership Proceeding and his customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his services during the Compensation Period; is as follows:

| Receiver | Rate (Cust. Rate) | Rate Disc. | Hours | Amt. Billed | Amt. Disc. |
|---|---|---|---|---|---|
| Horwitt, Jed | $250 ($500) | $250 | 12.60 | $3,150.00 | $3,150.00 |

18.    The fee schedule for all Z&Z legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Professional | Rate (Cust. Rate) | Rate Disc. | Hours | Amt. Billed | Amt. Disc. |
|---|---|---|---|---|---|
| Kindseth, Stephen | $340 ($425) | $85 | 78.40 | $26,656.00 | $6,664.00 |
| Kornafel, Joanna | $240 ($300) | $60 | 77.00 | $18,480.00 | $4,620.00 |
| Linsey, Patrick | $264 ($330) | $66 | 46.70 | $12,328.80 | $3,082.20 |
| Cesaroni, John | $240 ($300) | $60 | 27.10 | $6,504.00 | $1,626.00 |
| Moriarty, James | $320 ($400) | $80 | 25.80 | $8,256.00 | $2,064.00 |
| Henzy, Eric | $380 ($475) | $95 | 6.80 | $2,584.00 | $646.00 |

19.    The fee schedule for the legal paraprofessional who provided services during the Compensation Period, showing: his or her name; the hourly rate applied to his or  her services in

this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprof'l | Rate (Cust. Rate) | Rate Disc. | Hours | Amt. Billed | Amt. Disc. |
|---|---|---|---|---|---|
| Accurso, Deborah | $148 ($185) | $37 | 7.0 | $1,036.00 | $259.00 |
| O'Brien, Barbara | $148 ($185) | $37 | .2 | $29.60 | $7.40 |

20.    The fee schedule for all V&L accounting professionals who provided services during and immediately prior to the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed during and immediately prior to the Compensation Period; the amount billed for such services during and immediately prior to the Compensation Period; and the amount of the discount to his or her services during and immediately prior to the Compensation Period; is as follows:

| Professional | Rate (Cust. Rate) | Rate Disc. | Hours | Amt. Billed | Amt. Disc. |
|---|---|---|---|---|---|
| Flaherty, Amanda | $180 ($225) | $45 | 50.8 | $9,144.00 | $2,286.00 |
| Briggs, Mary Ruth | $120 ($150) | $30 | 25.8 | $3,096.00 | $774.00 |
| Bailey, Peter | $196 ($245) | $49 | 24.3 | $4,762.80 | $1,190.70 |
| Bailey, Thomas | $280 ($350) | $70 | 23.3 | $6,524.00 | $1,631.00 |
| McDonald, Timothy | $244 ($305) | $61 | 12.6 | $3,074.40 | $768.40 |
| Prete, Brian | $140 ($175) | $35 | 8 | $1,120.00 | $280.00 |
| Caban, Michael | $28 ($45) | $17 | 6.4 | $230.40 | $57.60 |
| Grossmith, Emily | $200 ($250) | $50 | 2.3 | $460.00 | $115.00 |
| Borchers, Laird | $196 ($245) | $49 | 1.5 | $294.00 | $73.50 |
| Lowey, Keith | $356 ($445) | $89 | 1.4 | $498.40 | $124.60 |

21.    This fee schedule includes a modest amount of time – 11.2 hours constituting a discounted billed amount of $1,563.00 – incurred prior to the Compensation Period, which time (organized by Activity Category) is set forth in Ex. G-4.  This time was not included in the First

Interim Fee Application (as hereinafter defined), because V&L had only recently commenced services prior to the filing of such application and the services provided to that point were limited.  Accordingly, V&L and the Receiver respectfully request that this Court approve V&L's fees for this time even through incurred prior to the Compensation Period.

C.      **Activity Categories**

22.     Pursuant to the SEC Guidelines, the Receiver, Z&Z and V&L have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

Activity Categories Utilized by Receiver and Legal Professionals

a.      Category One: Case Administration, 72.10 hours, $19,827.60 (*see* Ex. D-1);

b.      Category Two: Asset Analysis & Recovery, 62.50 hours, $17,127.60 (*see* Ex. D-2);

c.      Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d.      Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

e.      Category Five: Claims Administration & Objections, 31.50 hours, $8,887.40 (*see* Ex. D-5);

f.      Category Six: Application for Professional Fees and Expenses, the Receiver and Z&Z are not including time incurred for these services in their Application (*see* Ex. D-6);

g.      Category Seven: Litigation – Taran Asset Management, 71.10 hours, $21,204.20 (*see* Ex. D-7); and

8

h.      Category Eight: Litigation – A. L. Sarroff Management, 11.90 hours, $4,022.80 (*see* Ex. D-8).

