## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | Civil Action No. |
| ) | 3:17-cv-00155-VAB |
| MARK J. VARACCHI and    ) | |
| SENTINEL GROWTH FUND    ) | |
| MANAGEMENT, LLC,    ) | |
| ) | |
| Defendants,    ) | |
| and    ) | |
| ) | |
| RADAR ALTERNATIVE FUND LP and    ) | |
| RADAR ALTERNATIVE MASTER FUND SPC,    ) | |
| ) | |
| Relief Defendants.    ) | |

### RECEIVER'S MOTION *ON CONSENT* FOR LEAVE
### TO COMMENCE LITIGATION AGAINST
### ALAN L. SARROFF AND A.L. SARROFF MANAGEMENT, LLC

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC"), by and through his undersigned counsel, Zeisler & Zeisler, P.C., pursuant to this Court's Order Appointing Receiver (Doc. No. 12, the "Appointment Order"), respectfully moves (the "Motion")—with the consent of the SEC and the defendant, Mark J. Varacchi ("Varacchi")—that this Court grant the Receiver leave to commence litigation asserting causes of action to recover certain fraudulent transfers, for unjust enrichment and possible other claims against Alan L. Sarroff ("Sarroff") and A.L. Sarroff Management, LLC ("Sarroff, LLC"),

for the benefit of the Receivership Estate[1] and its creditors.  In support of this Motion, the Receiver respectfully represents the following:

## I.   <u>BACKGROUND</u>

### A.   <u>The Receivership Proceeding</u>

1.      On February 2, 2017, the SEC commenced this civil enforcement action by filing its Complaint against the defendants, Varacchi and Sentinel Growth Fund Management, LLC ("Sentinel," and together with Varacchi, collectively, the "Defendants"), and the relief defendants, Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC," and together with Radar LP, collectively, the "Relief Defendants," and the Relief Defendants together with the Sentinel, collectively, the "Receivership Defendants").

2.      The Receiver has determined that from its inception in approximately September, 2013, through its discovery in December, 2016, Varacchi operated a classic Ponzi scheme defrauding various individuals and businesses (the "Investors") into investing in certain "programs" maintained through the Radar Funds, and then using the fruits of such fraud to repay prior investors and, thereby, perpetuate the Ponzi scheme.  Varacchi also misappropriated or diverted such funds to pay his own personal expenses and other personal liabilities.

3.      The Defendants also commingled their assets with the Investors' assets.  Sentinel's bank account included funds that Sentinel and Varacchi had obtained from their Investors or the Relief Defendants' Investors for purposes of investment as well as deposits from the Relief Defendants.

---

[1] Any capitalized terms not defined herein shall adopt the definitions set forth in the Receivership Order (defined below).

4.      Varacchi also caused the commingling of the proceeds of purported "loans" with Investors' funds, by depositing such "loan" proceeds into Sentinel's account or the Relief Defendants' accounts.

5.      While, to a limited extent, Varacchi and various other participants used the Radar Funds to trade in securities, the revenues generated could not repay the aggregate amounts due Investors or even significant withdrawals when requested by Investors.

6.      Furthermore, at all relevant times, the aggregate amount of the Receivership Entities' liabilities far exceeded the value of their unencumbered assets.

7.      While the SEC's Complaint specifically alleged a narrower fraud of at least $3.95 million, it appears that Varacchi's Ponzi scheme was more far-reaching.  Upon information and belief, Sentinel received $42.6 million in third party deposits between August 2013, and December 2016, and transferred only $24.8 million to the Relief Defendants.  The Relief Defendants received another $21.1 million directly from third parties.

8.      Upon information and belief, approximately 25 investors who deposited funds with the Receivership Defendants have unredeemed principal investments totaling approximately $20 million.

9.      On April 18, 2017, the SEC filed in this action its Assented to Motion for Appointment of a Receiver (Doc. No. 10).

10.      On May 1, 2017, this Court entered its Order Appointing Receiver (the "Receivership Order") which, *inter alia*, appointed the Receiver to serve as receiver for the Receivership Entities "to assume control of, marshal, pursue, and preserve the Receivership Assets with the objective of maximizing the recovery of assets… ."  (Receivership Order ¶ 2.)

11.     The Receivership Order further authorizes, empowers and directs the Receiver, with this Court's prior approval and in consultation with the SEC, to "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Assets." (*Id.* ¶ 19.)

