## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>MARK J. VARACCHI and )<br>SENTINEL GROWTH FUND )<br>MANAGEMENT, LLC, )<br><br>Defendants, )<br>and )<br><br>RADAR ALTERNATIVE FUND LP and )<br>RADAR ALTERNATIVE MASTER FUND SPC, )<br><br>Relief Defendants. ) | Civil Action No.<br>3:17-cv-00155-VAB |

## THIRD INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES
## <u>INCURRED BY THE RECEIVER AND HIS PROFESSIONALS</u>

I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED ...................... 3
   A.    Discounts ......................................................................................................... 6
   B.    Fee Schedules .................................................................................................. 7
   C.    Activity Categories .......................................................................................... 9

II.    SUMMARY OF CASH ON HAND ...................................................................... 10

III.   SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE ......................... 10
   A.    Investigation .................................................................................................. 10
   B.    The Receiver's Website and Investor Contact ................................................ 11
   C.    Claims Administration ................................................................................... 11
   D.    The Second Quarterly Status Report ............................................................... 14
   E.    Marshaling of Receivership Assets and Receipt of Assets by Receiver ....................... 14
   F.    Investigation of Private Investments ............................................................... 15
   G.    Litigation - TAM Action ................................................................................ 17
   H.    Litigation - Sarroff Action .............................................................................. 19
   I.    Litigation - Rajo Action ................................................................................. 21
   J.    Litigation - Kostiner Tolling Agreements ....................................................... 22
   K.    Investigation of Other Potential Litigation Claims .......................................... 23
   L.    The Motion to Reappoint ................................................................................ 24
   M.   Disbursement of Assets .................................................................................. 25
   N.    Anticipated Closure ........................................................................................ 26

IV.  DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE ............................... 26

V.   THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES .............. 28
   A.    The Governing Legal Standard ....................................................................... 28
   B.    Application of the Governing Legal Standard to the Application ..................... 29
   C.    Source and Manner of Payment ...................................................................... 30

**THIRD INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES
INCURRED BY THE RECEIVER AND HIS PROFESSIONALS**

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to the Court's Order Appointing Receiver entered May 1, 2017 (the "Receivership Order"), respectfully submits this third interim application (the "Application") for professional fees and expenses incurred by the Receiver, Z&Z, and the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L"), on behalf of the Receivership Estate (as defined in the Receivership Order), during the period commencing October 1, 2017, through and including December 31, 2017 (the "Compensation Period").  In advance of filing, the Receiver shared this Application with counsel for the Commission, and the Commission's counsel has stated that the Commission has no objection to the approval of the professional fees and expenses requested herein.

In support of this Application, the Receiver and Z&Z respectfully represent as follows:

I.    **SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED**

1.    This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines") and the Receivership Order.

2.    Pursuant to the SEC Guidelines, the following exhibits are attached to this Application:

    a.    The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

    b.    A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c. A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as <u>Exhibit C</u>;

d. Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as <u>Exhibits D-1</u>; <u>D-2</u>, <u>D-3</u>, <u>D-4</u>, <u>D-5</u>; <u>D-7</u>, <u>D-8</u>, <u>D-9</u>, <u>D-10</u>, and <u>D-11</u>[1];

e. A Certification of Compliance with the SEC Guidelines by V&L is attached hereto as <u>Exhibit E</u>;

f. A summary of total expenses for which reimbursement is requested for V&L is attached hereto as <u>Exhibit F</u>; and

g. Time records summarizing the work performed by V&L's accounting professionals and paraprofessionals for each of its Activity Categories (as hereinafter defined) are attached hereto as <u>Exhibits G-1</u>; <u>G-2</u>, <u>G-3</u>, and <u>G-4</u>.

3. The Receiver and Z&Z attorneys and paraprofessionals have expended a total of 332 hours working on this matter during the Compensation Period. The Receiver and Z&Z seek allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $96,644.00, and reimbursement of actual and necessary expenses in the amount of $2,690.65.

4. The Receiver's accountant and financial advisor V&L's professionals and paraprofessional have expended a total of 285.5 hours working on this matter during the Compensation Period. V&L seeks allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $38,982.40, and reimbursement of actual and necessary expenses in the amount of $100.58.

---

[1] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding, and pursuant to the Court's Order entered August 11, 2017 (Doc. No. 25), Exs. D-1 through D-11 are filed under seal. Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

5.     The Receiver, Z&Z and V&L acknowledge that their fee compensation is subject to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Order.

6.     The fees assessed reflect the hours worked by the Receiver, Z&Z attorneys and paraprofessionals and V&L professionals and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z and V&L (described below).

7.     These amounts also take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Order.

8.     A narrative description of the particular services provided by the Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as Ex. D-1 through D-11.  A narrative description of the particular services provided by V&L's professionals and paraprofessionals is included in the time records attached as Ex. G-1 through G-4.  Section IV below summarizes the Receiver's administration of the Receivership Estate since his appointment.

9.     Z&Z's expense reimbursements requested are modest and principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) shipping charges; (iii) expenses associated with the Receiver's website; (iv) fees for service of subpoenas and complaints; (v) filing fees incurred in litigation on behalf of the Receivership Estate; and (vi) online legal research.  (*See* Ex. C.)

