# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )  )  Plaintiff, )  )  v. )  )  MARK J. VARACCHI and SENTINEL GROWTH FUND MANAGEMENT, LLC, )  )  )  )  )  Defendants, )  and )  )  RADAR ALTERNATIVE FUND LP and RADAR ALTERNATIVE MASTER FUND SPC, )  )  )  Relief Defendants. )  ) | Civil Action No. 3:17-cv-00155-VAB |

## FOURTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES
## <u>INCURRED BY THE RECEIVER AND HIS PROFESSIONALS</u>

I.      SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED ...................... 3
    A.     Discounts ........................................................................................................ 6
    B.     Fee Schedules ................................................................................................ 6
    C.     Activity Categories ........................................................................................ 7

II.     SUMMARY OF CASH ON HAND ............................................................................. 8

III.    SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE ........................... 9
    A.     The Receiver's Website and Investor Contact .............................................. 9
    B.     The Third Quarterly Status Report ............................................................. 10
    C.     Claims Administration and Settlement of Disputed Claims ......................... 10
    D.     The Reappointment Order and Compliance with 28 U.S.C. § 754 ............... 11
    E.     Renewed Motion Approving Supplemental Claims Procedure .................... 14
    F.     Plan of Distribution ..................................................................................... 15
    G.     Marshaling of Receivership Assets and Receipt of Assets by Receiver ....... 17
    H.     Litigation - TAM Action .............................................................................. 19
    I.     Litigation - Sarroff Action ........................................................................... 20
    J.     Litigation - Rajo Action .............................................................................. 21
    K.     Litigation - Kostiner Settlement .................................................................. 22
    L.     Investigation into Weeden Prime Services, LLC .......................................... 25
    M.     Investigation of Loans and Other Potential Litigation Claims ..................... 26
    N.     Investigation of Private Investments ............................................................ 27
    O.     Disbursement of Assets ................................................................................ 28
    P.     Anticipated Closure ..................................................................................... 29

IV.    DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE ................................... 29

V.     THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES ............... 30
    A.     The Governing Legal Standard .................................................................... 30
    B.     Application of the Governing Legal Standard to the Application ................. 31
    C.     Source and Manner of Payment ................................................................... 32

**FOURTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES
INCURRED BY THE RECEIVER AND HIS PROFESSIONALS**

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to this Court's Order Appointing Receiver entered May 1, 2017 (ECF No. 12, the "Receivership Order") and Order Reappointing Receiver (ECF No. 47, the "Reappointment Order", and together with the Receivership Order, the "Receivership Orders") entered February 14, 2018, respectfully submits this fourth interim application (the "Application") for professional fees and expenses incurred by the Receiver and Z&Z on behalf of the Receivership Estate (as defined in the Receivership Orders), during the period commencing January 1, 2018, through and including March 31, 2018 (the "Compensation Period").[1]   In advance of filing, the Receiver shared this Application with counsel for the Commission, and the Commission's counsel has stated that the Commission has no objection to the approval of the professional fees and expenses requested herein.

In support of this Application, the Receiver and Z&Z respectfully represent as follows:

**I.      SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED**

1.      This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines") and the Receivership Orders.

2.      Pursuant to the SEC Guidelines, the following exhibits are attached to this

---

[1] Due to the tax busy season and the medical issues of the senior partner responsible for this case, the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L") was unable to provide their invoices for the Compensation Period before the deadline for filing this Application.  V&L will seek approval of their fees and expenses for this Compensation Period in the next quarterly fee application.

Application:

a.   The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

b.   A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c.   A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as Exhibit C;

d.   Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as Exhibits D-1; D-2, D-3, D-4, D-5; D-7, D-8, D-9, D-10, and D-11.[2]

3.    The Receiver and Z&Z attorneys and paraprofessionals have expended a total of 691.5 hours working on this matter during the Compensation Period. The Receiver and Z&Z seek allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $189,431.00, and reimbursement of actual and necessary expenses in the amount of $4,273.47.

4.    The Receiver and Z&Z acknowledge that their fee compensation is subject to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Orders.

5.    The fees assessed reflect the hours worked by the Receiver, Z&Z attorneys, and Z&Z paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver and Z&Z (described below).

6.    These amounts also take into account all relevant circumstances and factors as set

---

[2] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding, and pursuant to the Court's Order entered August 11, 2017 (ECF No. 25), Exs. D-1 through D-11 are filed under seal. Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Orders.

7.     A narrative description of the particular services provided by the Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as Ex. D-1 through D-11.  Section III below summarizes the Receiver's administration of the Receivership Estate since his appointment.

8.     Z&Z's expense reimbursements requested are modest and principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) shipping charges; (iii) expenses associated with the Receiver's website; (iv) fees for service of subpoenas and complaints; (v) filing fees incurred in litigation on behalf of the Receivership Estate; (vi) photocopying; and (vi) online legal research.  (*See* Ex. C.)

9.     The Receiver and Z&Z have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime.  Nor have the Receiver or Z&Z requested reimbursement for any meals during the Compensation Period.

10.    The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies.

A.    **Discounts**

11.    As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Orders, the Receiver and Z&Z have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

12.    More specifically, and as shown in the fee schedules set forth below, Z&Z has consented to 20% public service discounts to its regularly applicable hourly rates for all legal professionals and paraprofessionals.

13.    The Receiver originally agreed to discount his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver to $250 per hour, reflecting a 50% discount.  Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time during this period.

