**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 3:17-cv-00155-KAD |
| MARK J. VARACCHI and | ) |
| SENTINEL GROWTH FUND | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants, | ) |
| and | ) |
| | ) |
| RADAR ALTERNATIVE FUND LP and | ) |
| RADAR ALTERNATIVE MASTER FUND SPC, | ) |
| | ) |
| Relief Defendants. | ) |

**SIXTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES**
**INCURRED BY THE RECEIVER AND HIS PROFESSIONALS**

I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED ...................... 3
   A.    Discounts ................................................................................................ 7
   B.    Fee Schedules ......................................................................................... 7
   C.    Activity Categories ................................................................................. 9

II.   SUMMARY OF CASH ON HAND ................................................................. 10

III.  SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE ......................... 11
   A.    The Receiver's Website and Investor Contact ................................... 11
   B.    The Fifth Quarterly Status Report ...................................................... 11
   C.    Marshaling of Receivership Assets and Receipt of Assets by Receiver ....................... 12
   D.    Claims Administration and Plan of Distribution ............................... 12
   E.    Summary of V&L's Activity During the V&L Compensation Period ......................... 16
   F.    Litigation - TAM Action ...................................................................... 20
   G.    Litigation - Sarroff Action .................................................................. 23
   H.    Kostiner Settlement .............................................................................. 25
   I.    Investigation into Weeden Prime Services, LLC ............................... 26
   J.    Litigation - Rajo Action ....................................................................... 26
   K.    Investigation into and Demand upon Ralph Giorgio ....................... 28
   L.    Investigation of Private Investments .................................................. 29
   M.    Actual and Anticipated Disbursement of Assets ............................... 30
   N.    Anticipated Closure ............................................................................. 32

IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE ............................ 32

V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES ............. 33
   A.    The Governing Legal Standard ........................................................... 33
   B.    Application of the Governing Legal Standard to the Application ................. 34
   C.    Source and Manner of Payment ......................................................... 35

**SIXTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES
INCURRED BY THE RECEIVER AND HIS PROFESSIONALS**

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to this Court's Order Appointing Receiver entered May 1, 2017 (ECF No. 12, the "Receivership Order") and Order Reappointing Receiver (ECF No. 47, the "Reappointment Order", and together with the Receivership Order, the "Receivership Orders") entered February 14, 2018, respectfully submits this sixth interim application (the "Application") for professional fees and expenses incurred on behalf of the Receivership Estate (as defined in the Receivership Orders) by the Receiver and Z&Z during the period commencing July 1, 2018, through and including September 30, 2018 (the "Compensation Period"), and for the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L"), for the period commencing January 1, 2018 through and including September 30, 2018 (the "V&L Compensation Period").[1] In advance of filing, the Receiver shared this Application with counsel for the Commission, and the Commission's counsel has stated that the Commission has no objection to the approval of the professional fees and expenses requested herein.

In support of this Application, the Receiver, V&L, and Z&Z respectfully represent as follows:

**I.      SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED**

1.      Jed Horwitt, Esq. serves in his capacity as the Court-appointed Receiver for

---

[1] Due to the demands of the tax season, the medical issues of the senior partner responsible for this case and for other extenuating circumstances, the Receiver's accountant and financial advisor, V&L, was unable to provide their quarterly invoices for the two prior compensation periods (January 1, 2018 – June 30, 2018) before the deadline for filing the corresponding quarterly fee applications. V&L now seeks compensation for all three quarters and has included its invoices for this period.

Sentinel Growth Fund Management, LLC ("Sentinel"), Radar Alternative Fund LP ("Radar LP")

and Radar Alternative Master Fund SPC ("Radar SPC" and, together with Radar LP, collectively,

the "Relief Defendants," and the Relief Defendants together with Sentinel, collectively, the

"Receivership Entities").

      2.     This Application has been prepared in accordance with the Billing Instructions for

Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the

"SEC Guidelines") and the Receivership Orders.

      3.     Pursuant to the SEC Guidelines, the following exhibits are attached to this

Application:

a.     The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

b.     A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c.     A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as Exhibit C;

d.     Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as Exhibits D-1; D-2, D-3, D-4, D-5; D-7, D-8, D-9, D-10, and D-11.[2]

e.     A Certification of Compliance with the SEC Guidelines by V&L is attached hereto as Exhibit E;

f.     A summary of total expenses for which reimbursement is requested for V&L is attached hereto as Exhibit F; and

---

[2] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding, and pursuant to the Court's Order entered August 11, 2017 (ECF No. 25), Exs. D-1 through D-11 are filed under seal. Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

g.    Time records summarizing the work performed by V&L's accounting professionals and paraprofessionals for each of its Activity Categories (as hereinafter defined) during the V&L Compensation Period are attached hereto as Exhibits G-1, G-2, G-3, and G-4.

4.    The Receiver and Z&Z attorneys and paraprofessionals have expended a total of 720.9 hours working on this matter during the Compensation Period. The Receiver and Z&Z seek allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $193,082.00, and reimbursement of actual and necessary expenses in the amount of $22,761.20.

5.    The Receiver's accountant and financial advisor V&L's professionals and paraprofessional have expended a total of 415.6 hours working on this matter during the V&L Compensation Period (again, the three quarters from January 1, 2018 through September 30, 2018). V&L seeks allowance of compensation of services rendered during the V&L Compensation Period on behalf of the Receivership Estate in the amount of $104,088.80, and reimbursement of actual and necessary expenses in the amount of $415.26.

6.    The Receiver, V&L, and Z&Z acknowledge that their fee compensation is subject to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Orders.

7.    The fees assessed reflect the hours worked by the Receiver, Z&Z attorneys and paraprofessionals and V&L professionals and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z and V&L (described below).

8.    These amounts also take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the

specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Orders.

9.      Section III below summarizes the Receiver's administration of the Receivership Estate since his appointment. A narrative description of the particular services provided by the Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as Ex. D-1 through D-11. A narrative description of the particular services provided by V&L's professionals and paraprofessionals is included in the time records attached as Ex. G-1 through G-4.

10.     Z&Z's expense reimbursements requested are modest and principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) shipping charges; (iii) expenses associated with the Receiver's website; (iv) fees for service of subpoenas and complaints; (v) expert witness consulting fees; (vi) photocopying; (vii) processing and hosting of electronically stored information related to litigation relevant to the Receivership Proceeding; and (viii) online legal research. (*See* Ex. C.)

11.     V&L's expense reimbursements requested are especially modest and principally consist of the following: (i) storage charges; (ii) purchase of a hard drive; and (iii) shipping charges. (*See* Ex. F.)

