# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 3:17-cv-00155-VAB |
| MARK J. VARACCHI and | ) | |
| SENTINEL GROWTH FUND | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| RADAR ALTERNATIVE FUND LP and | ) | |
| RADAR ALTERNATIVE MASTER FUND SPC, | ) | |
| | ) | |
| Relief Defendants. | ) | |

## SEVENTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS

I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED ...................... 3
    A.    Discounts ......................................................................................................... 6
    B.    Fee Schedules .................................................................................................. 7
    C.    Activity Categories .......................................................................................... 9

II.   SUMMARY OF CASH ON HAND ............................................................................ 10

III.  SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE ......................... 11
    A.    The Receiver's Website and Investor Contact .............................................. 12
    B.    The Sixth Quarterly Status Report ................................................................ 12
    C.    Joint Status Report ........................................................................................ 12
    D.    Marshaling of Receivership Assets and Receipt of Assets by Receiver ........ 13
    E.    Supplement to the Plan of Distribution ........................................................ 13
    F.    Claims Administration and Initial Distribution ............................................. 16
    G.    Litigation - TAM Action ................................................................................ 19
    H.    Litigation – Sarroff Action ............................................................................ 23
    I.    Further Investigation into and Demand upon Weeden Prime Services, LLC and Related Persons ........................................................................................................... 29
    J.    Investigation into and Demand upon Ralph Giorgio .................................... 30
    K.    Investigation of Private Investments ............................................................. 32
    L.    Actual and Anticipated Disbursement of Assets ........................................... 34
    M.    Anticipated Closure ...................................................................................... 35

IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE ................................. 35

V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES ............. 36
    A.    The Governing Legal Standard ..................................................................... 36
    B.    Application of the Governing Legal Standard to the Application ................. 37
    C.    Source and Manner of Payment .................................................................... 38

## SEVENTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to this Court's Order Appointing Receiver entered May 1, 2017 (ECF No. 12, the "Receivership Order") and Order Reappointing Receiver (ECF No. 47, the "Reappointment Order", and together with the Receivership Order, the "Receivership Orders") entered February 14, 2018, respectfully submits this seventh interim application (the "Application") for professional fees and expenses incurred on behalf of the Receivership Estate (as defined in the Receivership Orders) by the Receiver, Z&Z, and the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L") during the period commencing October 1, 2018, through and including December 31, 2018 (the "Compensation Period"). In advance of filing, the Receiver shared this Application with counsel for the Commission, and the Commission's counsel has stated that the Commission has no objection to the approval of the professional fees and expenses requested herein.

In support of this Application, the Receiver, V&L, and Z&Z respectfully represent as follows:

## I.      SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED

1.      Jed Horwitt, Esq. serves in his capacity as the Court-appointed Receiver for Sentinel Growth Fund Management, LLC ("Sentinel"), Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC" and, together with Radar LP, collectively, the "Relief Defendants," and the Relief Defendants together with Sentinel, collectively, the "Receivership Entities").

2.     This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines") and the Receivership Orders.

3.     Pursuant to the SEC Guidelines, the following exhibits are attached to this Application:

a.     The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

b.     A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c.     A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as Exhibit C;

d.     Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as Exhibits D-1; D-2, D-3, D-4, D-5; D-7, D-8, D-9, D-10, and D-11.[1]

e.     A Certification of Compliance with the SEC Guidelines by V&L is attached hereto as Exhibit E;

f.     A summary of total expenses for which reimbursement is requested for V&L is attached hereto as Exhibit F; and

g.     Time records summarizing the work performed by V&L's accounting professionals and paraprofessionals for each of its Activity Categories (as hereinafter defined) during the V&L Compensation Period are attached hereto as Exhibits G-1; G-2, G-3, and G-4.

4.     The Receiver and Z&Z attorneys and paraprofessionals have expended a total of

---

[1] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding, and pursuant to the Court's Order entered August 11, 2017 (ECF No. 25), Exs. D-1 through D-11 are filed under seal. Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

619.9 hours working on this matter during the Compensation Period. The Receiver and Z&Z seek allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $168,969.60, and reimbursement of actual and necessary expenses in the amount of $26,947.88.

5.      The Receiver's accountant and financial advisor V&L's professionals and paraprofessional have expended a total of 209.4 hours working on this matter during the Compensation Period. V&L seeks allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $49,166.00, and reimbursement of actual and necessary expenses in the amount of $0.00.

6.      The Receiver, V&L, and Z&Z acknowledge that their fee compensation is subject to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Orders.

7.      The fees assessed reflect the hours worked by the Receiver, Z&Z attorneys and paraprofessionals and V&L professionals and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z, and V&L (described below).

8.      These amounts also take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Orders.

9.      Section III below summarizes the Receiver's administration of the Receivership Estate since his appointment. A narrative description of the particular services provided by the

Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as Ex. D-1 through D-11. A narrative description of the particular services provided by V&L's professionals and paraprofessionals is included in the time records attached as Ex. G-1 through G-4.

10.     Z&Z's expense reimbursements requested are principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) shipping charges; (iii) expenses associated with the Receiver's website; (iv) fees for service of subpoenas and complaints; (v) expert witness consulting fees; (vi) photocopying; (vii) processing and hosting of electronically stored information related to litigation relevant to the Receivership Proceeding; and (viii) online legal research. (*See* Ex. C.)

11.     V&L did not incur any expenses during the Compensation Period. (*See* Ex. F.)

12.     The Receiver, Z&Z, and V&L have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime. Nor have the Receiver, Z&Z, and V&L requested reimbursement for any meals during the Compensation Period.

13.     The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies. V&L has not requested reimbursement for photocopying during the Compensation Period.

A.     **Discounts**

14.     As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Orders, the Receiver, V&L, and Z&Z have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

15.     More specifically, and as shown in the fee schedules set forth below, Z&Z and V&L have consented to 20% public service discounts to its regularly applicable hourly rates for all legal professionals and paraprofessionals.

16.     The Receiver originally agreed to discount his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver to $250 per hour, reflecting a 50% discount. Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time during this period.

