# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
|  | ) 3:17-cv-00155-VAB |
| MARK J. VARACCHI and | ) |
| SENTINEL GROWTH FUND | ) |
| MANAGEMENT, LLC, | ) |
| Defendants, | ) |
| and | ) |
| RADAR ALTERNATIVE FUND LP and | ) |
| RADAR ALTERNATIVE MASTER FUND SPC, | ) |
| Relief Defendants. | ) |

## NINTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS

I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED ...................... 3
    A.    Discounts ......................................................................................................... 6
    B.    Fee Schedules ................................................................................................. 7
    C.    Activity Categories ......................................................................................... 9
II.   SUMMARY OF CASH ON HAND ................................................................... 10
III.  SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE ......................... 11
    A.    The Receiver's Website and Investor Contact ................................................ 11
    B.    The Eight Quarterly Status Report ................................................................. 11
    C.    Marshaling of Receivership Assets and Receipt of Assets by Receiver ....................... 12
    D.    Claims Administration .................................................................................. 12
    E.    Settlement – TAM Action ............................................................................. 14
    F.    Litigation – Sarroff Action ........................................................................... 16
    G.    Settlement – Claims Against Weeden Prime Services, LLC and Related Persons ........ 24
    H.    Investigation into and Demand upon Ralph Giorgio .................................... 26
    I.    Investigation of Private Investments ............................................................. 28
    J.    Actual and Anticipated Disbursement of Assets ........................................... 29
    K.    Anticipated Closure ...................................................................................... 30
IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE ................................. 31
V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES ................. 31
    A.    The Governing Legal Standard ...................................................................... 31
    B.    Application of the Governing Legal Standard to the Application ................................ 33
    C.    Source and Manner of Payment .................................................................... 34

**NINTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES
INCURRED BY THE RECEIVER AND HIS PROFESSIONALS**

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to this Court's Order Appointing Receiver entered May 1, 2017 (ECF No. 12, the "Receivership Order") and Order Reappointing Receiver (ECF No. 47, the "Reappointment Order", and together with the Receivership Order, the "Receivership Orders") entered February 14, 2018, respectfully submits this nineth interim application (the "Application") for professional fees and expenses incurred on behalf of the Receivership Estate (as defined in the Receivership Orders) by the Receiver, Z&Z, and the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L") during the period commencing April 1, 2019, through and including June 30, 2019 (the "Compensation Period"). In advance of filing, the Receiver shared this Application with counsel for the Commission, and the Commission's counsel has stated that the Commission has no objection to the approval of the professional fees and expenses requested herein.

In support of this Application, the Receiver, V&L, and Z&Z respectfully represent as follows:

**I.     SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED**

1.     Jed Horwitt, Esq. serves in his capacity as the Court-appointed Receiver for Sentinel Growth Fund Management, LLC ("Sentinel"), Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC" and, together with Radar LP, collectively, the "Relief Defendants," and the Relief Defendants together with Sentinel, collectively, the "Receivership Entities").

2.      This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines") and the Receivership Orders.

3.      Pursuant to the SEC Guidelines, the following exhibits are attached to this Application:

a.      The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

b.      A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c.      A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as Exhibit C;

d.      Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as Exhibits D-1; D-2, D-3, D-4, D-5; D-7, D-8, D-9, D-10, and D-11.[1]

e.      A Certification of Compliance with the SEC Guidelines by V&L is attached hereto as Exhibit E;

f.      A summary of total expenses for which reimbursement is requested for V&L is attached hereto as Exhibit F; and

g.      Time records summarizing the work performed by V&L's accounting professionals and paraprofessionals for each of its Activity Categories (as hereinafter defined) during the V&L Compensation Period are attached hereto as Exhibits G-1; G-2, G-3, and G-4.

4.      The Receiver and Z&Z attorneys and paraprofessionals have expended a total of

---

[1] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding, and pursuant to the Court's Order entered August 11, 2017 (ECF No. 25), Exs. D-1 through D-11 are filed under seal. Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

825.90 hours working on this matter during the Compensation Period. The Receiver and Z&Z seek allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $237,971.80, and reimbursement of actual and necessary expenses in the amount of $50,667.42.

5.      The Receiver's accountant and financial advisor V&L's professionals and paraprofessional have expended a total of 130.50 hours working on this matter during the Compensation Period. V&L seeks allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $35,253.60.

6.      The Receiver, Z&Z and V&L acknowledge that their fee compensation is subject to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Orders.

7.      The fees assessed reflect the hours worked by the Receiver, Z&Z attorneys and paraprofessionals and V&L professionals and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z, and V&L (described below).

8.      These amounts also take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Orders.

9.      Section III below summarizes the Receiver's administration of the Receivership Estate since his appointment. A narrative description of the particular services provided by the Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as

Ex. D-1 through D-11. A narrative description of the particular services provided by V&L's professionals and paraprofessionals is included in the time records attached as Ex. G-1 through G-4.

10.     Z&Z's expense reimbursements requested are principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) shipping charges; (iii) expenses associated with the Receiver's website; (iv) fees for service of subpoenas and complaints; (v) expert witness consulting fees; (vi) photocopying; (vii) processing and hosting of electronically stored information related to litigation relevant to the Receivership Proceeding; and (viii) online legal research. (*See* Ex. C.)

11.     V&L did not incur any expenses during the Compensation Period. (*See* Ex. F.)

12.     The Receiver, Z&Z and V&L have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime. Nor have the Receiver, Z&Z and V&L requested reimbursement for any meals during the Compensation Period (other than lunches provided during depositions).

13.     The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies. V&L has not requested reimbursement for photocopying during the Compensation Period.

**A.      Discounts**

14.     As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Orders, the Receiver, V&L, and Z&Z have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

15.     More specifically, and as shown in the fee schedules set forth below, Z&Z and V&L

have consented to 20% public service discounts to its regularly applicable hourly rates for all legal professionals and paraprofessionals.

16.      The Receiver originally agreed to discount his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver to $250 per hour, reflecting a 50% discount. Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time during this period.