Activity Categories Utilized by Accounting Professionals

i.      Category One: General Administration, 4.6 hours, $1,394.40 (*see* Ex. G-1);

j.      Category Two: Financial Analysis, 34.55 hours, $5,730.00 (*see* Ex. G-2); and

k.      Category Three: Data Review, Investigation and Production, 117.25 hours, $22,079.60 (*see* Ex. G-3).

## II.      **NATURE OF THE PROCEEDINGS**

### A.      **The Receivership Proceeding and the Commission's Claims**

23.      On February 2, 2017, the Commission commenced this Receivership Proceeding by filing its Complaint against the defendants, Varacchi and Sentinel Growth Fund Management, LLC ("Sentinel," and together with Varacchi, the "Defendants"), and the relief defendants, Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC," and together with Radar LP, the "Relief Defendants," and the Relief Defendants together with the Sentinel, the "Receivership Defendants").

24.      The Commission's Complaint alleges that the Defendants engaged in a fraudulent scheme to misappropriate investor assets, and that in the course of their scheme, the Defendants commingled their assets with investor assets. According to the Complaint, between at least December, 2015, and November, 2016, the Defendants misappropriated at least $3.95 million of investor assets intended for or held by the Relief Defendants, which were two private funds that the Defendants advised.   The Defendants commingled their assets with investors' assets and

made withdrawals from the Relief Defendants that investors did not authorize, which the Defendants used for personal and business expenses and to pay prior investors.  Sentinel's bank account included funds that Sentinel and Varacchi obtained from their investors or the Relief Defendants' investors for purposes of investment as well as deposits from the Relief Defendants. Withdrawals from Sentinel's bank account included payments to investors and payments for Varacchi's personal expenses.

25.     While the Complaint specifically alleged a narrower fraud of at least $3.95 million, it appears to the Receiver that a more far-reaching scheme had been perpetrated.  The Complaint alleged that Sentinel received $42.6 million in third-party deposits between August, 2013, and December, 2016, but that Sentinel transferred only $24.8 million to the Relief Defendants, and that the Relief Defendants received another $21.1 million directly from third parties.

26.     To date, thirty-nine creditors have filed claims against the Receivership Estate. Most of these creditors are investors who deposited funds with Sentinel or the Relief Defendants and who have unredeemed principal investments totaling over $19.6 million.

27.     Six investors who deposited funds with Sentinel or the Relief Defendants received redemptions of their original investment amount or more.  The Defendants also commingled the proceeds of purported "loans" with investor funds, by depositing such "loan" proceeds into Sentinel's account or the Relief Defendants' accounts.

**B.      The Asset Freeze**

28.     Also on February 2, 2017, at the same time that it filed the Complaint, the Commission filed its Assented to Motion for an Order Imposing a Preliminary Injunction, Freezing Assets, and for Other Equitable Relief (the "Motion for Preliminary Injunction").  (Doc.

No. 2.[3])  On February 3, 2017, the Court granted the Motion for Preliminary Injunction and entered its Order, *inter alia*, freezing certain assets of the Receivership Defendants (as amended from time to time, the "Asset Freeze Order").  (Doc. No. 7.)

29.     The Asset Freeze Order provided that all funds and assets of the Receivership Defendants were frozen, including the Receivership Defendants' equity or fixed income interests in Entourage Funding, LLC ("Entourage Funding"), Green Lantern Industries, Inc. ("Green Lantern Industries"), Greenhouse Solutions, Inc. ("Greenhouse Solutions"), Kizzang, LLC ("Kizzang"), Roots Athletics, LLC ("Roots Athletics"), StereoCast, Inc. ("StereoCast"), and Zipway, LLC ("Zipway" and, together with Entourage Funding, Green Lantern Industries, Greenouse Solutions, Kizzang, Roots Athletics and StereoCast, collectively, the "Private Companies"), as well as funds held with Bank of America, N.A., Weeden Prime Services, LLC ("Weeden"), and Industrial and Commercial Bank of China Financial Services, LLC ("ICBC"). (Asset Freeze Order, ¶ VI. A.)