### B.     The Receivership Estate's Causes of Action Against Alan L Sarroff and A.L. Sarroff Management, LLC

12.     Sarroff initially became involved with Varacchi in November, 2013.  Sentinel's and Radar LP's prime broker, Weeden Prime Services, LLC ("Weeden") had issued a margin call in the amount of $1.3 million, and suspended the extension of any further margin in the Radar LP account.  Notwithstanding the suspension of margin, the following day, certain managers for a particular investor caused additional trades to be booked in the Radar LP account resulting in a second margin call in the amount of $7.3 million.

13.     To satisfy the margin call, Varacchi on November 12, 2013, borrowed $7.3 million from Sarroff and, in exchange, promised to repay the $7.3 million within three days plus an additional $125,000.

14.     On November 15, 2013, Varacchi caused Sentinel to repay the $7.425 million. Sarroff further extracted an additional $25,000 on account of having provided this three-day loan, which Varacchi caused Sentinel to pay on November 25, 2013.  (The $7.425 million and $25,000 amounts paid to Sarroff in exchange for the loan are collectively referred to herein as the "Sarroff Loan Transfers").  The combined interest charges amounted to interest at the rate of 246.6% on an annualized basis.  Varacchi agreed to these terms and caused Sentinel to make the Sarroff Loan

Transfers in order to maintain his investment platform with Weeden, and thereby further his Ponzi scheme.

15.     Upon learning about Varacchi's platform and, in particular, his initial public offering trading strategy (with no overnight risk), and its perceived ability to generate tremendous profits, Sarroff sought to participate.

16.     Sarroff, initially invested $400,000 on February 5, 2014.  He agreed to receive in return 50% of the net profits realized on his investment through the IPO trading platform and Sentinel's managers plus interest at the rate of 10% per annum *and* a flat "fee" in the amount of $15,100 (to ensure a guaranteed return).  Sarroff's investment was due to be returned on February 19, 2014.

17.     In two weeks, Sarroff had realized $4,696.86 in trading profits (representing his 50% share) plus the $15,100 "fee" for a total purported return of $19,794.86.  On February 19, 2014, Varacchi caused Sentinel to wire him this amount.

18.     On March 7, 2014, Varacchi caused Sentinel to wire Sarroff $415,195.80 allegedly representing the return of the original investment, the balance of his share of the profits and accrued interest.

19.     During this time frame, Sarroff and Varacchi discussed entering into a longer-term relationship where Sarroff, through his entity, Sarroff LLC, would invest in Varacchi's platform and managers.

20.     Upon information and belief, effective as of March 3, 2014, Sentinel and Sarroff, LLC entered into a certain Investment Management Agreement (the "IMA") which appointed Sentinel to serve as the "Investment Manager" for Sarroff, LLC to invest securities, cash and/or

other assets with respect to a discretionary advisory account (the "Sarroff Account"). Custody of the Sarroff Account was to be maintained by Industrial and Commercial Bank of China ("ICBC").

21.     The IMA expressly provided that Sentinel was not to have custody of any assets in the Sarroff Account. Sentinel was precluded by the IMA from withdrawing any of the contributed funds from the Sarroff Account without the written approval of Sarroff, LLC, except as authorized pursuant to the fee arrangement.

22.     The IMA provided for fees due the managers to be negotiated at a set percentage of between 40% and 60% of the profit realized. The IMA then provided that Sarroff, LLC would receive 60% of the net profits and Sentinel would receive 40% of them.

23.     The IMA further provided that the initial allocation of buying power to the Sarroff Account would be $4,800,000 based on a $1,200,000 contribution made by Sarroff, LLC. Sentinel its relationship with Weeden, would then be providing 4 times margin.

24.     There was never a "Sarroff Account." Instead, Varacchi deposited funds received from Sarroff, LLC into the account maintained in the name of Radar, LP (with Weeden acting as the prime broker and ICBC carrying the account and serving as the account custodian). Varacchi also commingled Sarroff, LLC's funds with funds from other Investors and lenders, and exercised custody and control over all of the assets in the Radar, L.P. account. Varacchi also repeatedly caused Sentinel to withdraw funds from the Radar, L.P. account for his own personal purposes.

25.     Sarroff and Sarroff, LLC failed, refused and neglected to exercise even the most minimal degree of oversight with respect to the Sarroff Account including, but not limited to, obtaining, at various times, third-party verification of all assets and transactions in the Sarroff Account.

26.     Upon information and belief, the relationship between Varacchi and Sentinel, on the one hand, and Sarroff and Sarroff, LLC, continued "business as usual" through November, 2015.  During this time frame, Varacchi caused Sentinel to distribute purported "profits" to Sarroff, LLC, and, from time to time as requested, caused Sentinel to repay principal amounts deposited by Sarroff, LLC.