5

10.     V&L's expense reimbursements requested are especially modest and principally consist of the following: (i) storage charges; and (ii) shipping charges.

11.     The Receiver, Z&Z and V&L have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime.  Nor have the Receiver, Z&Z or V&L requested reimbursement for any meals during the Compensation Period.

12.     The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies.  V&L has not requested reimbursement for photocopying during the Compensation Period.

### A.     Discounts

13.     As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Order, the Receiver, Z&Z and V&L have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

14.     More specifically, and as shown in the fee schedules set forth below, Z&Z and V&L have consented to 20% public service discounts to their regularly applicable hourly rates for all legal and accounting professionals and paraprofessionals.

15.     The Receiver originally agreed to discount his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver to $250 per hour, reflecting a 50% discount.  Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay

rate to all of the Receiver's time during this period.

16.     In recognition of the time involved in transitioning an additional associate to this matter, Z&Z has further not charged for the time incurred for such associate to familiarize himself with the factual background in this receivership proceeding.   The Receiver estimates that this reduction equals approximately $11,000.00.

**B.     Fee Schedules**

17.     The fee schedule for the Receiver, showing: his name; the hourly rate applied to his services in this Receivership Proceeding and his customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his services during the Compensation Period; is as follows:

| Receiver | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Horwitt, Jed | $250 ($500) | $250 | 16 | $4,000.00 | $4,000.00 |

18.     The fee schedule for all Z&Z legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Kindseth, Stephen | $340 ($425) | $85 | 166.5 | $56,610.00 | $14,152.50 |
| Kornafel, Joanna | $240 ($300) | $60 | 58.2 | $13,968.00 | $3,492.00 |
| Linsey, Patrick | $264 ($330) | $66 | 11.8 | $3,115.20 | $778.00 |
| Cesaroni, John | $240 ($300) | $60 | 0.5 | $120.00 | $30.00 |

| Moriarty, James | $320 ($400) | $80 | 0.4 | $128.00 | $32.00 |
| Henzy, Eric | $380 ($475) | $95 | 4.5 | $1,710.00 | $427.50 |
| Vaughan, Rion | $240 ($300) | $60 | 65.5 | $15,720.00 | $3,930.00 |

19.     The fee schedule for the legal paraprofessional who provided services during the Compensation Period, showing: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprofessional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
| --- | --- | --- | --- | --- | --- |
| Joseph, Kristen | $148 ($185) | $37 | 8.6 | $1,272.80 | $301.00 |

20.     The fee schedule for all V&L accounting professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Accounting Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
| --- | --- | --- | --- | --- | --- |
| Bailey, Peter | $196 ($245) | $49 | 26.2 | $5,135.20 | $1,283.80 |
| Bailey, Thomas | $280 ($350) | $70 | 13 | $3,640.00 | $910.00 |
| Borchers, Laird | $196 ($245) | $49 | 3.1 | $607.60 | $151.90 |
| Cotnoir, Renee | $200 ($250) | $50 | 2.5 | $500.00 | $125.00 |
| Flaherty, Amanda | $180 ($225) | $45 | 44.3 | $7,974.00 | $1,993.50 |
| Kizito, Maria | $100 ($125) | $25 | 171.95 | $17,195.00 | $4,298.75 |
| McDonald, Timothy | $244 ($305) | $61 | 4.9 | $1,195.60 | $298.90 |
| Prete, Brian | $140 ($175) | $35 | 19.5 | $2,730.00 | $682.50 |

**C.**    **Activity Categories**

21.    Pursuant to the SEC Guidelines, the Receiver, Z&Z and V&L have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

Activity Categories Utilized by Receiver and Legal Professionals

a.    Category One: Case Administration, 76.1 hours, $22,276.00 (*see* Ex. D-1);

b.    Category Two: Asset Analysis & Recovery, 45 hours, $12,399.60 (*see* Ex. D-2);

c.    Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d.    Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

e.    Category Five: Claims Administration & Objections, 47.5 hours, $20,638.00 (*see* Ex. D-5);

f.    Category Six: Application for Professional Fees and Expenses, the Receiver and Z&Z are not including time incurred for these services in their Application (*see* Ex. D-6);

g.    Category Seven: Litigation – Taran Asset Management, 57.3 hours, $15,178.60 (*see* Ex. D-7); and

h.    Category Eight: Litigation – A. L. Sarroff Management, 34.6 hours, $10,813.60 (*see* Ex. D-8).

i.    Category Nine: Litigation – Shay Kostiner, 24 hours, $7,654.60 (*see* Ex. D-9).

j.    Category Ten: Litigation – Weeden Prime Services, 5.2 hours, $1,614.00 (*see* Ex. D-10).

k.    Category Eleven: Litigation – Rajo Corp., 19.4 hours, $6,069.00 (*see* Ex. D-11).

Activity Categories Utilized by Accounting Professionals

l.    Category One: Accounting, 29.5 hours, $5,410.00 (*see* Ex. G-1);

m.      Category Two: Data Analysis, 41 hours, $8,293.00 (*see* Ex. G-2);

n.      Category Three: Forensic Accounting, 205.5 hours, $22,960.00 (*see* Ex. G-3); and

o.      Category Four: Status Reports, 9.5 hours, $2,319.20 (*see* Ex. G-4).