B.    **Fee Schedules**

14.    The fee schedule for the Receiver, showing: his name; the hourly rate applied to his services in this Receivership Proceeding and his customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his services during the Compensation Period; is as follows:

| Receiver | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Horwitt, Jed | $250 ($500) | $250 | 4.9 | $1,225.00 | $1,225.00 |

15.    The fee schedule for all Z&Z legal professionals who provided services during the

Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Kindseth, Stephen | $340 ($425) | $85 | 194.6 | $66,164.00 | $16,541.00 |
| Kornafel, Joanna | $240 ($300) | $60 | 10.8 | $2,592.00 | $648.00 |
| Romney, Aaron | $320 ($400) | $80 | 84.3 | $25,472.00 | $8,248.00 |
| Lindsay, Patrick | $264 ($330) | $66 | .3 | $79.20 | $104.00 |
| Moriarity, James | $320 ($400) | $80 | 1.3 | $416.00 | $19.80 |
| Vaughan, Rion | $240 ($300) | $60 | 380.2 | $91,248.00 | $22,812.00 |

16.      The fee schedule for the legal paraprofessional who provided services during the Compensation Period, showing: his or her name; the hourly rate applied to his or  her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprofessional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Joseph, Kristen | $148 ($185) | $37 | 15.1 | $2,234.80 | $558.70 |

## C.      Activity Categories

17.      Pursuant to the SEC Guidelines, the Receiver and Z&Z have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

Activity Categories Utilized by Receiver and Legal Professionals

a.        Category One: Case Administration, 71.8 hours, $18,370.40 (*see* Ex. D-1);

b.        Category Two: Asset Analysis & Recovery, 112.6 hours, $26,464.00 (*see* Ex. D-2);

c.        Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d.        Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

e.        Category Five: Claims Administration & Objections, 154.3 hours, $38,741.00 (*see* Ex. D-5);

f.        Category Six: Application for Professional Fees and Expenses, the Receiver and Z&Z are not including time incurred for these services in their Application (*see* Ex. D-6);

g.        Category Seven: Litigation – Taran Asset Management, 61.6 hours, $16,319.60 (*see* Ex. D-7); and

h.        Category Eight: Litigation – A. L. Sarroff Management, 82 hours, $24,906.00 (*see* Ex. D-8).

i.        Category Nine: Litigation – Shay Kostiner, 86.3 hours, $27,588.00 (*see* Ex. D-9).

j.        Category Ten: Litigation – Weeden Prime Services, 106.9 hours, $32,452.00 (*see* Ex. D-10).

k.        Category Eleven: Litigation – Rajo Corp., 16 hours, $4,590.00 (*see* Ex. D-11).

## II.   SUMMARY OF CASH ON HAND

18.        The Receiver's cash on hand is held in the Receivership Account (as hereinafter defined), the balance of which, as of March 31, 2018, is 2,296,776.83.  This constitutes a decrease of $69,589.49 during the Compensation Period. (*See* Ex. A.)[3]

---

[3] As discussed in greater detail in Section III G below, the Receiver secured of $49,881.01 formerly held as deposits in five (5) Citibank IPO Brokerage accounts during the Compensation Period.  Four of the

III.   **SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE**

19.   During the Compensation Period, the Receiver diligently exercised his duties pursuant to the terms of the Receivership Order and made significant progress in marshalling and liquidating Receivership Assets for distribution to the holders of Claims against the Receivership Estate.  Items of particular investigation and analysis by the Receiver and his professionals, as discussed below, were evaluating and resolving the submitted Claims against the Receivership Estate, drafting a Plan of Distribution, reestablishing jurisdiction over Receivership Assets located outside of the District of Connecticut, tracing undocumented loans from Varacchi and the Receivership Entities and making demand for their repayment, and continuing to litigate causes of action held by the Receivership Estate against third parties.

20.   Utilizing Z&Z as his legal professionals and V&L as his accountants and financial advisors, the Receiver has undertaken the following on behalf of the Receivership Estate:

A.   **The Receiver's Website and Investor Contact**

21.   At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com –  that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

22.   The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information.

23.   Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the

---

scheduled wires from Citibank, totaling $39,825.00, cleared prior to the expiration of the Compensation Period.  The final wire of $10,056.01 cleared on April 2, 2018.  The Receiver has accounted for the delayed wire as $10,056.01 in "uncleared funds" in line 14(c) of the Standardized Fund Accounting Report, attached hereto as Exhibit A.

Receivership Proceeding and the claims management procedures discussed herein.

       **B.**       **The Third Quarterly Status Report**

       24.       The Receiver and Z&Z also prepared and, on February 2, 2018, filed the Third Quarterly Status Report.  ECF No. 44.  In drafting the Third Quarterly Status Report, the Receiver and Z&Z compiled comprehensive information to update the Court, the Commission and any other parties in interest as to the Receiver's operations, the Receivership Estate's assets, the status of various litigation and claims against the Receivership Estate.

       **C.**       **Claims Administration and Settlement of Disputed Claims**

       25.       On July 31, 2017, the Court entered its Order Approving Claims Procedure (Doc No. 24, the "Claims Procedure Order") granting the relief requested in the Claims Procedure Motion and approving the Claims Notice in the form requested by the Receiver.

       26.       Pursuant to the Claims Procedure Order, the general Bar Date for the submission of Claims passed on September 29, 2017.  To date, the Receiver has received thirty-three (33) Claims in a total claimed amount in excess of $32 million.

       27.       Prior to and during the Compensation Period, the Receiver and Z&Z, applying the Net Investment Method[4] and other equitable principles to the submitted claims, identified grounds for objecting to twenty-six (26) of the thirty-three (33) submitted claims (the "Disputed Claims") either in whole or in part.   In total, the disputed portions of the Disputed Claims totaled approximately $13 million.