12.     The Receiver, Z&Z and V&L have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime. Nor have the Receiver, Z&Z, and V&L requested reimbursement for any meals during the Compensation Period.

13.     The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies. V&L has not requested reimbursement for photocopying during the V&L Compensation Period.

### A.     <u>Discounts</u>

14.     As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Orders, the Receiver, V&L, and Z&Z have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

15.     More specifically, and as shown in the fee schedules set forth below, Z&Z and V&L have consented to 20% public service discounts to its regularly applicable hourly rates for all legal professionals and paraprofessionals.

16.     The Receiver originally agreed to discount his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver to $250 per hour, reflecting a 50% discount. Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time during this period.

### B.     <u>Fee Schedules</u>

17.     The fee schedule for the Receiver, showing: his name; the hourly rate applied to his services in this Receivership Proceeding and his customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his services during the Compensation Period; is as follows:

7

| Receiver | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Horwitt, Jed | $250 ($500) | $250 | 16.2 | $4,050.00 | $4,050.00 |

18.     The fee schedule for all Z&Z legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Blau, Christopher | $220 ($275) | $55 | 31.8 | $6,996.00 | $1,749.00 |
| Kindseth, Stephen | $340 ($425) | $85 | 110 | $37,400.00 | $9,350.00 |
| Moriarty, James | $320 ($400) | $80 | 0.2 | $64.00 | $16.00 |
| Romney, Aaron | $320 ($400) | $80 | 177.7 | $54,560.00 | $16,520.00 |
| Vaughan, Rion | $240 ($300) | $60 | 363.7 | $86,904.00 | $22,206.00 |

19.     The fee schedule for the legal paraprofessional who provided services during the Compensation Period, showing: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprofessional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Joseph, Kristen | $148 ($185) | $37 | 21.3 | $3,108.00 | $832.50 |

20.     The fee schedule for all V&L accounting professionals who provided services during the V&L Compensation Period, showing for each: his or her name; the hourly rate applied

to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the V&L Compensation Period; and the amount of the discount to his or her services during the V&L Compensation Period; is as follows:

| Accounting Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Bailey, P | $196 ($245) | $49 | 207.0 | $40,572.00 | $10,143.00 |
| Bailey, T | $280 ($350) | $70 | 56.4 | $15,792.00 | $3,948.00 |
| Brodeur | $252 ($315) | $63 | 3.4 | $856.80 | $214.20 |
| Flaherty | $196 ($245) | $49 | 29.2 | $5,723.20 | $1,430.80 |
| Jalbert | $372 ($465) | $93 | 3.2 | $1,190.40 | $297.60 |
| Kizito | $100 ($125) | $25 | 25.9 | $2,590.00 | $647.50 |
| Lowey | $372 ($465) | $93 | 11.3 | $4,203.40 | $1,051.10 |
| McDonald | $244 ($305) | $61 | 15.2 | $3,708.00 | $928.00 |
| Prete | $140 ($175) | $35 | 38.3 | $5,362.00 | $1,340.50 |
| Robinson | $252 ($315) | $63 | 1.1 | $277.20 | $69.30 |
| Schindler | $268 ($335) | $67 | 2.0 | $536.00 | $134.00 |
| Sturgeon | $268 ($335) | $67 | 2.8 | $750.40 | $187.60 |
| Whitehouse | $228 ($285) | $57 | 98.8 | $22,526.40 | $5,631.60 |

C.     **Activity Categories**

21.     Pursuant to the SEC Guidelines, the Receiver, V&L, and Z&Z have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

Activity Categories Utilized by Receiver and Legal Professionals

a.      Category One: Case Administration, 24.9 hours, $6,453.40 (*see* Ex. D-1);

b.      Category Two: Asset Analysis & Recovery, 31.4 hours, $7,559.00 (*see* Ex. D-2);

c.      Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d.      Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

  e.  Category Five: Claims Administration & Objections, 47.6 hours, $12,514.00 (*see* Ex. D-5);

  f.  Category Six: Application for Professional Fees and Expenses, the Receiver and Z&Z are not including time incurred for these services in their Application (*see* Ex. D-6);

  g.  Category Seven: Litigation – Taran Asset Management, LLC, *et al*., 42.6 hours, $9,784.40 (*see* Ex. D-7); and

  h.  Category Eight: Litigation – A. L. Sarroff Management, LLC, *et al*., 402.2 hours, $110,917.60 (*see* Ex. D-8).

  i.  Category Nine: Litigation – Shay Kostiner, 0.8 hours, $173.60 (*see* Ex. D-9).

  j.  Category Ten: Litigation – Weeden Prime Services, LLC, 168.2 hours, $44,912.00 (*see* Ex. D-10).

  k.  Category Eleven: Litigation – Rajo Corp., 3.2 hours, $768.00 (*see* Ex. D-11).

<div align="center">Activity Categories Utilized by Accounting Professionals</div>

  a.  Category One: Tax Return Preparation, 142.6 hours, $31,296.00 (*see* Ex. G-1);

  b.  Category Two: Data Analysis, 175.5 hours, $37,008.80 (*see* Ex. G-2);

  c.  Category Three: Forensic Accounting, 114.8 hours, $17,869.60 (*see* Ex. G-3); and

  d.  Category Four: Expert Report Preparation, 61.2 hours, $17,914.40 (*see* Ex. G-4).

## II. **SUMMARY OF CASH ON HAND**

  22.  The Receiver's cash on hand is held in the Receivership Account (as hereinafter defined), the balance of which, as of September 30, 2018, is $3,608,618.39. This constitutes an increase of $1,444,756.06 during the Compensation Period. (*See* Ex. A.)

III.   **SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE**

During the Compensation Period, the Receiver diligently exercised his duties pursuant to the terms of the Receivership Orders and made significant progress in investigating, marshalling and liquidating Receivership Assets for distribution to the holders of Claims against the Receivership Estate. Items requiring significant work by the Receiver and his professionals, as discussed in more detail below, were finalizing the plan of distribution and the motion seeking its approval and related relief, investigating and analyzing additional causes of action, and continuing to litigate previously commenced civil actions.

23.   Utilizing Z&Z as his legal professionals and V&L as his accountants and financial advisors, the Receiver has undertaken the following on behalf of the Receivership Estate:

A.   **The Receiver's Website and Investor Contact**

24.   At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com – that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

25.   The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information.

26.   Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the Receivership Proceeding and the claims management procedures discussed herein.