**B.     Fee Schedules**

17.     The fee schedule for the Receiver, showing: his name; the hourly rate applied to his services in this Receivership Proceeding and his customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his services during the Compensation Period; is as follows:

| Receiver | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Horwitt, Jed | $250 ($500) | $250 | 9.8 | $2,450.00 | $2,450.00 |

18.     The fee schedule for all Z&Z legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

7

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Cesaroni, John | $240 ($300) | $60 | .6 | $144.00 | $36.00 |
| Kindseth, Stephen | $340 ($425) | $85 | 69.6 | $23,664.00 | $5,916.00 |
| Moriarty, James | $320 ($400) | $80 | 1 | $320.00 | $80.00 |
| Romney, Aaron | $320 ($400) | $80 | 170.9 | $54,688.00 | $13,672.00 |
| Vaughan, Rion | $240 ($300) | $60 | 361.3 | $86,712.00 | $21,678.00 |

19. The fee schedule for the legal paraprofessional who provided services during the Compensation Period, showing: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprofessional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Joseph, Kristen | $148 ($185) | $37 | 6.7 | $991.60 | $247.90 |

20. The fee schedule for all V&L accounting professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Accounting Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Bailey, P | $196 ($245) | $49 | 60.7 | $11,897.20 | $2,974.30 |
| Bailey, T | $280 ($350) | $70 | 43.5 | $12,180.00 | $3,045.00 |
| Flaherty | $196 ($245) | $49 | 20.7 | $4,057.20 | $1,014.30 |
| Lowey | $372 ($465) | $93 | 5.4 | $2,008.80 | $502.20 |

| Sturgeon | $268 ($335) | $67 | 24.7 | $6,619.60 | $1,654.90 |
| Whitehouse | $228 ($285) | $57 | 54.4 | $12,403.20 | $3,100.80 |

**C.** **Activity Categories**

21. Pursuant to the SEC Guidelines, the Receiver, V&L, and Z&Z have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

<u>Activity Categories Utilized by Receiver and Legal Professionals</u>

a. Category One: Case Administration, 26.1 hours, $6,905.00 (*see* Ex. D-1);

b. Category Two: Asset Analysis & Recovery, 19.3 hours, $4,636.00 (*see* Ex. D-2);

c. Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d. Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

e. Category Five: Claims Administration & Objections, 48.8 hours, $12,186.00 (*see* Ex. D-5);

f. Category Six: Application for Professional Fees and Expenses, the Receiver and Z&Z are not including time incurred for these services in their Application (*see* Ex. D-6);

g. Category Seven: Litigation – Taran Asset Management, LLC, *et al*., 54.3 hours, $14,741.40 (*see* Ex. D-7); and

h. Category Eight: Litigation – A. L. Sarroff Management, LLC, *et al*., 366.1 hours, $100,344.60 (*see* Ex. D-8).

i. Category Nine: Litigation – Shay Kostiner, 0 hours, $0.00 (*see* Ex. D-9).

j. Category Ten: Litigation – Weeden Prime Services, LLC, 105.3 hours, $30,156.60 (*see* Ex. D-10).

k. Category Eleven: Litigation – Rajo Corp., 0 hours, $0.00 (*see* Ex. D-11).

Activity Categories Utilized by Accounting Professionals

a.      Category One: Tax Return Preparation, 55.2 hours, $13,474.40 (*see* Ex. G-1);

b.      Category Two: Data Analysis, 92.4 hours, $20,262.80 (*see* Ex. G-2);

c.      Category Three: Forensic Accounting, 0 hours, $0.00 (*see* Ex. G-3); and

d.      Category Four: Expert Report Preparation, 61.8 hours, $15,428.80 (*see* Ex. G-4).

## II.   SUMMARY OF CASH ON HAND

22.     During the Compensation Period, in accordance with the terms of the Plan Approval Order (as defined and discussed in greater detail in Section IV-E below), the Receiver made distributions totaling $2,136,712.30 to the holders of Allowed Claims[2]. This amount is sufficient to bring the total recovery on account of Allowed Claims to at least 19.1% under the "Rising Tide Method" of distribution.

23.     Also in accordance with the Plan Approval Order, prior to making the initial distribution on account of Allowed Claims, the Receiver transferred $801,365.01 from the Receivership Account (as defined and discussed in Section IV-D below) to a newly established segregated account (the "Reserve Account") to "ensure that if a Remaining Disputed Claim is Allowed, the Receiver shall have funds left to pay such Allowed Claim in the amount provided for in the Plan of Distribution for such category of Claimant." *See* Plan Approval Order § 8(xi). Z&Z attorneys consulted with V&L to ensure that the Reserve Account was established as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, and that the establishment and funding of the Reserve Account did not disrupt the Receivership Account's Qualified Settlement Fund status.

---

[2] Capitalized terms not otherwise defined shall have the meaning attributed to them in the *Motion for Entry of an Order Approving and Authorizing the Receiver's Proposed (i) Pooling Assets and Liabilities of Receivership Entities (ii) Allowance of Certain Claims, (iii) Plan of Distribution, and (iv) Related Relief* (ECF No. 62, the "Motion for Plan Approval") and the Plan Approval Order (as defined in Section E below).

24.    During the Compensation Period, as discussed in greater detail in Section IV-L below, the Receiver made distributions on account of authorized administrative expenses totaling $406,129.40 to Z&Z and V&L in accordance with Court's Order Approving the Receiver's Fifth Interim Application for Professional Fees and Expenses (ECF No. 68) and the Court's Order Approving the Receiver's Sixth Interim Application for Professional Fees and Expenses (ECF No. 81).

25.    The Receiver's cash on hand is held in the Receivership Account and the Reserve Account. As of December 31, 2018, the balance of the Receivership Account is $226,278.96, and the balance of the Reserve Account is 801,365.01.[3] The total cash on hand in the Receivership Account and the Reserve Account is $1,067,643.97. This combined balance reflects a decrease of $2,542,841.70 during the Compensation Period. (*See* Ex. A.)

III.    <u>SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE</u>

During the Compensation Period, the Receiver diligently exercised his duties pursuant to the terms of the Receivership Orders and made significant progress in investigating, marshalling and liquidating Receivership Assets for distribution to the holders of Allowed Claims against the Receivership Estate. Items requiring significant work by the Receiver and his professionals, as discussed in more detail below, were, in summary, coordinating the initial distribution to the holders of Allowed Claims pursuant to the Plan Approval Order, investigating and analyzing additional causes of action, and continuing to litigate previously commenced civil actions.

26.    Utilizing Z&Z as his legal professionals and V&L as his accountants and financial advisors, the Receiver has undertaken the following on behalf of the Receivership Estate:

---

[3] As explained more fully in Section V-C below, while the Receiver seeks the allowance of certain fees and expenses by this Application, he does not intend to pay such authorized fees and expenses until there have been further recoveries so that sufficient funds have been reserved for certain litigation and ordinary administrative expenses.

A.      **The Receiver's Website and Investor Contact**

27.      At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com – that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

28.      The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information.

29.      Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the Receivership Proceeding and the claims management procedures discussed herein.

B.      **The Sixth Quarterly Status Report**

30.      The Receiver and Z&Z also prepared and, on October 31, 2018, filed the Sixth Quarterly Status Report (ECF No. 74). In drafting the Sixth Quarterly Status Report, the Receiver and Z&Z compiled comprehensive information to update the Court, the Commission and all other parties-in-interest as to the Receiver's operations, the Receivership Estate's assets, the status of various litigation and Claims against the Receivership Estate.