**B.    Fee Schedules**

17.      The fee schedule for the Receiver, showing: his name; the hourly rate applied to his services in this Receivership Proceeding and his customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his services during the Compensation Period; is as follows:

| Receiver | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Horwitt, Jed | $250 ($500) | $250 | 25.10 | $6,275.00 | $6,275.00 |

18.      The fee schedule for all Z&Z legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Kindseth, Stephen | $340 ($425) | $85 | 208.70 | $70,958.00 | $17,739.50 |
| Henzy, Eric | $380 ($475) | $95 | .90 | $342.00 | $85.50 |
| Moriarty, James | $320 ($400) | $80 | 2.80 | $896.00 | $224.00 |
| Romney, Aaron | $320 ($400) | $80 | 431.10 | $137,952.00 | $34,488.00 |
| Blau, Christopher | $220 ($275) | $55 | 14.10 | $3,102.00 | $775.50 |

19.    The fee schedule for the legal paraprofessional who provided services during the Compensation Period, showing: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprofessional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Joseph, Kristin | $148 ($185) | $37 | 3.10 | $458.80 | $114.70 |
| O'Brien, Barbara | $148 ($185) | $37 | 1.20 | $177.60 | $44.40 |
| Accurso, Ian | $148 ($185) | $37 | 154.40 | $22,851.20 | $5,712.80 |
| Accurso, Deborah | $148 ($185) | $37 | .70 | $103.60 | $25.90 |

20.    The fee schedule for all V&L accounting professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Accounting Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Bailey, T | $280 ($350) | $70 | 38.70 | $10,836.00 | $2,709.00 |
| McDonald | $244 ($305) | $61 | .30 | $75.60 | $15.90 |

| Lowey | $372 ($465) | $93 | 30.1 | $11,197.20 | $2,799.30 |
| Flaherty | $196 ($245) | $49 | 21.20 | $4,155.20 | $1,038.80 |
| Whitehouse | $228 ($285) | $57 | 38.20 | $8,709.60 | $2,177.40 |
| Prete | $228 ($285) | $57 | 2.0 | $280.00 | $290.00 |

### C.   Activity Categories

21.     Pursuant to the SEC Guidelines, the Receiver, V&L, and Z&Z have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

Activity Categories Utilized by Receiver and Legal Professionals

a.      Category One: Case Administration, 16.00 hours, $4,986.00 (*see* Ex. D-1);

b.      Category Two: Asset Analysis & Recovery, .20 hours, $68.00 (*see* Ex. D-2);

c.      Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d.      Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

e.      Category Five: Claims Administration & Objections, 30.00 hours, $10,089.00 (*see* Ex. D-5);

f.      Category Six: Application for Professional Fees and Expenses (the Receiver and Z&Z are not including time incurred for these services in their Application) (*see* Ex. D-6);

g.      Category Seven: Litigation – Taran Asset Management, LLC, *et al*., 9.10 hours, $2,665.60 (*see* Ex. D-7); and

h.      Category Eight: Litigation – A. L. Sarroff Management, LLC, *et al*., 713.30 hours, $201,788.40 (*see* Ex. D-8).

i.      Category Nine: Litigation – Shay Kostiner, 0 hours, $0.00 (*see* Ex. D-9).

j.      Category Ten: Litigation – Weeden Prime Services, LLC, 57.30 hours, $18,374.40 (*see* Ex. D-10).

k.      Category Eleven: Litigation – Rajo Corp., 0 hours, $0.00 (*see* Ex. D-11).

<u>Activity Categories Utilized by Accounting Professionals</u>

a.      Category One: Tax Return Preparation, .80 hours, $182.40 (*see* Ex. G-1);

b.      Category Two: Data Analysis, 23.90 hours, $5,487.60 (*see* Ex. G-2);

c.      Category Three: Forensic Accounting, 0 hours, $0.00 (*see* Ex. G-3); and

d.      Category Four: Expert Report Preparation, 105.80 hours, $29,583.60 (*see* Ex. G-4).

## II.   **SUMMARY OF CASH ON HAND**

22.     As of June 30, 2019, the Receiver held in the Receivership Account (as defined and discussed in Section IV-D below) the amount of $230,980.77.

23.     In accordance with the Plan Approval Order, prior to the Compensation period, the Receiver transferred $801,365.01 from the Receivership Account to a newly established segregated account (the "Reserve Account") to "ensure that if a Remaining Disputed Claim is Allowed, the Receiver shall have funds left to pay such Allowed Claim in the amount provided for in the Plan of Distribution for such category of Claimant." *See* Plan Approval Order § 8(xi). Z&Z attorneys consulted with V&L to ensure that the Reserve Account was established as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, and that the establishment and funding of the Reserve Account did not disrupt the Receivership Account's Qualified Settlement Fund status.

24.     As of June 30, 2019, the Reserve Account continued to hold the balance of $801,365.01.

25.     The Receiver's cash on hand held in the Receivership Account and the Reserve Account, therefore, total, as of June 30, 2019, the amount of $1,032,345.78. This combined balance reflects a net decrease of $35,514.62 accrued during the Compensation Period. (*See* Ex. A.)

III.   **SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE**

26.     During the Compensation Period, the Receiver diligently exercised his duties pursuant to the terms of the Receivership Orders and made significant progress in investigating, marshalling and liquidating Receivership Assets for distribution to the holders of Allowed Claims against the Receivership Estate. Items requiring significant work by the Receiver and his professionals, as discussed in more detail below, were, in summary, continuing to litigate previously commenced civil actions, to investigate, analyze, enforce through demands and negotiation and, where appropriate, settle potential additional causes of action, and to evaluate the Remaining Disputed Claims.

27.     Utilizing Z&Z as his legal professionals and V&L as his accountants and financial advisors, the Receiver has undertaken the following on behalf of the Receivership Estate:

A.     **The Receiver's Website and Investor Contact**

28.     At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com – that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

29.     The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information.

30.     Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the Receivership Proceeding and the claims management procedures discussed herein.