30.     On February 22, 2017, the Commission filed its Assented to Motion to Modify Asset Freeze to Order the Liquidation of Certain Assets Held by Radar Alternative Fund LP seeking to liquidate a certain stock position, which the Court granted on March 1, 2017.  (Doc. Nos. 8, 9.)

C.      **Appointment of the Receiver**

31.     On April 18, 2017, the Commission filed its Assented to Motion for Appointment of a Receiver (the "Motion to Appoint"), requesting that the Court take exclusive jurisdiction and possession of all property of whatever kind of the Receivership Defendants, including the Receivership Defendants' remaining assets, the Private Investments (as hereinafter defined), and

---

[3] "Doc. No." refers to the Document Numbers of filings on the electronic docket in this Receivership Proceeding.

any additional assets of the Receivership Defendants that may be recovered (collectively, the "Receivership Assets") and appoint the Receiver, pursuant to the proposed receivership order, to assume control of, marshal, pursue, and preserve the Receivership Assets with the objective of maximizing the recovery of such assets and, to the extent that assets recovered are inadequate to make defrauded investors whole, ensuring that the distribution of those assets is as just and equitable as practicable.  (Doc. No. 10.)

32.    More specifically, the Commission requested appointment of the Receiver to perform, *inter alia*, the following functions: (i) assess the optimal treatment of assets held by the Relief Defendants for the eventual return of assets to investors or creditors, including those investors who may have been harmed by the misconduct alleged in the Complaint, and to prevent waste and dissipation of the Relief Defendants' assets to the detriment of investors, and, where necessary, to operate the Relief Defendants, and to manage, maintain, and/or wind-down business operations of the Relief Defendants, pending further order of the Court; (ii) determine the value of certain investments that were made in the name of Sentinel and/or Varacchi with funds from Sentinel or the Radar Funds (the "Private Investments"), and to marshal and ultimately liquidate those Private Investments; and (iii) after obtaining leave of the Court, institute such actions and legal proceedings as the Receiver deems necessary and appropriate to recover funds transferred from Sentinel or the Radar Funds.

**D.    The Judgment**

33.    On April 18, 2017, the Commission filed its Assented to Motion for Entry of Judgment against the Defendants and the Relief Defendants (the "Judgment Motion").  (Doc. No. 11.)  The Judgment Motion requested that the Court enter Judgment against the Receivership Defendants in a form in which the Receivership Defendants had agreed.  (*See* Consent to Entry

of Judgment of Defendants, Doc. No. 11-1, and proposed Judgment (the "Judgment"), Doc. No. 11-2.)

34.     The Court entered both the Receivership Order and the Judgment on May 1, 2017. (Doc. Nos. 12, 13.)

### E.     The Status Report and Liquidation Plan

35.     On July 27, 2017, The Receiver filed the Receiver's First Quarterly Status Report and Liquidation Plan (doc. no. 22, the "Status Report and Liquidation Plan").

36.     The Status Report and Liquidation Plan contains comprehensive information to update the Court, the Commission and any other parties in interest as to the Receiver's operations, the Receivership Estate's assets, and claims against the Receivership Estate.  It also contains a plan for the fair, reasonable and efficient recovery and liquidation of assets of the Receivership Estate.

### F.     The Claims Procedure Motion

37.     On July 27, 2017, the Receiver filed his Motion to Approve Claims Procedure (the "Claims Procedure Motion," doc. no. 23), which included, *inter alia*, (i) the establishment of a deadline for submitting such claims to the Receiver, (ii) the form and manner of notice of the claims procedures, (iii) the form and manner for the submission of such claims by investors and other creditors, and (iv) the procedure for the adjudication of disputed claims.

38.     Therewith, the Receiver filed a proposed Notice of Claims Procedure for Asserting Claims, Bar Date, and Proof of Claims Instructions (doc. no. 23-1, the "Claims Notice").

39.     On July 31, 2017, the Court entered its Order Approving Claims Procedure (doc. no. 24, the "Claims Procedure Order") substantially in the form requested by the Receiver.