27.     In November, 2015, auditors of the Sarroff, LLC fund sought verification of the capital invested in Sentinel.  In the weeks that followed, Varacchi repeatedly evaded fulfilling this request.

28.     Ultimately, on or about December 1, 2015, Varacchi explained to Lawrence Smith ("Smith"), the President of Sarroff, LLC, that the funds invested by Sarroff, LLC had been commingled with other investor funds, and, in part, had been withdrawn and used for other purposes.

29.     In response, on December 2, 2015, Smith stated the following in an email to Varacchi:

> I was very concerned at the last phone conversation I had with you, (Mark) so I want both of you to clearly understand the urgency of recovering the capital immediately.
>
> Fact, you both clearly committed serious criminal and civil acts, including under the civil RICO statute. You created a fraudulent financial statement which incorporated a government regulated brokerage firm's name and likeness. You have committed interstate wire fraud on at least 3 occasions. You have breached our Investor Management Agreement (attached) by removing 3/4 of the capital from the designated custodian, (ICBC) without authorization of any kind. You have recklessly taken those unauthorized funds and apparently given them to unknown entities for your own personal gain. This unauthorized placement of our funds is completely outside the scope of the investment strategy in Schedule A (Allocating capital to sub-advisors deploying low volatility day trading strategies that include investing in syndicate calendar). You have also violated the agreement's liquidity and overnight holding strategy. Those blatant criminal acts were discovered without subpoenaing bank records, brokerage firms, personal or corporate income, email accounts, cell phone records and deposing anyone who might have knowledge of this matter, which is something I would like to avoid.

30.     Smith thereafter, on behalf of Sarroff, LLC, demanded the disclosure of Varacchi's personal and corporate assets, and a lien against his property.

31.     Over the course of December, 2015, Sarroff, LLC sought a complete accounting of the transactions made on its behalf during 2015, and the return of a significant amount of the capital invested.  Sarroff, LLC did not, however, demand a full redemption of the invested amounts.

32.     On December 23, 2015, Varacchi caused Sentinel to transfer to Sarroff, LLC the amount of $500,000, and on December 29, 2015, Varacchi caused Sentinel to transfer to Sarroff, LLC, the amount of $1,400,000.

33.     Notwithstanding Sarroff, LLC's complete understanding of Varacchi's and Sentinel investment practices—*inter alia*, commingling Investors' funds, using such funds for personal and other purposes, and lack of transparency—Sarroff, LLC did not redeem all of the funds originally invested, leaving $1,200,000 in the Radar, LP account for further investing on the IPO day trading platform.  Instead, Sarroff, LLC demanded better terms for its participation in the platform.

34.     Sarroff, LLC demanded that Varacchi and Sentinel would be responsible to pay prior losses and that any future losses would be reimbursed by them as well.  So, while the 60/40 split of net profits would remain in place, the 40% due Sentinel would be used first to reimburse Sarroff, LLC for all prior losses realized.  Through this structure Sarroff, LLC sought to eliminate any risk of loss.

35.     Sarroff, LLC, continued to participate in Varacchi's and Sentinel's investment platform through 2016 until the Ponzi scheme was uncovered.

36.     In total, from February 19, 2014, through November 16, 2016, Varacchi, in furtherance of his Ponzi scheme, caused Sentinel to make a series of transfers to Sarroff and

Sarroff, LLC in the aggregate amount of $7,767,409 (collectively, the "Sarroff Investment Transfers").

37.     Sarroff and Saroff, LLC had invested only $7,150,000 in exchange for the Sarroff Investment Transfers.   The excess ($617,409) represents their "net winnings" from the Ponzi scheme.

38.     Varracchi also caused Sentinel to pay the Sarroff Loan Transfers in furtherance of his Ponzi scheme.

39.     Sarroff and Sarroff, LLC did not give Sentinel reasonably equivalent value in exchange for the Sarroff Loan Transfers or the Sarroff Investment Transfers.

40.     Thus, the Sarroff Loan Transfers and the Sarroff Investment Transfers constitute intentional and constructive fraudulent transfers pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA").   Accordingly, the Receiver, by the proposed civil action, may avoid these fraudulent transfers and recover their value for the benefit of the Receivership Estate and their creditors.

41.     Alternatively, the Receiver asserts a cause of action for unjust enrichment against Sarroff and Sarroff, LLC because he unjustly failed to pay the Receivership Entities for the benefits received for the Sarroff Loan Transfers and the Sarroff Investment Transfers, and equity and good conscience require the full restitution of the Sarroff Loan Transfers and the Sarroff Investment Transfers paid by Sentinel to Sarroff and Sarroff, LLC so they may be distributed by the Receiver to the creditors of the Receivership Estate.