## II.     SUMMARY OF CASH ON HAND

22.     The Receiver's cash on hand is held in the Receivership Account (as hereinafter defined), the balance of which, as of December 31, 2017, is $2,366,356.32.  This constitutes a decrease of $132,420.90 during the Compensation Period. (*See* Ex. A.)

## III.    SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE

23.     Since his appointment, and specifically during the Compensation Period, the Receiver has undertaken numerous steps and made progress towards fulfilling his objectives.

24.     Among other things, the Receiver, utilizing Z&Z as his legal professionals and V&L as his accountants and financial advisors, has undertaken and accomplished the following:

### A.      Investigation

25.     The Receiver and Z&Z attorneys continued to communicate with the Commission's counsel to obtain information and guidance to assist the Receiver in carrying out his mandate.

26.     As part of this investigation, the Receiver and Z&Z attorneys continue to review extensive documents and records obtained from the Commission and various third parties relevant to the Receivership Proceeding.

27.     Z&Z attorneys also spoke and e-mailed with Varacchi and his counsel during the Compensation Period in order to obtain information about the Receivership Proceeding and the assets of the Receivership Estate including various causes of action that have been commenced or may still be commenced.  At the same time, and in order to vet Varacchi's representations, Z&Z conducted a review of Varacchi's correspondence and other relevant documents as it related to the

subjects of the Receiver's investigations.

28.     V&L's professionals, in close contact with the Receiver and Z&Z, reviewed and analyzed extensive records and financial information from the Commission concerning the Receivership Estate's assets (including various causes of action).

29.     Items of particular investigation and analysis by the Receiver and his professionals, as discussed below, were the Private Investments and Funded Entities, as well as causes of action held by the Receivership Estate against third parties.

### B.      The Receiver's Website and Investor Contact

30.     At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com –  that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

31.     The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information that will hopefully lead to meaningful distributions to investors in this Receivership Proceeding.

32.     Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the Receivership Proceeding and the claims management procedures discussed herein.

### C.      Claims Administration

33.     Prior to the Compensation Period, the Receiver and Z&Z drafted a comprehensive set of procedures to permit parties with claims against the Receivership Estate to submit them for an orderly evaluation and processing.  To this end, the Receiver filed the Claims Procedure Motion on July 27, 2017, which included, *inter alia*, (i) the establishment of a deadline for submitting such

claims to the Receiver, (ii) the form and manner of notice of the claims procedures, (iii) the form and manner for the submission of such claims by investors and other creditors, and (iv) the procedure for the adjudication of disputed claims.

34.     The Receiver filed with the Claims Procedure Motion the proposed Claims Notice. The Claims Notice included a proof of claim form prepared by Z&Z in order to simplify and standardize creditors' submissions to the Receiver.

35.     On July 31, 2017, the Court entered its Claims Procedure Order substantially in the form requested by the Receiver.

36.     In compliance with the Claims Procedure Order (except as noted below), the Receiver, through Z&Z, sent copies of the Claims Notice to all then known persons (including individuals and businesses) with claims against the Receivership Estate, within fourteen (14) days of entry of the Claims Procedure Order.  The general Bar Date for claims who received such notice was September 29, 2017.

37.     After the Court's entry of the Claims Procedure Order, Z&Z discovered that (i) certain creditors had actually received notice of the Bar Date and Claims Procedure Order four (4) days later than ordered by the Court (the "Late Notice Creditors") and (ii) the possibility of other persons holding claims (the "New Creditors").  Upon this discovery, Z&Z promptly provided the New Creditors with notice of the Claims Procedure Order and Claims Notice, and prepared a motion to supplement the Claims Procedure Order to address the notice issues presented by the Late Notice Creditors and the New Creditors.

38.     On November 1, 2017, the Receiver filed his Motion to Supplement Claims Procedure (Doc. No. 35, the "Supplemental Claims Procedure Motion").

39.     The Supplemental Claims Procedure Motion sought (i) the approval of the notice

actually provided by the Receiver to the Late Notice Creditors, (ii) the establishment of a deadline for submitting claims to the Receiver by the New Creditors, (iii) the form and manner of notice of the claims procedures for the New Creditors, (iv) the approval of the form and manner for the submission of such claims by the New Creditors, and (v) the procedure for the adjudication of disputed claims subsequently submitted by the Late Notice Creditors and New Creditors.

40.     The Supplemental Claims Procedure Motion was not set for a hearing and is currently pending for the Court's consideration.

41.     The general Bar Date for the submission of claims passed on September 29, 2017. To date, the Receiver has received approximately thirty-three (33) claims in a total claimed amount in excess of $32 million.[2]

42.     During the Compensation Period, the Receiver identified grounds for objecting to twenty-six (26) of the thirty-three (33) submitted claims (the "Disputed Claims").

43.     The Disputed Claims total approximately $11.4 million of the $32 million claimed against the Estate.

44.     During the Compensation Period, the Receiver and Z&Z attorneys contacted substantially all of the holders of the Disputed Claims for the purpose of resolving the Receiver's objections including any discrepancies between the submitted and disputed claim amounts.  During these conversations, eight (8) holders of Disputed Claims informally agreed to accept the Receiver's proposed reductions to their claims – resolving approximately $1.9 million of the Disputed Claims.