       28.       During the Compensation Period, the Receiver and Z&Z attorneys communicated

---

[4] Based upon this and the Receiver's own evaluation of the facts and circumstances presented, and in consultation with the SEC, the Receiver concluded that the Net Investment Method most fairly and equitably determined the appropriate amount a creditor should hold as an allowed claim in this Receivership Proceeding.  The Receiver intends to submit his reasoning and proposal in this regard in conjunction with the proposed allowance of various claims as part of a Plan of Distribution to be filed in the near future.

with the holders of the Disputed Claims in an effort to resolve the Receiver's objections and to reconcile any discrepancies between the submitted and Disputed Claim amounts, all subject to the approval of this Court.

29.     As a result of these efforts, the Receiver and Z&Z attorneys have preliminarily resolved the Receiver's objections to twenty (20) of the twenty-six (26) Disputed Claims (the "Resolved Disputed Claims").

30.     Pending approval of the Court, the holders of the Resolved Disputed Claims agreed to reduce their Claims against the Estate by approximately $4.9 million dollars.  The Receiver anticipates submitting the compromises reached with respect to the Resolved Disputed Claims for this Court's approval as part of a proposed Plan of Distributions.  *See* Section III. F. "Plan of Distribution" below.

31.     The disputed portions of the six (6) remaining Disputed Claims (the "Remaining Disputed Claims") total approximately $7.7 million dollars.  The Receiver has determined that the Remaining Disputed Claims each present unresolved questions regarding the Claimant's good faith and knowledge of Varacchi's Ponzi scheme.  Whether the holders of the Remaining Disputed Claims should be allowed to participate in a distribution from the assets of the Receivership Estate will ultimately be determined by the Court after the Receiver completes his investigation into the Remaining Disputed Claims and files a formal objection under the terms of the Claims Procedure Order.

**D.     The Reappointment Order and Compliance with 28 U.S.C. § 754**

32.     On January 25, 2018, the Receiver filed his Joint Motion for an Order Reappointing and Reaffirming Jed Horwitt as Receiver, (ECF No. 43, the "Motion to Reappoint").

33.     Section 754 of Title 28 of the United States Code grants a receiver appointed in any

civil action involving property situated in different districts with complete jurisdiction and control over all such property.  Courts also rely upon § 754, in conjunction with Fed. R. Civ. P. 4 and 28 U.S.C. § 1692, to establish a basis for personal jurisdiction over persons located in these other districts.

34.     Section 754 requires the receiver to provide notice of the receivership in these other districts by filing, within ten days after the entry of the order of appointment, a copy of the complaint and order of appointment in the district court for each district in which property is located. *See* 28 U.S.C. § 754.  Early in this receivership proceeding, the Receiver filed the required documents in certain other districts in which he believed property belonging to the Receivership Entities may be located pursuant to § 754.  He did not, however, file the notice within the required ten-day period.

35.     Courts have uniformly held that § 754's jurisdictional grant may be re-conferred even after the expiration of the original ten-day deadline by the entry of an order reappointing and reaffirming the receiver thereby establishing a new ten-day window to provide the required notice, so long as the affected parties have adequate notice of the motion and are not prejudiced by the reappointment and reaffirmation of the receiver.

36.     The Motion to Reappoint requested that this Court enter such an order reappointing and reaffirming the Receiver, and thereby restart the ten-day notice requirement so that the Receiver can provide the required notice and extend this Court's jurisdiction to certain other districts in which he believes property belonging to the Receivership Estate may be located.

37.     On February 14, 2018, the Court entered its Order Reappointing and Reaffirming the Receiver.

38.     Prior to the expiration of the statue's ten-day time limit, the Receiver's attorneys

complied with the filing requirements of 28 U.S.C. § 754 by filing copies of the Complaint and

the Receivership Orders in the following federal districts:

| Federal Jurisdiction | Filing Date | Miscellaneous Case Number |
|---|---|---|
| Eastern District of New York | 2/22/18 | 18-mc-572 |
| Southern District of New York | 2/22/18 | 18-mc-00066 |
| Eastern District of Pennsylvania | 2/22/18 | 2:17-mc-00104-UJ |
| District of New Jersey | 2/22/18 | 2:17-mc-00281-KSH |
| District of Nevada | 2/22/18 | 2:17-ms-00058 |
| District of Colorado | 2/21/18 | 18-mc-00032 |
| Northern District of Illinois | 2/22/18 | 18-cv-1360 |
| Southern District of Florida | 2/22/18 | 18-mc-20701-MGC |
| District of Arizona | 2/23/18 | mc-18-00012 |
| Northern District of California | 2/23/18 | c18-80038-miscWHA |
| District of Maryland | 2/22/18 | 18-mc-156 |
| District of West Virginia | 2/22/18 | 2:18-mc-00029 |
| District of Utah | 2/22/18 | 2:18-mc-163 |
| District of Delaware | 2/22/18 | 18-mc-63 |

39.     Pursuant to 28 U.S.C. § 754, the Receiver has now been "vested with complete

jurisdiction and control of all" property of the Receivership Estate located in the above listed

federal districts.  This power includes the right to take possession of such property.  Further,

13

pursuant to 28 U.S.C. § 1692, the District Court for the District of Connecticut now has the power

to issue and execute legal process concerning property of the Receivership Estate located in the

above listed federal districts as if all such property were located within the District of Connecticut.

> **E.**   **Renewed Motion Approving Supplemental Claims Procedure**

40.     Prior to the Compensation Period, the Receiver and Z&Z drafted a comprehensive

set of procedures to permit parties with claims against the Receivership Estate to submit them for

an orderly evaluation and processing.  On July 31, 2017, the Court entered its Claims Procedure

Order substantially in the form requested by the Receiver.

41.     In compliance with the Claims Procedure Order (except as noted below), the

Receiver, through Z&Z, sent copies of the Claims Notice (as that term is defined in the Claims

Procedure Order) to all then known persons (including individuals and businesses) with claims

against the Receivership Estate, within fourteen (14) days of entry of the Claims Procedure Order.

The general Bar Date for claims who received such notice was September 29, 2017.