B.   **The Fifth Quarterly Status Report**

27.   The Receiver and Z&Z also prepared and, on August 1, 2018, filed the Fifth Quarterly Status Report (ECF No. 63). In drafting the Fifth Quarterly Status Report, the Receiver and Z&Z compiled comprehensive information to update the Court, the Commission and all other

parties-in-interest as to the Receiver's operations, the Receivership Estate's assets, the status of various litigation and Claims against the Receivership Estate.

### C.    Marshaling of Receivership Assets and Receipt of Assets by Receiver

28.    Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and like fiduciaries), which account (the "Receivership Account") holds funds marshaled by the Receiver and constitutes a Receivership Asset.

29.    Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.

30.    During the Compensation Period, the Receivership Account accrued interest at a rate of 0.33% monthly, amounting to total interest payments of $2,674.06 for the Compensation Period.

31.    As discussed in more detail in Section H below, on July 26, 2018, the Receiver accepted payment of $1,442,082 from Shay Kostiner in satisfaction of the Receivership Estate's claims against him.

### D.    Claims Administration and Plan of Distribution

32.    On July 12, 2018, the Receiver filed his *Motion for Entry of an Order Approving and Authorizing the Receiver's Proposed (i) Pooling Assets and Liabilities of Receivership Entities (ii) Allowance of Certain Claims, (iii) Plan of Distribution, and (iv) Related Relief* (ECF No. 62, the "Motion for Plan Approval"), which requested that the Court approve the following:[3]

a.    The pooling of assets of the Receivership Entities and the *pro rata* distribution

---

[3]  Copies of the Motion for Plan Approval and its exhibits are available free of charge at www.jedhorwittreceiver.com.

to the holders of Allowed Claims, as discussed in greater detail in **Section IV** of the Motion for Plan Approval;

b. The application of the legal and equitable principles and "Claims Calculation Methodology"[4] applied by the Receiver in evaluating and determining the timely filed Claims, as described in **Section V** of the Motion for Plan Approval;

c. The allowance of certain Claims in the amounts proposed by the Receiver as set forth in Exhibit A submitted with the Motion for Plan Approval;

d. The classification and treatment of Allowed Claims as set forth in **Section VI. A.** of the Motion for Plan Approval;

e. An interim distribution of in Receivership Assets to holders of Allowed Claims in accordance with Rising Tide Method (defined and described below) to the Creditors and in the amounts as set forth in Exhibit C or such other gross amount as determined by the Receiver to be appropriate under the circumstances (the "Proposed Interim Distribution") and **Section VI. B-C.** of the Motion for Plan Approval;

f. The distribution procedures governing the Proposed Interim Distribution and future interim distributions, as set forth in **Section VI. D.** of the Motion for Plan Approval; and,

g. The establishment of a Reserve Account as provided for in **Section VI. E.** of the Motion for Plan Approval.

33.    In response to filing the Motion for Plan Approval, the Receiver received: (i) a limited objection to the Receiver's calculation of the pre-receivership recovery percentage of Flatiron Partners, LP ("Flatiron's Limited Objection"), and (ii) a Claim asserted by a Takashi Hashimoto who had been timely served with the Notice of Claims Procedure for Asserting Claims, Bar Date and Proof of Claim Instructions (*see* ECF No. 24, the "Claims Procedure Order") and failed to timely submit a Proof of Claim (the "Late Claim").

---

[4] The Receiver's Fourth Quarterly Status Report previously characterized the Claims Calculation Method as the "Net Investment Method". (*See* ECF No. 56 at fn.2.) Although there are significant overlaps in the Claims Calculation Method and the Net Investment Method in their application to determining the amount of a given Claim against a receivership estate, the Receiver has determined that use of the term "Net Investment Method" was ambiguous because the "Net Investment Method" is often used to encompass both the method of calculating Claims and the method for making a distribution on account of Claims calculated using the Net Investment Method. As discussed in greater detail in Section VI. B-C of the Motion for Plan Approval, the Receiver has determined that the Rising Tide Method ***of distribution*** is more equitable than the Net Investment Method of distribution in the present case. Accordingly, the Receiver has adopted the term "Claims Calculation Method" in order to avoid any confusion with the Net Investment Method of distribution, which this Court approved by its Plan Approval Order.

34.    Flatiron's Limited Objection asserts that the Receiver overstated the amount of Flatiron's capital contributions and the amount of its pre-receivership distributions. Specifically, Flatiron contends that the Receiver overstated both amounts by $2 million because the Receiver's calculations included $2 million that Flatiron sent to Radar on January 15, 2015, and $2 million that Flatiron withdrew on February 26, 2015. In his calculation of Flatiron's recovery percentage, the Receiver included the initial $2 million deposit and $2 million withdrawal, concluding that Flatiron recovered 43.1% of its investment pre-receivership ($3,057,931 received on account of $7,100,921 invested). If the initial $2 million deposit and withdrawal are excluded, however, Flatiron recovered only 20.74% of its investment pre-receivership ($1,057,931 received on account of $5,100,921 invested).

35.    During the Compensation Period, Z&Z attorneys investigated the legal basis and factual assertions related to Flatiron's Limited Objection and, to date, have not reached any conclusion. Fortunately, even assuming Flatiron's Limited Objection correctly calculates Flatiron's pre-receivership recovery percentage, Flatiron would not be entitled to receive an initial distribution. As discussed in greater detail in the Motion for Plan Approval, only Claimants who recovered pre-receivership less than 20.1% of their pre-receivership investment would be entitled to an initial distribution under the Rising Tide Method (assuming the Receiver determined to distribute $3,100,000 in the Initial Distribution), and Flatiron's own proposed calculation puts its pre-receivership recovery at 20.7%.

36.    In order to avoid any further delay in making distributions to the other Claimants, Flatiron and the Receiver agreed that Flatiron's right to dispute its pre-receivership recovery percentage calculation would be preserved as timely, and that the Receiver will hold any amounts to which Flatiron might be entitled from subsequent distributions, based upon a pre-receivership

recovery percentage of 20.74%, until the Limited Objection is determined by agreement or adjudication.

37.     During the Compensation Period, Z&Z attorneys similarly reviewed the Late Claim asserted by Hashimoto. Pursuant to the Claims Procedure Order, the applicable bar date for the Late Claim was set for 5:00 p.m. on September 27, 2018. Paragraph 5 of the Claims Procedure Order provides:

> Any Creditor who fails to deliver a Proof of Claim to the Receiver fully in accordance with this Claims Procedure Order and the Notice of Claims Procedure, including, but not limited to, on or before the Bar Date, shall be barred and precluded from receiving any distribution from the Receiver in this receivership proceeding unless and until all timely filed and allowed Claims and all expenses of administering the receivership estate have been paid in full.