C.      **Joint Status Report**

31.      On September 21, 2018, prior to the Compensation Period, Judge Bolden transferred this proceeding to Judge Dooley.[4] (ECF No. 66.)

32.      On October 17, 2018, this Court entered an order requesting the submission of a status report including basic information regarding reassigned cases. (ECF No. 72.)

33.      Z&Z attorneys coordinated with the SEC to prepare this joint status report

---

[4] After the Compensation Period, on January 31, 2019, Judge Dooley entered her Order of Transfer transferring this proceeding back to Judge Bolden.  (ECF No. 85.)

responding the Court's order regarding reassigned cases, which was filed on October 30, 2018. (ECF No. 73.)

D.     **Marshaling of Receivership Assets and Receipt of Assets by Receiver**

34.     Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and like fiduciaries), which account (the "Receivership Account") holds funds marshaled by the Receiver and constitutes a Receivership Asset.

35.     Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.

36.     During the Compensation Period, the Receivership Account accrued interest at a rate of 0.33% monthly, amounting to total interest payments of $1,867.28 for the Compensation Period.

E.     **Supplement to the Plan of Distribution**

37.     Prior to the Compensation Period, on July 12, 2018, the Receiver filed his *Motion for Entry of an Order Approving and Authorizing the Receiver's Proposed (i) Pooling Assets and Liabilities of Receivership Entities (ii) Allowance of Certain Claims, (iii) Plan of Distribution, and (iv) Related Relief* (ECF No. 62, the "Motion for Plan Approval"), which requested that the Court approve the following:[5]

    a.    The pooling of assets of the Receivership Entities and the *pro rata* distribution to the holders of Allowed Claims, as discussed in greater detail in **Section IV** of the Motion for Plan Approval;

    b.    The application of the legal and equitable principles and "Claims Calculation Methodology" applied by the Receiver in evaluating and determining the timely

---

[5] Copies of the Motion for Plan Approval and its exhibits are available free of charge at www.jedhorwittreceiver.com.

filed Claims, as described in **Section V** of the Motion for Plan Approval;

c.  The allowance of certain Claims in the amounts proposed by the Receiver as set forth in <u>Exhibit A</u> submitted with the Motion for Plan Approval;

d.  The classification and treatment of Allowed Claims as set forth in **Section VI. A.** of the Motion for Plan Approval;

e.  An interim distribution of in Receivership Assets to holders of Allowed Claims in accordance with Rising Tide Method (defined and described below) to the Creditors and in the amounts as set forth in <u>Exhibit C</u> or such other gross amount as determined by the Receiver to be appropriate under the circumstances (the "Proposed Interim Distribution") and **Section VI. B-C.** of the Motion for Plan Approval;

f.  The distribution procedures governing the Proposed Interim Distribution and future interim distributions, as set forth in **Section VI. D.** of the Motion for Plan Approval; and,

g.  The establishment of a Reserve Account as provided for in **Section VI. E.** of the Motion for Plan Approval.

38.     In response to filing the Motion for Plan Approval, the Receiver received: (i) a limited objection to the Receiver's calculation of the pre-receivership recovery percentage of Flatiron Partners, LP ("Flatiron's Limited Objection"), and (ii) a Claim asserted by a Takashi Hashimoto who had been timely served with the Notice of Claims Procedure for Asserting Claims, Bar Date and Proof of Claim Instructions (*see* ECF No. 24, the "Claims Procedure Order") and failed to timely submit a Proof of Claim (the "Late Claim").

39.     Flatiron's Limited Objection asserts that the Receiver overstated the amount of Flatiron's capital contributions and the amount of its pre-receivership distributions. Specifically, Flatiron contends that the Receiver overstated both amounts by $2 million because the Receiver's calculations included $2 million that Flatiron sent to Radar on January 15, 2015, and $2 million that Flatiron withdrew on February 26, 2015. In his calculation of Flatiron's recovery percentage, the Receiver included the initial $2 million deposit and $2 million withdrawal, concluding that Flatiron recovered 43.1% of its investment pre-receivership ($3,057,931 received on account of $7,100,921 invested). If the initial $2 million deposit and withdrawal are excluded, however,

Flatiron recovered only 20.74% of its investment pre-receivership ($1,057,931 received on account of $5,100,921 invested).

40.     Prior to and during the Compensation Period, Z&Z attorneys investigated the legal basis and factual assertions related to Flatiron's Limited Objection and, to date, have not reached any conclusion. Fortunately, even assuming Flatiron's Limited Objection correctly calculates Flatiron's pre-receivership recovery percentage, Flatiron would not be entitled to receive an initial distribution. As discussed in greater detail in the Motion for Plan Approval, only Claimants who recovered less than 20.1% of their pre-receivership investment could be entitled to an initial distribution under the Rising Tide Method (assuming a distribution of $3,100,000 - the maximum distribution authorized), and Flatiron's own proposed calculation puts its pre-receivership recovery at 20.7%.

41.     In order to avoid any further delay in making distributions to the other Claimants, Flatiron and the Receiver agreed that Flatiron's right to dispute its pre-receivership recovery percentage calculation would be preserved as timely, and that the Receiver will hold any amounts to which Flatiron might be entitled from subsequent distributions, based upon a pre-receivership recovery percentage of 20.74%, until the Limited Objection is determined by agreement or adjudication.

42.     During the Compensation Period, Z&Z attorneys similarly reviewed the Late Claim asserted by Hashimoto. Pursuant to the Claims Procedure Order, the applicable bar date for the Late Claim was set for 5:00 p.m. on September 27, 2018. Paragraph 5 of the Claims Procedure Order provides:

> Any Creditor who fails to deliver a Proof of Claim to the Receiver fully in accordance with this Claims Procedure Order and the Notice of Claims Procedure, including, but not limited to, on or before the Bar Date, shall be barred and precluded from receiving any distribution from the Receiver in this receivership

proceeding unless and until all timely filed and allowed Claims and all expenses of administering the receivership estate have been paid in full.

43.     In compliance with the Claims Procedure Order, Z&Z attorneys served Hashimoto with Notice of Claims Procedure for Asset Claims, Bar Date, Proof of Claim Instruction, and the form of the Proof of Claim by first class U.S. mail on August 3, 2017. (*See* ECF No. 36, Cert. of Serv. re: Claims Procedure Order). Despite receiving such service, Hashimoto has not since submitted the completed Proof of Claim form or sought from the Court any relief from the Claims Procedure Order.

44.     Accordingly, the Receiver has determined that Hashimoto's Claim is barred pursuant to the Claims Procedure Order.

45.     On October 4, 2018, the Court entered its order authorizing and approving the relief sought in the Motion for Plan Approval. (ECF No. 69, the "Plan Approval Order").