B.     **The Eight Quarterly Status Report**

31.     The Receiver and Z&Z also prepared and, on April 29, 2019, filed the Eighth Quarterly Status Report (ECF No. 108). In drafting the  Quarterly Status Report, the Receiver and

Z&Z compiled comprehensive information to update the Court, the Commission and all other parties-in-interest as to the Receiver's operations, the Receivership Estate's assets, the status of various litigation and Claims against the Receivership Estate.

        C.       **Marshaling of Receivership Assets and Receipt of Assets by Receiver**

32.      Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and like fiduciaries), which account (the "Receivership Account") holds funds marshaled by the Receiver and constitutes a Receivership Asset.

33.      Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.

34.      During the Compensation Period, the Receivership Account accrued interest at a rate of 0.33% monthly, amounting to total interest payments of $194.98 for the Compensation Period.

        D.       **Claims Administration**

35.      During the Compensation Period, Z&Z attorneys further investigated the Receivership Estate's basis for objecting to the Remaining Disputed Claims.

36.      With respect to the claim held by Neila Fortino (the "Fortino Claim"), the Receiver thoroughly analyzed the factual and legal basis for her asserted claim in the amount of $4,038,000. After the completion of his investigation, on March 11, 2019, the Receiver's counsel articulated his position with respect to the claim and the basis for his objection to Fortino's counsel. On May 1, 2019, Forino's counsel responded. The Receiver continued to disagree with Fortino's perspective on her claim.

37.      Accordingly, during the Compensation Period, the Receiver's counsel prepared his

Motion for Determination of Claim Held by Neila Fortino. The Receiver explained his position that the Fortino Claim against the Receivership Estate should be allowed in the amount of $1,439,550 and no more. Although Fortino never invested directly into the Receivership Entities, her claim is based upon the transfer originally made by the intermediary, Mind the Gap Consulting, LLC ("MTG") to Sentinel in the amount of $4 million, and the subsequent returns on account of this amount from Sentinel to MTG in the amount of $2,560,450. The Receiver stated further that he had confirmed that MTG, in fact, made these investments on Fortino's behalf. Considering this and the surrounding circumstances as more fully explained herein, the Receiver submitted that Fortino should hold the claim rather than MTG.

38. The identity of the person who actually holds the claim does not alter the amount of the claim. The claim amount is apparent through the application of the well-established methodology employed by the Receiver in this case with this Court's approval. Based upon the $4 million transfer from MTG to Sentinel and the distributions to MTG from Sentinel in the amount of $2,560,450, the net amount for this claim equals $1,439,550. Accordingly, it is the Receiver's position that Fortino's submitted claim in the amount of $4,038,000 should be disallowed to the extent it exceeds the amount of $1,439,550.

39. Finally, as presented by the Receiver, under the "Rising Tide" method of distribution, Fortino's pre-receivership recovery percentage would be 64% ($2,560,450/$4,000,000). Since the percentage distribution in this receivership to date has only reached 19.2%, the Receiver further requested that this Court authorize the release of funds held in reserve on account of the Fortino Claim pursuant to the Plan Approval Order (as that term is defined below).

40. Two days after the end of the Compensation Period, the Receiver filed on July 2,

2019, his Motion for Determination of Claim held by Neila Fortino. (ECF No. 113.) The Court scheduled July 23, 2019, as the deadline for a response.  Fortino, through her counsel, then requested a continuance of her response date, which the Receiver agreed to and the Court entered, an extension of her time to respond through August 22, 2019.

      41.     The claimant, Flatiron Partners, has objected to the Receiver's application of the Rising Tide Method of distribution to its investments in the Relief Defendants.  Flatiron Partners requested that the Receiver not include a $2 million withdrawal and reinvestment made in close proximity for purposes of calculating its percentage of recovery prior to the commencement of this Receivership Proceeding. After researching this issue and considering the various policy and equitable concerns involved, the Receiver has concluded that all investment transfers should be included in applying the Rising Tide Method regardless of the time lapse between certain receipts and deposits.  The Receiver expects to submit this issue to this Court for its consideration and adjudication in the very  near future.

      **E.**     **Settlement – TAM Action**

      42.     Prior to the Compensation Period, the Receiver commenced the civil action, *Jed Horwitt Esq., Receiver v. Taran Asset Management, LLC et al.*, (Civil Action No.: 3:17-cv-01840-KAD) (the "TAM Action"), against Taran Asset Management, LLC ("TAM"), Christopher Gleason ("Gleason" and, together with TAM, the "TAM Defendants"), and Baseline Advisors, LLC ("Baseline" and, together with the TAM Defendants, the "Original TAM Defendants") in the United States District Court for the District of Connecticut. The Receiver thereafter amended his complaint to add additional causes of action against additional parties – Edmond Tschan, Robin Taxman, and Myron Taxman (together, the "Subsequent Transferee Defendants").

      43.     Z&Z attorneys have since and during the Compensation Period in particular negotiated with Gleason and counsel for Edmond Tschan to attempt to resolve the Receivership

Estate's claims in the TAM Action.

44.     Based upon the various possible defenses and collectability issues raised, the Receiver recognized challenges in continuing to pursue his claims in this civil action. Additionally, after exchanging offers and developing additional terms, the TAM Defendants and Edmond Tschan ultimately made a settlement offer that the Receiver believes maximizes the value that could be recovered on account of these claims and is in the best interest of the Receivership Estate especially when considering the costs, risks and ongoing delay of further litigation.  Accordingly, the Receiver accepted this offer subject to this Court's approval.

45.     Prior to the Compensation Period, the Receiver's and Tschan's counsel, and Gleason negotiated the specific terms and conditions of their settlement and set them forth in a written Settlement Agreement. The parties ultimately entered into it effective as of March 28, 2019.