40.     In compliance with the Claims Procedure Order, the Receiver sent copies of the Claims Notice to all persons (including individuals and businesses) with then known claims against the Receivership Estate, within fourteen (14) days of entry of the Claims Procedure Order.

41.     Z&Z thereafter discovered the possibility of other persons holding claims and promptly provided them with notice of the Claims Procedure Order and Claims Notice.  The Receiver intends to file a motion with this Court either imposing the Bar Date set forth in the Claims Procedure Order upon such creditors or establishing a new bar date for these particular persons only to submit a claim.

42.     The bar date for delivery of proofs of claim and supporting materials to the Receiver was September 29, 2017 (the "Bar Date").  To date, the Receiver has received approximately thirty-nine (39) claims in a total claimed amount in excess of $32 million.

### G.     The First Interim Fee Application

43.     On August 14, 2017, the Receiver and Z&Z filed their First Interim Application for Professional Fees and Expenses Incurred by the Receiver and His Professionals (doc. no. 27, the "First Interim Fee Application" and, together with this Application, collectively, the "Applications").  The Court granted the First Interim Fee Application on October 13, 2017 (doc. no. 29).

### III.     SUMMARY OF CASH ON HAND

44.     The Receiver's cash on hand is held in the Receivership Account (as hereinafter defined), the balance of which, as of September 30, 2017, is $2,498,777.22.  This constitutes an increase of $371,111.46 during the Compensation Period.

14

IV.     **SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE**

45.     Since his appointment, and specifically during the Compensation Period, the Receiver has undertaken numerous steps and made progress towards fulfilling his objectives.

46.     Among other things, the Receiver, utilizing Z&Z as his legal professionals and V&L as his accountants and financial advisors, has undertaken and accomplished the following:

A.     **Investigation**

47.     The Receiver and Z&Z attorneys have communicated with the Commission's enforcement agents to obtain information concerning, *inter alia*, the following: the scheme and scheme participants; the investors; creditors of the Receivership Defendants; assets of or subject to the Receivership Proceeding (including the Private Investments); documents (including electronically stored information) possessed by the Commission that would assist the Receiver in carrying out his mandate; and the investigation conducted and determinations made to date by the Commission and other investigative agencies.

48.     As part of this investigation, the Receiver, Z&Z attorneys have obtained and reviewed extensive documents and records from the Commission relevant to the Receivership Proceeding.

49.     Z&Z attorneys also spoke and e-mailed with Varacchi and his counsel during the Compensation Period in order to obtain information about the Receivership Proceeding and the assets of the Receivership Estate.  At the same time, and in order to vet Varacchi's representations, Z&Z conducted a review of Varacchi's correspondence as it related to the subjects of the Receiver's investigations.

50.     V&L's professionals, in close contact with the Receiver and Z&Z, reviewed and analyzed extensive records and financial information from the Commission concerning the

Receivership Estate's assets and worked to inventory and categorize the documents and records remaining to review such that the Receiver's professionals may approach these voluminous materials in the most efficient possible manner.

51.     Items of particular investigation and analysis by the Receiver and his professionals, as discussed below, were the Private Investments and Funded Entities, as well as causes of action held by the Receivership Estate against third parties.

        **B.**      **The Receiver's Website and Investor Contact**

52.     At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com –  that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

53.     The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information that will hopefully lead to meaningful distributions to investors in this Receivership Proceeding.

54.     Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the Receivership Proceeding and the claims management procedures discussed herein.

        **C.**      **Developing a Claims Procedure and Claims Management**

55.     The Receiver and Z&Z drafted a comprehensive set of procedures to permit parties with claims against the Receivership Estate to submit them for an orderly evaluation and processing.  To this end, the Receiver filed the Claims Procedure Motion on July 27, 2017,

which included, *inter alia*, (i) the establishment of a deadline for submitting such claims to the Receiver, (ii) the form and manner of notice of the claims procedures, (iii) the form and manner for the submission of such claims by investors and other creditors, and (iv) the procedure for the adjudication of disputed claims.

56.    The Receiver filed with the Claims Procedure Motion the proposed Claims Notice.  The Claims Notice included a proof of claim form prepared by Z&Z in order to simplify and standardize creditors' submissions to the Receiver.

57.    On July 31, 2017, the Court entered its Claims Procedure Order substantially in the form requested by the Receiver.