**II.     THE COURT SHOULD GRANT THE RECEIVER LEAVE TO COMMENCE LITIGATION AGAINST ALAN L. SARROFF AND A.L. SARROFF MANAGEMENT, LLC**

42.     The contemplated lawsuits against Sarroff and Sarroff, LLC further the Receiver's continuing effort to trace, recapture and return investor proceeds misappropriated from investment funds managed and operated as a Ponzi scheme by Varacchi and other individuals affiliated with the Receivership Entities.

43.     The Receiver has conducted a diligent and thorough investigation into the facts and circumstances surrounding the investments made and transfers received by Sarroff and Sarroff, LLC.

44.     Based thereon and after determining the occurrence of the conduct and transactions set forth above, the Receiver requests leave of this Court to commence a civil action to avoid the Sarroff Loan Transfers and the Sarroff Investment Transfers, and any subsequent transferees.

45.     The Receiver submits that, for the reasons in part set forth above, the Sarroff Loan Transfers and the Sarroff Investment Transfers constitute intentional and constructive fraudulent transfers pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552 *et seq.* ("CUFTA").  Accordingly, the Receiver, by the proposed civil actions, may avoid these fraudulent transfers and recover their value for the benefit of the Receivership Estate and their creditors.  *See* Conn. Gen. Stat. §§ 52-552e, 52-552f, 52-552h & 52-552i(b).  *See, also, Eberhard v. Marcu*, 530 F.3d 122, 128-135 (2d. Cir. 2008) (expressly adopting the principle that a receiver possesses standing to pursue fraudulently transferred assets when one of the entities in the receivership is a creditor of the transferor); *Carney v. Horion Inv. Ltd.*, 107 F.Supp.3d 216, 227-29 (D. Conn. 2015) (same); *Carney v. Montes*, No. 3:12-cv-00183(SRU), 2014 U.S.Dist.LEXIS 21769 at *16-*29 (D. Conn. Feb. 21, 2014) (Underhill, J.) (same) (copy attached hereto as **Exhibit A**).

46.     Alternatively, the Receiver represents that he may recover for unjust enrichment against the Sarroff, and Sarroff, LLC because they unjustly failed to pay the Receivership Entities for the benefits received for the subject transfers, and equity and good conscience require the full restitution of the transfers paid by Sentinel to them so they may be distributed by the Receiver to the creditors of the Receivership Estate.

47.     The Receiver further requests leave to assert such other claims and causes of action against Sarroff and Sarroff, LLC, and any other appropriate persons, arising out of, at least in part, the facts and circumstances set forth above (including all subsequent transferees of the Sarroff Loan Transfers, and the Sarroff Investment Transfers), to the extent that the Receiver, in the exercise of his reasonable judgment, and after consultation with the SEC, determines such would be in the best interest of the Receivership Estate.

48.     Prosecuting these causes of action will likely help to mitigate the harm caused by Varacchi by allowing the Receivership Estate to recover funds that may be used to return to Investors a portion of the money they lost due to Varacchi's operation of the Ponzi scheme.

49.     The Receiver, therefore, submits that bringing a civil action as described herein is in the best interest of the Receivership Estate.

50.     The Receiver has provided a copy of this Motion to Varacchi, through his counsel, and his counsel has represented that Varacchi consents to the relief requested herein.

51.     The Receiver has consulted with the SEC concerning the relief requested herein and provided a copy of this Motion to the SEC, and the SEC has stated that it has no objection.

52.     The Receiver will continue to consult with and inform the SEC as to the prosecution and any potential compromise of the Receivership Estate's claims against Sarroff and Sarroff, LLC should this Court grant this Motion.

53.     Finally, this Court will have the opportunity to monitor the progress of any litigation against Sarroff, and Sarroff, LLC and the costs incurred thereby via the status reports and fee applications that the Receiver will continue to file on a quarterly basis in this Receivership Proceeding.

**WHEREFORE**, for the foregoing reasons, Jed Horwitt, Esq., Receiver, respectfully requests that this Court grant him leave to commence a civil action against Alan L. Sarroff and A.L. Sarroff Management, LLC, and others, as more fully set forth herein, and such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 8th day of November, 2017.

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER

By: */s/ Stephen M. Kindseth*

Stephen M. Kindseth (ct14640)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 245
Facsimile: 203-549-0903
Email: skindseth@zeislaw.com
         plinsey@zeislaw.com
His Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen M. Kindseth, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)