45.     Discussions with the remaining holders of Disputed Claims are ongoing.  After it becomes clearer which Disputed Claims can be resolved consensually and which will require

---

[2] The Receiver's previously filed Second Quarterly Status Report (Doc. No. 31) and Second Interim Fee Application (Doc No. 33) mistakenly reported 39 claims filed totaling approximately $32 million.

significant additional time and possibly a formal Motion to Determine Claim to be heard by the Court pursuant to the Claims Procedure Order, the Receiver anticipates filing an "Omnibus Motion to Approve Resolved Disputed Claims" to formalize any agreed upon reductions to Disputed Claims.

### D.     The Second Quarterly Status Report

46.     The Receiver and Z&Z also prepared and, on October 27, 2017, filed the Second Quarterly Status Report.

47.     In drafting the Second Quarterly Status Report, the Receiver and Z&Z compiled comprehensive information to update the Court, the Commission and any other parties in interest as to the Receiver's operations, the Receivership Estate's assets, and claims against the Receivership Estate.

### E.     Marshaling of Receivership Assets and Receipt of Assets by Receiver

48.     Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and bankruptcy trustees), which account (the "Receivership Account") will hold funds marshaled by the Receiver and will constitute Receivership Assets.

49.     Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.  In doing so, the Receiver obtained $2,127,665.76 in cash, which was deposited and has at all times since been held in the Receivership Account.

50.     Certain other cash and securities were held in an account with ICBC (the "ICBC Account"), which the Receiver sought to liquidate during the Compensation Period.  As of June 30, 2017, the Receiver understood that the ICBC Account held $495,729.57 in cash and securities.

ICBC disputed the Receiver's right to possession of certain of these funds.

51.     In order to liquidate and marshal the Receivership Estate's assets to the maximum extent possible, the Receiver directed ICBC to transfer to the Receiver all amounts held in the ICBC Account that ICBC did not dispute constituted property of the Receivership Estate. Accordingly, on or about August 7, 2017, ICBC wired $371,111.46 to the Receivership Account.

52.     ICBC has since informed the Receiver of its position that the ICBC Account in fact held less funds than previously represented, which higher balance ICBC alleged was the result of an accounting error due to a "busted trade."  The Receiver has not agreed to ICBC's position or waived its right to pursue any funds that may exist.

53.     As of October 1, 2017, ICBC asserted that the ICBC Account has a zero balance. The Receiver is investigating this matter and has not consented to ICBC's position.

54.     On October 11, 2017, ICBC wired one more interest payment credit in the amount of $180.53 to the Receiver, which was deposited into the Receivership Account.

55.     During the Compensation Period, the Receivership Account accrued interest at a rate of 0.33% monthly, amounting to total interest payments of $1,628.97 (including the $180.53 received from ICBC) for the Compensation Period.

F.     **Investigation of Private Investments**

56.     The Receiver has continued to investigate the Private Investments.  The Receiver has researched and analyzed numerous entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

57.     The Receiver has identified stock ownership interests in the following entities: Kizzang LLC ("Kizzang"), Greenhouse Solutions, Inc. ("Greenhouse") and StereoCast, Inc. ("StereoCast"), and the Receiver and Z&Z have investigated these companies during the

Compensation Period.  The Receiver and Z&Z have also corresponded with and received certain financial information concerning Varacchi and the Receivership Defendants from the following entities to which Varacchi paid money or that were otherwise involved in his or the Receivership Defendants' financial affairs:  Zipway LLC, STRV, LLC ("STRV"), Gravy, Inc. ("Gravy"), Roots Athletics, Invigilio, LLC ("Invigilio"), Entourage Funding, Live Music Sales, LLC ("Live Music Sales"), Satin Bros. Entertainment, Green Lantern Industries, StereoCast, and Adam Jacobs Music ("AJM").

58.     During the Compensation Period, the Receiver, through Z&Z, demanded documents and records from Entourage Funding, Greenhouse Solutions, Gravy, Kizzang, Invigilio, STRV, and Roots Athletics investigate the Receivership Estate's rights and interests with respect to such entities.  Where the entities responded, Z&Z has worked with the entities' counsel and principals in order to elicit the required information.  Where the Receiver has received no response, or where compliance with requested documents and records has not been forthcoming, the Receiver issued several subpoenas to compel such production.  Specifically, the Receiver served subpoenas on Entourage Funding, Greenhouse Solutions, Kizzang, and Roots Athletics.  Because the non-compliant entities are outside of the State of Connecticut, where this Receivership Proceeding is pending, the Receiver located process servers in various other states that agreed to receive production in response to the Receiver's subpoenas.  The Receiver is awaiting production in compliance with the served subpoenas and determining next steps with respect to subpoenas to which certain entities did not respond by the due date.

59.     Z&Z has not received a response from a representative of Invigilio, despite numerous letters and telephone calls to any known contacts.  The Receiver is currently determining the next step to obtain documents from Invigilio to evaluate any potential Private Investment with

Invigilio and its value.

60.     STRV recently provided documentation of Varacchi's payments to STRV on behalf of debts owed to StereoCast.  STRV alleges that it is still owed $400,000 from StereoCast.  The Receiver is investigating whether there is any merit to its setoff claim.

61.     Where equity interests had not been acquired by the Receivership Defendants and where the Receivership Defendants' assets were utilized to pay obligations on behalf of third parties, the Receiver and Z&Z are evaluating potential fraudulent transfer and other causes of action.