42.     After the Court's entry of the Claims Procedure Order, Z&Z discovered that (i)

certain creditors had actually received notice of the Bar Date and Claims Procedure Order four (4)

days later than ordered by the Court (the "Late Notice Creditors") and (ii) the possibility of other

persons holding claims (the "New Creditors").  Upon this discovery, Z&Z promptly provided the

New Creditors with notice of the Claims Procedure Order and Claims Notice, and prepared a

motion to supplement the Claims Procedure Order to address the notice issues presented by the

Late Notice Creditors and the New Creditors.

43.     On November 1, 2017, the Receiver filed his Motion to Supplement Claims

Procedure (ECF No. 35, the "Supplemental Claims Procedure Motion").

44.     The Supplemental Claims Procedure Motion sought (i) the approval of the notice

actually provided by the Receiver to the Late Notice Creditors, (ii) the establishment of a deadline for submitting claims to the Receiver by the New Creditors, (iii) the form and manner of notice of the claims procedures for the New Creditors, (iv) the approval of the form and manner for the submission of such claims by the New Creditors, and (v) the procedure for the adjudication of disputed claims subsequently submitted by the Late Notice Creditors and New Creditors.

45.    The Supplemental Claims Procedure Motion was not set for a hearing and, as of the beginning of the Compensation Period, was pending for the Court's consideration.

46.    Following the entry of the Court's Reappointment Order, on February 21, 2018, this Court entered an order on the docket providing:

> There is a pending motion to supplement claims procedure on the docket. ECF No. 35. Since the filing of that motion, the Receiver has been reappointed. ECF No. 47. To the extent that the Receiver continues to seek relief, the Receiver is directed to renew its motion to supplement claims procedure in light of the more recent ruling.

ECF No. 49.

47.    In compliance with this Court's direction, the Receiver drafted and, on March 12, 2018, filed his Renewed Supplemental Claims Procedure Motion, renewing his request for the relief initially outlined in the Supplemental Claims Procedure Motion.  ECF No. 52.

48.    Two days after the Compensation Period, on April 2, 2018, the Court entered its Order Approving the Renewed Supplemental Claims Procedure (ECF No. 53, the "Supplemental Claims Procedure Order").

49.    The Supplemental Claims Procedure Order affirms the original Bar Date of September 27, 2017, and sets a second Bar Date of June 1, 2018, for New Creditors.

**F.    Plan of Distribution**

50.    The Receiver believes that, after the expiration of the second Bar Date and after evaluating any submitted Claims of New Creditors, the Claims administration process will have

reached the threshold where a plan providing for the pro rata distribution and other related relief would be appropriate for the Court's consideration and approval.

51.     During the Compensation Period, and in consultation with the Commission, the Receiver and Z&Z attorneys began to develop the proposed procedure through which the Resolved Disputed Claims would be allowed, an initial distribution could be made, and other related issued could be addressed by this Court.  The Receiver also reviewed the precedent established by other recent Commission Receiverships appointed for the benefit of victims of a Ponzi scheme.  Based on the foregoing along with other appropriate considerations, the Receiver determined that he should propose a plan of distribution ("Plan of Distribution") providing for the following relief, *inter alia*:

> a.  Pooling the assets of the Receivership Entities for a *pro rata* distribution to allowed claimants;
> b.  Approval of the equitable principles and claims calculation methodology applied by the Receiver in evaluating the submitted Claims;
> c.  Approval of the proposed allowed Claims in the amounts proposed by the Receiver;[5]
> d.  Approval of the Receiver's proposed classification and treatment of the proposed allowed Claims;
> e.  Approval of the Receiver's proposed establishment of a reserve for unresolved disputed Claims future administrative expenses of the Receivership Estate; and,
> f.  Authority to the Receiver to make future distributions in accordance with the distribution procedures outlined in the Distribution Motion.

52.     The Receiver anticipates that the Plan of Distribution will be filed in June, 2018 – after the second Bar Date has expired and the Receiver has fully evaluated any submitted Claims of New Creditors.

---

[5] Although the proposed allowed claims have been resolved by consent, the Distribution Motion will comply with the Claims Procedure Order by setting forth "the (a) the amount alleged in the Creditor's Proof of Claim; (b) the factual and legal basis for the Receiver's challenge to such Claim; and (c) the determination sought by the Receiver including the extent to which the Receiver submits that the Claim should be allowed and disallowed." *See* Claims Procedure Order at ¶ 6.

53.     As will be set forth in greater detail in the Plan of Distribution, the Receiver intends to establish reserves sufficient to provide for the *pro rata* distribution to the holders of the Remaining Disputed Claims in the event that any of their Claims are ultimately allowed by the Court after consideration of the Receiver's formal objection.  Therefore, the Receiver does not anticipate that the resolution of Remaining Disputed Claims will delay distribution to the holders of Proposed Allowed Claims.

G.     **Marshaling of Receivership Assets and Receipt of Assets by Receiver**

54.     Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and bankruptcy trustees), which account (the "Receivership Account") will hold funds marshaled by the Receiver and will constitute Receivership Assets.

55.     Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.

56.     During the Compensation Period, the Receivership Account accrued interest at a rate of 0.33% monthly, amounting to total interest payments of $1,887.86 for the Compensation Period.

57.     During the Compensation Period, Z&Z attorneys uncovered deposits held in Citibank brokerage accounts by Sentinel on behalf of entities that used the brokerage accounts to trade on Sentinel's IPO platform (the "Citibank IPO Accounts").  Citibank required balances of at least $10,000.00 in each of these accounts in order to maintain the ability to trade through Citibank. After Z&Z attorneys verified that the funds for these deposits came directly from Sentinel's operating account, Z&Z attorneys notified Citibank of the Freeze Order and the Receivership

Orders, and requested documentation relevant to determining the nature, scope, and extent of the Receivership Estate's interest in the Citibank IPO Accounts.