38.     In compliance with the Claims Procedure Order, Z&Z attorneys served Hashimoto with Notice of Claims Procedure for Asset Claims, Bar Date, Proof of Claim Instruction, and the form of the Proof of Claim by first class U.S. mail on August 3, 2017. (*See* ECF No. 36, Cert. of Serv. re: Claims Procedure Order). Despite receiving such service, Hashimoto has not since submitted the completed Proof of Claim form or sought from the Court any relief from the Claims Procedure Order.

39.     Accordingly, the Receiver has determined that Hashimoto's Claim is barred pursuant to the Claims Procedure Order.

40.     On September 21, 2018, Judge Bolden transferred this proceeding to this Court.

41.     On October 4, 2018, after the Compensation Period, the Court entered its order authorizing and approving the relief sought in the Motion for Plan Approval. (ECF No. 69, the "Plan Approval Order").

42.     On October 5, 2018, Z&Z attorneys filed a supplement to the Motion for Plan Approval in order to inform the Court of the issues related to Flatiron's Limited Objection and the

Late Claim. (ECF No. 70, the "Supplement").[5] The Supplement represented to the Court that neither of these developments required a modification to the relief granted by the Plan Approval Order other than the substitution of the Exhibit C (the "Proposed Interim Distribution") of the Plan Approval Order with Exhibit A of the Supplement (the "Amended Proposed Interim Distribution") to reflect the reservation of rights pertaining to Flatiron.

43.     On October 9, 2018, the Court approved the requested substitution of the Proposed Interim Distribution with the Amended Proposed Interim Distribution without otherwise modifying the relief granted by the Plan Approval Order. As set forth in Section M below, the Receiver anticipates making a distribution in accordance with the Amended Proposed Interim Distribution before the end of the 2018 calendar year.

E.     **Summary of V&L's Activity During the V&L Compensation Period**

44.     In summary, during the V&L Compensation Period, V&L undertook the following on behalf of the Receivership Estate and at the direction of the Receiver and his counsel:

a.     Administration of Tax Matters

45.     During the time the Receivership Entities were under his control, Varacchi did not file state or federal tax returns—or other similar required tax reporting documentation—for any of the Receivership Entities. This failure had serious implications on the Receiver's administration of the Receivership Estate. Pursuant to 31 U.S.C. § 3713, "Federal Tax Claims" are entitled to priority of payment, and must be paid in full before "General Claims" (i.e. the Claims of investors and creditors) can be paid. Consistent with the statutory priority for Federal Tax Claims, the Plan Approval Order establishes that all other "Tax Claims" are substantially similar to Federal Tax

---

[5]Although the Supplement was not presented to the Court during the Compensation Period, the Receiver has included it in this Application as the bulk of the related work was completed during the Compensation Period.

Claims and are therefore entitled to equal priority treatment. Finally, paragraph 8(xi) of the Plan Approval Order requires the Receiver to make adequate reserves for Claims that are not yet allowed, such as Tax Claims.

46.     In order to effectively administer the Receivership Estate, it was necessary for the Receiver to independently determine, through the employment of V&L, the potential tax liability of each Receivership Entity, and to take whatever steps necessary to cure tax filing deficiencies or to otherwise minimize the tax exposure of the Receivership Estate.

47.     During the V&L Compensation Period, V&L engaged in significant forensic accounting to recreate the financial history and tax documentation necessary to determine the Receivership Entities' tax liability and to satisfy the Receivership Entities' tax reporting obligations.

48.     V&L's work on the Receivership Entities' tax returns is ongoing. However, V&L has determined that because the Receivership Entities never realized taxable gains due to Varacchi's theft the Receivership Estate's tax liability is limited to the amount of fees and penalties incurred as a consequence of not filing tax returns during the period of Varacchi's control.[6] Accordingly, the Receiver will make the appropriate reserves for unfiled Tax Claims.

49.     During the V&L Compensation Period, V&L also undertook the necessary steps to maintain the Receivership Entities' tax compliance. For example, paragraph 21 of the Receivership Orders requires the Receiver to: "take all necessary steps to enable proceeds from the Receivership Assets to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable." As contemplated by the Receivership Orders, establishing a "Settlement Fund" provides beneficial

---

[6] The Receiver will review whether these penalties and fees can be waived on the grounds of Varacchi's misconduct and the intervention of this Receivership Proceeding.

tax treatment for Receivership Assets, which will allow for a higher distribution to the holders of Allowed Claims. During the V&L Compensation Period, V&L and Z&Z attorneys filed the necessary documentations with the Internal Revenue Service to establish and maintain such beneficial treatment.

50.     Prior to the Compensation Period, but during the V&L Compensation Period, V&L also assisted Z&Z attorneys in the preparation of the Motion for Plan Approval by advising Z&Z attorneys on the tax implications of the plan of distribution, verifying the accuracy of submitted Claims, and determining the amounts to be held in reserve on account of unfiled Tax Claims.

>     b.   Data Management and Analysis

51.     Immediately after his appointment, the Receiver compiled documents from a variety of sources pertaining to Varacchi, Sentinel, and the Relief Defendants, and has since continued to accumulate such documents (the "Accumulated Data").

52.     Prior to the Compensation Period, but during the V&L Compensation Period, V&L provided the Receiver with access to V&L's internal data management infrastructure and services for managing and analyzing the Accumulated Data. In this capacity, V&L hosted the Accumulated Data, applied search terms to the Accumulated Data at the direction of Z&Z attorneys, and provided Z&Z attorneys with the results of such searches.

53.     Ultimately, the Receiver determined that the cost of a third-party vendor was reasonably likely to be more cost-effective for the Receivership Estate. After consulting with the Commission, the Receiver engaged Empire Discovery as a third-party e-discovery vendor to assist with managing the Accumulated Data.

54.     Consistent with the SEC Guidelines, the Receiver has requested reimbursement only for the amount billed by Empire Discovery and paid by the Receiver to Empire Discovery.

During the Compensation Period, Empire Discovery billed $16,864.21 for services related to the management and hosting of the Accumulated Data and other documents produced in ongoing litigation.[7] Z&Z advanced this amount as a necessary expense and, by this Application, requests reimbursement.

<div style="text-align:center">c.   <u>Forensic Accounting and Expert Report Preparation</u></div>

55.     During the V&L Compensation Period, V&L commenced its investigation into and analysis of the financial activity and other circumstances involving Varacchi, Sentinel, and the Relief Defendants, and, in particular, whether Varacchi operated a Ponzi scheme from approximately September 2013, through December, 2016.