46.     On October 5, 2018, Z&Z attorneys filed a supplement to the Motion for Plan Approval in order to inform the Court of the issues related to Flatiron's Limited Objection and the Late Claim. (ECF No. 70, the "Supplement"). The Supplement represented to the Court that neither of these developments required a modification to the relief granted by the Plan Approval Order other than the substitution of the Exhibit C (the "Proposed Interim Distribution") of the Plan Approval Order with Exhibit A of the Supplement (the "Amended Proposed Interim Distribution") to reflect the reservation of rights pertaining to Flatiron.

47.     On October 9, 2018, the Court approved the requested substitution of the Proposed Interim Distribution with the Amended Proposed Interim Distribution without otherwise modifying the relief granted by the Plan Approval Order. (ECF No. 71.)

F.     **Claims Administration and Initial Distribution**

48.     As set forth in the Court's Plan Approval Order, the Receiver was authorized to

distribute a maximum of $3,100,000 from the cash available in the Receivership Account to the holders of Allowed Claims in accordance with the Rising Tide Method of distribution.

49.     As contemplated in paragraph 8(xi) of the Plan Approval Order, the Receiver, in the exercise of his reasonable judgment and considering the need to fund the ongoing administrative expenses of the Receivership Estate (including the ongoing litigation of its causes of action and liquidation of its other assets), determined that amount to be distributed should be $2,900,000 (the "Initial Distribution").

50.     Before making the Initial Distribution, the Plan Approval Order required the satisfaction of two conditions: *first*, the Reserve Account had to be funded with sufficient reserves "to ensure that if a Remaining Disputed Claim is Allowed, the Receiver shall have funds left to pay such Allowed Claim in the amount provided for in the Plan of Distribution for such category of Claimant", *see* Plan Approval Order § 8(xi); and, *second*, each holder of an Allowed Claim had to submit to the Receiver "either a completed W-9 form, if the holder is treated as a United States entity or citizen by the Internal Revenue Service, or W-8 form, if the holder is treated as a non-U.S. entity or citizen by the Internal Revenue Service", *see* Plan Approval Order § 8(vii).

51.     Accordingly, during the Compensation Period, consistent with the treatment of "Remaining Disputed Claims" set forth in Exhibit B to the Plan Approval Order, the Receiver deposited the following amounts into the Reserve Account:

| Remaining Disputed Claimant | Source | Amount Reserved |
|---|---|---|
| Potential Tax Claims | Receivership Account | $10,000.00 |
| Advanced Entertainment, LLC | Share of Initial Distribution if Allowed | $518,329.15 |
| N. Fortino | Share of Initial Distribution if Allowed | $238,305.87 |
| ICBC | Share of Initial Distribution if Allowed in the Amount of $6,652.69; Balance Reserved in Case Allowed as a Secured Claim in the Amount of $28,077.31. Transferred from Receivership Account | $34,730.00 |
| **TOTAL** | | **$801,365.01** |

52.     In conjunction with establishing and funding the Reserve Account, the Receiver contacted each holder of an Allowed Claim to inform them the terms of the Plan Approval Order and to collect the required tax documentation.

53.     On November 27, 2018, the Receiver issued checks from to each holder of an Allowed Claim, in the amount set forth below:

| **Allowed Claim Holder** | **Amount Distributed** |
|---|---:|
| B. McLaughlin | $ 19,155.44 |
| C. Ferrante | $ 95,777.22 |
| Dartley Grandchildren, LLC | $ 176,230.08 |
| GRTD, LLC | $ 957,772.20 |
| Recovery Fund I, LLC | $ 95,777.22 |
| S. Banerjee | $ 19,155.44 |
| T. Deutsch | $ 191,554.44 |
| Abacus Group, LLC | $ 9,403.74 |
| Anchor Associates Group, Inc. | $ 13,843.18 |
| Cogent Communications, Inc. | $ 936.25 |
| Greybox Creative | $ 7,805.84 |
| K. Agoglia | $ 473,170.05 |
| T. Milana | $ 38,959.52 |
| TAM Industries, LLC | $ 12,043.17 |
| D. Foley and B. Long | $ 25,128.51 |
| **TOTAL** | **$ 2,136,712.30** |

54.     As of the filing of this Application, each holder of an Allowed Claim listed above had received and deposited their Initial Distribution check.

55.     Accordingly, the Receiver has completed his Initial Distribution, bringing to pre-receivership recovery of all holders of Allowed Claims to 19.1% as calculated under the Rising Tide Method of distribution.

56.     During the Compensation Period, Z&Z attorneys further investigated the Receivership Estate's basis for objecting to the Remaining Disputed Claims. In consultation with the Commission, the Receiver hopes to resolve some, if not all, of the Remaining Disputed Claims early in the 2019 calendar year.

G.     **Litigation - TAM Action**

57.     During the Compensation Period, the Receiver and Z&Z continued to prosecute

their lawsuit, *Jed Horwitt Esq., Receiver v. Taran Asset Management, LLC et al.*, (Civil Action No.: 3:17-cv-01840-KAD) (the "TAM Action"), against Taran Asset Management, LLC ("TAM"), Christopher Gleason ("Gleason" and, together with TAM, the "TAM Defendants"), and Baseline Advisors, LLC ("Baseline" and, together with the TAM Defendants, the "Original TAM Defendants") in the United States District Court for the District of Connecticut.

58.     The TAM Action originally sought to recover pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA"), approximately $1.2 million that Varacchi caused Sentinel to pay allegedly to or for the benefit of the Original TAM Defendants.

59.     Prior to the Compensation Period, Z&Z attorneys uncovered evidence that appeared to show that Varacchi had caused Sentinel to pay certain debts incurred by TAM prior to Sentinel's existence and at a time when Varacchi was TAM's Chief Operating Officer. In total, from October 15, 2013, through November 30, 2016, Varacchi, in furtherance of his Ponzi scheme, apparently used assets of the Receivership Entities or caused Sentinel to make a series of transfers to such creditors of TAM for the benefit of the TAM Defendants in the aggregate amount of $390,279.88 (the "TAM Debt Transfers"). In the course of settlement negotiations, the TAM Defendants produced substantial financial records to Z&Z attorneys in an effort to demonstrate that collection of a judgment against these parties was unlikely and impractical. This production included bank records which demonstrated how the proceeds of the settlement payment Varacchi had caused Sentinel to pay to TAM were disbursed. Z&Z attorneys traced approximately $730,000 of the settlement payment proceeds (the "Subsequent Transfers") to just three parties – Edmond Tschan, Robin Taxman, and Myron Taxman (together, the "Subsequent Transferee Defendants") – each of whom the Receiver has reason to believe did not receive the Subsequent Transfers in

good faith.