46.     The Receiver thereafter filed during the Compensation Period on April 12, 2019, his Motion for Entry of an Order Approving Settlement Agreement Bertween the Receiver and Taran Asset Management, LLC, Christopher Gleason, Edmond W. Tschan III, Robin Taxman and Myron Taxman. (ECF No. 103.) In summary, Tschan agreed to settle all claims against him in exchange for $200,000 and the TAM Defendants agreed to settle in exchange for Gleason's payment of $50,000 made within one year, and secured by a mortgage. The terms and conditions of the settlement are fully set forth in the Settlement Agreement appended to the above referenced motion seeking this Court's approval

47.     On May 6, 2019, this Court entered its Ruling and Order on Motion for Approval of Settlement Agreement Between the Receiver and Taran Asset Management, LLC, Christopher Gleason, Edmond W. Tschan III, Robin Taxman, and Myron Taxman (ECF No. 111) approving

the settlement reached with the Receiver. The Receiver then transferred Tschan's settlement payment in the amount of $200,000 from Z&Z's trust account to the Receivership Account.

    **F.**    **Litigation – Sarroff Action**

48.    During the Compensation Period, the Receiver and Z&Z continued to prosecute their lawsuit captioned, *Jed Horwitt Esq., Receiver v. Alan Sarroff et al.*, (Civil Action No.: 3:17-cv-01902-VAB) (the "Sarroff Action"), against Alan L. Sarroff ("Sarroff"), A.L. Sarroff Management, LLC ("Sarroff Management"), and A.L. Sarroff Fund, LLC ("Sarroff Fund," and all of them collectively, the "Sarroff Defendants"), in the United States District Court for the District of Connecticut.

49.    The Sarroff Action seeks to recover pursuant to Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA") over $14 million that Varacchi caused Sentinel and Radar LP to pay to or for the benefit of the Sarroff Defendants (the "Sarroff Transfers").

50.    The Sarroff Transfers sought to be avoided as fraudulent transfers consist of: (i) a $7.3 million three-day loan repayment on a loan originally made to cover a day trading margin call; (ii) a $125,000 "fee" for that loan and an additional $25,000 "kicker"; and (iii) "investment" related transfers totaling in excess of $7.7 million.

    a.    Amended Scheduling Order

51.    Based on this Court's Amended Scheduling Order, (ECF No. 81), entered on February 12, 2019, the following schedule remains in place governing the litigation of the Sarroff Action:

- Discovery shall close by September 6, 2019;
- Dispositive motions are due by October 31, 2019;
- Joint trial memorandum is due by November 8, 2019 if no dispositive motion is filed, or 30 days after the Court rules on any dispositive motion; and

- Trial ready date is December 2, 2019 if no dispositive motion is filed, or 30 days after the filing of the joint trial memorandum.

    b.  <u>Receiver's Ongoing Efforts to Prosecute the Litigation</u>

52.    Prior to the Compensation Period, on May 11, 2018, the Receiver served the Original Sarroff Defendants with his first set of Interrogatories and Requests for Production (the "Receiver's Discovery Requests"). Z&Z attorneys negotiated with counsel to the Original Sarroff Defendants to attempt to resolve any objections they had to the Receiver's Discovery Requests and to ensure the Original Sarroff Defendants' timely compliance with their obligations under the Federal Rules of Civil Procedure.

53.    As a result of Z&Z's efforts, on July 13, 2018, the Original Sarroff Defendants partially complied with the Receiver's Discovery Requests and produced over 18,000 pages of responsive documents and communications (the "July 13 Documents"). Prior to and during the Compensation Period, Z&Z attorneys engaged in an extensive review of the July 13 Documents in order to develop further the documentary record necessary to satisfy the Receiver's burden of proof in the Sarroff Action and rebut the Sarroff Defendants' affirmative defenses.

54.    One objection that the parties were not able to resolve was the production of documents evidencing the subsequent transfer of the proceeds of the Sarroff Transfers. The Original Sarroff Defendants asserted that this information requested was not discoverable in the Sarroff Action. Of course, the Receiver could not seek the avoidance of subsequent transfers in the Sarroff Action without first discovering whether they had been made and, if so, when, how much and who received the subsequent transfers.

55.    Because this Court as part of its appointment order had authorized the issuance of subpoenas in the Receivership Proceeding to enable the Receiver to fulfill his duties (one of which was to investigate possible causes of action), the Receiver, by his counsel, on August 31, 2018,

17

served subpoenas out of this SEC Enforcement Action on Sarroff Management and the Sarroff Fund seeking (i) documents sufficient to show their legal relationship to each other; and (ii) documents identifying all transfers between Sarroff Management and the Sarroff Fund that in any way concern investments into the Receivership Defendants and the transfer or subsequent transfer of funds received from the Receivership Defendants (the "August 31 Subpoenas").

56.     On October 12, 2018, Sarroff Management and Sarroff Fund responded by stating that they would not comply with the August 31 Subpoenas by providing documents responsive to the Receiver's requests.

57.     On November 1, 2018, Z&Z attorneys and counsel for Sarroff Management and the Sarroff Fund engaged in a telephonic conference to meet and confer regarding the Subpoenas and the Objection thereto. During that conference, Z&Z attorneys indicated that the Receiver would likely accept documents sufficient to evidence (i) transfers between Sarroff Management and the Sarroff Fund that relate to investments in or transfers from the Receivership Defendants (subject to an agreement regarding how the relationship between transfers and the Receivership Defendants would be determined); and (ii) the relationship between Sarroff Management and the Sarroff Fund as it concerns transfers to or from, or their relationship with, the Receivership Defendants. Sarroff Management and the Sarroff Fund communicated their outright refusal to provide any statements identifying transfers beyond the heavily redacted statements that Sarroff Management already provided (which are limited to Sarroff Management's direct transfers to, and receipts from, the Receivership Defendants). They further indicated that they would discuss internally the Receiver's request concerning the legal relationship between Sarroff Management and the Sarroff Fund, but failed to follow up with Z&Z attorneys regarding this request.

58.     Accordingly, the Receiver filed a Motion to Compel Sarroff Management and

Sarroff Fund to comply with the August 31 Subpoenas (narrowed as set forth therein), together with supporting memorandum of law and an affidavit, on the above-captioned docket. (*See Case No*. 17-cv-155 (KAD), ECF Nos. 77-79, together, the "Motion to Compel".)