58.    In compliance with the Claims Procedure Order, the Receiver, through Z&Z, sent copies of the Claims Notice to all then known persons (including individuals and businesses) with claims against the Receivership Estate, within fourteen (14) days of entry of the Claims Procedure Order.  After providing such notice, the Receiver learned that additional persons may have claims against the Receivership Estate and so provided notice to these additional persons.

59.    The Bar Date for the submission of claims has passed.[4]  To date, the Receiver has received approximately thirty-nine (39) claims in a total claimed amount in excess of $32 million.

60.    The Receiver and Z&Z have and are continuing to analyze the submitted claims and determined areas where particular claims may be disputed or where the Receiver requires more information to effectively evaluate the claims.  The Receiver will seek to have any disputed claims determined by the Court pursuant to the Claims Procedure Order.

---

[4] In the near future, the Receiver intends to move the Court to apply the Bar Date to the additional persons to whom the Receiver delivered notice or to establish a separate deadline for such persons.

### D.   The First Quarterly Status Report and Liquidation Plan

61.     The Receiver and Z&Z also prepared and on July 27, 2017 filed the Status Report and Liquidation Plan.

62.     In drafting this document, the Receiver and Z&Z compiled comprehensive information to update the Court, the Commission and any other parties in interest as to the Receiver's operations, the Receivership Estate's assets, and claims against the Receivership Estate.   The Receiver and Z&Z further prepared a plan for the fair, reasonable and efficient recovery and liquidation of assets of the Receivership Estate.

### E.   Marshaling of Receivership Assets and Receipt of Assets by Receiver

63.     Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and bankruptcy trustees), which account (the "Receivership Account") will hold funds marshaled by the Receiver and will constitute Receivership Assets.

64.     Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.   In doing so, the Receiver obtained $2,127,665.76 in cash, which was deposited and has at all times since been held in the Receivership Account.

65.     Certain other cash and securities were held in an account with ICBC (the "ICBC Account"), which the Receiver sought to liquidate during the Compensation Period.   As of June 30, 2017, the Receiver understood that the ICBC Account held $495,729.57 in cash and securities.   ICBC disputed the Receiver's right to possession of certain of these funds.

66.     In order to liquidate and marshal the Receivership Estate's assets to the maximum extent possible, the Receiver directed ICBC to transfer to the Receiver all amounts held in the

18

ICBC Account that ICBC did not dispute constituted property of the Receivership Estate. Accordingly, on or about August 7, 2017, ICBC wired $371,111.46 to the Receivership Account.

67.    ICBC has since informed the Receiver of its position that the ICBC Account in fact held less funds than previously represented, which higher balance ICBC alleged was the result of an accounting error due to a "busted trade."  The Receiver has not agreed to ICBC's position or waived its right to pursue any funds that may exist.

68.    As of September 30, 2017, ICBC states that the ICBC Account has a zero balance.  The Receiver is investigating this matter and has not consented to ICBC's position.

    **F.    Investigation of Private Investments**

69.    The Receiver has continued to investigate the Private Investments.  The Receiver has researched and analyzed numerous entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

70.    The Receiver has identified stock ownership interests in the following entities: Kizzang, Greenhouse Solutions and StereoCast and the Receiver and Z&Z have investigated these companies during the Compensation Period.   The Receiver and Z&Z have also corresponded with and received certain financial information concerning Varacchi and the Receivership Defendants from the following entities to which Varacchi paid money or that were otherwise involved in his or the Receivership Defendants' financial affairs:  Zipway, STRV, LLC ("STRV"), Gravy, Inc. ("Gravy"), Roots Athletics, Invigilio, LLC ("Invigilio"), Entourage Funding, Live Music Sales, LLC ("Live Music Sales"), Satin Bros. Entertainment, Green Lantern Industries, and Adam Jacobs Music ("AJM").

71.    During the Compensation Period, the Receiver, through Z&Z, demanded documents and records from many of the foregoing entities in order to investigate the

Receivership Estate's rights and interests with respect to such entities. Where the entities responded, Z&Z has worked with the entities' counsel and principals in order to elicit the required information. Where, as in the case of several of these entities, the Receiver has received no response or where compliance with requested documents and records has not been forthcoming, the Receiver intends to issue subpoenas to compel such production. Because the non-compliant entities are outside of the State of Connecticut, where this Receivership Proceeding is pending, this has required locating counsel in various other states that are agreeable to receiving production in response to the Receiver's subpoenas.