         **G.     Litigation - TAM Action**

62.     During the Compensation Period, the Receiver and Z&Z investigated causes of action that the Receiver believes exist against Taran Asset Management, LLC ("TAM"), Christopher Gleason ("Gleason"), and Baseline Advisors, LLC ("Baseline" and, collectively, the "TAM Defendants"), including causes of action for fraudulent transfer to recover the $1,080,000 that Varacchi caused Sentinel to pay to TAM in settlement of TAM's fraud and embezzlement claims against Varacchi personally.

63.     On April 5, 2016, Gleason caused TAM to sue, among other defendants, Varacchi in the U.S. District Court for the Northern District of Illinois. The case was captioned *Taran Asset Management, LLC v. Mark Varacchi, et al.*, Civil Action No.: 1:16-cv-04011 (the "N.D. Il. Action").

64.     Pursuant to a Confidential Settlement Agreement (the "Settlement Agreement") entered into by Varacchi, among others, for Varacchi's own personal benefit, Varacchi caused Sentinel to pay TAM $1,080,000 (the "Settlement Payment") in settlement of the N.D. Il. Action. The Settlement Agreement provided Varacchi with a release of TAM's and Gleason's claims of

fraud and embezzlement based on conduct that he engaged in primarily (if not entirely) prior to the Ponzi scheme he orchestrated through the Receivership Entities.

65.     The Settlement Agreement allowed Varacchi to avoid TAM's and Gleason's scrutiny of his Ponzi scheme. The source of Sentinel's funds used by Varacchi to make this Settlement Payment had been the investments made by investors defrauded by Varacchi in furtherance of his Ponzi scheme.

66.     The Receiver believes the Settlement Agreement and the Settlement Payment constitute intentional and constructive fraudulent transfers pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552 *et seq*. ("CUFTA").   The Receiver also believes that the Settlement Agreement and the Settlement Payment give rise to a claim for unjust enrichment against the TAM Defendants because the TAM Defendants unjustly failed to pay the Receivership Entities for the benefits received for the Settlement Agreement and the Settlement Payment, and equity and good conscience require the full restitution of the Settlement Payment paid by Sentinel to the TAM Defendants so they may be distributed by the Receiver to the creditors of the Receivership Estate.

67.     On October 26, 2017, the Receiver filed his Consensual Motion to Commence Litigation against the TAM Defendants, (Doc. No. 30), which the Court granted on October 31, 2017. (Doc. No. 32.)

68.     On November 2, 2017, the Receiver filed his complaint in the TAM Action, *Jed Horwitt Esq., Receiver v. Taran Asset Management, LLC et al.*, (Civil Action No.: 3:17-cv-01840-VLB) in the United States District Court for the District of Connecticut.

H.    **Litigation - Sarroff Action**

69.    During the Compensation Period, the Receiver and Z&Z investigated causes of action that the Receiver believes exist against Alan L. Sarroff ("Sarroff") and A.L. Sarroff Management, LLC ("Sarroff, LLC", and collectively, the "Sarroff Defendants"), including causes of action for fraudulent transfer to recover over $14 million that Varacchi caused Sentinel to pay to or for the benefit of the Sarroff Defendants.

70.    Sarroff's initial involvement with Varacchi concerned a three-day loan for $7.3 million made by him to Varacchi and Sentinel, so Varacchi and Sentinel could cover a margin call and preserve their securities trading platform with their prime broker, Weeden Prime Services, LLC ("Weeden").  Because of Varacchi's desperate circumstances, Sarroff was able to extract a "fee" in the amount of $125,000 for this three-day, virtually risk-free, loan. Varacchi caused Sentinel to repay the $7.3 million and the $125,000 fee on November 15, 2013. Further evidencing the lack of bona fides, Sarroff requested and received an additional $25,000 ten days after the loan was repaid. (The $7.425 million and $25,000 amounts paid to Sarroff in exchange for the loan are collectively referred to herein as the "Sarroff Loan Transfers.")

71.    Following these payments, Sarroff sought to participate in what appeared to him to be an extremely lucrative investment platform offered by Varacchi—later admitted by Varacchi, in civil and criminal proceedings, to be a Ponzi scheme. In the following months, they discussed Sarroff's participation and, ultimately, reached a short-term arrangement for Sarroff which proved to be very profitable. This demonstration led to a more formal Investment Management Agreement where Sarroff, LLC initially invested $1.2 million, received buying power of $4.8 million (being extended 4 times margin), and became entitled to receive 60% of the net profits realized on the investment platform.

72.     Sarroff, LLC reaped the benefits of Varacchi's Ponzi scheme in the following two years never engaging in the slightest bit of due diligence to ensure the legitimacy of Varacchi's trading platform and appropriate use of its and other investors' funds—such as obtaining third-party confirmation of the investments.

73.     Ultimately, in November, 2015, Sarroff, LLC's auditors requested verification of capital from Varacchi and Sentinel. After evading numerous requests, on or about December 1 2015, Varacchi confessed to Sarroff, LLC's President, Lawrence Smith, that Sarroff, LLC's funds had been commingled with other investors' funds and funds from other sources, that he had used these amounts for other purposes including for his personal use, and that he did not have, readily available, all of Sarroff, LLC's principal.