58.     With the cooperation and assistance of Citibank, Z&Z attorneys determined that there had been eight (8) Citibank IPO Accounts containing at least $80,000 in Receivership Assets as of February 2, 2017, the date the Freeze Order entered.

59.     As of the Receiver's discovery of the Citibank IPO Accounts in early February 2018, only five (5) of the Citibank IPO Accounts had positive balances, totaling approximately $50,000.  The three (3) remaining Citibank IPO Accounts had been emptied at different points following February 2, 2017 (the "Contempt Accounts").  Z&Z attorneys requested further documentation regarding the Contempt Accounts from Citibank, and Citibank complied.

60.     After reviewing the documents produced by Citibank regarding the Contempt Accounts, Z&Z attorneys determined that the persons who completely withdrew the balances from the Contempt Accounts (the "Potential Contemnors") had actual or constructive notice of the Freeze Order and the Receivership Order.

61.     Accordingly, during the Compensation Period, Z&Z attorneys drafted and served letters to the Potential Contemnors demanding the immediate return of the funds withdrawn from the Contempt Accounts.  The Potential Contemnors had until April 18, 2018 (after this Compensation Period), to respond to the demand letters.

62.     Pursuant to ¶¶ 6-7 of the Receivership Order, Z&Z attorneys requested that Citibank transfer the remaining assets in the Citibank IPO Accounts to the Receivership Account. Citibank complied and, prior to the end of the Compensation Period, scheduled 5 wire transfers totaling $49,881.01 to the Receivership Account.   Four of the scheduled wires, totaling $39,825.00, cleared prior to the expiration of the Compensation Period.   The final wire of

$10,056.01 cleared on April 2, 2018. The Receiver has accounted for the delayed wire as $10,056.01 in "uncleared funds" in line 14(c) of the Standardized Fund Accounting Report, attached hereto as <u>Exhibit A</u>.

      **H.**    **<u>Litigation - TAM Action</u>**

    63.    During the Compensation Period, the Receiver and Z&Z continued to their lawsuit, *Jed Horwitt Esq., Receiver v. Taran Asset Management, LLC et al.*, (Civil Action No.: 3:17-cv-01840-VLB) (the "TAM Action"), against Taran Asset Management, LLC ("TAM"), Christopher Gleason ("Gleason"), and Baseline Advisors, LLC ("Baseline" and, collectively, the "TAM Defendants") in the United States District Court for the District of Connecticut. The TAM Action seeks to recover approximately $1.4 million that Varacchi caused Sentinel to pay allegedly to or for the benefit of the TAM Defendants pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA").

    64.    On January 2, 2018, the Receiver amended his original complaint to specifically identify the dates and amounts of the challenged transfers. *See* ECF No. 12. On February 2, 2018, the Receiver then moved the Court for leave to add Mark Varacchi as a defendant to the TAM Action, which the Court granted on February 5, 2018. *See* ECF Nos. 23 and 24.

    65.    The Receiver and counsel for TAM and Gleason held their initial 26(f) conference on February 15, 2018 and continued their conference on February 26, 2018.

    66.    At the 26(f) conference, the parties discussed potential issues regarding the collectability of any judgment against the TAM Defendants. Z&Z attorneys provided opposing counsel with a financial disclosure form to determine what, if any, assets of the TAM Defendants may be available to satisfy a potential judgment.

    67.    On February 16, 2018, the TAM and Gleason filed their answer to the second

amended complaint.  *See* ECF No. 26.

68.     During the Compensation Period, Z&Z attorneys uncovered that Varacchi had caused Sentinel to pay certain debts incurred by TAM prior to Sentinel's existence and at a time when Varacchi was TAM's Chief Operating Officer.  In total, from October 15, 2013, through November 30, 2016, Varacchi, in furtherance of his Ponzi scheme, used assets of the Receivership Entities or caused Sentinel to make a series of transfers to such creditors of TAM (the "TAM-Related Entities") for the benefit of TAM and/or Gleason in the aggregate amount of $371,279.88.  During the Report Period, Z&Z attorneys investigated the transfers to the TAM-Related Entities and began to draft a third amended complaint to avoid such transfers under CUFTA.  The Receiver anticipates filing his third amended complaint before the June 15, 2018 deadline to amend the complaint.

69.     The parties finalized their joint 26(f) report and filed it with the Court on March 22, 2018.  The joint 26(f) report establishes various deadlines for managing the litigation.  The joint 26(f) report also requested an early settlement conference which, after the Compensation Period, the Court referred to a Magistrate Judge to be heard in July, 2018.

        **I.**        **<u>Litigation - Sarroff Action</u>**

70.     During the Compensation Period, the Receiver and Z&Z continued their lawsuit, *Jed Horwitt Esq., Receiver v. Alan Sarroff et al.*, (Civil Action No.: 3:17-cv-01902-VLB) (the "Sarroff Action") against Alan L. Sarroff ("Sarroff") and A.L. Sarroff Management, LLC ("Sarroff, LLC", and collectively, the "Sarroff Defendants"), in the United States District Court for the District of Connecticut.  The Sarroff Action seeks to recover pursuant to CUFTA over $14 million that Varacchi caused Sentinel to pay to or for the benefit of the Sarroff Defendants.

71.     On February 9, 2018, the Receiver amended his original complaint to specifically

identify the dates and amounts of the challenged transfers.  *See* ECF No. 15.

72.     On March 16, 2018, the parties met to discuss the complaint and the possibilities of settlement.  Z&Z attorneys presented the merits of the Estate's case against the Sarroff Defendants.  Although the possibility of settlement was discussed, no settlement offer was exchanged and the parties elected to proceed with litigation.