56.     As party of this forensic accounting, V&L examined Varacchi's use of funds invested in or loaned to Sentinel and the Relief Defendants to specifically identify and determine the extent of his misappropriations.

57.     V&L also examined the sources and timing of deposits (again, investments or loans) and evaluated whether new funds had to be used by Varacchi to pay withdrawals to prior investors.

58.     Related to the tracing of deposits and withdrawals, V&L analyzed the Relief Defendants' monthly brokerage account statements to recreate the profit and losses actually realized by the Relief Defendants from their securities trading activity.  V&L sought to determine whether trading profits generated the funds necessary to meet investor demands for repayment, or whether losses further compounded the enterprise's need for new funds to meet investor demands. Together with Z&Z, V&L also compared the actual profits and losses of the Relief Defendants to the representations Varacchi had made to investors regarding the performance of the Relief

---

[7] Copies of Empire Discovery's invoices are attached to <u>Exhibit C</u>.

Defendants.

59.     V&L also during the V&L Compensation Period began to compile its findings concerning the above and related matters, and articulate them and its expert opinions in a written report for the Receiver.

**F.     Litigation - TAM Action**

60.     During the Compensation Period, the Receiver and Z&Z continued to prosecute their lawsuit, *Jed Horwitt Esq., Receiver v. Taran Asset Management, LLC et al.*, (Civil Action No.: 3:17-cv-01840-KAD) (the "TAM Action"), against Taran Asset Management, LLC ("TAM"), Christopher Gleason ("Gleason" and, together with TAM, the "Appearing TAM Defendants"), and Baseline Advisors, LLC ("Baseline" and, together with the Appearing TAM Defendants, the "TAM Defendants") in the United States District Court for the District of Connecticut.

61.     The TAM Action originally sought to recover pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA"), approximately $1.2 million that Varacchi caused Sentinel to pay allegedly to or for the benefit of the TAM Defendants.

62.     Prior to the Compensation Period, Z&Z attorneys uncovered evidence that appeared to show that Varacchi had caused Sentinel to pay certain debts incurred by TAM prior to Sentinel's existence and at a time when Varacchi was TAM's Chief Operating Officer. In total, from October 15, 2013, through November 30, 2016, Varacchi, in furtherance of his Ponzi scheme, apparently used assets of the Receivership Entities or caused Sentinel to make a series of transfers to such creditors of TAM for the benefit of the Appearing TAM Defendants in the aggregate amount of $390,279.88 (the "TAM Debt Transfers").

63.     In the course of settlement negotiations, the Appearing TAM Defendants produced substantial financial records to Z&Z attorneys. This production included bank records which

demonstrated how the proceeds of the settlement payment Varacchi had caused Sentinel to pay to TAM were disbursed. Z&Z attorneys traced approximately $730,000 of the settlement payment proceeds (the "Subsequent Transfers") to just three parties – Edmond Tschan, Robin Taxman, and Myron Taxman (together, the "Subsequent Transferee Defendants") – each of whom the Receiver has reason to believe did not receive the Subsequent Transfers in good faith.

64.     Accordingly, prior to the Compensation Period, on June 15, 2018, Z&Z attorneys filed a motion to amend the complaint to (i) to add allegations to existing causes of action to recover an additional $390,279.88 in TAM Debt Transfers, and (ii) to assert a new cause of action against and to join the Subsequent Transferee Defendants as defendants based on their status as subsequent transferees (ECF No. 40, the "Motion to Amend").

65.     In total, the Motion to Amend and the attached third amended complaint ("Third Amended Complaint") increased the total amount claimed in the TAM Action to $1,860,029.

66.     As a result of the filing of the Motion to Amend, counsel for the Appearing TAM Defendants informed the Court that the settlement conference previously scheduled for July 17, 2018 would not be productive, and the Court cancelled the settlement conference. Shortly thereafter, on July 19, 2018, primary counsel for the Appearing TAM Defendants filed a motion to withdraw as counsel of record (ECF No. 42), which the Court granted on July 20, 2018 (ECF No. 43).

67.     On July 26, 2018, the Court entered its order granting the relief requested in the Motion to Amend (ECF No. 45).

68.     On August 1, 2018, Z&Z attorneys filed the Third Amended Complaint (ECF No. 47), and on August 2, 2018, the Court issued its summons on the Subsequent Transferee Defendants.

69.     On September 7, 2018, Z&Z attorneys met with Gleason and local counsel for the Appearing TAM Defendants to discuss the possibility of a global settlement. At the September 7 meeting, Gleason informed Z&Z attorneys that the Third Amended Complaint misidentified Gleason's wife (one of the Subsequent Transferee Defendants) as Rachael Taxman, instead of using her correct name, Robin Taxman.

70.     Gleason also denied that any of the TAM Debt Transfers corresponded to goods and/or services actually provided to TAM, and that the transfers had not been made for TAM's benefit. Rather, Gleason stated that the TAM Debt Transfers constituted additional frauds perpetrated upon Sentinel (and its investors) by Varacchi, and that Gleason and TAM had no role whatsoever in such fraudulent conduct.

71.     On September 12, 2018, Z&Z attorneys amended the Third Amended Complaint solely to correct the name of the defendant, as Robin Taxman. (ECF No. 52, the "Fourth Amended Complaint"). On September 13, 2018, the Court issued an updated summons on the Subsequent Transferee Defendants (ECF No. 53) which Z&Z attorneys successfully served on Robin Taxman and Edmond Tschan later that day.

72.     Despite numerous attempts, Z&Z attorneys had been unsuccessful in serving the remaining Subsequent Transferee Defendant, Myron Taxman. Z&Z attorney's investigation revealed that Myron Taxman sold his Illinois residence in August 2018 and is now living in Florida. On October 13, 2018, the Plaintiff's process server posted a copy of the Fourth Amended Complaint on the front door of Myron Taxman's Florida residence.  Since such service does not satisfy the Federal Rules of Civil Procedure, the Plaintiff also arranged for Myron Taxman to be served pursuant to Conn. Gen. Stat. § 52-59b and Fed. R. Civ. P. 4(e)(1) on October 26, 2018.  The Plaintiff anticipates filing proof of such service immediately upon its receipt from the state

marshal.