60.     Accordingly, prior to the Compensation Period, on June 15, 2018, Z&Z attorneys filed a motion to amend the complaint to (i) to add allegations to existing causes of action to recover an additional $390,279.88 in TAM Debt Transfers, and (ii) to assert a new cause of action against and to join the Subsequent Transferee Defendants as defendants based on their status as subsequent transferees pursuant to CUFTA §§ 52-552(b)(i) and (h)(a)(i) (ECF No. 40, the "Motion to Amend"). In total, the Motion to Amend and the attached third amended complaint ("Third Amended Complaint") increased the total amount claimed in the TAM Action to $1,860,029.

61.     On July 26, 2018, the Court entered its order granting the relief requested in the Motion to Amend (ECF No. 45). On August 1, 2018, Z&Z attorneys filed the Third Amended Complaint (ECF No. 47), and on August 2, 2018, the Court issued its summons on the Subsequent Transferee Defendants.

62.     Prior to the Compensation Period, on September 7, 2018, Z&Z attorneys met with Gleason and local counsel for the TAM Defendants to discuss the possibility of a global settlement. At the September 7 meeting, Gleason informed Z&Z attorneys that the Third Amended Complaint misidentified Gleason's wife (one of the Subsequent Transferee Defendants) as Rachael Taxman, instead of using her correct name, Robin Taxman. Gleason also explained how the alleged TAM Debt Transfers had not been on account of any goods or services provided for the benefit of the TAM Defendants. Instead, according to Gleason, they constitute another fraud by Varacchi upon Sentinel and the Relief Defendants, as well as the TAM Defendants.

63.     On September 12, 2018, Z&Z attorneys amended the Third Amended Complaint solely to correct the name of the defendant, as Robin Taxman. (ECF No. 52, the "Fourth Amended Complaint"). Shortly thereafter, local counsel to the TAM Defendants filed a motion to withdraw.

(ECF No. 54.)

64.     On September 13, 2018, the Court issued an updated summons on the Subsequent Transferee Defendants (ECF No. 53) which Z&Z attorneys successfully served on Robin Taxman and Edmond Tschan later that day. (*See* ECF Nos. 56-57.)

65.     Prior to the Compensation Period, despite making multiple attempts, Z&Z attorneys were initially unsuccessful in serving the remaining Subsequent Transferee Defendant, Myron Taxman. During the Compensation Period, Z&Z attorney's investigation revealed that Myron Taxman had sold his Illinois residence in August 2018 and was living in Florida. Ultimately, Z&Z attorneys caused Myron Taxman to be served at his Florida residence on October 30, 2018. (ECF No. 67.)

66.     On November 8, 2018, the Court granted local counsel to the TAM Defendants' pending motion to withdraw (ECF No. 54), leaving TAM and Gleason unrepresented by counsel. (ECF No. 70.)

67.     Counsel for Edmond Tschan filed an appearance on November 8, 2018 (ECF No. 72), and filed an answer to the Fourth Amended Complaint on November 16, 2018 (ECF No. 73.)

68.     Gleason filed a *pro se* appearance on October 31, 2018 (ECF No. 65), and used his e-filing account to file an answer to the Fourth Amended Complaint on behalf of Robin Taxman on December 6, 2018. (ECF No. 74.)[6]

---

[6] After the Compensation Period, but before the filing of this Application, Z&Z attorneys filed a "Motion for Order Requiring Robin Taxman to File a Pro Se Appearance" (ECF No. 79), which the Court granted, stating:

> Ms. Taxman filed an answer on her own behalf, though utilized the e-filing privileges of Mr. Gleason to do so. Mr. Gleason shall not use his e-filing privileges to submit pleadings on anyone's behalf except his own. Ms. Taxman is Ordered to file a Notice of Appearance pursuant to Local Rule 5(b) so that she will receive all pleadings, notices, and notifications. Rule 5(b) requires that the appearance include name, address, zip code, telephone number, fax number, and email address, if available.

ECF No. 80.

69.     During the Compensation Period, Z&Z attorneys negotiated with Gleason and counsel for Edmond Tschan to attempt to resolve the Receivership Estate's claims as stated in the Fourth Amended Complaint.

70.     Z&Z efforts to settle the TAM Action have resulted in some progress. That being said, the Receiver is not in a position at this time to report one the specifics of the settlement negotiations. If and when the Receiver is in a position to report the terms of a settlement, Z&Z attorneys will file a motion to approve settlement with the Court.

**H.     Litigation – Sarroff Action**

71.     During the Compensation Period, the Receiver and Z&Z continued to prosecute their lawsuit, *Jed Horwitt Esq., Receiver v. Alan Sarroff et al.*, (Civil Action No.: 3:17-cv-01902-VAB) (the "Sarroff Action") against Alan L. Sarroff ("Sarroff") and A.L. Sarroff Management, LLC ("Sarroff Management", and together with Sarroff, the "Original Sarroff Defendants"), in the United States District Court for the District of Connecticut.  As set forth below, during the Compensation Period, the Receiver also added the A.L. Sarroff Fund, LLC (the "Sarroff Fund", and together with the Original Sarroff Defendants, the "Sarroff Defendants") as an additional defendant.

72.     The Sarroff Action seeks to recover pursuant to CUFTA over $14 million that Varacchi caused Sentinel to pay to or for the benefit of the Sarroff Defendants (the "Sarroff Transfers").

73.     The Sarroff Transfers sought to be avoided as fraudulent transfers consist in: (i) the $7.3 million three-day loan repayment on a loan originally made to cover a day trading margin call; (ii) the recovery of the $125,000 "fee" for that loan and the additional $25,000 "kicker"; and (iii) the recovery of the "investment" related transfers totaling in excess of $7.7 million.

    a.     Discovery Related to the Sarroff Action

23

74.     Prior to the Compensation Period, on May 11, 2018, the Receiver served the Original Sarroff Defendants with his first set of Interrogatories and Requests for Production (the "Receiver's Discovery Requests"). Z&Z attorneys negotiated with counsel to the Original Sarroff Defendants to resolve any objections they may have to the Receiver's Discovery Requests and to ensure the Original Sarroff Defendants' timely compliance with their obligations under the Federal Rules of Civil Procedure. As a result of Z&Z's efforts, on July 13, 2018, the Original Sarroff Defendants partially complied with the Receiver's Discovery Requests and produced over 18,000 pages of responsive documents and communications (the "July 13 Documents"). Prior to and during the Compensation Period, Z&Z attorneys engaged in an extensive review of the July 13 Documents in order to develop further the documentary record necessary to satisfy the Receiver's burden of proof in the Sarroff Action and rebut the Sarroff Defendants' affirmative defenses.

75.     Prior to the Compensation Period, on August 7, 2018, the Original Sarroff Defendants served the Receiver with their first set of Interrogatories and Requests for Production (the "Original Sarroff Defendants' Discovery Requests"). During the Compensation Period, Z&Z attorneys negotiated with counsel to the Original Sarroff Defendants to resolve the Receiver's objections to the scope of the Original Sarroff Defendants' Discovery Requests. After resolving the Receiver's objections, which included an agreement on search terms to be applied to the Receiver's electronically stored information ("ESI"), Z&Z attorneys reviewed the Receivership Estate's records (including ESI containing agreed upon search terms) for documents responsive to the Original Sarroff Defendants' Discovery Requests, and provided such documents to the Original Sarroff Defendants in compliance with the Federal Rules of Civil Procedure.