59.      On November 26, 2018, Sarroff Management and Sarroff Fund filed a memorandum in opposition to the Receiver's Motion to Compel. (*Id*., ECF No. 80.) On December 7, 2018, Z&Z attorneys filed the Receiver's response to Sarroff Management's memorandum in opposition. (*Id*., ECF No. 82.)

60.      On January 30, 2019, Judge Dooley granted the Motion to Compel in its entirety, (ECF No. 84), holding as follows:

> The subpoenas at issue do not fall outside the scope of authorized discovery. The Receiver is continuing to discharge his Court Ordered obligations, which of necessity involves further discovery by him. The Court further finds that the information and documents sought, as limited by the motion itself, is relevant to the discharge of these obligations, and the subpoenas are not overly broad and/or burdensome upon either A.L. Sarroff Management, LLC or A.L. Sarroff Fund, LLC. The Court accepts that these entities have a legitimate privacy concern in these documents but notes that the Court has issued the Standing Protective Order applicable in civil cases in this matter. It shall govern and protect the disclosures made by these Sarroff entities. Accordingly, on or before February 20, 2019, A.L. Sarroff Management, LLC and A.L. Sarroff Fund, LLC shall produce to the Receiver: (1) documents sufficient to show the Sarroff Entities legal relationship to each other in all respects that concern the Receivership Defendants, and (2) documents identifying all transfers between the Sarroff Entities that in any way concern investments into the Receivership Defendants and the transfer or subsequent transfer of funds received from the Receivership Defendants.

61.      In response to item (2) above, the Sarroff Entities merely re-produced the statements from the same Sarroff Management account as had been produced previously; again with heavy redactions, but, in many instances, redacting entries that had previously been disclosed or disclosing entries that had previously been redacted without any explanation for the revisions. From these account statements, the Receiver and his counsel could not determine "all transfers between the Sarroff Entities that in any way concern investments into the Receivership Defendants

19

and the transfer or subsequent transfer of funds received from the Receivership Defendants" as required by Judge Dooley's Order.

62.     After numerous attempts to explain to the Sarroff Entities' counsel why the Sarroff Entities had not complied with Judge Dooley's Order and obtain a commitment that compliance would be forthcoming, all to no avail, on March 6, 2019, the Receiver filed his Motion for Contempt against the Sarroff Entities (ECF No. 91) for their noncompliance with Judge Dooley's Order.

63.     After the Sarroff Entities did not timely respond to the Motion for Contempt, the Receiver on April 2, 2019 (during the Compensation Period), filed, along with the Sarroff Entities, their Joint Motion for Discovery Conference (ECF No. 99).

64.     This Court held such conference on April 9, 2019, at which time the Court declined to hold the Sarroff Entities in contempt but ordered the Sarroff Entities to produce "all documents and information required to be produced by the Sarroff Entities under Judge Dooley's Order granting the Receiver's motion to compel, ECF No. 84, … in unredacted form by April 19, 2019." (ECF No. 102.)

65.     In addition, during the Compensation Period, and after extensive preparation, the Receiver's counsel took the deposition of: (i) Mr. David Collins, who served as the administrator and outside accountant for the Sarroff Fund, on April 25, 2019; (ii) Sarroff on April 26, 2019; and (iii) Sarroff Management's and Sarroff Fund's former (and perhaps current) President, Lawrence Smith, on April 30, 2019.

66.     Also during the Compensation Period, the Receiver's counsel worked extensively with the two experts the Receiver had employed to provide their expert opinions in the Sarroff Action, namely, Keith Lowey ("Lowey"), of V&L, and Mr. Joseph Esposito ("Esposito"). The

Receiver engaged Lowey to opine concerning the existence of a Ponzi scheme and the various transfers made to the Sarroff Defendants by the Relief Defendants prior to the commencement of thie receivership.  Esposito had been employed by the Receiver to address the elements of good faith (or the lack thereof) on the part of the Sarroff Defendants in connection with their transfers to the Relief Defendants and their receipt of such transfers.

67.     Lowey and Esposito finalized their expert reports on June 7, 2019, and the Receiver's counsel delivered them to counsel for the Sarroff Defendants the same day.

68.     During the Compensation Period the Receiver's counsel continued to work with all the Sarroff's counsel in an effort to resolve various discovery related issues without the need for judicial intervention. The parties have made progress and continue to work together to resolve discovery related issues, but certain issues that have not yet been brought to the Court's attention remain outstanding.

b.   Defendants' Motion to Transfer to Another District or Dismiss

69.     On January 4, 2019, the Sarroff Defendants filed their Motion to Transfer Matter to the United States District Court for the Southern District of New York and to Dismiss the Second Amended Complaint (the "Motion to Transfer or Dismiss"), together with memorandum of law and supporting affidavits (ECF Nos. 68-70).

70.     The Motion to Transfer or Dismiss alleged, in summary, that: (i) the forum selection clause contained in the Investment Mangement Agreement entered into between Sarroff Management and Sentinel should be enforced against the Receiver and require the transfer of the Sarroff Action to the United States District Court for the Southern District of New York; and (ii) the constructive and intentional fraudulent conveyance claims fail as a matter of law and should be dismissed.

71.     On January 25, 2019, the Receiver timely responded to the Motion to Transfer or Dismiss, arguing that: (i) the forum selection clause does not apply to the fraudulent conveyance claims alleged and cannot be enforced against the Receiver; and (ii) the Receiver has alleged valid claims for constructive and intentional fraudulent conveyance against the Sarroff Defendants.

72.     The parties thereafter each submitted further briefing.

73.     On March 7, 2019, this Court heard oral argument on the Motion to Transfer or Dismiss, and then took the matter under advisement.