72.     Where equity interests had not been acquired by the Receivership Defendants and where the Receivership Defendants' assets were utilized to pay obligations on behalf of third parties, the Receiver and Z&Z are evaluating potential fraudulent transfer and other causes of action.

73.     On September 20, 2017, Z&Z, on behalf of the Receiver, issued a comprehensive Status Update Memorandum concerning the Receiver's investigation of private investments and other interests to counsel for the Commission.

## G.     Investigation of Potential Litigation Claims

74.     During the Compensation Period, the Receiver and Z&Z investigated causes of action that the Receiver believes exist against Taran Asset Management, LLC ("TAM") and Christopher Gleason ("Gleason"), including causes of action for fraudulent transfer to recover the $1,080,000 that Varacchi caused Sentinel to pay to TAM in settlement of TAM's fraud and embezzlement claims against Varacchi personally.

75.     TAM had sued Varacchi, Sentinel, Radar LP and other entities in U.S. District Court for the Northern District of Illinois (the "N.D. Ill. Action"), alleging that Varacchi had committed fraud and embezzled funds from TAM during his prior employment with TAM.

76.     During the Compensation Period, the Receiver and Z&Z investigated the the N.D. Ill. Action, the causes of action asserted and the settlement agreement reached.  The Receiver and Z&Z have also reviewed extensive correspondence and records concerning these matters.

77.     In so doing, the Receiver came to believe that TAM's purported claims against Sentinel and Radar LP entirely lacked merit.  The Receiver further determined that TAM and Gleason threatened Varacchi that if he did not immediately capitulate to their purported claims in the N.D. Ill. Action, that TAM and Gleason would contact the authorities.

78.     Z&Z interviewed Varacchi concerning these matters, learning that Varacchi realized that TAM's prosecution of the N.D. Ill. Action, and the ensuing regulatory scrutiny and negative public attention to his and the Receivership Defendants' finances and business activities, quickly would have revealed the fraudulent scheme operating through the Receivership Defendants.

79.     Accordingly, effective May 27, 2016, Varacchi caused Sentinel and Radar LP to enter to a certain Confidential Settlement Agreement (the "Settlement Agreement") with TAM and Gleason, for purposes of settling the claims against him.  Pursuant to the Settlement Agreement, Varacchi was required to pay TAM $1,080,000, and the parties undertook other obligations and exchanged releases.  On May 20, 2016, Varacchi caused Sentinel to transfer to their counsel $1.1 million for purposes of making Varacchi's settlement payment.  Varacchi's and Sentinel's counsel thereafter transferred the settlement payment in the amount of $1,080,000 (the "Settlement Payment") to TAM.

80.     Thus, in order to perpetuate this scheme and continue the fraud he was operating through the Receivership Defendants, Varacchi (i) caused Sentinel and Radar LP to enter into the Settlement Agreement, undertaking financial obligations in favor of TAM and Gleason (who was individually a party thereto), and (ii) caused Sentinel to use funds that it had received from investors to buy peace with TAM and Gleason.

81.     The Receiver believes there exist claims against TAM and Gleason under the Connecticut Uniform Fraudulent Transfer Act to avoid the Settlement Agreement and Settlement Payment, and to recover for unjust enrichment.  Accordingly, the Receiver has sent a demand letter to TAM's and Gleason's counsel demanding that they return the Settlement Payment. TAM and Gleason have failed to comply with this demand.

82.     The Receiver has since drafted a complaint against TAM and Gleason asserting these causes of action that the Receiver is prepared to file provided that this Court grants the Motion to Sue TAM.

83.     On, October 26, 2017, Receiver has moved for the Court to permit Z&Z to sue TAM and Gleason (doc. no. 30, the "Motion to Sue TAM").  The Court granted the Motion to Sue TAM on October 31, 2017 (doc. no. 32).

84.     The Receiver and Z&Z have also investigated other causes of action that the Receiver believes have substantial merit and may be brought on behalf of the Receivership Defendants, including those against A. L. Sarroff Management, LLC ("Sarroff").

**H.    Disbursement of Assets**

85.     The Receiver has not yet disbursed any funds from the Receivership Estate.  The Receiver, Z&Z and V&L have assessed fees for their services and Z&Z and V&L have advanced

all necessary expenses, which are requested for reimbursement through the Applications.  (*See* Ex. C.)