74.     In response, Sarroff, LLC, first accused Varacchi of obvious and numerous criminal acts and other wrongdoing, and threaten to go to the Commission to report him and Sentinel. Over the course of the following weeks, Sarroff, LLC used the perceived leverage over Varacchi to extract paydowns totaling $2,225,000, which Varacchi caused Sentinel to obtain from other sources then to pay Sarroff, LLC during the month of December, 2015. Sarroff, LLC thereafter negotiated even better investment terms on the $1,200,000 that it decided to keep on the platform with Varacchi and Sentinel.

75.     In total, from February 19, 2014, through November 16, 2016, Varacchi, in furtherance of his Ponzi scheme, caused Sentinel to make a series of transfers to Sarroff and Sarroff, LLC in the aggregate amount of $7,767,409 (collectively, along with all other transfers of property made by Varacchi or the Receivership Entities to Sarroff and Sarroff, LLC, other than the Sarroff Loan Transfers, the "Sarroff Investment Transfers").

76.     The Receiver believes the Sarroff Loan Transfers and the Sarroff Investment

Transfers constitute intentional and constructive fraudulent transfers pursuant to CUFTA.  The Receiver also believes that the Sarroff Loan Transfers and the Sarroff Investment Transfers constitute a claim for unjust enrichment against the Sarroff Defendants because the Sarroff Defendants unjustly failed to pay the Receivership Entities for the benefits received for the Sarroff Loan Transfers and the Sarroff Investment Transfers, and equity and good conscience require the full restitution of the Sarroff Loan Transfers and the Sarroff Investment Transfers paid by Sentinel to the Sarroff Defendants so they may be distributed by the Receiver to the creditors of the Receivership Estate.

77.    On November 8, 2017, the Receiver filed his Motion on Consent for Leave to Commence Litigation against the Sarroff Defendants (Doc. No. 37), which the Court granted on November 9, 2017.  (Doc. No. 38.)

78.    On November 13, 2017, the Receiver filed his complaint, *Jed Horwitt Esq., Receiver v. Alan Sarroff et al.*, (Civil Action No.: 3:17-cv-01902-VLB) in the United States District Court for the District of Connecticut (the "Sarroff Action").

**I.    Litigation - Rajo Action**

79.     During the Compensation Period, the Receiver and Z&Z investigated causes of action that the Receiver believes exist against Rajo Corp. d/b/a Rajo Capital Management ("Rajo"), Victor J. Danilevics ("Danilevics"), and Tobyn Ingebrigtson ("Ingebrigtson", and collectively, the "Rajo Defendants"), including causes of action for fraudulent transfer to recover the $204,627 that Varacchi caused Sentinel to pay to or for the benefit of Rajo.

80.    Rajo originally became involved with Varacchi and Sentinel on or about October, 2013, and on October 23, 2013, Rajo made its initial investment in the amount of $100,000. In total, from December 16, 2013, through November 11, 2016, Varacchi, in furtherance of his Ponzi

scheme, caused Sentinel to make a series of transfers to Rajo or for Rajo's benefit in the aggregate amount of $204,627 (together with all other transfers by Varacchi and Sentinel to Rajo or for Rajo's benefit, the "Rajo Transfers").

81.     The excess transferred to Rajo in the amount of $104,627 represents Rajo's "net winnings" from the Ponzi scheme. As part of the Rajo Transfers, Varacchi caused Sentinel to make certain transfers to Ingebrigtson or Danilevics which were, upon information and belief, for the benefit of Rajo.

82.     The Receiver believes the Rajo Transfers constitute intentional and constructive fraudulent transfers pursuant to CUFTA. The Receiver also believes that the Rajo Transfers give rise to a claim for unjust enrichment against the Rajo Defendants because the Rajo Defendants unjustly failed to pay the Receivership Entities for the benefits received for the Rajo Transfers, and equity and good conscience require the full restitution of the Rajo Transfers paid by Sentinel to the Rajo Defendants so they may be distributed by the Receiver to the creditors of the Receivership Estate.

83.     On December 7, 2017, the Receiver filed his Consensual Motion to Commence Litigation against the Rajo Defendants, (Doc. No. 39), which the Court granted on December 11, 2017.  (Doc No. 40).

84.     On December 13, 2017, the Receiver filed his complaint in the Rajo Action, *Jed Horwitt Esq., Receiver v. Rajo Corp. d/b/a Rajo Capital Management et al.*, (Civil Action No.: 3:17-cv-02077-JCH) in the United States District Court for the District of Connecticut.

**J.     Litigation - Kostiner Tolling Agreements**

85.     During the Compensation Period, the Receiver and Z&Z investigated causes of action that the Receiver believes exist against Shay Kostiner ("Kostiner"),

86.     On November 8, 2017, the Receiver and Kostiner executed a tolling agreement (the "First Tolling Agreement") which provided, in relevant part, that:

> Any and all applicable statutes and periods of limitations and other lapse of time based claims and/or defenses, legal or equitable, which Kostiner might otherwise be or become entitled to assert with respect to the Claims including, without limitation, any and all agreements, statutes, regulations, and other rules of law which may limit the period in which the Receiver may commence a civil action or other proceeding asserting any Claims (all of the above, collectively, the "Timing Defenses") against Kostiner shall be, and hereby are, tolled, suspended, and extended through January 14, 2018 (the "Extended Limitation Date").