73.     The Receiver and counsel for the Sarroff Defendants held their initial 26(f) conference on March 22, 2018.  During the Compensation Period, Z&Z attorneys drafted their proposed 26(f) report and provided the draft to counsel for Sarroff Defendant.  The parties filed filing the joint 26(f) report in the Sarroff Action on April 20, 2018.

74.     On March 31, 2018, the Sarroff Defendants filed a motion to dismiss the Sarroff Action on the grounds that the amended complaint fails to state a claim for which relief can be granted.  *See* ECF No. 25.  The Receiver's response to the Sarroff Defendants' motion to dismiss was filed on April 20, 2018.

**J.     Litigation - Rajo Action**

75.      During the Compensation Period, the Receiver and Z&Z continued its lawsuit , *Jed Horwitt Esq., Receiver v. Rajo Corp. d/b/a Rajo Capital Management et al.*, (Civil Action No.: 3:17-cv-02077-JCH) (the "Rajo Action) against Rajo Corp. d/b/a Rajo Capital Management ("Rajo"), Victor J. Danilevics ("Danilevics"), and Tobyn Ingebrigtson ("Ingebrigtson", and collectively, the "Rajo Defendants") in the United States District Court for the District of Connecticut. The Rajo Action seeks to recover approximately $204,000 that Varacchi caused Sentinel to pay to or for the benefit of the Rajo Defendants pursuant to CUFTA.

76.     On February 21, 2018, , the Court entered an Order to Show Cause "why the court should not dismiss this case for failure to prosecute as a result of the plaintiff's failure to move for

a default entry against the defendants." *See* ECF No. 13.

77.    On March 6, 2018, Z&Z attorneys filed their response to the Court's Order to Show Cause (ECF No. 14), stating that settlement discussions were on-going, and that the Receiver intended to move forward in the Rajo Action if he did not reach a settlement is within thirty (30) days.  *See* ECF No. 14.

78.    On March 9, 2018, the Court entered a docket order granting the Receiver until April 16, 2018, to refile his motion for default.  ECF No. 15.

79.    During the Compensation Period, Z&Z attorneys continued settlement discussions with counsel to the Rajo Defendants and provided the Rajo Defendants with a financial disclosure form to determine what, if any, assets of the Rajo Defendants may be available to satisfy a potential judgment.

80.    After the Compensation Period, counsel for the Rajo Defendants informed Z&Z attorneys that the Rajo Defendants did not intend to settle the Rajo Action nor would they file an appearance and respond to the Receiver's complaint.

81.    Accordingly, on April 16, 2018, Z&Z attorneys filed a Motion for Default against the Rajo Defendants.  ECF No. 16.

82.    On April 18, 2018, the Court granted the Motion for Default, and ordered the Receiver to file a Motion for Default Judgment by May 18, 2018.  ECF No. 17.

**K.    Litigation - Kostiner Settlement**

83.    During the Compensation Period, Z&Z attorneys negotiated the settlement of causes of action that the Receiver believes he may hold against Shay Kostiner ("Kostiner")

84.    In 2013, Kostiner was the largest initial participant in the multi-manager trading platform then offered by Varacchi through Sentinel and Radar LP.  From September 24, 2013,

through November 7, 2013, Kostiner deposited a total of $5.7 million onto the platform.  From November 18, 2013, through April 1, 2014, Varacchi caused Sentinel to make a series of transfers to Kostiner in the aggregate amount of $7,142,082 (collectively, the "Kostiner Transfers").  The amount received by Kostiner in excess of his original principal deposits, specifically, $1,442,082, represents the "net profits" realized by Kostiner through the trading platform.

85.     As it has since become apparent, Varacchi operated a Ponzi scheme through Sentinel and Radar, LP from their inception in approximately August of 2013, through their discovery in approximately December, 2016.  "Once it is determined that a Ponzi scheme exists, all transfers made in furtherance of that Ponzi scheme are presumed to have been made with fraudulent intent." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015).

86.     Thus, the Receiver contends that the Kostiner Transfers constitute avoidable fraudulent transfers pursuant to CUFTA.  In his defense, Kostiner responded that the Kostiner Transfers were made in good faith and in exchange for reasonably equivalent value.  Under CUFTA, an otherwise avoidable fraudulent transfer may not be avoided if the transfer was made both in good faith and for reasonably equivalent value.  *See* Conn. Gen. Stat. § 52-552i(a).  The good faith and reasonably equivalent value elements constitute affirmative defenses; the burden of establishing each is on the party asserting it.

87.     Pursuant to Conn. Gen. Stat. § 52-552d(a):

Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

88.     As a result of Varacchi's conduct in connection with the Ponzi scheme he then operated and in inducing Kostiner to deposit $5,700,000 with him, Kostiner may have held a

restitution claim against Varacchi and the Receivership Defendants—to the extent of $5,700,000—at the time of the Kostiner Transfers. Accordingly, the satisfaction of Kostiner's restitution claim may have provided "value"—again, to the extent of $5,700,000—in exchange for the Kostiner Transfers. *See Armstrong v. Collins*, 2010 U.S. Dist. LEXIS 28075, at *67-69 (S.D.N.Y. Mar. 24, 2010) (citing, *inter alia*, *Scholes v. Lehmann*, 56 F.3d 750, 757, (7th Cir. 1995)).

89.    However, in the context of a Ponzi scheme such as the one operated by Varacchi, "virtually every court to address the question has held unflinchingly 'that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers.'" *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P.* (*In re Bayou Grp., LLC*), 362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007) (quoting *Soule v. Alliot* (*In re Tiger Petroleum Co.*), 319 B.R. 225, 239 (Bankr. N.D. Okla. 2004). Accordingly, the $1,442,082 in "net winnings" or "net profits" received by Kostiner was, as a matter of law, not transferred for value. Therefore, the Receiver contends that this amount is avoidable by the Receiver pursuant to CUFTA.