G.     **Litigation - Sarroff Action**

73.     During the Compensation Period, the Receiver and Z&Z continued to prosecute their lawsuit, *Jed Horwitt Esq., Receiver v. Alan Sarroff et al.*, (Civil Action No.: 3:17-cv-01902-VAB) (the "Sarroff Action") against Alan L. Sarroff ("Sarroff") and A.L. Sarroff Management, LLC ("Sarroff, LLC", and collectively, the "Sarroff Defendants"), in the United States District Court for the District of Connecticut. The Sarroff Action seeks to recover pursuant to CUFTA over $14 million that Varacchi caused Sentinel to pay to or for the benefit of the Sarroff Defendants (the "Sarroff Transfers").

74.     The Sarroff Transfers sought to be avoided as fraudulent transfers consist in: (i) the $7.3 million three-day loan repayment on a loan originally made to cover a day trading margin call; (ii) the recovery of the $125,000 "fee" for that loan and the additional $25,000 "kicker"; and (iii) the recovery of the "investment" related transfers totaling in excess of $7.7 million.

75.     Prior to the Compensation Period, the Receiver engaged in significant motion practice relating to the Sarroff Defendants' challenge to the legal sufficiency of the Receiver's Complaint filed in the Sarroff Action. (*See* ECF Nos. 25, 31, 41, and 45). Generally speaking, the issues briefed in the Motion to Dismiss and related filings fall into two categories: (i) whether a plaintiff seeking to avoid a fraudulent transfer under § 52-552e(a)(1) of CUFTA must plead that the transferee received the voidable transfer with fraudulent intent, and (ii) whether, in the context of a Ponzi scheme, the return of a transferee's principal is unavoidable as a matter of law. As of the date of this Application, the District Court (Bolden, J.) has not ruled on the Motion to Dismiss.

76.     Prior to the Compensation Period, on May 11, 2018, the Receiver served the Sarroff Defendants with his first set of Interrogatories and Requests for Production (the "Receiver's Discovery Requests").

77. During the Compensation Period, Z&Z attorneys negotiated with counsel to the Sarroff Defendants to resolve any objections they may have to the Receiver's Discovery Requests and to ensure the Sarroff Defendants' timely compliance with their obligations under the Federal Rules of Civil Procedure.

78. As a result of Z&Z's efforts, on July 13, 2018, the Sarroff Defendants partially complied with the Receiver's Discovery Requests and produced over 18,000 pages of responsive documents and communications (the "July 13 Documents").

79. Z&Z attorneys engaged in an extensive review of the July 13 Documents in order to develop further the documentary record necessary to satisfy the Receiver's burden of proof in the Sarroff Action and rebut the Sarroff Defendants' affirmative defenses. For example, and without limitation, Z&Z attorneys reviewed the July 13 Documents to determine the extent to which the Sarroff Defendants lacked "good faith" under CUFTA at the time they received the Sarroff Transfers.

80. Z&Z's investigation of the July 13 Documents uncovered significant evidence in favor of the Receiver's claims against the Sarroff Defendants; it also opened up new avenues of investigation, which Z&Z attorneys have pursued by issuing third-party subpoenas against relevant third-parties in both the Sarroff Action and this Receivership Proceeding.

81. On a parallel track to litigating the Sarroff Action, Z&Z attorneys also diligently pursued the prospect of settling the claims asserted in the Sarroff Action with the Sarroff Defendants. To that end, the parties agreed to participate in a confidential settlement conference (the "Settlement Conference") with United States' Magistrate Judge Robert Richardson.

82. In anticipation of the Settlement Conference, Z&Z attorneys voluntarily produced a curated selection of the documentary evidence establishing, in the Receiver's opinion, the Sarroff

Defendants' lack of "good faith". Together with V&L, Z&Z attorneys responded to various objections and questions posed by counsel to the Sarroff Defendants. Z&Z attorneys also prepared a confidential settlement conference memorandum articulating the factual and legal predicates supporting the Receiver's causes of action against the Sarroff Defendants for Judge Richardson's review.

83.     The Settlement Conference was held on September 27, 2018. The parties did not reach a settlement at the Settlement Conference. However, the parties have agreed to participate in a second settlement conference to be held at some point in January, 2018.

84.     After the Compensation Period but prior to the filing of this Application, on October 26, 2018, Z&Z attorneys filed a motion to amend the complaint against the Sarroff Defendants, and to join A.L. Sarroff Fund, LLC ("Sarroff Fund") as a defendant in the Sarroff Action (ECF No. 52, the "Sarroff Motion to Amend").  The proposed amended complaint alleges, *inter alia*, in the alternative, that Sarroff, LLC received the alleged fraudulent transfers as agent for Sarroff Fund and, therefore, Sarroff Fund is in fact the initial transferee liable to return the fraudulent transfers or pay their value to the Receivership Estate. The deadline to respond to the Sarroff Motion to Amend is November 16, 2018.

**H.     Kostiner Settlement**

85.     Prior to the Compensation Period, Z&Z attorneys drafted the motion to approve the Kostiner Settlement Agreement (ECF No. 57, the "Motion to Approve"), and filed it with the Court on May 3, 2018. On May 22, 2018, the Court granted the Motion to Approve and entered an order approving the Kostiner Settlement Agreement. (ECF No. 61, the "Order Approving Kostiner Settlement".)

86.     According to the terms of the Kostiner Settlement Agreement, Kostiner was obligated to make payment of $1,442,082 to the Receiver within ten (10) days of the Order Approving Kostiner Settlement becoming a "Final Order" as that term is defined in the Kostiner Settlement Agreement. (*See* ECF No. 57-1 at ⁋ 5.)

87.     On July 22, 2018, during the Compensation Period, the Order Approving Kostiner Settlement became a Final Order.

88.     On July 26, 2018, in compliance with the Kostiner Settlement Agreement and the Order Approving Kostiner Settlement, Kostiner wired $1,442,082 to the Receivership Account.

**I.      Investigation into Weeden Prime Services, LLC**

89.     During the Compensation Period, the Receiver and Z&Z attorneys continued their investigation into potential causes of action against Weeden Prime Services, LLC ("Weeden Prime").

90.     From the inception of Sentinel and Radar, L.P., in approximately September, 2013, through the collapse of Varacchi's Ponzi scheme in or about December, 2016, Weeden Prime was the Receivership Entities' introducing prime broker-dealer.

91.     The Receiver's investigation of claims against Weeden Prime is ongoing. The Receiver is not in a position at this time to report on such claims or predict the likelihood or extent of any recovery. The Receiver will not only have to assess the legal merits of any such claims but will also have to make a practical evaluation of the potential benefit to the Receivership Estate weighed against the cost of pursuing each claim.