76.     Due to the volume of data the Receiver possesses, the Receiver's attorneys were required to expend a substantial amount of time reviewing potentially responsive materials (even

after applying search terms to ESI).  The Receiver substantially narrowed by agreement the scope of the search terms requested by the Original Sarroff Defendants (and the volume of the documents triggered by those terms), but the results remained voluminous.  The Receiver ultimately agreed to review the results of a negotiated set of search terms (and produce responsive documents), rather than burden the Court with motion practice related thereto, which ultimately would have delayed the Sarroff Action and at best would have only partially narrowed the discovery burden on the Receiver.  To date, the Receiver has produced approximately 175,000 pages of documents to the Sarroff Defendants, which the Receiver believes substantially completed his production obligations in connection with the Sarroff Action.

77.     Prior to the Compensation Period, on August 31, 2018, Z&Z attorneys had served subpoenas out of this SEC Enforcement Action on Sarroff Management and the Sarroff Fund seeking (i) documents sufficient to show their legal relationship; and (ii) documents identifying all transfers between Sarroff Management and the Sarroff Fund that in any way concern investments into the Receivership Defendants and the transfer or subsequent transfer of funds received from the Receivership Defendants (the "August 31 Subpoenas"). The Receiver served these subpoenas out of this action rather than the Sarroff Action after the Original Sarroff Defendants objected asserting that the information requested was not discoverable in the Sarroff Action.

78.     During the Compensation Period, on October 12, 2018, Sarroff Management and Sarroff Fund responded by stating that they would not comply with the August 31 Subpoenas by providing documents responsive to the Receiver's requests. On November 1, 2018, Z&Z attorneys and counsel for Sarroff Management and the Sarroff Fund engaged in a telephonic conference to meet and confer regarding the Subpoenas and the Objection thereto. During that conference, Z&Z attorneys indicated that the Receiver would likely accept documents sufficient to evidence (i)

transfers between Sarroff Management and the Sarroff Fund that relate to investments in or transfers from the Receivership Defendants (subject to an agreement regarding how the relationship between transfers and the Receivership Defendants would be determined); and (ii) the relationship between Sarroff Management and the Sarroff Fund as it concerns transfers to or from, or their relationship with, the Receivership Defendants. Sarroff Management and the Sarroff Fund communicated their outright refusal to provide any statements identifying transfers beyond the heavily redacted statements that Sarroff Management already provided (which are limited to Sarroff Management's direct transfers to, and receipts from, the Receivership Defendants). They further indicated that they would discuss internally the Receiver's request concerning the legal relationship between Sarroff Management and the Sarroff Fund, but failed to follow up with Z&Z attorneys regarding this request.

79.     Accordingly, the Receiver filed a Motion to Compel Sarroff Management and Sarroff Fund to comply with the August 31 Subpoenas (narrowed as set forth therein), together with supporting memorandum of law and affidavit, on the above-captioned docket. (*See Case No*. 17-cv-155 (KAD), ECF Nos. 77-79, together, the "Motion to Compel".) On November 26, 2018, Sarroff Management and Sarroff Fund filed a memorandum in opposition to the Receiver's Motion to Compel. (*Id*., ECF No. 80.) On December 7, 2018, Z&Z attorneys filed the Receiver's response to Sarroff Management's memorandum in opposition. (*Id*., ECF No. 82.) After the Compensation Period, but prior to filing this Application, Judge Dooley granted the Motion to Compel in its entirety on January 30, 2019. (ECF No. 84.)

b. <u>Motion Practice Related to the Sarroff Action</u>

80.    Prior to the Compensation Period, the Receiver engaged in significant motion practice relating to the Original Sarroff Defendants' challenge to the legal sufficiency of the Receiver's first amended Complaint filed in the Sarroff Action. (*See* Sarroff Action, ECF Nos. 25, 31, 41, and 45). Generally speaking, the issues briefed in the Motion to Dismiss and related filings fall into two categories: (i) whether a plaintiff seeking to avoid a fraudulent transfer under § 52-552e(a)(1) of CUFTA must plead that the transferee received the voidable transfer with fraudulent intent, and (ii) whether, under §§ 52-552e(a)(2) and 52-552(f)(a) of CUFTA, a debtor's return of a transferee's investment principal is sufficient to establish the transfer was made for "value" and is, therefore, unavoidable as a matter of law.

81.    During the Compensation Period, Z&Z attorneys drafted and, on October 26, 2018, filed a motion to amend the first amended complaint to add the Sarroff Fund as a defendant in the Sarroff Action. (ECF No. 52, the "Motion to Amend and Join").  The Sarroff Defendants initially withheld their consent to the Motion to Amend and Join, but never filed an objection to it.

82.    At the December 4, 2018 status conference, the Court granted the Motion to Amend and Join (ECF No. 59) (after the Sarroff Defendants for the first time agreed to consent to it), denied the Sarroff Defendants' Motion to Dismiss as moot in light of the Motion to Amend and Join being granted (ECF No. 60), continued the discovery deadline for the parties without a date, and required the parties to submit a revised scheduling order by January 25, 2019 (which was two weeks after the date of the second of two settlement conferences between the Receiver and the Original Sarroff Defendants, as more fully set forth below). (ECF No. 61).

83.    Z&Z attorneys filed the Seconded Amended Complaint immediately after the December 4, 2018 status conference. (ECF No. 62.)

27

84.     On December 13, 2018, Z&Z attorneys and the Sarroff Defendants filed a proposed stipulation regarding the Sarroff Defendants acceptance of service of the Second Amended Complaint and setting January 4, 2019 as the deadline for the Sarroff Defendants' response thereto. (ECF No. 64.)

85.     After the Compensation Period, but before the filing of this Application, the Sarroff Defendants filed their Motion to Transfer Matter to the United States District Court for the Southern District of New York and to Dismiss the Second Amended Complaint (the "Motion to Transfer/Dismiss"), together with memorandum of law and supporting affidavits (ECF Nos. 68-70). The Receiver timely objected to the Motion to Transfer/Dismiss on January 25, 2019.