74.     On May 10, 2019, this Court entered its Ruling of Motion to Transfer Venue or Dismiss (ECF No. 102), denying the Sarroff Defendants' Motion to Transfer Venue or Dismiss in its entirety.

c.     Receiver's Application for Prejudgment Remedy

75.     Prior to the Compensation Period, Z&Z attorneys drafted and, on December 14, 2018, filed an application for prejudgment remedy (ECF No. 65, the "PJR Application") and a Motion for Disclosure of Assets (ECF No. 66, the "Motion for Disclosure") against the Sarroff Defendants. The PJR Application seeks a court order attaching property of the Sarroff Defendants in an amount sufficient to satisfy the entry of a $7,744,109.23 judgment ($7,306,768.57 against Sarroff Management and Sarroff Fund, and $437,340.66 against Sarroff, individually)

76.     This Court scheduled the hearing to considering the Receiver's PJR Application for May 7, 2019, at 9:00 a.m. and continuing through May 9, 2019.

77.     On May 3, 2019, the Sarroff Defendants, by their counsel, requested an adjournment of the hearing to consider the PJR Application, which the Receiver agreed to on the condition that pending such hearing certain assets in the Sarroff Fund's brokerage account remained there. The Sarroff Defendants agreed. The parties submitted their proposal to this Court

on May 3, 2019, (ECF No. 99), which it entered as its order on May 4, 2019. (ECF No. 100.) Pending the adjudication of the PJR Application (and subject to other certain terms), "A.L. Sarroff Fund, LLC shall at all time maintain cash and securities in its account with a total market value of at least $4.15 million."

78.    This Court then entered an Amended Scheduling Order which, *inter alia*, scheduled the hearing to consider the PJR Application for June 26th – June 28th, 2019. (ECF No. 104.)

79.    The parties ultimately resolved the PJR Application and on June 17, 2019, filed their Joint Motion for Entry of Stipulated Order Regarding Application for Prejudgment Remedy, (ECF No. 120), which this Court entered that day. (ECF No. 121.)

80.    In summary, the stipulated order required the Sarroff Defendants, within thirty (30) days to "provide security in favor and to the reasonable satisfaction of the Plaintiff sufficient to fully and adequately secure a potential judgment entered in this Action against the Defendants, any of them individually or in any combination thereof, including all of the Defendants, which security shall secure up to the amount of $5 million."

81.    Accordingly, the deadline to post such collateral is July 17, 2019. To date, the Sarroff Defendants have offered interests to two pieces of real property and the Receiver has retained an appraiser to verify the value of these interests.

    d.  Receiver's Effort to Compel Disclosure of Attorney/Client Communications
        Based upon Crime/Fraud Exception

82.    The Receiver concluded that the Sarroff Defendants could not withhold, based on the attorney/client privilege, production of (i) attorney/client communications related to a letter from Sarroff's counsel, Bennett Last, sent in November, 2014, to Sarroff insisting that he obtain administrative reports frm Sentinel and a fictious entitly know as the "Ramsey4 fund", and (ii) attorney/client communications related to Smith's and Sarroff's efforts to compel Varacchi to

transfer approximately $3 million to Sarroff Management after they had discovered on or about December 1, 2015, that Varacchi had provided a fraudulent account statement to them mispresenting the current balance of the account as of October 31, 2015 (by millions of dollars), and misappropriated the funds that should have been in that account for other purposes. The Receiver believes that such attorney/client communications are subject to the the crime/fraud exception preventing application of the privilege and requiring their disclosure.

83.     In accordance with the Court's pretrial preferences, on June 7, 2019, the parties filed their Joint Motion for Status Conference, (ECF No. 115), which this Court granted and ordered the status conference to take place on June 18, 2019.  This Court also ordered the parties to brief the issues presented by June 14, 2019.

84.     The Receiver's counsel filed his position statement on June 14, 2019, (ECF 118), and the Sarroff Defendants' filed their position statement on June 15, 2019, (ECF 119).

85.     The status conference was postponed and ultimately rescheduled for July 11, 2019, at which time this Court heard oral argument and took the matter under advisement.

G.     **Settlement – Claims Against Weeden Prime Services, LLC and Related Persons**

86.     During the Compensation Period, the Receiver and Z&Z attorneys continued their investigation into and development of potential causes of action against Weeden Prime Services, LLC ("Weeden Prime") and related persons.

87.     Prior to the Compensation Period, Z&Z attorneys drafted a proposed statement of claim asserting the Receivership Estate's claim for damages against Weeden Prime, and certain related or affiliated parties (collectively, "Weeden"), and Syed Mahmoud Khalid ("Khalid"). Also prior to the Compensation Period, Z&Z attorneys drafted a motion for leave to commence arbitration against Weeden and Khalid, which, on or about November 21, 2018, Z&Z attorneys

circulated to counsel for Weeden.

88.     After discussions concerning potential claims, the Receiver agreed to delay filing the motion for leave to commence arbitration against Weeden and Khalid until the parties had an opportunity to discuss them in more detail (including discussing the prospect of settlement).

89.     Z&Z attorneys negotiated and memorialized the terms of a tolling agreement with Weeden and Khalid to preserve the Receivership Estate's claims during the parties' discussions. Such tolling agreement has been extended multiple times.

90.     Throughout the Compensation Period, Receiver's counsel engaged in extensive settlement negotiations with Weeden and Khalid. This included numerous communications exchanging factual and legal positions, as well as proposals for the resolution of all claims. Ultimately, this proved to be successful.  The parties reached an agreement in concept to settle all claims, on terms and conditions to be set forth in a settlement agreement and approved by this Court.

91.     The parties then drafted and negotiated the terms of the settlement agreement.  The parties ultimatedly entered into the Settlement Agreement effective as of June 28, 2019 (the "Weeden Settlement Agreement").

92.     The Receiver's counsel drafted and on July 8, 2019, filed his Motion for Entry of an Order Approving Settlement Agreement Between Jed Horwitt, Receiver, Weeden Prime Services, LLC, Saxon Prime Holdings, LLC and Syed Mahmoud Khalid. (ECF No. 115.)  The Weeden Settlement Agreement is appended to the approval motion as Exhibit 1.

93.     In summary, Weeden Prime agreed to pay the Receiver $1,892,500 and Khalid agreed to pay the Receiver $232,500 to settle all claims against them.  These two payments total $2,125,000.