86.     Provided that the Court awards the fees and expenses requested in these Applications, appropriate disbursements will be reflected on the Receiver's next interim fee application filed after such award.

87.     Once the Receiver has reviewed the various claims asserted against the Receivership Estate and determined the scope of the undisputed claims, the Receiver intends to move for authority to make an interim distribution from the Receivership Estate's cash assets. The Receiver further expects to make subsequent distributions from the proceeds of the liquidation of other assets, including any recovery from claims against third parties.

**I.     Anticipated Closure**

88.     At this early time, it is premature for the Receiver to speculate as to when this Receivership Proceeding will be ready to close.

**V.     DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE**

89.     The following assets are a part of the Receivership Estate:

a.     The Receivership Account, which is valued at $2,498,777.22;

b.     The ICBC Account, the value of which the Receiver is presently investigating;

c.     The Private Investments, which value the Receiver is presently investigating; and

d.     Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, including the claims against TAM/Gleason and Sarroff.

90.     With respect to the Private Investments, the Receiver has identified the following securities:

a.   Kizzang: 3,600,000 Class C shares and 5,400,000 Class D shares, all evidenced by certificates identifying Varacchi as the owner of such interest;

b.   Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and

c.   StereoCast: 150,000 shares in the name of Varacchi, based on information provided by the President of StereoCast (who has represented in writing that he will send the Receiver a copy of the stock certificate evidencing such interest).

91.     The Receiver has determined that Kizzang is not publicly traded.  The Receiver is investigating the value of this asset and how best it may be liquidated to maximize value for the beneficiary of the Receivership Estate.

92.     As part of such investigation, the Receiver found that Time, Inc. filed suit against Kizzang on October 5, 2016, in U.S. District Court for the Southern District of New York (docketed at 1:16-cv-07794-AKH), which suit Kizzang did not defend and which resulted in a default judgment against Kizzang in the amount of $1,025,384.62.

93.     The Receiver has determined that Greenhouse is traded over the counter.  Its share price, as of September 30, 2017, is less than one penny per share. The Receiver has determined that StereoCast is not publicly traded.

94.     Again, and as was discussed in the Status Report and Liquidation Plan, the Receiver is investigating how best to liquidate and maximize the value of these equity interests in Greenhouse and StereoCast.

95.     With respect to the other transfers to the Private Companies that the Commission has identified as potentially having created Private Investments, and the additional transfers discovered by the Receiver, as discussed above, the Receiver is investigating these transactions, including whether they constituted purchases of equity, loans or some other manner of transaction.

24

96.     The Receiver is further investigating whether, where Varacchi caused the Receivership Defendants to make payments for the benefit of third parties, the Receivership Estate may hold causes of action for fraudulent transfer or other claims.

## VI.    SUMMARY OF PROSPECTIVE CLAIMS PROCEDURES

97.     As discussed above, the Receiver filed the Claims Procedures Motion on July 27, 2017, which motion the Court approved in its Claims Procedures Order.

98.     These claims procedures: (i) set the Bar Date for the submission of claims, which has since passed; (ii) established a mechanism for providing notice of the bar date to persons who may hold claims; (iii) provided a proof of claim form that is understandable to the lay person (such that they may be submitted by investors who may not have counsel) and that requests information that will be useful and necessary for the Receiver to begin to assess the extent and validity of such claim; and (iv) provided a procedure for the Receiver to seek to disallow such claims and for persons filing claims to oppose such disallowance.

99.     Creditors' claims are subject to challenge by the Receiver by the filing of a Claim Determination Motion (as defined in the Claims Determination Order) in this Receivership Proceeding.  Each Claim Determination Motion must set forth: (a) the amount alleged in the Creditor's Proof of Claim; (b) the factual and legal basis for the Receiver's challenge to such Claim; and (c) the determination sought by the Receiver including the extent to which the Receiver submits that the Claim should be allowed and disallowed.

100.    The Claims Procedure Order requires that any objection to the Receiver's Claim Determination Motion be filed within twenty-one (21) days of the filing of the Claim Determination Motion.  Upon the timely filing of any objection to any Claim Determination

Motion, the Court will finally determine the allowed amount of such Claim by utilizing summary procedures to be set forth in a further Order of this Court.