87.     On January 4, 2018, the Receiver and Kostiner executed another tolling agreement (the "Second Tolling Agreement), in substantially the same form as the First Tolling Agreement, which further extended the Extended Limitation Date to March 14, 2018.

88.     The Receiver also engaged in discussions with Kostiner's counsel and voluntarily provided them with documents to facility an analysis of the merits of the Receiver's claims and a possible resolution.

89.     The Receiver continues to evaluate the Estate's potential claims against Kostiner. In the event the Receiver determines it would be in the best interest of the Receivership Estate to commence litigation against Kostiner, the Receiver will request leave to do so prior to commencing litigation against them.

**K.      Investigation of Other Potential Litigation Claims**

90.     While reviewing the Disputed Claims, Z&Z discovered a number of questionable transactions between Varacchi, the Receivership Entities, and the holders of various Disputed Claims including, but not limited to, personal loans from Varacchi to the officers of holders of Disputed Claims and excessive interest payments made on short-term loans which may be avoidable under CUFTA and Second Circuit precedent.

91.     The Receiver continues to evaluate these additional potential claims and has not yet

determined whether to initiate separate lawsuits to liquidate them or to use them as grounds to further reduce Disputed Claims. The Receiver will move to for leave to sue the subjects of the Potential Litigation Claims (the "Potential Litigation Defendants") prior to commencing litigation against them.

**L.**     **The Motion to Reappoint**

92.     During the Compensation Period, Z&Z discovered that the Receiver had not timely complied with the requirements of 28 U.S.C. § 754.

93.     Section 754 of Title 28 of the United States Code grants a receiver appointed in any civil action involving property situated in different districts with complete jurisdiction and control over all such property.  Courts also rely upon § 754, in conjunction with Fed. R. Civ. P. 4 and 28 U.S.C. § 1692, to establish a basis for personal jurisdiction over persons located in these other districts.

94.     § 754 requires the receiver to provide notice of the receivership in these other districts by filing, within ten days after the entry of the order of appointment, a copy of the complaint and order of appointment in the district court for each district in which property is located. *See* 28 U.S.C. § 754.  Early in this receivership proceeding, the Receiver filed the required documents in certain other districts in which he believed property belonging to the Receivership Entities may be located pursuant to § 754.  He did not, however, file the notice within the required ten-day period.

95.     Courts have uniformly held that § 754's jurisdictional grant may be re-conferred even after the expiration of the original ten-day deadline by the entry of an order reappointing and reaffirming the receiver thereby establishing a new ten-day window to provide the required notice, so long as the affected parties have adequate notice of the motion and are not prejudiced by the

reappointment and reaffirmation of the receiver.

96.     On January 25, 2018, the Receiver filed his Joint Motion for an Order Reappointing and Reaffirming Jed Horwitt as Receiver, (Doc. No. 43, the "Motion to Reappoint"), requesting that this Court enter such an order reappointing and reaffirming the Receiver, and thereby restart the ten-day notice requirement so that the Receiver can provide the required notice and extend this Court's jurisdiction to certain other districts in which he believes property belonging to the Receivership Estate may be located.

97.     The Motion to Reappoint is currently pending before this Court.

98.     Although the Motion to Reappoint was filed in January 2018, the Receiver has included it in this Application as the bulk of the related work was finalized during the Compensation Period.

**M.     Disbursement of Assets**

99.     In accordance with the Court's Orders Approving the Applications (Doc. Nos. 29 and 41), the Receiver has made the following distributions to Z&Z and V&L:

| Date | Recipient | Amount | Reason | Authority |
|------|-----------|--------|--------|-----------|
| 10/16/17 | Z&Z and V&L | $69,043.30 | 80% of Fees and 100% of Expenses from May 1, 2017 to June 30, 2017 | Order Approving First Interim Fee Application (Doc. No. 29) |
| 12/29/17 | Z&Z and V&L | $65,006.60 | 80% of Fees and 100% of Expenses from July 1, 2017 to September 30, 2017 | Order Approving Second Fee Application (Doc. No. 41) |

100.    The Receiver, Z&Z and V&L have assessed fees for their services and Z&Z and V&L have advanced all necessary expenses, which are requested for reimbursement through the Applications.  (*See* Ex. C.)

101.    Provided that the Court awards the fees and expenses requested in this Application,

appropriate disbursements will be reflected on the Receiver's next interim fee application filed after such award.

102.    Once the Receiver has resolved the Disputed Claims to an extent which would allow a meaningful distribution to be made, the Receiver anticipates filing an interim distribution plan with the Court which will provide pro rata distribution on account of undisputed claims from the cash assets of the Receivership Estate and establish an appropriate reserve for anticipated administrative expenses and unresolved Disputed Claims (the "Initial Distribution").   The Receiver anticipates that the Initial Distribution will be followed by subsequent distributions from the sale of the Receivership Assets and any recovery from claims against third parties and potential litigation.

### N.    **Anticipated Closure**

103.    At this time, it is premature for the Receiver to speculate as to when this Receivership Proceeding will be ready to close.