90.    The remaining issue which would be the subject of any litigation between the Receiver and Kostiner is whether Kostiner accepted the return of his $5,700,000 in principal deposited with the Receivership Entities in good faith. *Quantam Sail Design Grp., LLC v. Liberty Enters.*, No. 3:03cv281 (WWE), 2004 U.S. Dist. LEXIS 9679, at *6 (D. Conn. Mar. 26, 2004) ("The UFTA does not define the term good faith; however, Connecticut courts have borrowed from bankruptcy law where, in order to prove good faith, the transfer must have occurred in an arms-length bargain, and the transferee must have no intent to, or knowledge of the fact that transaction will, hinder, delay, or defraud others.").

91.    Ultimately, during the Compensation Period, Kostiner, his counsel and Z&Z

attorneys met in person to discuss the possibility of settlement.  Kostiner presented various facts and circumstances in his effort to establish his good faith in his participation in the Sentinel platform and receipt of the Kostiner Transfers from Sentinel.  Based upon this and the Receiver's independent investigation, the Receiver and Kostiner agreed, subject to this Court's approval, to settle the Receiver's claims in exchange for Kostiner's return to the Receivership Estate of the full amount of net profits Kostiner received in the total amount of $1,442,082.

92.     During the Compensation Period, and prior to the filing of this report, the parties negotiated and drafted the terms and conditions of their settlement into a written agreement (the "Kostiner Settlement Agreement") which does not include any admission of wrongdoing by Kostiner.  As of this filing, both parties have executed the Kostiner Settlement Agreement and the motion to approve the Kostiner Settlement Agreement is pending before this Court.  Although the Kostiner Settlement Agreement was not finalized and presented to the Court during the Compensation Period, the Receiver has included it in this Application as the bulk of the related work was completed during the Compensation Period.

## L.     Investigation into Weeden Prime Services, LLC

93.     During the Compensation Period, the Receiver and Z&Z attorneys continued their investigation into potential causes of action against Weeden Prime Services, LLC ("Weeden"). Specifically, Z&Z attorneys investigated Weeden's role in the Ponzi scheme Varacchi perpetuated through the Receivership Entities, whether Weeden had any knowledge of Varacchi's scheme or was otherwise on notice of any "red flags" which should have prompted Weeden's further inquiry into the Receivership Entities, and whether Weeden engaged in any actionable conduct.

94.     The Receiver's investigation of these and other claims against Weeden is in the preliminary stage.  The Receiver is not in a position at this time to report on such claims or predict

the likelihood or extent of any recovery.  The Receiver will not only have to assess the legal merits of any such claims but will also have to make a practical evaluation of the potential benefit to the Receivership Estate weighed against the cost of pursuing each claim.

95.    In the event that the Receiver determines that it is in the best interest of the Receivership Estate to initiate a lawsuit against Weeden, the Receiver will move to for leave to sue Weeden prior to commencing litigation against it.

   **M.**  **Investigation of Loans and Other Potential Litigation Claims**

96.    During the Compensation Period, Z&Z attorneys uncovered approximately $350,000 in undocumented loans (the "Loans") Varacchi caused Sentinel to extend to third-parties using Receivership Assets.  As of the conclusion of the Compensation Period, Z&Z attorneys had identified six (6) individuals (the "Loan Recipients") who received transfers of Undocumented Loan principal in amounts ranging between $25,000 and $120,000.

97.    During the Compensation Period, Z&Z attorneys attempted to contact the Loan Recipients to verify their debts to the Receivership Estate and to provide notice of their continuing obligation to pay all such obligations.  *See* Receivership Orders, ¶ 9.

98.    During the Report Period, Z&Z attorneys made a demand for repayment of the Loans on five (5) of the six (6) known Loan Recipients.  Prior to the conclusion of the Report Period, Z&Z attorneys had received responses from four (4) of these Loan Recipients.  To varying degrees, the Loan Recipients either denied receiving the proceeds from the Loans or denied that such transfers were made with any expectation of repayment.

99.    The Receiver continues to evaluate these additional potential claims and has not yet determined whether to initiate separate lawsuits or to continue to negotiate with the Loan

Recipients. The Receiver will move to for leave to sue the Loan Recipients prior to commencing litigation against them.

       **N.**      <u>**Investigation of Private Investments**</u>

      100.     During the Compensation Period, the Receiver continued to investigate the Private Investments.  The Receiver has researched and analyzed numerous entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

      101.     After reviewing the records of the Receivership Estate, as well as the documents produced pursuant to the Receiver's requests, the Receiver has preliminarily determined that the investments in Zipway LLC, Gravy, Inc., Invigilio, LLC, and Greenhouse Solutions, Inc. are unlikely to provide any value to the Estate.

      102.     During the Compensation Period, the Receiver, through Z&Z, subpoenaed documents and records from Kizzang, LLC ("Kizzang").  As a result, counsel for Kizzang represented to Z&Z attorneys that Kizzang had been evicted from its leased headquarters in Las Vegas and that Kizzang's former landlord was in possession of Kizzang's personal property – including the books and records requested in the Receiver's subpoena.  After the Compensation Period, counsel for Kizzang represented to Z&Z attorneys that Kizzang had negotiated a settlement with its former landlord, and that responsive documents would be forthcoming.  Based on information obtained from Varacchi, but not yet verified, Z&Z attorneys have reason to believe that – despite its mounting liabilities and apparent lack of liquid capital – Kizzang's intellectual property could potentially be a source of value to the Receivership Estate.