92.     In the event that the Receiver determines that it is in the best interest of the Receivership Estate to initiate a lawsuit against Weeden Prime, the Receiver will move to for leave to sue Weeden Prime prior to commencing litigation against it.

**J.      Litigation - Rajo Action**

26

93.     During the Compensation Period, the Receiver and Z&Z continued its lawsuit, *Jed Horwitt Esq., Receiver v. Rajo Corp. d/b/a Rajo Capital Management et al.*, (Civil Action No.: 3:17-cv-02077-JCH) (the "Rajo Action) against Rajo Corp. d/b/a Rajo Capital Management ("Rajo"), Victor J. Danilevics ("Danilevics"), and Tobyn Ingebrigtson ("Ingebrigtson", and collectively, the "Rajo Defendants") in the United States District Court for the District of Connecticut. The Rajo Action seeks to recover approximately $204,000 that Varacchi caused Sentinel to pay to or for the benefit of the Rajo Defendants pursuant to CUFTA.

94.     Prior to the Compensation Period, counsel for the Rajo Defendants informed Z&Z attorneys that the Rajo Defendants did not intend to settle the Rajo Action nor would they file an appearance and respond to the Receiver's complaint. On May 18, 2018, the Receiver filed his Motion for Default Judgment, seeking judgment against the Rajo Defendants in the amount of $204,000. (ECF No. 18.)

95.     On July 24, 2018, the Court entered a ruling conditionally granting the Motion for Default Judgment subject to the Receiver withdrawing counts two, three, and four of the complaint. (ECF No. 19.) The following day, on July 25, 2018, Z&Z attorneys filed notice with the Court of the Receiver's withdrawal of counts two, three, and four of the complaint without prejudice. (ECF No. 20.)

96.     On July 26, 2018, the Court entered default judgment in favor of the Receiver and against Rajo Corp in the amount of $176,127.16, against Danilevics in the amount of $3,000, and against Ingebrigtson in the amount of $25,500. (ECF No. 22.)

97.     During the Compensation Period, Z&Z attorneys contacted several collections attorneys in Arizona, where the Rajo Defendants reside, in order to determine the most cost-effective method of liquidating the default judgment against the Rajo Defendants for the benefit

of the Receivership Estate, and they continue to pursue this possible avenue of recovery.

**K.**     **Investigation into and Demand upon Ralph Giorgio**

98.     During the Compensation Period, Z&Z attorneys continued their investigation into potential causes of action against Ralph Giorgio ("Giorgio").

99.     Giorgio became a manager on the Sentinel platform and was added to Sentinel's payroll in December 2015. From December 2015 to May 2016, Giorgio received a gross monthly salary of $2,058.34 from Sentinel. In June 2016, at Giorgio's request, Varacchi caused Sentinel to increase Giorgio's gross monthly salary to $20,000. From June 2016 until the collapse of Varacchi's Ponzi scheme, Giorgio received more than $120,000 from Sentinel (the "Giorgio Transfers").

100.     Upon information and belief, Sentinel did not receive any value in exchange for the Giorgio Transfers. The Giorgio Transfers were not a draw upon incentive-based payments as Giorgio did not manage sufficient assets on the Sentinel platform to justify the amount received. Rather, upon information and belief, the Giorgio Transfers were made with the expectation that the money would be repaid either to Sentinel or Varacchi.

101.     Prior to the Compensation Period, Z&Z attorneys served Giorgio with a settlement offer. Giorgio allowed the offer to lapse by failing to respond within the provided time period. However, after the offer lapsed, Z&Z attorneys were contacted by an attorney for Giorgio.

102.     Z&Z attorneys met with Giorgio's attorney to discuss settlement of the Receiver's claims against Giorgio. Although the parties have not reached a settlement as of the date of this Application, the parties believe a mutually beneficial resolution is possible, and have agreed to meet in person in October or November 2018 to discuss the possible terms of such an agreement.

103.     The Receiver's investigation of these and other claims against Giorgio is ongoing. The Receiver is not in a position at this time to report on such claims or predict the likelihood or

extent of any recovery. The Receiver will not only have to assess the legal merits of any such claims but will also have to make a practical evaluation of the potential benefit to the Receivership Estate weighed against the cost of pursuing each claim.

104.    In the event that the Receiver determines that it is in the best interest of the Receivership Estate, the Receiver will move to for leave to sue Giorgio prior to commencing litigation against it or take such other action as the Receiver determines appropriate and in the best interest of the Receivership Estate under the circumstances.

### L.    Investigation of Private Investments

105.    During the Compensation Period, the Receiver continued to investigate the Private Investments. The Receiver has researched and analyzed numerous entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

106.    After reviewing the records of the Receivership Estate, as well as the documents produced pursuant to the Receiver's requests, the Receiver has preliminarily determined that the investments in Zipway LLC, Gravy, Inc., Invigilio, LLC, and Greenhouse Solutions, Inc. are unlikely to provide any value to the Estate. Comparatively, the Receiver has not yet determined if the value realized by liquidating the Receivership Estate's interests in Kizzang, Entourage, Roots, and StereoCast would justify the costs of doing so.

107.    The Receiver has engaged in the process of determining how to liquidate the Receivership Estate's interest in Kizzang, Entourage, Roots, and StereoCast in such a way as to maximize the value available for distribution to Claimants.

108.    At the same time, the Receiver and Z&Z attorneys are evaluating potential fraudulent transfer and other causes of action against the companies underlying the Private Investments.

## M.  **Actual and Anticipated Disbursement of Assets**

109.   The Receiver made no disbursements during the Compensation Period.

110.   After the Compensation Period but before the filing of this Application, in accordance with the Court's Order Approving the Receiver's Fifth Interim Application for Professional Fees and Expenses (ECF No. 68), the Receiver made the following distribution to Z&Z:[8]

| Date | Recipient | Amount | Reason | Authority |
|------|-----------|--------|--------|-----------|
| October 5, 2018 | Z&Z | $145,216.60 | 80% of Fees and 100% of Expenses from April 1, 2018 to June 30, 2018 | Order Approving Fifth Interim Fee Application (ECF No. 68) |

111.   The Receiver, V&L, and Z&Z have incurred fees for their services and Z&Z have advanced all necessary expenses, which are requested for reimbursement through this Application. (*See* Exs. C and F.)

112.   Provided that the Court awards the fees and expenses requested in this Application, appropriate disbursements will be reflected on the Receiver's next interim fee application filed after such award.

113.   After receipt of the $1,442,082 in accordance with the terms of the Kostiner Settlement Agreement, the Receiver held approximately $3,605,358 in the Receivership Account as of the end of the Compensation Period.