86.     During the Compensation Period, Z&Z attorneys drafted and, on December 14, 2018, filed an application for prejudgment remedy (ECF No. 65, the "PJR Application") and a Motion for Disclosure of Assets (ECF No. 66, the "Motion for Disclosure") against the Sarroff Defendants. The PJR Application seeks a court order attaching property of the Sarroff Defendants in an amount sufficient to satisfy the entry of a $7,744,109.23 judgment ($7,306,768.57 against Sarroff Management and Sarroff Fund, and $437,340.66 against Sarroff, individually).

c.     Settlement Prospects of the Sarroff Action

87.     During the Compensation Period, Z&Z attorneys prepared and, on October 11, 2018, filed under seal an offer of compromise on behalf of the Receiver. (ECF No. 50.) Pursuant to Conn. Gen. Stat. § 52-192, if an offer of compromise is not accepted within 30 days and the plaintiff ultimately obtains a judgment in an amount equal or greater than the offered amount, then the court shall add 8% annual interest to the amount awarded beginning, in this case, from the date the original complaint was filed. The Receiver's offer of compromise was not accepted within 30 days.  Therefore, if the Receiver obtains a judgment equal to or greater than the offer, the Receiver

will be entitled to additional interest accruing at 8% per annum from the date of the Receiver's complaint.

88.     Prior to and during the Compensation Period, Z&Z attorneys diligently pursued the prospect of settling the claims asserted in the Sarroff Action with the Sarroff Defendants. To that end, the parties agreed to participate in a confidential settlement conference (the "Settlement Conference") with United States' Magistrate Judge Robert Richardson. The first Settlement Conference was held on September 27, 2018. The parties did not reach a settlement at the Settlement Conference. However, the parties agreed to participate in a second settlement conference to be held on January 11, 2019.

89.     After the Compensation Period, but before the filing of this Application, Z&Z attorneys attended the continued settlement conference on January 11, 2019. The parties were once again unable to reach a settlement. No further settlement conferences are contemplated at this time.

## I.     Further Investigation into and Demand upon Weeden Prime Services, LLC and Related Persons

90.     During the Compensation Period, the Receiver and Z&Z attorneys continued their investigation into and development of potential causes of action against Weeden Prime Services, LLC ("Weeden Prime") and related persons.

91.     During the Compensation Period, Z&Z attorneys drafted a proposed statement of claim asserting the Receivership Estate's claim for damages against Weeden Prime, Weeden & Co., LP ("Weeden Co.", referred to collectively along with Weeden Prime as "Weeden"), and two registered representatives of Weeden Prime, Sohail Khalid aka Syed Mahmoud Khalid ("Khalid") and Christopher LaGrego ("LaGrego", referred to collectively along with Weeden and Khalid as "Weeden Respondents").

92.     Also during the Compensation Period, Z&Z attorneys drafted a motion for leave to

commence arbitration against the Weeden Respondents, which, on or about November 21, 2018, Z&Z attorneys circulated to counsel for Weeden.

93.     After discussions concerning potential claims, the Receiver agreed to delay filing the motion for leave to commence arbitration against the Weeden Respondents until the parties had an opportunity to discuss them in more detail (including discussing the prospect of settlement).

94.     Z&Z attorneys negotiated and memorialized the terms of a tolling agreement with the Weeden Respondents to preserve the Receivership Estate's claims during the parties' discussions.

95.     The tolling agreement currently expires on February 25, 2019 and may be further extended if the Receiver and the Weeden Respondents determine that further discussions would be productive.

96.     The Receiver is not in a position at this time to report on the prospect of settling the Estate's claims against the Weeden Respondents or to predict the extent of any recovery as a result of arbitration.

97.     In the event the Receiver determines arbitration against the Weeden Respondents is in the best interest of the Receivership Estate, the Receiver will move for leave to commence arbitration.

**J.      Investigation into and Demand upon Ralph Giorgio**

98.     During the Compensation Period, Z&Z attorneys continued their investigation into potential causes of action against Ralph Giorgio ("Giorgio").

99.     Giorgio became a manager on the Sentinel platform and was added to Sentinel's payroll in December 2015. From December 2015 to May 2016, Giorgio received a gross monthly salary of $2,058.34 from Sentinel. In June 2016, at Giorgio's request, Varacchi caused Sentinel to increase Giorgio's gross monthly salary to $20,000. From June 2016 until the collapse of

Varacchi's Ponzi scheme, Giorgio received more than $120,000 from Sentinel (the "Giorgio Transfers").

100.    Upon information and belief, Sentinel did not receive any valued in exchange for the Giorgio Transfers. The Giorgio Transfers were not a draw upon incentive-based payments as Giorgio did not manage sufficient assets on the Sentinel platform to justify the amount received. Rather, upon information and belief, the Giorgio Transfers were made with the expectation that the money would be repaid either to Sentinel or Varacchi.

101.    Prior to the Compensation Period, Z&Z attorneys served Giorgio with a settlement offer. Giorgio allowed the offer to lapse by failing to respond within the provided time period. However, after the offer lapsed, Z&Z attorneys were contacted by an attorney for Giorgio.

102.    During the Compensation Period, Z&Z attorneys met with Giorgio's attorney to discuss settlement of the Receiver's claims against Giorgio. During these meetings, it became clear that Giorgio's prior agreement to meet in person during October or November 2018 to discuss settlement was unlikely to actually occur. Z&Z attorneys intend to consult with the Commission in order to determine the appropriate next step.

103.    The Receiver's investigation of these and other claims against Giorgio is ongoing. The Receiver is not in a position at this time to report on such claims or predict the likelihood or extent of any recovery. In the event that the Receiver determines that it is in the best interest of the Receivership Estate, the Receiver will move to for leave to sue Giorgio prior to commencing litigation against it or take such other action as the Receiver determines appropriate and in the best interest of the Receivership Estate under the circumstances.

### K.   **Investigation of Private Investments**

104.   During the Compensation Period, the Receiver continued to investigate the Private Investments. The Receiver has researched and analyzed numerous entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

105.   After reviewing the records of the Receivership Estate, as well as the documents produced pursuant to the Receiver's requests, the Receiver has preliminarily determined that the investments in Zipway LLC, Gravy, Inc., Invigilio, LLC, and Greenhouse Solutions, Inc. are unlikely to provide any value to the Estate. Comparatively, the Receiver has not yet determined if the value realized by liquidating the Receivership Estate's interests in Kizzang, Entourage, Roots, and StereoCast would justify the costs of doing so.

106.   The Receiver has engaged in the process of determining how to liquidate the Receivership Estate's interest in Kizzang, Entourage, Roots, and StereoCast in such a way as to maximize the value available for distribution to Claimants.

107.   At the same time, the Receiver and Z&Z attorneys are evaluating potential fraudulent transfer and other causes of action against the companies underlying the Private Investments.

108.   During the Compensation Period, Z&Z attorneys investigated the prospect of liquidating the Receivership Estate's rights under pending class-action securities lawsuits. The Receivership Entities generated a disproportionately high volume of trades considering their assets. These trades may entitle the Receivership Entities to recover as a class member from certain class-action securities lawsuits.

109.   Because class-action securities lawsuits take approximately four to seven years to generate proceeds, claims liquidators are often engaged either to administer the process in

exchange for a percentage of the proceeds, or to liquidate the class-action claims portfolio by offering its approximate present value.