94.     In connection with the settlement, Weeden has represented that the total consideration received by it and its affiliates from the Receivership Defendants over the course of their relationship did not exceed $2.5 million.  In addition, Khalid represented that he never received, directly or indirectly, compensation from the Receivership Defendants, other than his compensation from Weeden Prime, which compensation was never directly increased as a result of trading revenues generated from the Receivership Defendants.  Khalid also represented that the financial disclosures he provided to the Receiver through counsel were materially correct (as defined in the Settlement Agreement) when made.

95.     Finally, Weeden Prime and Khalid have agreed to cooperate with the Receiver's ongoing investigation and efforts to liquidate the Receivership Assets to the extent reasonably requested by the Receiver.

96.     In exchange for the foregoing and a general release of any claims that Weeden Prime, Khalid and Khalid's related party, Saxon Prime Holdings, LLC ("Saxon"), may have against the Receivership Defendants and the Receivership Estate, the Receiver will provide a general release to WPS and its affiliates, SPH and Khalid.

**H.     <u>Investigation into and Demand upon Ralph Giorgio</u>**

97.     During the Compensation Period, Z&Z attorneys continued their investigation into potential causes of action against Ralph Giorgio ("Giorgio").

98.     Giorgio became a manager on the Sentinel platform and was added to Sentinel's payroll in December 2015. From December 2015 to May 2016, Giorgio received a gross monthly salary of $2,058.34 from Sentinel. In June 2016, at Giorgio's request, Varacchi caused Sentinel to increase Giorgio's gross monthly salary to $20,000. From June 2016 until the collapse of Varacchi's Ponzi scheme, Giorgio received more than $120,000 from Sentinel (the "Giorgio Transfers").

99.     Upon information and belief, Sentinel did not receive reasonably equivalent value in exchange for the Giorgio Transfers. The Giorgio Transfers were not a draw upon incentive-based payments as Giorgio did not manage sufficient assets on the Sentinel platform to justify the amount received. Rather, upon information and belief, the Giorgio Transfers were made with the expectation that the money would be repaid either to Sentinel or Varacchi.

100.    The Receiver has prepared and intends to filed shortly a request for leave to commence an action against Giorgio to recover the Giorgio Transfers.  The Receiver has also prepared a Complaint against Giorgio seeking such relief.

101.    The Receiver's counsel shared both the motion for leave and the draft Complaint with Giorgio's counsel in the hopes of initiating settlement discussions, and has not received any response to date.

102.    On July 15, 2019, the Receiver filed the Receiver's Motion *On Consent* For Leave To Commence Litigation Against Ralph Giorgio, (ECF No. 119), seeking leave of this Court to commence a civil action against Giorgio.

I.      **Investigation of Private Investments**

103.    During the Compensation Period, the Receiver continued to investigate the Private Investments. The Receiver has researched and analyzed various entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

104.    After reviewing the records of the Receivership Estate, as well as the documents produced pursuant to the Receiver's requests, the Receiver has preliminarily determined that the investments in Zipway LLC, Gravy, Inc., Invigilio, LLC, and Greenhouse Solutions, Inc. are unlikely to provide any value to the Estate. Comparatively, the Receiver has not yet determined if the value realized by liquidating the Receivership Estate's interests in Kizzang, Entourage, Roots, and StereoCast would justify the costs of doing so.

105.    The Receiver has engaged in the process of determining how to liquidate the Receivership Estate's interest in Kizzang, Entourage, Roots, and StereoCast in such a way as to maximize the value available for distribution to Claimants.

106.    At the same time, the Receiver and Z&Z attorneys are evaluating potential fraudulent transfer and other causes of action against the companies underlying the Private Investments.

107.    During the Compensation Period, Z&Z attorneys continued to investigate the prospect of liquidating the Receivership Estate's rights under pending class-action securities lawsuits. The Receivership Entities generated a disproportionately high volume of trades considering their assets. These trades may entitle the Receivership Entities to recover as a class member from certain class-action securities lawsuits.

108.    Because class-action securities lawsuits take approximately four to seven years to generate proceeds, claims liquidators are often engaged either to administer the process in

exchange for a percentage of the proceeds, or to liquidate the class-action claims portfolio by offering its approximate present value.

109.    Z&Z attorneys entered into non-disclosure agreements with two class-action claims liquidating companies and provided each with the trading data necessary to evaluate the Receivership Estate's claims portfolio. As of the filing of this Application, the claims liquidators' analysis is not complete.

110.    In the event that the Receiver determines it is in the best interest of the Receivership Estate to sell the class-action claims portfolio, he will file a motion for authority to do so with the Court. Alternatively, if the class-action claims portfolio is of *de minimis* value to a liquidator, the Receiver may evaluate the costs and benefits of engaging Z&Z staff to oversee the administrative task of filing the class-action claims independently.Actual and Anticipated Disbursement of Assets.

**J.    Actual and Anticipated Disbursement of Assets**

111.    During the Compensation Period, the Receiver made the following disbursements.

112.    On April 2, 2019, this Court granted the Receiver's Seventh Interim Application for Professional Fees and Expenses Incurred By the Receiver and His Professionals, dated February 13, 2019 (ECF No. 88) ("Order Granting Seventh Fee Application"), awarding $168,969.60 for professional services and $26,947.88 for reimbursement of expenses incurred by Z&Z, and $49,166.00 for professional services provided by V&L.

113.    On April 10, 2019, the Receiver disbursed $26,947.88 to Z&Z in reimbursement for the expenses awarded and as authorized by the Order Granting Seventh Fee Application.

114.    On May 6, 2019, this Court granted the Receiver's Eighth Interim Application for Professional Fees and Expenses Incurred By the Receiver and His Professionals, dated April 23, 2019 (ECF No. 109) ("Order Granting Eight Fee Application"), awarding $228,549.40 for

professional services and $34,253.24 for reimbursement of expenses incurred by Z&Z, and $14,686.40 for professional services provided by V&L.