101.    The Receiver anticipates that there will be an interim distribution from the cash assets of the Receivership Estate, followed by subsequent distributions from the sale of the Receivership Assets and any recovery from claims against third parties and potential litigation.

## VII.    SUMMARY OF THE RECEIVERSHIP ESTATE'S CAUSES OF ACTION

102.    While the Receiver has not yet commenced any causes of action, the Receiver has investigated several potential causes of action and prepared to bring claims, including against TAM and Gleason.

103.    As described above, the Receiver has thoroughly investigated the Receivership Estate's claims against TAM and Gleason, which were the recipients of the $1,080,000 Settlement Payment.  The Receiver and Z&Z have drafted a complaint against these potential defendants, including claims under the Connecticut Uniform Fraudulent Transfer Act and for unjust enrichment.  The Receiver is prepared to file this complaint as soon as this Court grants the Receiver's Motion to Sue TAM.

104.    The Receiver has also specifically investigated causes of action against Sarroff and is developing these claims.  The Receiver will move to sue Sarroff, and any other potential defendants, prior to commencing litigation against them.

## VIII.    THE GOVERNING LEGAL STANDARD

105.    The District Court has the power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the Receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to

reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953 F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties.).

106.    The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his counsel and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).

107.    The case law and other authority may provide "convenient guidelines," but ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

108.    In awarding counsel fees in Securities Act receiverships, "[t]he court will consider ... the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).

109.    While "results are always relevant," a good result may take a form other than a "bare increase in monetary value." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is

entitled to compensation.").  Overall results can be determined only at the conclusion of the Receivership Proceeding.

110.    Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them."  *Moody*, 374 F. Supp. at 485.  Moreover, "[t]ime spent cannot be ignored."  *Id.* at 483.

## IX.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES

111.    Based on the foregoing, the Receiver, Z&Z and V&L respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

112.    As more fully set forth throughout this Application and as detailed in the exhibits submitted herewith, the issues addressed by the Receiver, Z&Z and V&L have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned years, consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions.  The Receiver and Z&Z have created and implemented claims procedures in order to permit the Receivership Estate to receive, evaluate and determine claims, which procedures have been approved by the Court.  The Receiver, Z&Z and V&L have made substantial progress in investigating the Receivership Estate's assets and are poised to commence litigation on behalf of the Receivership Estate, subject to Court approval.

113.    The Receiver, Z&Z and V&L respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed expediently and efficiently.  Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

114.    At the same time, the Receiver, Z&Z and V&L have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

115.    Furthermore, the Commission has reviewed this Application and has stated that it has no objections.

116.    Accordingly, the Receiver, Z&Z and V&L submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties in interest.

## X.    SOURCE AND MANNER OF PAYMENT

117.    The Receivership Estate contains cash held in the Receivership Account.

118.    The Receiver, Z&Z and V&L request that the Court enter an order permitting the approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees) which shall be held in the Receivership Account pending this Court's further order as to the disposition of such funds.

**WHEREFORE**, Jed Horwitt, Esq., Receiver, Zeisler & Zeisler, P.C., counsel to the Receiver, and Verdolino & Lowey, P.C., accountant and financial advisor to the Receiver, respectfully request that (i) this Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $79,024.40 for legal services rendered during the Compensation Period, and $1,787.08 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (iii) V&L be awarded an allowance of $29,203.60 for services rendered during the Compensation Period, and $293.61 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; and (iv) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 1st day of November, 2017.

                                    Respectfully submitted,

                                    JED HORWITT, ESQ., RECEIVER

                                    */s/ Jed Horwitt*
                                    Jed Horwitt, Receiver

                                    ZEISLER & ZEISLER, P.C.,
                                    COUNSEL TO RECEIVER

By:*/s/ Patrick R. Linsey*
     Stephen M. Kindseth (ct14640)
     Patrick R. Linsey (ct29437)
     Zeisler & Zeisler, P.C.
     10 Middle Street, 15th Floor
     Bridgeport, CT  06604
     Telephone: 203-368-4234 X 245
     Facsimile: 203-549-0903
     Email: skindseth@zeislaw.com
            plinsey@zeislaw.com
     His Attorneys

## **CERTIFICATE OF SERVICE**

I, Patrick R. Linsey, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Patrick R. Linsey*
Patrick R. Linsey (ct29437)