## IV.    **DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE**

104.    The following assets are a part of the Receivership Estate:

a.    The Receivership Account, which is valued at $2,366,356.32;

b.    The ICBC Account, the value of which the Receiver is presently investigating;

c.    The Private Investments, which value the Receiver is presently investigating; and

d.    Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, including the claims against the TAM Defendants, the Sarroff Defendants, the Rajo Defendants, Kostiner, and the Potential Litigation Claims Defendants.

105.    With respect to the Private Investments, the Receiver has identified the following

securities:

 a. Kizzang: 3,600,000 Class C shares and 5,400,000 Class D shares, all evidenced by certificates identifying Varacchi as the owner of such interest;

 b. Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and

 c. StereoCast: 150,000 shares in the name of Varacchi, based on information provided by the President of StereoCast (who has represented in writing that he will send the Receiver a copy of the stock certificate evidencing such interest).

106.   The Receiver has determined that Kizzang is not publicly traded.  The Receiver is investigating the value of this asset and how best it may be liquidated to maximize value for the beneficiary of the Receivership Estate.

107.   As part of such investigation, the Receiver found that Time, Inc. filed suit against Kizzang on October 5, 2016, in U.S. District Court for the Southern District of New York (docketed at 1:16-cv-07794-AKH), which suit Kizzang did not defend and which resulted in a default judgment against Kizzang in the amount of $1,025,384.62.

108.   The Receiver has determined that Greenhouse is traded over the counter.  Its share price, as of January 18, 2018, is less than one penny per share.

109.   The Receiver has determined that StereoCast is not publicly traded.  StereoCast and its related entities have suspended their operations, and employees have moved on to other employment.  StereoCast provided the Receiver with a copy of a pending patent application, which is in Randall Satin's name, but the application is no longer being prosecuted due to lack of funding. Absent significant value in any intellectual property, which may not even be an asset of StereoCast, or a near-term infusion of capital, it appears that no value can be realized from StereoCast.

110.   Again, and as was discussed in the Status Report and Liquidation Plan, the Receiver is investigating how best to liquidate and maximize the value of these equity interests in Kizzang,

Greenhouse, and StereoCast.

111.    With respect to the other transfers to the Private Companies that the Commission has identified as potentially having created Private Investments, and the additional transfers discovered by the Receiver, as discussed above, the Receiver is investigating these transactions, including whether they constituted purchases of equity, loans or some other manner of transaction.

112.    The Receiver is further investigating whether, where Varacchi caused the Receivership Defendants to make payments for the benefit of third parties, the Receivership Estate may hold causes of action for fraudulent transfer or other claims.

## V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES

### A.    The Governing Legal Standard

113.    The District Court has the power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the Receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953 F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties.).

114.    The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his counsel and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).

115.    The case law and other authority may provide "convenient guidelines," but ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F.

2d 1087 (5th Cir. 1975).

116.    In awarding counsel fees in Securities Act receiverships, "[t]he court will consider ... the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).

117.    While "results are always relevant," a good result may take a form other than a "bare increase in monetary value." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Overall results can be determined only at the conclusion of the Receivership Proceeding.

118.    Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483.

**B.**     **Application of the Governing Legal Standard to the Application**

119.    Based on the foregoing, the Receiver, Z&Z and V&L respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

120.    As more fully set forth throughout this Application and as detailed in the exhibits submitted herewith, the issues addressed by the Receiver, Z&Z and V&L have been and continue

to be highly complex, requiring investigation of an alleged fraud that spanned years, consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions.  The Receiver and Z&Z have created and implemented claims procedures in order to permit the Receivership Estate to receive, evaluate and determine claims, which procedures have been approved by the Court.  The Receiver, Z&Z and V&L have made substantial progress in investigating the Receivership Estate's assets and in commencing litigation on behalf of the Receivership Estate.

121.    The Receiver, Z&Z and V&L respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed expediently and efficiently.  Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

122.    At the same time, the Receiver, Z&Z and V&L have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

123.    Furthermore, the Commission has reviewed this Application and has stated that it has no objection to the approval of the professional fees and expenses requested herein.

124.    Accordingly, the Receiver, Z&Z and V&L submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties in interest.

**C.    <u>Source and Manner of Payment</u>**

125.    The Receivership Estate contains cash held in the Receivership Account.

126.    The Receiver, Z&Z and V&L request that the Court enter an order permitting the

approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees) which shall be held in the Receivership Account pending this Court's further order as to the disposition of such funds.

**WHEREFORE**, Jed Horwitt, Esq., Receiver, Zeisler & Zeisler, P.C., counsel to the Receiver, and Verdolino & Lowey, P.C., accountant and financial advisor to the Receiver, respectfully request that (i) this Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $96,644.00 for legal services rendered during the Compensation Period, and $2,690.65for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (iii) V&L be awarded an allowance of $39,691.20 for services rendered during the Compensation Period, and $100.58 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; and (iv) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 9th day of February, 2018

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER

*/s/ Jed Horwitt*
Jed Horwitt, Receiver

ZEISLER & ZEISLER, P.C.,
COUNSEL TO RECEIVER

By: */s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)
Rion M. Vaughan (ct30440)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 245
Email: skindseth@zeislaw.com
rvaughan@zeislaw.com
His Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, Rion M. Vaughan, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System and also at http://jedhorwittreceiver.com/.


*/ s / Rion M. Vaughan*
Rion M. Vaughan (ct30440)