      103.     During the Compensation Period, Z&Z attorneys investigated and traced $500,000 in transfers from Sentinel to Entourage Funding, LLC ("Entourage").  Based on Z&Z's

investigation, it appears that Entourage was an investment vehicle for various recreational marijuana companies based out of Colorado. According to Varacchi and the attorney of Entourage, the transfers to Entourage were intended to buy out a membership interest in a marijuana retailer Doctors Orders, LLC. During the Compensation Period, the Receiver, through Z&Z, subpoenaed documents and records from Doctors Orders, LLC. After the Compensation Period, counsel for Doctors Orders, LLC contacted Z&Z attorneys to open up discussions regarding the scope of the subpoena. Based on the representations of Varacchi and the attorneys for Entourage and Doctors Orders, LLC, it appears that the $500,000 transferred from the Receivership Entities may be part of a larger ownership dispute between the principals of Doctors Orders, LLC and Entourage. Z&Z attorneys are actively monitoring the situation and evaluating the best strategy for maximizing the value of the transfers to Entourage for the benefit of the Receivership Estate.

104.    The Receiver and Z&Z attorneys are evaluating potential fraudulent transfer and other causes of action against Private Investment companies which received money from the Receivership Entities but did not provide the Receivership Estate with formal equity interests or other value.

### O.    <u>Disbursement of Assets</u>

105.    In accordance with the Court's Order Approving the Third Quarterly Fee Application (ECF No. 48), the Receiver has made the following distributions to Z&Z and V&L:

| Date | Recipient | Amount | Reason | Authority |
|------|-----------|--------|--------|-----------|
| 2/21/18 | Z&Z and V&L | $111,292.50 | 80% of Fees and 100% of Expenses from October 1, 2017 to December 31, 2017 | Order Approving Third Interim Fee Application (ECF No. 48) |

106.    The Receiver and Z&Z have assessed fees for their services and Z&Z has advanced all necessary expenses, which are requested for reimbursement through this Application.

(*See* Ex. C.)

107.    Provided that the Court awards the fees and expenses requested in this Application, appropriate disbursements will be reflected on the Receiver's next interim fee application filed after such award.

108.    The Receiver believes that, after the expiration of the second Bar Date and after evaluating any submitted Claims of New Creditors, the Claims administration process will have reached the threshold where a plan of pro rata distribution is appropriate for the Court's consideration and approval.  As discussed in greater detail in Section III. F. above, during the Compensation Period, the Receiver began drafting a Plan of Distribution which the Receiver intends to file in June 2018.

### P.    Anticipated Closure

109.    At this time, it is premature for the Receiver to speculate as to when this Receivership Proceeding will be ready to close.

### IV.    DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE

110.    The following assets are a part of the Receivership Estate:

      a.    The Receivership Account, which is valued at $2,296,776.83;

      b.    The ICBC Account, the value of which the Receiver is presently investigating;

      c.    The Private Investments, which value the Receiver is presently investigating; and

      d.    Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, including the claims against the TAM Defendants, the Sarroff Defendants, the Rajo Defendants, Kostiner, and the Potential Litigation Claims Defendants.

111.    With respect to the Private Investments, the Receiver has identified the following

securities:

> a. Kizzang: 3,600,000 Class C shares and 5,400,000 Class D shares, all evidenced by certificates identifying Varacchi as the owner of such interest;
>
> b. Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and
>
> c. StereoCast: 150,000 shares in the name of Varacchi, based on information provided by the President of StereoCast (who has represented in writing that he will send the Receiver a copy of the stock certificate evidencing such interest).

112.    The Receiver is investigating how best to liquidate and maximize the value of these equity interests in Kizzang, Greenhouse, and StereoCast.

## V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES

### A.    The Governing Legal Standard

113.    The District Court has the power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the Receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953 F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties.).

114.    The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his counsel and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).

115.    The case law and other authority may provide "convenient guidelines," but ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities*

*& Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

116.    In awarding counsel fees in Securities Act receiverships, "[t]he court will consider ... the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).

117.    While "results are always relevant," a good result may take a form other than a "bare increase in monetary value." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Overall results can be determined only at the conclusion of the Receivership Proceeding.

118.    Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483.

**B.    Application of the Governing Legal Standard to the Application**

119.    Based on the foregoing, the Receiver and Z&Z respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

120.    As more fully set forth throughout this Application and as detailed in the exhibits

submitted herewith, the issues addressed by the Receiver and Z&Z have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned years, consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions.  The Receiver and Z&Z have made substantial progress in investigating the Receivership Estate's assets and in commencing litigation on behalf of the Receivership Estate.

121.    The Receiver and Z&Z respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed expediently and efficiently.  Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

122.    At the same time, the Receiver and Z&Z have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

123.    Furthermore, the Commission has reviewed this Application and has stated that it has no objection to the approval of the professional fees and expenses requested herein.

124.    Accordingly, the Receiver and Z&Z submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties in interest.

C.    **Source and Manner of Payment**

125.    The Receivership Estate contains cash held in the Receivership Account.

126.    The Receiver and Z&Z request that the Court enter an order permitting the approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees) which shall be held in the Receivership Account pending this

Court's further order as to the disposition of such funds.

**WHEREFORE**, Jed Horwitt, Esq., Receiver, and Zeisler & Zeisler, P.C., counsel to the Receiver, respectfully request that (i) this Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $189,431.00 for legal services rendered during the Compensation Period, and $4,273.47 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; and (iii) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 11th day of May, 2018

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER

*/s/ Jed Horwitt*
Jed Horwitt, Receiver

ZEISLER & ZEISLER, P.C.,
COUNSEL TO RECEIVER

By: */s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)
Rion M. Vaughan (ct30440)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 245
Email: skindseth@zeislaw.com
rvaughan@zeislaw.com
His Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, Rion M. Vaughan, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System and also at http://jedhorwittreceiver.com/.


        */ s / Rion M. Vaughan*         
Rion M. Vaughan (ct30440)