114.   As set forth in the Court's Plan Approval Order, the Receiver is authorized to distribute up to $3,100,000 of the cash available in the Receivership Account to the holders of

---

[8] The $145,216.60 distribution to Z&Z was not made during the Compensation Period but has been included here in compliance with the SEC Guidelines. This amount is not included in the SFAR attached hereto as Exhibit A which is limited to transactions and information applicable during the Compensation Period only.

Allowed Claims in accordance with the Rising Tide Method as set forth in Exhibit C of the Plan Approval Order (the "Initial Distribution"). As contemplated in paragraph 8(xi) of the Plan Approval Order, the actual amount to be distributed will depend upon the reserves necessary to fund the continued administration of the Receivership Estate, including the ongoing litigation of its causes of action and liquidation of its other assets.

115.    The Receiver fully anticipates making an Initial Distribution to the holders of Allowed Claims no later than the end of the 2018 calendar year.

116.    Before making the Initial Distribution, ⁋ 8(xi) of the Plan Approval Order requires the Receiver to fund an account with adequate reserves to ensure that if a Remaining Disputed Claim (as that term is used in the Motion for Plan Approval) is Allowed, the Receiver shall have funds left to pay such Allowed Claim in the amount provided for in the Plan of Distribution for such category of Claimant (the "Reserve Account"). To that end, consistent with the treatment of "Remaining Disputed Claims" set forth in Exhibit B to the Plan Approval Order, the Receiver shall deposit the appropriate amounts into the Reserve Account on account of ICBC's potentially secured claim, the potential Initial Distributions due Advanced Entertainment and N. Fortino, and possible Tax Claims.

117.    After establishing the Reserve Account, the Receiver will include updates on the status of the Reserve Account and the Remaining Disputed Claims in the Receiver's Quarterly Reports.

118.    Pursuant ⁋ 8(vii) of the Plan Approval Order, in order to receive a distribution, holders of Allowed Claims:

> [M]ust submit to the Receiver either a completed W-9 form, if the holder is treated as a United States entity or citizen by the Internal Revenue Service, or W-8 form, if the holder is treated as a non-U.S. entity or citizen by the Internal Revenue Service. The holder of an Allowed Claim that fails to provide either a W-9 or W-8

form (as applicable) within 180 days of the entry of the Order Approving Plan of Distribution becoming final and no longer appealable shall be deemed to have forfeited any distribution to which they would otherwise be entitled (a "Forfeited Distribution").

119.     Accordingly, the Receiver anticipates contacting each Allowed Claim holder to inform them the terms of the Plan Approval Order and to collect the required documentation. After these prerequisites are satisfied, the Receiver will be authorized to make the Initial Distribution.

**N.     Anticipated Closure**

120.     At this time, it is premature for the Receiver to speculate as to when this Receivership Proceeding will be ready to close.

**IV.     DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE**

121.     As of the end of the Compensation Period, the following assets are a part of the Receivership Estate:

a.     The Receivership Account, which was valued at $3,608,618.39 as of the end of the Compensation Period;

b.     The Private Investments, which value the Receiver is presently investigating; and

c.     Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, including, but not limited to, the claims against the TAM Defendants, the Sarroff Defendants, the Rajo Defendants, Kostiner, Weeden Prime, Kizzang, Entourage, and Giorgio.

122.     With respect to the Private Investments, the Receiver has identified the following securities:

a.     Kizzang: 3,600,000 Class C shares, 5,400,000 Class D shares, and 1,152,666 Class E evidenced by certificates identifying Varacchi as the owner of such interest;

b.     Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and

c.    StereoCast: 150,000 shares in the name of Varacchi, evidenced by a certificate identifying Varacchi as the owner of such interest.

123.    The Receiver is investigating how best to liquidate and maximize the value of these equity interests in Kizzang, Entourage, Roots, and StereoCast.

## V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES

### A.    The Governing Legal Standard

124.    The District Court has the power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the Receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953 F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties.).

125.    The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his counsel and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).

126.    The case law and other authority may provide "convenient guidelines," but ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

127.    In awarding counsel fees in Securities Act receiverships, "[t]he court will consider ... the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach*

*Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).

128.     While "results are always relevant," a good result may take a form other than a "bare increase in monetary value." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Overall results can be determined only at the conclusion of the Receivership Proceeding.

129.     Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483.

### B.     <u>Application of the Governing Legal Standard to the Application</u>

130.     Based on the foregoing, the Receiver, Z&Z and V&L respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

131.     As more fully set forth throughout this Application and as detailed in the exhibits submitted herewith, the issues addressed by the Receiver, Z&Z and V&L have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned years, consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions. The Receiver, Z&Z and V&L have made substantial progress in investigating the Receivership Estate's assets and in commencing litigation on behalf of the Receivership Estate.

132.     The Receiver, Z&Z and V&L respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed expediently and efficiently. Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

133.     At the same time, the Receiver, Z&Z and V&L have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

134.     Furthermore, the Commission has reviewed this Application and has stated that it has no objection to the approval of the professional fees and expenses requested herein.

135.     Accordingly, the Receiver, Z&Z and V&L submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties-in-interest.

### C.     <u>Source and Manner of Payment</u>

136.     The Receivership Estate includes cash held in the Receivership Account. The Receiver, Z&Z and V&L request that the Court enter an order permitting the approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees) which shall be deposited in the Reserve Account.

**WHEREFORE**, Jed Horwitt, Esq., Receiver, and Zeisler & Zeisler, P.C., counsel to the Receiver, respectfully request that (i) this Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $193,082.00 for legal services rendered during the Compensation Period, and $22,761.20 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (iii) V&L be awarded an allowance of $104,088.80 for services rendered during the V&L Compensation Period, and $415.26 for the reimbursement of expenses, subject to a 20%

holdback applicable to fees for services; and (iv) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 5th day of November, 2018

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER

*/s/ Jed Horwitt*
Jed Horwitt, Receiver

ZEISLER & ZEISLER, P.C.,
COUNSEL TO RECEIVER
By: */s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)
Rion M. Vaughan (ct30440)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 245
Email: skindseth@zeislaw.com
        rvaughan@zeislaw.com
His Attorneys

### <u>CERTIFICATE OF SERVICE</u>

I, Rion M. Vaughan, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System and also at http://jedhorwittreceiver.com/.

<div style="margin-left: 50%;">

*/s/ Rion M. Vaughan*

Rion M. Vaughan (ct30440)

</div>