110.    Z&Z attorneys entered into non-disclosure agreements with two class-action claims liquidating companies and provided each with the trading data necessary to evaluate the Receivership Estate's claims portfolio. As of the filing of this Application, the claims liquidators' analysis is not complete.

111.    In the event that the Receiver determines it is in the best interest of the Receivership Estate to sell the class-action claims portfolio, he will file a motion for authority to do so with the Court. Alternatively, if the class-action claims portfolio is of *de minimis* value to a liquidator, the Receiver may evaluate the costs and benefits of engaging Z&Z staff to oversee the administrative task of filing the class-action claims independently.

L.   **Actual and Anticipated Disbursement of Assets**

112.   During the Compensation Period but before the filing of this Application, in accordance with the Court's Order Approving the Receiver's Fifth Interim Application for Professional Fees and Expenses (ECF No. 68) and the Court's Order Approving the Receiver's Sixth Interim Application for Professional Fees and Expenses (ECF No. 81), the Receiver made the following distributions:

| Date | Recipient | Amount | Reason | Authority |
|------|-----------|--------|--------|-----------|
| October 5, 2018 | Z&Z | $145,216.60 | 80% of Fees and 100% of Expenses from April 1, 2018 to June 30, 2018 | Order Approving Fifth Interim Fee Application (ECF No. 68) |
| November 27, 2018 | Z&Z | $177,226.80 | 80% of Fees and 100% of Expenses from July 1, 2018 to September 30, 2018 | Order Approving Sixth Interim Fee Application (ECF No. 81) |
| November 27, 2018 | V&L | $83,686.00 | 80% of Fees and 100% of Expenses from January 1, 2018 to September 30, 2018 | Order Approving Sixth Interim Fee Application (ECF No. 81) |

113.   The Receiver, V&L, and Z&Z have incurred fees for their services and Z&Z have advanced all necessary expenses, which are requested for reimbursement through this Application. (*See* Exs. C and F.)

114.   Provided that the Court awards the fees and expenses requested in this Application, appropriate disbursements will be reflected on the Receiver's next interim fee application filed after such award.

115.   As discussed in Section IV-F above, the Receiver made an Initial Distribution of $2,136,712.30 to the holders of Allowed Claims, bringing the total pre-receivership recover of all

holders of Allowed Claims to 19.1% as calculated under the Rising Tide Method of distribution.

116.    The Receiver holds cash on hand the Receivership Account and the Reserve Account. As of December 31, 2018, the balance of the Receivership Account is $226,278.96, and the balance of the Reserve Account is 801,365.01. The total cash on hand in the Receivership Account and the Reserve Account is $1,067,643.97.

### M.    Anticipated Closure

117.    At this time, it is premature for the Receiver to speculate as to when this Receivership Proceeding will be ready to close.

## IV.    DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE

118.    As of the end of the Compensation Period, the following assets are a part of the Receivership Estate:

a.    The Receivership Account, which is valued at $266,278.96;

b.    The Reserve Account, which is valued at $801,365.01;

c.    The Private Investments, which value the Receiver is presently investigating; and

d.    Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, including, but not limited to, the claims against the TAM Defendants, the Sarroff Defendants, the Rajo Defendants, Kostiner, Weeden Prime, Kizzang, Entourage, and Giorgio.

119.    With respect to the Private Investments, the Receiver has identified the following securities:

a.    Kizzang: 3,600,000 Class C shares, 5,400,000 Class D shares, and 1,152,666 Class E evidenced by certificates identifying Varacchi as the owner of such interest;

b.    Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and

      c.    StereoCast: 150,000 shares in the name of Varacchi, evidenced by a certificate identifying Varacchi as the owner of such interest.

120.    The Receiver is investigating how best to liquidate and maximize the value of these equity interests in Kizzang, Entourage, Roots, and StereoCast.

## V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES

### A.  The Governing Legal Standard

121.    The District Court has the power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the Receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953 F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties.).

122.    The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his counsel and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).

123.    The case law and other authority may provide "convenient guidelines," but ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

124.    In awarding counsel fees in Securities Act receiverships, "[t]he court will consider ... the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach*

*Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).

125.    While "results are always relevant," a good result may take a form other than a "bare increase in monetary value." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Overall results can be determined only at the conclusion of the Receivership Proceeding.

126.    Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483.

### B.    Application of the Governing Legal Standard to the Application

127.    Based on the foregoing, the Receiver, Z&Z, and V&L respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

128.    As more fully set forth throughout this Application and as detailed in the exhibits submitted herewith, the issues addressed by the Receiver, Z&Z, and V&L have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned years, consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions. The Receiver, Z&Z, and V&L have made substantial progress in investigating the Receivership Estate's assets and in commencing litigation on behalf of the Receivership Estate.

129.     The Receiver, Z&Z, and V&L respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed expediently and efficiently. Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

130.     At the same time, the Receiver, Z&Z, and V&L have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

131.     Furthermore, the Commission has reviewed this Application and has stated that it has no objection to the approval of the professional fees and expenses requested herein.

132.     Accordingly, the Receiver, Z&Z, and V&L submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties-in-interest.

### C.     Source and Manner of Payment

133.     The Receivership Estate includes cash held in the Receivership Account. The Receiver, Z&Z, and V&L request that the Court enter an order allowing and permitting the approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees); provided, however, that the Receiver acknowledges that the Receivership Account presently holds insufficient funds to actually make payment at this time. The Receiver intends to hold sufficient funds (in his discretion after consultation with the Commission) for various litigation costs such as experts, depositions, transcripts, etc., as well as the ordinary operating costs of the receivership. Z&Z and V&L understand and agree to suspend payment in the amount of their fees and expenses until further deposits have been made and sufficient funds have been reserved for these anticipated litigation and administrative costs.

**WHEREFORE**, Jed Horwitt, Esq., Receiver, and Zeisler & Zeisler, P.C., counsel to the Receiver, respectfully request that (i) this Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $168,969.60 for legal services rendered during the Compensation Period, and $26,947.88 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (iii) V&L be awarded an allowance of $49,166.00 for services rendered during the Compensation Period, and $0.00 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; and (iv) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 13th day of February, 2019

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER

*/s/ Jed Horwitt*
Jed Horwitt, Receiver

ZEISLER & ZEISLER, P.C.,
COUNSEL TO RECEIVER
By: */ s / Rion M. Vaughan*
Stephen M. Kindseth (ct14640)
Rion M. Vaughan (ct30440)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 245
Email: skindseth@zeislaw.com
       rvaughan@zeislaw.com
His Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, Rion M. Vaughan, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System and also at http://jedhorwittreceiver.com/.

*/ s / Rion M. Vaughan*
Rion M. Vaughan (ct30440)