115.    On May 7, 2019, the Receiver disbursed $169,428.92 to Z&Z representing $135,175.68 for approved fees (after deducting the 20% holdback) pursuant to the Order Granting Seventh Fee Application, and $34,253.24 for approved expenses pursuant to the Order Granting Eighth Fee Application.   The Receiver also disburse $39,332.80 to V&L on account of the approved fees (after deducting the 20% holdback) it was due pursuant to the Order Granting Seventh Fee Application.

116.    To date, the Receiver has not yet paid the allowed professional fees awarded pursuant to the Order Granting Eighth Fee Application. Once the Receivership Estate recovers additional amounts such that funds are available to pay such allowed professional fees, the Receiver expects to make such payments.

117.    The Receiver, V&L, and Z&Z have incurred fees for their services and Z&Z have advanced all necessary expenses, which are requested for reimbursement through this Application. (*See* Exs. C and F.)

118.    Provided that the Court awards the fees and expenses requested in this Application, appropriate disbursements, if made, will be reflected on the Receiver's next interim fee application filed after such award.

119.    The Receiver holds cash on hand the Receivership Account and the Reserve Account. As of June 30, 2019, the balance of the Receivership Account is $230,980.77, and the balance of the Reserve Account is $801,365.01. Thus, the total cash on hand in the Receivership Account and the Reserve Account is $1,032,345.78.

### K.    <u>Anticipated Closure</u>

120.    At this time, it is premature for the Receiver to speculate as to when this

Receivership Proceeding will be ready to close.

## IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE

121.   As of the end of the Compensation Period, the following assets are a part of the Receivership Estate:

   a.   The Receivership Account, which is valued at $230,980.77;

   b.   The Reserve Account, which is valued at $801,365.01;

   c.   The Private Investments, which value the Receiver is presently investigating; and

   d.   Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, including, but not limited to, the claims against the TAM Defendants, the Sarroff Defendants, the Rajo Defendants, Kostiner, Weeden Prime, Kizzang, Entourage, and Giorgio.

122.   With respect to the Private Investments, the Receiver has identified the following securities:

   a.   Kizzang: 3,600,000 Class C shares, 5,400,000 Class D shares, and 1,152,666 Class E evidenced by certificates identifying Varacchi as the owner of such interest;

   b.   Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and

   c.   StereoCast: 150,000 shares in the name of Varacchi, evidenced by a certificate identifying Varacchi as the owner of such interest.

123.   The Receiver is investigating how best to liquidate and maximize the value of these equity interests in Kizzang, Entourage, Roots, and StereoCast.

## V.   THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES

### A.   The Governing Legal Standard

124.    The District Court has the power to appoint a receiver and to award the receiver

fees for his services and for expenses incurred by the Receiver in the performance of his duties.

*See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and

successfully discharged the responsibilities placed upon him by the Court and is entitled to

reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953

F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of

his duties.).

125.    The District Court has discretion to determine compensation to be awarded to a

court-appointed equity receiver and his counsel and "may consider all of the factors involved in a

particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253

(7th Cir. 1994).

126.    The case law and other authority may provide "convenient guidelines," but

ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities*

*& Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F.

2d 1087 (5th Cir. 1975).

127.    In awarding counsel fees in Securities Act receiverships, "[t]he court will consider

... the complexity of problems faced, the benefit to the receivership estate, the quality of work

performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach*

*Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362

F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not

necessarily expended), the fair value of such time, labor and skill, the degree of activity, the

dispatch with which the work is conducted and the result obtained).

128.    While "results are always relevant," a good result may take a form other than a

"bare increase in monetary value." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Overall results can be determined only at the conclusion of the Receivership Proceeding.

129.    Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483.

**B.      Application of the Governing Legal Standard to the Application**

130.    Based on the foregoing, the Receiver, Z&Z and V&L respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

131.    As more fully set forth throughout this Application and as detailed in the exhibits submitted herewith, the issues addressed by the Receiver, Z&Z and V&L have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned years, consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions. The Receiver, Z&Z and V&L have made substantial progress in investigating the Receivership Estate's assets and in commencing and prosecuting litigation on behalf of the Receivership Estate.

132.    The Receiver, Z&Z and V&L respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed expediently and efficiently. Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

133.    At the same time, the Receiver, Z&Z and V&L have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

134.    Furthermore, the Commission has reviewed this Application and has stated that it has no objection to the approval of the professional fees and expenses requested herein.

135.    Accordingly, the Receiver, Z&Z and V&L submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties-in-interest.

C.    **Source and Manner of Payment**

136.    The Receivership Estate includes cash held in the Receivership Account. The Receiver, Z&Z, and V&L request that the Court enter an order allowing and permitting the approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees); provided, however, that the Receiver acknowledges that the Receivership Account presently holds insufficient funds to actually make payment at this time. The Receiver intends to hold sufficient funds (in his discretion after consultation with the Commission) for various litigation costs such as experts, depositions, transcripts, etc., as well as the ordinary operating costs of the receivership. Z&Z and V&L understand and agree to suspend payment in the amount of their fees and expenses until further deposits have been made and sufficient funds have been reserved for these anticipated litigation and administrative costs.

**WHEREFORE**, Jed Horwitt, Esq., Receiver, and Zeisler & Zeisler, P.C., counsel to the Receiver, respectfully request that (i) this Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $237,971.80 for legal services rendered during the Compensation Period, and $50,667.42 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (iii) V&L be awarded an allowance of $35,253.60 for services rendered during the

34

Compensation Period, and $0.00 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; and (iv) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 16th day of July, 2019

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER

/s/ Jed Horwitt
Jed Horwitt, Receiver

By: /s/ Stephen M. Kindseth
    Stephen M. Kindseth (ct14640)
    Zeisler & Zeisler, P.C.
    10 Middle Street, 15th Floor
    Bridgeport, CT  06604
    Telephone: 203-368-4234 X 245
    Email: skindseth@zeislaw.com
    His Attorneys

<u>**CERTIFICATE OF SERVICE**</u>

I, Stephen M. Kindseth, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System and also at http://jedhorwittreceiver.com/.


*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)