## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 3:17-cv-00155-VAB |
| MARK J. VARACCHI and | ) |
| SENTINEL GROWTH FUND | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants, | ) |
| and | ) |
| | ) |
| RADAR ALTERNATIVE FUND LP and | ) |
| RADAR ALTERNATIVE MASTER FUND SPC, | ) |
| | ) |
| Relief Defendants. | ) |
| | ) |

## ELEVENTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS

# TABLE OF CONTENTS

I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED ...................... 3
   A.   Discounts ................................................................................................................ 7
   B.   Fee Schedules ......................................................................................................... 8
   C.   Activity Categories ............................................................................................... 10

II.   SUMMARY OF CASH ON HAND ..................................................................... 11

III.  SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE ......................... 12
   A.   The Receiver's Website and Investor Contact .................................................. 13
   B.   The Eleventh Quarterly Status Report .............................................................. 13
   C.   Marshaling of Receivership Assets and Receipt of Assets by Receiver ....................... 13
   D.   Claims Administration ......................................................................................... 14
   E.   Litigation – Sarroff Action .................................................................................. 18
   F.   Civil Action Against Ralph Giorgio .................................................................... 29
   G.   Investigation of Private Investments ................................................................... 30
   H.   Tolling Agreements with Mark J. Varacchi and Jason Rhodes ..................... 31
   I.   Actual and Anticipated Disbursement of Assets ............................................. 32
   J.   Anticipated Closure ............................................................................................. 33

IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE ............................... 33

V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES ............. 34
   A.   The Governing Legal Standard ........................................................................... 34
   B.   Application of the Governing Legal Standard to the Application ................................ 36
   C.   Source and Manner of Payment .......................................................................... 37

**ELEVENTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND
EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS**

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to this Court's Order Appointing Receiver entered May 1, 2017 (ECF No. 12, the "Receivership Order") and Order Reappointing Receiver (ECF No. 47, the "Reappointment Order", and together with the Receivership Order, the "Receivership Orders") entered February 14, 2018, respectfully submits this eleventh interim application (the "Application") for professional fees and expenses incurred on behalf of the Receivership Estate (as defined in the Receivership Orders) by the Receiver, Z&Z, the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L"), and the Receiver's special counsel for transactional services, Karp & Langerman, P.C. ("K&L") during the period commencing October 1, 2019, through and including December 31, 2019 (the "Compensation Period"). In advance of filing, the Receiver provided the Commission with a copy of this Application (including all exhibits), and the Commission's counsel stated that the Commission has no objection to the approval of the professional fees and expenses requested herein.

In support of this Application, the Receiver, V&L, and Z&Z respectfully represent as follows:

## I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED

1.    Jed Horwitt, Esq. serves in his capacity as the Court-appointed Receiver for Sentinel Growth Fund Management, LLC ("Sentinel"), Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC" and, together with Radar LP, collectively, the "Relief Defendants," and the Relief Defendants together with Sentinel, collectively, the

"Receivership Entities").

2.      This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines") and the Receivership Orders.

3.      Pursuant to the SEC Guidelines, the following exhibits are attached to this Application:

a.      The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

b.      A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c.      A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as Exhibit C;

d.      Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as Exhibits D-1; D-2, D-3, D-4, D-5; D-7, D-8, D-9, D-10, D-11, D-12 and D-13.[1]

e.      A Certification of Compliance with the SEC Guidelines by V&L is attached hereto as Exhibit E;

f.      A summary of total expenses for which reimbursement is requested for V&L is attached hereto as Exhibit F; and

g.      Time records summarizing the work performed by V&L's accounting professionals and paraprofessionals for each of its Activity Categories (as hereinafter defined) during the Compensation Period are attached hereto as Exhibits G-1, G-2, G-3, G-4 and G-5.

---

[1] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding and related litigation, and pursuant to the Court's Order entered August 11, 2017 (ECF No. 25), Exs. D-1 through D-13 are filed under seal. Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

h.  A Certification of Compliance with the SEC Guidelines by K&L is attached hereto as <u>Exhibit H</u>;

i.  The time record summarizing the work performed by K&L legal professionals for a single Activity Category, Asset Analysis and Recovery, during the Compensation Period is attached hereto as as <u>Exhibit I-1</u>

4.  The Receiver and Z&Z attorneys and paraprofessionals have expended a total of 496.50 hours working on this matter during the Compensation Period. The Receiver and Z&Z seek allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $150,796.20, and reimbursement of actual and necessary expenses in the amount of $35,594.89.

5.  The Receiver's accountant and financial advisor V&L's professionals and paraprofessional have expended a total of 159.30 hours working on this matter during the Compensation Period. V&L seeks allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $46,414.80 and reimbursement of actual and necessary expenses in the amount of $272.90.

6.  The Receiver's special counsel to provide transactional services, K&L, has expended a total of 17.58 hours working on this matter during the Compensation Period. K&L seeks allowance of compensation of services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $5,713.50, and reimbursement of actual and necessary expenses in the amount of $875.00.

7.  The Receiver, Z&Z and V&L acknowledge that their fee compensation is subject to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Orders. The Receiver requests that K&L not be subject to a twenty percent (20%) holdback considering the relatively *de minimus* amount incurred to complete the work requested by the Receiver to be performed by K&L.

8.      The fees assessed reflect the hours worked by the Receiver, Z&Z and K&L attorneys and paraprofessionals, and the V&L professionals and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z and V&L (described below).

9.      These amounts also take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Orders.

10.      Section III below summarizes the Receiver's administration of the Receivership Estate since his appointment. A narrative description of the particular services provided by the Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as Ex. D-1 through D-13. A narrative description of the particular services provided by V&L's professionals and paraprofessionals is included in the time records attached as Ex. G-1 through G-5. A narrative description of the particular services provided by K&L attorneys is included in the time records attached as Ex. I-1.

11.      Z&Z's expense reimbursements requested are principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) travel charges; (iii) expenses associated with the Receiver's website; (iv) fees for service of subpoenas and complaints; (v) expert witness consulting fees; (vi) photocopying; (vii) processing and hosting of electronically stored information related to litigation relevant to the Receivership Proceeding; (viii) online legal research, (ix) conference call charges,

(x) court reporter charges, (xi) federal express charges and (xii) discovery charges. (*See* Ex. C.)

12.     The Receiver, Z&Z, V&L and K&L have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime. Nor have the Receiver, Z&Z, V&L and K&L requested reimbursement for any meals during the Compensation Period (other than lunches purchased during depositions).

13.     The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies. V&L has not requested reimbursement for photocopying during the Compensation Period.

## A.  Discounts

14.     As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Orders, the Receiver, V&L, and Z&Z have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

15.     More specifically, and as shown in the fee schedules set forth below, Z&Z and V&L have consented to 20% public service discounts to its regularly applicable hourly rates for all legal professionals and paraprofessionals.

16.     The Receiver originally agreed to discount his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver to $250 per hour, reflecting a 50% discount. Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time during this period.

17.     The Receiver requests that K&L not be subject to a twenty percent (20%) public

service discount considering its counsel's extremely competitive customary hourly rate ($325) and the relatively *de minimus* amount incurred to complete the work requested.

    **B.**   **Fee Schedules**

    18.    The fee schedule for the Receiver, showing: his name; the hourly rate applied to his services in this Receivership Proceeding and his customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his services during the Compensation Period; is as follows:

| Receiver | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Horwitt, Jed | $250 ($500) | $250 | 4.50 | $1,125.00 | $1,125.00 |

    19.    The fee schedule for all Z&Z legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows: [2]

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Kindseth, Stephen | $340 ($425) | $85 | 76.30 | $25,942.00 | $6,485.50 |
| Moriarty, James | $320 ($400) | $80 | 21.40 | $6,848.00 | $1,712.00 |
| Romney, Aaron | $320 ($400) | $80 | 320.00 | $102,400.00 | $25,600.00 |
| Blau, Christopher | $220 ($275) | $55 | 2.20 | $484.00 | $121.00 |
| Mahmoud, Nancy | $260 ($325) | $65 | 29.70 | $7,722.00 | $1,930.50 |
| TOTALS: | | | 449.60 | $143,396.00 | $35,849.00 |

---

[2] The schedule does not include amounts incurred to prepare the prior fee application since Z&Z is not seeking compensation for such services.

20.     The fee schedule for the Z&Z legal paraprofessional who provided services during the Compensation Period, showing: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprofessional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Accurso, Deborah | $148 ($185) | $37 | 1.10 | $162.80 | $40.70 |
| Joseph, Kristin | $148 ($185) | $37 | 3.70 | $547.60 | $136.90 |
| Accurso, Ian | $148 ($185) | $37 | 37.60 | $5,564.80 | $1,391.20 |
| TOTALS: | | | 42.40 | $6,275.20 | $1,568.80 |

21.     The fee schedule for all V&L accounting professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Accounting Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Bailey, T | $280 ($350) | $70 | 30.30 | $8,484.00 | $2,121.00 |
| Flaherty | $196 ($245) | $49 | .20 | $39.20 | $9.80 |
| Lowey | $372 ($465) | $93 | 67.40 | $25,072.80 | $6,268.20 |
| Klayman | $164 ($205) | $41 | 14.40 | $2,361.60 | $590.41 |
| Whitehouse | $232 ($290) | $58 | 40.30 | $9,349.60 | $2,337.40 |
| McDonald | $252 ($315) | $63 | .10 | $25.20 | $6.30 |
| Robert | $164 ($205) | $41 | 6.60 | $1,082.40 | $270.60 |
| TOTALS: | | | 159.30 | $46,414.80 | $11,603.71 |

22.     The fee schedule for all K&L legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Langerman, Noel | $325 ($325) | $0.00 | 17.58 | $5,713.50 | $ n/a |

**C.  Activity Categories**

23.     Pursuant to the SEC Guidelines, the Receiver, Z&Z, V&L and K&L have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

Activity Categories Utilized by Receiver and Z&Z Legal Professionals

a.      Category One: Case Administration,  21.10 hours, $6,415.60 (*see* Ex. D-1);

b.      Category Two: Asset Analysis & Recovery, 0 hours, $0.00 (*see* Ex. D-2);

c.      Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d.      Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

e.      Category Five: Claims Administration & Objections, 10.20 hours, $3,392.00 (*see* Ex. D-5);

f.      Category Six: Application for Professional Fees and Expenses (the Receiver and Z&Z does not seek compensation for thefees incurred for these services in this Application) (*see* Ex. D-6);

g.      Category Seven: Litigation – Taran Asset Management, LLC, *et al.*, 0 hours, $0.00 (*see* Ex. D-7); and

h.      Category Eight: Litigation – A. L. Sarroff Management, LLC, *et al.*, 461.20 hours, $139,708.60 (*see* Ex. D-8).

i.      Category Nine: Litigation – Shay Kostiner, 0 hours, $0.00 (*see* Ex. D-9).

j.      Category Ten: Litigation – Weeden Prime Services, LLC,  hours, $0.00 (*see* Ex. D-10).

k.      Category Eleven: Litigation – Rajo Corp., 0 hours, $0.00 (*see* Ex. D-11).

l.      Category Twelve: Litigation – Ralph Giorgio, 0 hours, $0.00 (*see* Ex. D-12).

m.      Category Thirteen: Asset Recovery – Ralph Giorgio, 4.0 hours, $1,280.00 (*see* Ex D-13).

<u>Activity Categories Utilized by Accounting Professionals</u>

a.      Category One: Tax Return Preparation, 0 hours, $0.00 (*see* Ex. G-1);

b.      Category Two: Data Analysis, 0 hours, $0.00 (*see* Ex. G-2);

c.      Category Three: Forensic Accounting, 0 hours, $0.00 (*see* Ex. G-3);

d.      Category Four: Expert Report Preparation, 0 hours, $0.00 (*see* Ex. G-4); and

e.      Category Five: Sarroff Litigation, 159.30 hours, $46,414.80 (*see* Ex. G-5).

<u>Activity Categories Utilized by K&L Professionals</u>

a.      Category One: Asset Analysis & Recovery, 17.58 hours, $5,713.50 (*see* Ex. I-1);

## II.   <u>SUMMARY OF CASH ON HAND</u>

24.     As of December 31, 2019, the Receiver held in the Receivership Account (as defined and discussed in Section IV-D below) the amount of $2,486,446.35.

25.     In accordance with the Plan Approval Order, prior to the Compensation period, the

Receiver transferred $801,365.01 from the Receivership Account to a newly established segregated account (the "Reserve Account") to "ensure that if a Remaining Disputed Claim is Allowed, the Receiver shall have funds left to pay such Allowed Claim in the amount provided for in the Plan of Distribution for such category of Claimant." *See* Plan Approval Order § 8(xi). Z&Z attorneys consulted with V&L to ensure that the Reserve Account was established as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, and that the establishment and funding of the Reserve Account did not disrupt the Receivership Account's Qualified Settlement Fund status.

26.     As of December 31, 2019, the Reserve Account continued to hold the balance of $766,635.01 (after having distributed payment to a secured creditor in accordance with this Court's Order, as more fully explained herein).

27.     The Receiver's cash on hand held in the Receivership Account and the Reserve Account, therefore, total, as of December 31, 2019, the amount of $2,486,446.35. This combined balance reflects a net decrease of $173,123.58 during the Compensation Period. (*See* Ex. A.)

## III.    SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE

28.     During the Compensation Period, the Receiver diligently exercised his duties pursuant to the terms of the Receivership Orders and made significant progress in investigating, marshalling and liquidating Receivership Assets for distribution to the holders of Allowed Claims against the Receivership Estate. Items requiring significant work by the Receiver and his professionals, as discussed in more detail below, were, in summary, continuing to litigate a previously commenced civil actions, to investigate and analyze potential additional causes of action, to commence a civil action, and to continue to move forward with his objections to the Remaining Disputed Claims.

29.     Utilizing Z&Z as his legal professionals and V&L as his accountants and financial advisors, the Receiver has undertaken the following on behalf of the Receivership Estate:

A.  **The Receiver's Website and Investor Contact**

30.     At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com – that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

31.     The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information.

32.     Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the Receivership Proceeding and the claims management procedures discussed herein.

B.  **The Eleventh Quarterly Status Report**

33.     The Receiver and Z&Z also prepared and, on January 30, 2020, filed the Eleventh Quarterly Status Report (ECF No. 168). In drafting the Eleventh Quarterly Status Report, the Receiver and Z&Z compiled comprehensive information to update the Court, the Commission and all other parties-in-interest as to the Receiver's operations, the Receivership Estate's assets and the status of various litigation and Claims against the Receivership Estate.

C.  **Marshaling of Receivership Assets and Receipt of Assets by Receiver**

34.     Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and like fiduciaries), which account (the "Receivership Account") holds funds marshaled by the Receiver and constitutes a Receivership Asset.

35.     Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to

assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.

36.     During the Compensation Period, the Receivership Account accrued interest at a rate of 0.33% monthly, amounting to total interest payments of $1,516.68 for the Compensation Period.

**D.  Claims Administration**

37.     Prior to the Compensation Period, Z&Z attorneys investigated the Receivership Estate's basis for objecting to the Remaining Disputed Claims. The Receiver then objected to such claims.

        a.   Claim Asserted by Neila Fortino

38.     With respect to the claim held by Neila Fortino (the "Fortino Claim"), the Receiver thoroughly analyzed the factual and legal basis for her asserted claim in the amount of $4,038,000. After the completion of his investigation, on March 11, 2019, the Receiver's counsel articulated to Fortino's counsel his position with respect to the Fortino Claim and the basis for his objection. On May 1, 2019, Forino's counsel responded. The Receiver continued to disagree with Fortino's perspective on her claim.

39.     Accordingly, prior to and during the Compensation Period, the Receiver's counsel prepared his Motion for Determination of Claim Held by Neila Fortino.  The Receiver explained his position that the Fortino Claim against the Receivership Estate should be allowed in the amount of $1,439,550 and no more. Although Fortino never invested directly into the Receivership Entities, her claim is based upon the transfer originally made by the intermediary, Mind the Gap Consulting, LLC ("MTG") to Sentinel in the amount of $4 million, and the subsequent returns on account of this amount from Sentinel to MTG in the amount of $2,560,450. The Receiver stated further that he had confirmed that MTG, in fact, made these investments on Fortino's behalf.

14

Considering this and the surrounding circumstances as more fully explained herein, the Receiver submitted that Fortino should hold the claim rather than MTG.

40.     The Receiver believes that the identity of the person who actually holds the claim does not alter the amount of the claim. The claim amount is apparent through the application of the well-established methodology employed by the Receiver in this case with this Court's approval. Based upon the $4 million transfer from MTG to Sentinel and the distributions to MTG from Sentinel in the amount of $2,560,450, the net amount for this claim equals $1,439,550. Accordingly, it is the Receiver's position that Fortino's submitted claim in the amount of $4,038,000 should be disallowed to the extent it exceeds the amount of $1,439,550.

41.     Finally, as presented by the Receiver, under the "Rising Tide" method of distribution (the "Rising Tide Method"), Fortino's pre-receivership recovery percentage would be 64% ($2,560,450/$4,000,000). Since the percentage distribution in this receivership to date has only reached 19.2%, the Receiver further requested that this Court authorize the release of funds held in reserve on account of the Fortino Claim pursuant to the Plan Approval Order (as that term is defined below).

42.     The Receiver filed on July 2, 2019, his Motion for Determination of Claim held by Neila Fortino. (ECF No. 113.) The Clerk scheduled July 23, 2019, as the deadline for a response. Fortino, through her counsel, then requested a continuance of her response date, which the Receiver agreed to and the Court entered an extension of her time to respond through August 22, 2019.

43.     On August 22, 2019, Fortino filed her objection, (ECF No. 140), to the Receiver's motion to determine her claim.

    b.  <u>Claim Asserted by Flatiron Partners</u>

44.     The Receiver, having fully investigated the facts and circumstances surrounding the Flatiron Claim, and having considered applicable legal authority as well as various equitable factors, concluded that the pre-receivership recovery percentage attained by Flatiron was 43.06%—$3,057,931 recovered on account of $7,100,921 invested.

45.     Flatiron argues that its recovery percentage should be 20.74%.

46.     The difference in these two percentages arises from a dispute over whether the $2 million initial investment made on January 15, 2015, and subsequent $2 million withdrawal made by Sentinel to Flatiron on February 26, 2015, should be included in the pre-receivership percentage calculation. Flatiron seeks to disregard these two initial transfers because it intended at that time to invest only $2 million which it ultimately deposited on March 2, 2015. Ignoring the initial investment and subsequent distribution, the pre-receivership recovery percentage realized by Flatiron would be 20.74% ($1,057,931 recovered on $5,100,921 invested).

47.     The Receiver submits that there is no legal basis to disregard an initial investment and subsequent distribution made by a particular Claimant for purposes of determining the pre-receivership percentage recovery realized by that Claimant. To do so would be fundamentally inconsistent with the "Claim Calculation Methodology" and Rising Tide Method adopted by this Court and applied to all other Claimants in this receivership proceeding.

48.     Flatiron's original $2 million investment was quickly misappropriated as part of the Ponzi scheme. On account of this January 2015 investment, Flatiron received $22,132.45 on February 20, 2015 from Sentinel. On February 26, 2015, when Sentinel transferred $2 million back to Flatiron, Flatiron did not receive the particular $2 million it had originally deposited. Instead, Flatiron received the proceeds of other defrauded investors' deposits. At that moment, Flatiron had received 100% of its original investment from the Ponzi scheme (plus "profits"). That starting

point (100% recovery, subject to further adjustment by later deposits and distributions) is perfectly appropriate to further the goal of equalizing the percentage recoveries realized among the defrauded investors. Flatiron benefitted from the Ponzi scheme to the extent it received the product of the Ponzi scheme to the detriment of other defrauded investors.

49.     While Flatiron then reinvested $2 million, such did not alter where the money had come from to make the prior $2 million distribution to Flatiron.  Flatiron also had, at that moment, the choice not to reinvest. Instead, it chose to invest $2 million on March 2, 2015. The re-investment perpetuated the Ponzi scheme and is taken into account under the Rising Tide Method as an additional investment.

50.     The Receiver has uniformly applied the Rising Tide Method to all Claimants in this receivership proceeding, many of whom would have been materially impacted had the Receiver applied the alternative methodology requested by Flatiron.

51.     In the Receiver's view, there is simply no basis to provide favored treatment to Flatiron or alter the methodologies adopted by this Court and implemented by the Receiver to date.

52.     Accordingly, during the Compensation Period, on July 19, 2019, the Receiver filed his Motion for Determination of Claim held by Flatiron Partners, LP. (ECF No. 125.) The Court scheduled July 23, 2019, as the deadline for a response.

53.     On August 7, 2019, Flatiron, through its counsel, requested a continuance of its response date, (ECF No. 130), which the Receiver agreed to and the Court ordered, (ECF No. 133), extending the time to respond through and including August 23, 2019.

54.     On August 23, 2019, Flatiron filed her objection, (ECF No. 141), to the Receiver's motion to determine her claim

     c.   <u>Procedural Posture of Claims Determination</u>

55.     The Receiver attempted to reach with Fortino's and Flatiron's respective counsel an agreed upon schedule for limited discovery and a claims adjudication process which ultimately Fortino and Flatiron opposed.

56.     On December 12, 2019, the Receiver filed his Motion for Entry of Summary Procedures Regarding Receiver's Motions for Determination of Claims Asserted by Neila Fortino and Flatiron Partners, LP. (ECF No. 150.) The Receiver proposed a brief four month period within which to conduct discovery pursuant to the Federal Rules of Civil Procedure.

57.     In response, Fortino and Flatiron sought brief extensions of time to respond to the proposed summary procedures motion. The Receiver consented to such extensions and the deadline for them to respond is currently January 17, 2020, and they each timely filed their opposition on that day. The Receiver's reply was filed on January 30, 2020 (ECF No. 169).

**E.   Litigation – Sarroff Action**

58.     During the Compensation Period, the Receiver and Z&Z continued to prosecute the lawsuit captioned, *Jed Horwitt Esq., Receiver v. Alan Sarroff et al.*, (Civil Action No.: 3:17-cv-01902-VAB) (the "Sarroff Action"), against Alan L. Sarroff ("Sarroff"), A.L. Sarroff Management, LLC ("Sarroff Management"), and A.L. Sarroff Fund, LLC ("Sarroff Fund," and all of them collectively, the "Sarroff Defendants"), in the United States District Court for the District of Connecticut.

59.     The Sarroff Action seeks to recover pursuant to Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA") over $14 million that Varacchi caused Sentinel and Radar LP to pay to or for the benefit of the Sarroff Defendants (the "Sarroff Transfers").

60.     The Sarroff Transfers sought to be avoided as fraudulent transfers consist of: (i) a $7.3 million three-day loan repayment on a loan originally made to cover a day trading margin

call; (ii) a $125,000 "fee" for that loan and an additional $25,000 "kicker"; and (iii) "investment" related transfers totaling in excess of $7.7 million.

a.   Amended Scheduling Order

61.   Based on this Court's Amended Scheduling Order, (ECF No. 81), entered on February 12, 2019, the following schedule remained in place governing the litigation of the Sarroff Action:

- Depositions of Plaintiff's experts to be completed by July 5, 2019;
- Defendants' expert disclosures due by August 2, 2019;
- Discovery shall close by September 6, 2019;
- Dispositive motions are due by October 31, 2019;
- Joint trial memorandum is due by November 8, 2019 if no dispositive motion is filed, or 30 days after the Court rules on any dispositive motion; and
- Trial ready date is December 2, 2019 if no dispositive motion is filed, or 30 days after the filing of the joint trial memorandum.

b.   Receiver's Ongoing Effort to Prosecute Litigation

62.   Prior to and during the Compensation Period, the Receiver's counsel worked extensively with the two experts the Receiver had employed to provide their expert opinions in the Sarroff Action, namely, Keith Lowey ("Lowey"), of V&L, and Mr. Joseph Esposito ("Esposito"). The Receiver engaged Lowey to opine concerning the existence of a Ponzi scheme and the various transfers made to the Sarroff Defendants by the Relief Defendants prior to the commencement of this receivership. Esposito had been employed by the Receiver to address the elements of good faith (or the lack thereof) on the part of the Sarroff Defendants in connection with their transfers to the Relief Defendants and their receipt of such transfers.

63.   On June 7, 2019, the Plaintiff timely disclosed these two experts and delivered their expert reports to the Sarroff Defendants' counsel.

64.   On or about June 20, 2019 (almost two weeks after receiving the report and with only slightly more than two weeks to depose the disclosed experts before the July 5th deadline),

the Sarroff Defendants first attempted to coordinate the scheduling of Mr. Lowey's and Mr. Esposito's depositions.  Because the July 5th deadline to complete these depositions fell on the week of the Fourth of July holiday, the Receiver initially stated that he had no objection if the Sarroff Defendants wanted to schedule them the following week.  Reluctant to depose both experts in the same week, the Sarroff Defendants initially proposed to depose the Plaintiff's experts on July 10th and 17th.

65.    The Receiver repeatedly made clear that he had agreed to produce his experts for their depositions after the July 4th deadline only on the condition that the Sarroff Defendants would not attempt to use this accommodation as a basis to delay any other deadlines, including the Defendants' August 2nd deadline to disclose their experts.

66.    The Sarroff Defendants subsequently requested another week delay.  They asked to depose Mr. Esposito on July 18th and Mr. Lowey on July 24th.  The Receiver agreed and confirmed both dates even though, once again, the July 4th deadline had passed.

67.    Mr. Esposito's deposition took place as agreed on July 18th.

68.    On July 19th the Sarroff Defendants unilaterally elected not to depose Mr. Lowey on July 24th.

69.    On July 29th, the United States' Department of Justice ("DOJ") sought a limited stay to postpone the depositions of Mark Varacchi and that certain individual, Michael Meyerhofer.  Immediately after, the Sarroff Defendants requested a stay of all deadlines set forth in the Amended Scheduling Order, including their expert disclosures due later that week.

70.    On July 31, 2019, this Court entered the following order:

[T]he Court STAYS the current 8/2/2019 deadline for expert disclosures, as well as the depositions of Mr. Varacchi and Mr. Rhodes, pending the resolution of the motion to intervene and the motion for a more lengthy stay of the pre-trial deadlines.

(ECF No. 141.)

71.     On August 13, 2019, this Court granted the government's motion to intervene, ordered a limited stay of discovery as to Varacchi and Mayerhofer only, and denied Defendants' motion to modify the Amended Scheduling Order.  This Court also ordered that:

> Because the Court stayed the August 2, 2019 deadline for expert disclosures until this motion was decided, see ECF No. 141, the parties are directed to meet, confer, and jointly propose an updated schedule for the completion of expert discovery by August 30, 2019.

(ECF No. 149.)

72.     The following day, August 14, 2019, the clerk entered the following docket entry: "Updated schedule for the completion of expert discovery due by 8/30/2019."

73.     The parties conferred and attempted to reach an agreement upon an updated schedule for the submission of the Sarroff Defendants' expert disclosures and the completion of expert discovery, but could not reach an agreement. Consequently, they each submitted their own proposal.

74.     On August 30th, the Receiver proposed, (ECF No. 154), that the Sarroff Defendants make their expert disclosures by September 5, 2019, that the Receiver take his deposition of the Sarroff Defendants' experts by October 4, 2019, and that the deposition of Mr. Lowey take place the week of September 23, 2019 (even though from the Receiver's perspective the Sarroff Defendants had relinquished its opportunity to take such deposition).

75.     Also on August 30th, the Sarroff Defendants proposed to make their expert disclosures by October 7th, and that the Receiver complete his deposition of such experts by October 28th. The Sarroff Defendants contemplated taking the deposition of Mr. Lowey the week of September 23rd.

76.     No order entered regarding either the Receiver's or the Sarroff Defendants'

proposal for the completion of expert discovery.

77.     Notwithstanding that the Sarroff Defendants had previously relinquished their right to take the deposition of Mr. Lowey within the time required by the Amended Scheduling Order, or as subsequently agreed by the Receiver, the Receiver voluntarily produced Mr. Lowey for his deposition by the Sarroff Defendants on October 4, 2019.

78.     On October 29, 2019 (well past even what the Sarroff Defendants had requested: two weeks after Mr. Lowey's deposition), the Sarroff Defendants finally made their expert disclosures.

79.     The Sarroff Defendants' expert disclosures consisted in the following:

- Expert Report Christopher D. Ekimoff ("Mr. Ekimoff"), who had been retained by the Sarroff Defendants "to consider available information and to respond to the Report of Keith D. Lowey, CPA, CFF, CIRA…, dated June 7, 2019…, and his subsequent deposition testimony given on October 4, 2019…, regarding his opinions that (1) Sentinel and its manager, Mark Varacchi…, conducted a Ponzi scheme, (2) the Receivership Entities were insolvent, and (3) the Defendants withdrew $7.7 million in funds from Sentinel between August 2013 through December 2016…."

- Rebuttal Expert Report of James F. Miller ("Mr. Miller"), who had been retained by the Sarroff Defendants "to respond to the expert report of Joseph F. Esposito submitted in this matter [by the Receiver]…and to render opinions regarding standard practices and customs in the securities industry and how Mr. Esposito applied them to the conduct of [the Sarroff] Defendants in this case."

- Rebuttal Expert Report of Terrence Travis ("Mr. Travis"), who had been retained by the Sarroff Defendants to respond to the expert report provided by the Receiver's expert, Joseph F. Esposito, articulating his expert opinion that "the $125,000 fee Sentinel paid on the Margin Loan 'is excessive, does not represent industry practice and is not representative of the risk involved in the loan.'"

80.     The Receiver's counsel then deposed Mr. Travis on November 18, 2019, Mr. Ekimoff on November 20, 2019, and Mr. Miller on November 26, 2019.

81.     The Receiver has reserved any and all rights he may have with respect to the

untimely disclosed experts.

   c. <u>Receiver's Application for Prejudgment Remedy</u>

  82. Prior to the Compensation Period, Z&Z attorneys drafted and, on December 14, 2018, filed an application for prejudgment remedy (ECF No. 65, the "PJR Application") and a Motion for Disclosure of Assets (ECF No. 66, the "Motion for Disclosure") against the Sarroff Defendants. The PJR Application seeks a court order attaching property of the Sarroff Defendants in an amount sufficient to satisfy the entry of a $7,744,109.23 judgment ($7,306,768.57 against Sarroff Management and Sarroff Fund, and $437,340.66 against Sarroff, individually)

  83. This Court scheduled the hearing to considering the Receiver's PJR Application for May 7, 2019, at 9:00 a.m. and continuing through May 9, 2019.

  84. On May 3, 2019, the Sarroff Defendants, by their counsel, requested an adjournment of the hearing to consider the PJR Application, which the Receiver agreed to on the condition that pending such hearing certain assets in the Sarroff Fund's brokerage account remained there. The Sarroff Defendants agreed. The parties submitted their proposal to this Court on May 3, 2019, (ECF No. 99), which it entered as its order on May 4, 2019. (ECF No. 100.) Pending the adjudication of the PJR Application (and subject to other certain terms), "A.L. Sarroff Fund, LLC shall at all time maintain cash and securities in its account with a total market value of at least $4.15 million."

  85. This Court then entered an Amended Scheduling Order which, *inter alia*, scheduled the hearing to consider the PJR Application for June 26th – June 28th, 2019. (ECF No. 104.)

  86. The parties ultimately resolved the PJR Application and on June 17, 2019, filed their Joint Motion for Entry of Stipulated Order Regarding Application for Prejudgment Remedy, (ECF No. 120), which this Court entered that day. (ECF No. 121.)

87.     In summary, the stipulated order required the Sarroff Defendants, within thirty (30) days to "provide security in favor and to the reasonable satisfaction of the Plaintiff sufficient to fully and adequately secure a potential judgment entered in this Action against the Defendants, any of them individually or in any combination thereof, including all of the Defendants, which security shall secure up to the amount of $5 million."

88.     Accordingly, the deadline to post such collateral was July 17, 2019.

89.     The Sarroff Defendants initially offered as collateral two pieces of real property, and represented them to have more than sufficient equity to fully secure the $5 million stipulated amount.

90.     The Receiver retained an appraiser to verify the value of these interests as represented by the Sarroff Defendants. The Receiver obtained such appraisals and they demonstrated that the proposed real estate significantly lacked the value necessary to secure $5 million.

91.     The Sarroff Defendants then offered additional collateral in the form of a balance in a financial account, which the Receiver preliminarily determined to be sufficient when combined with the real estate.

92.     The parties thereafter continued negotiating and drafting the documents necessary to secure the possible judgment of up to $5 million entered in the Sarroff Action against the proposed collateral. K&L has represented the Receiver in that regard.

93.     Upon further review of the proposed collateral, K&L and Z&Z determined that the interest offered in the financial account actually constituted an ownership interest in a hedge fund. After consultation with K&L, the Receiver determined this hedge fund interest pledged to secure the possible judgment of $5 million (along with the real estate) would be acceptable.

94.     K&L finalized the documents and reached an agreement with the Sarroff Defendants's counsel as to their form and content.  The Receiver has executed the documents and is waiting on the Sarroff Defendants' final signatures.

95.     The Receiver anticipates that the documents will be completed and fully executed, and all related filings will be accomplished shortly, which will then ensure that up to $5 million of assets will be available to recover upon in the event of a judgment entered in the Sarroff Action in favor of the Receiver and against the Sarroff Defendants.

d.     Receiver's Rule 30(b)(6) Depositions of the Sarroff Defendants

96.     On August 27, 2019, the Court entered an Order modifying the Amended Scheduling Order (the "August 27 Modification") to permit the parties until September 20, 2019 to assert whatever rights they had as of August 22, 2019 with respect to Plaintiff's July 25, 2019 Rule 30(b)(6) Deposition Notices (the "30(b)(6) Notices") directed to Sarroff Management and the Sarroff Fund (the "Sarroff Entities"). (ECF No. 152).  The Court subsequently extended the September 20 deadline until September 27.  (ECF No. 159). The purpose of the August 27 Modification was to allow Plaintiff an opportunity to serve the Sarroff Entities with written interrogatories to be answered in writing, under oath, subject to the Sarroff Entities' right to assert objections thereto, in an attempt to resolve the parties' dispute over the 30(b)(6) Notices without judicial intervention.

97.     The process undertaken by the parties narrowed the issues that otherwise would have been presented to the Court, but the parties had not been able to resolve their dispute concerning the 30(b)(6) Notices.  Generally, the Sarroff Defendants objected to all questions concerning the similarities and differences between their account documentation with the Receivership Entities, on the one hand, and their documentation in other investment contexts, on

the other hand.

98.     The Receiver contended that the distinctions between the documentation surrounding the Sarroff Entities' investments with Sentinel as compared to their other investment and managed account relationships highlight red flags that should have placed the Sarroff Defendants on notice of Mr. Varacchi's fraud and dishonesty from the inception of their investment relationship with the Receivership Entities.   The Receiver also contended that the Sarroff Entities waived their right to object to the 30(b)(6) Notices by waiting until a few days before the Receiver had scheduled the depositions to take place before objecting.

99.     The Sarroff Defendants contended that the information sought by the Receiver falls outside the scope of Rule 26 discovery.   The Sarroff Defendants further contended that the Receiver may not take Rule 30(b)(6) depositions of the Sarroff Entities because the Sarroff Entities would designate Mr. Smith and/or Mr. Sarroff as their corporate representative(s) and the Receiver has already deposed both of them in their individual capacities.

100.     The Receiver also sought to compel the Sarroff Defendants to produce certain documents concerning specified issues and answer certain interrogatories and requests for admission to which Sarrroff Defendants timely objected.

101.     Last, the Sarroff Defendants sought to compel the Receiver to produce all email communications between Varacchi and Jason Rhodes ("Rhodes") that are in the Receiver's possession.

102.     The Receiver responded by arguing that the Sarroff Defendants' request was overly broad and it would be unduly burdensome to comply with the request.   The Receiver further contended that he has run all agreed upon search terms, has produced all known documents that are reasonably related to the parties' claims and defenses (approximately 200,000 pages of

documents), is not withholding any documents or information of which he is aware that is reasonably responsive to the Sarroff Defendants' production requests and is willing to run additional terms that reasonably limit the scope of the production, but the Receiver does not believe that the Sarroff Defendants are entitled to all communications between Varacchi and Rhodes without restriction.

103.    This Court held a telephonic status conference concerning these discovery issues on October 17, 2019, and then took these remaining discovery disputes under advisement.  (ECF No.162.)

104.    On October 21, 2019, this Court entered its Ruling on Discovery Dispute, (ECF No. 74) permitting the depositions of Sarroff Fund and Sarroff Management pursuant to Rule 30(b)(6), compelling the Sarroff Defendants to answer the remaining written discovery and precluding further discovery related to Varacchi's and Rhodes' email communications.

105.    The Receiver's counsel took the Rule 30(b)(6) depositions of the defendants, the Sarroff Fund and Sarroff Management, on December 18, 2019.

e.    <u>Summary Judgment</u>

106.    On October 21, 2019, the parties jointly moved this Court for an Order modifying the Amended Scheduling Order, dated February 12, 2019 (Doc. No. 81), only insofar as it concerned the parties' summary judgment deadlines. Consistent with the parties' proposal but including additional scheduling items, on October 22, 2019, this Court entered the following Order:

- Discovery shall close by November 15, 2019;
- Dispositive motions are due by December 13, 2019;
- Objections are due by January 17, 2020;
- Reply briefs are due by January 31, 2020;
- Joint trial memorandum is due by April 3, 2020 if no dispositive motion is filed, or 30 days after the Court rules on any dispositive motion; and

- Trial ready date is May 4, 2020 if no dispositive motion is filed, or 30 days after the filing of the joint trial memorandum.

107.    On December 12, 2019, the Sarroff Defendants filed their Defendants' Motion On Consent To Modify The Amended Scheduling Order (ECF No. 180), seeking to extend the dispositive motion deadline through December 17, 2019. The Receiver consented to this request. This Court approved and entered such extension on December 13, 2019 (ECF No. 182).

108.    On December 17, 2019, the Receiver filed Plaintiff's Motion for Partial Summary Judgment (ECF No. 184), seeking summary judgment "on Counts One, Five and Nine of the Receiver's Third Amended Complaint—the Receiver's claims to avoid Intentional Fraudulent Transfers caused by Mark J. Varacchi from the Receivership Entities' accounts to accounts owned by defendants Alan L. Sarroff and A.L. Sarroff Management, LLC pursuant to Conn. Gen. Stat. § 52-552e(a)(1)."

109.    In summary, the Receiver argued that no genuine issue of material fact existed with respect to Varacchi's and Rhodes' operation of a Ponzi scheme from 2013 through 2016, and, the transfers of property made by the Ponzi scheme to the Sarroff Defendants during this time frame. Therefore, the Receiver submitted, the transfers received by them constituted avoidable fraudulent transfers as a matter of law. Even if successful, any recovery from the Sarroff Defendants would be subject to their asserted "good faith" defense and any other defenses.

110.    On December 17th and early on December18[th], 2019, the Sarroff Defendants filed their Defendants' Motion for Summary Judgment (ECF Nos. 184-200) asking this Court to "enter summary judgment for Defendants denying (i) the Receiver's [Connecticut Uniform Fraudulent Coneyance Act] claims as to the Sarroff Principal Transfers and (ii) his claim for unjust enrichment."

28

### F.   Civil Action Against Ralph Giorgio

111.    Prior to the Compensation Period, Z&Z attorneys investigated potential causes of action against Ralph Giorgio ("Giorgio").

112.    Giorgio became a manager on the Sentinel platform and was added to Sentinel's payroll in December 2015. From December 2015 to May 2016, Giorgio received a gross monthly salary of $2,058.34 from Sentinel. In June 2016, at Giorgio's request, Varacchi caused Sentinel to increase Giorgio's gross monthly salary to $20,000. From June 2016 until the collapse of Varacchi's Ponzi scheme, Giorgio received more than $120,000 from Sentinel (the "Giorgio Transfers").

113.    Upon information and belief, Sentinel did not receive reasonably equivalent value in exchange for the Giorgio Transfers. The Giorgio Transfers were not a draw upon incentive-based payments as Giorgio did not manage sufficient assets on the Sentinel platform to justify the amount received. Rather, upon information and belief, the Giorgio Transfers were made with the expectation that the money would be repaid either to Sentinel or Varacchi.

114.    The Receiver prepared a request for leave to commence an action against Giorgio to recover the Giorgio Transfers.  The Receiver also prepared a Complaint against Giorgio seeking such relief.

115.    The Receiver's counsel shared both the motion for leave and the draft Complaint with Giorgio's counsel, and requested that the parties engage in settlement discussions. The Receiver's counsel did not receive any response.

116.    On July 15, 2019, the Receiver filed the Receiver's Motion *On Consent* For Leave To Commence Litigation Against Ralph Giorgio, (ECF No. 119), seeking leave of this Court to commence a civil action against Giorgio. On July 16, 2019, the Court approved the motion and granted the Receiver such leave. (ECF No. 121.)

117.    On October 1, 2019, the Receiver commenced his civil action against Ralph Giorgio, before the United States District Court for the District of Connecticut.

118.    Mr. Giorgio has not appeared in that action against him.  The Receiver's counsel has been engaged in communications with Mr. Giorgio's counsel in the hopes of reaching a settlement.  The Receiver intends to move in the near future to default Mr. Giorgio in the civil action for his failure to appear and respond to the Complaint if a settlement is not reached.

### G.  Investigation of Private Investments

119.    The Receiver has investigated the Private Investments. The Receiver has researched and analyzed various entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

120.    After reviewing the records of the Receivership Estate, as well as the documents produced pursuant to the Receiver's requests, the Receiver has preliminarily determined that the investments in Zipway LLC, Gravy, Inc., Invigilio, LLC, and Greenhouse Solutions, Inc. are unlikely to provide any value to the Estate. Comparatively, the Receiver has not yet determined if the value realized by liquidating the Receivership Estate's interests in Kizzang, Entourage, Roots, and StereoCast would justify the costs of doing so.

121.    The Receiver has engaged in the process of determining how to liquidate the Receivership Estate's interest in Kizzang, Entourage, Roots, and StereoCast in such a way as to maximize the value available for distribution to Claimants.

122.    At the same time, the Receiver and Z&Z attorneys are evaluating potential fraudulent transfer and other causes of action against the companies underlying the Private Investments.

123.    Z&Z attorneys continue to investigate the prospect of liquidating the Receivership Estate's rights under pending class-action securities lawsuits. The Receivership Entities generated

a disproportionately high volume of trades considering their assets. These trades could have possibly entitled the Receivership Entities to recover as a class member from certain class-action securities lawsuits.

124.    Because class-action securities lawsuits take approximately four to seven years to generate proceeds, claims liquidators are often engaged either to administer the process in exchange for a percentage of the proceeds, or to liquidate the class-action claims portfolio by offering its approximate present value.

125.    Z&Z attorneys entered into non-disclosure agreements with two class-action claims liquidating companies and provided each with the trading data necessary to evaluate the Receivership Estate's claims portfolio. One of the claims liquidators' provided its analysisand it appears that only a *de minimus* amount could be recovered.

**H.  Tolling Agreements with Mark J. Varacchi and Jason Rhodes**

126.    The Receiver has investigate potential causes of action against Mr. Varacchi and Mr. Rhodes based upon their conduct in orchestrating and operating a Ponzi scheme through Sentinel and the Relief Defendants, and otherwise engaging in actionable conduct. Due to the pending criminal proceedings involving them and the possibility of a settlement, the Receiver has not yet commenced a civil action against them.

127.    In order to preserve the *status quo*, the Receiver's counsel approached each of Mr. Varrachi's and Mr. Rhodes' criminal counsel and asked if their respective clients would enter into a Tolling Agreement and Stipulation which would "toll, suspend, and extend the running of any and all applicable statutes and periods of limitations and other time-related claims and/or defenses which he might otherwise be or become entitled to assert." The Receiver counsel further proposed a tolling period through July 1, 2020.  Mr. Varacchi and Mr. Rhodes agreed to enter into such agreements.

128.     Effective December 13, 2019, Mr. Varacchi and the Receiver entered into their Tolling Agreement and Stipulation, providing for the tolling of all applicable statutes of limitations through and including July 1, 2020.

129.     Effective December 18, 2019, Mr. Rhodes and the Receiver entered into their Tolling Agreement and Stipulation, providing for the tolling of all applicable statutes of limitations through and including July 1, 2020.

## I.   Actual and Anticipated Disbursement of Assets

130.     During the Compensation Period, the Receiver made the following disbursements.

131.     On November 22, 2019, this Court granted the Receiver's Amended Tenth Interim Application for Professional Fees and Expenses Incurred By the Receiver and His Professionals, (ECF No. 149) ("Order Granting Tenth Fee Application"), awarding (i) $173,177.80 for professional services and $27,951.85 for reimbursement of expenses incurred by Z&Z, (ii) $6,495.60 for professional services provided by V&L, and (iii) $2,843.75 for professional services provided by K&L.

132.     On November 25, 2019, the Receiver disbursed $166,494.09 to Z&Z  for approved fees (after deducting the 20% holdback) and expenses pursuant to the Order Granting Tenth Fee Application. The Receiver also on November 25, 2019, disbursed $5,302.42 (after deducting the 20% holdback) to V&L. On December 3, 2019, the Receiver disbured $2,843.75 to K&L on account of the approved fees they were due pursuant to the Order Granting Tenth Fee Applications.

133.     The Receiver, Z&Z, V&L and K&L have incurred fees for their services and Z&Z has advanced all necessary expenses, which are requested for reimbursement through this Application.

134.     Provided that the Court awards the fees and expenses requested in this Application, appropriate disbursements, if made, will be reflected on the Receiver's next interim fee application

filed after such award.

135.    The Receiver holds cash on hand the Receivership Account and the Reserve Account. As of December 31, 2019, the balance of the Receivership Account is $1,719,811.34, and the balance of the Reserve Account is $766,635.01. Thus, the total cash on hand in the Receivership Account and the Reserve Account is $2,486,446.35.

136.    After the Compensation Period, on January 23, 2020, the Receiver filed his Notice of Second Interim Distribution in accordance with paragraph 9(ix) of the Order Approving Plan proposing to distribute $750,000, with holders of Allowed Claims receiving such distribution. Amounts would be reserved for claimants asserting claims that are disputed pending a resolution of adjudication of such objections. Also, in accordance with paragraph 8(ix), in the Notice, the Receiver stated that any objection, the Receiver anticipates making the distributions shortly thereafter.

137.    The Receiver is hopeful that additional funds (in addition to those currently held in the Receivership Account) will be available in the future. Such will depend upon, *inter alia*, the liquidation of additional assets, the resolution or favorable adjudication of the Remaining Disputed Claims, and the successful prosecution of the pending civil litigation and other causes of action held by the Receivership Estate.

**J.   Anticipated Closure**

138.    At this time, it is premature for the Receiver to speculate as to when this Receivership Proceeding will be ready to close.

**IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE**

139.    As of the end of the Compensation Period, the following assets are a part of the Receivership Estate:

a.   The Receivership Account, which is valued at $1,719,811.34;

b.   The Reserve Account, which is valued at $766,635.01;

c.   The Private Investments, which value the Receiver is presently investigating; and

d.   Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, or vigorously pursuing, including, but not limited to, the claims against the Sarroff Defendants, the Rajo Defendants, Entourage, and Giorgio.

140.   With respect to the Private Investments, the Receiver has identified the following securities:

a.   Kizzang: 3,600,000 Class C shares, 5,400,000 Class D shares, and 1,152,666 Class E evidenced by certificates identifying Varacchi as the owner of such interest;

b.   Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and

c.   StereoCast: 150,000 shares in the name of Varacchi, evidenced by a certificate identifying Varacchi as the owner of such interest.

141.   The Receiver is investigating how best to liquidate and maximize the value of these equity interests in Kizzang, Entourage, Roots, and StereoCast.

## V.   THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES

### A.  The Governing Legal Standard

142.   The District Court has the power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the Receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to

reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953 F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties.).

143.   The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his counsel and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).

144.   The case law and other authority may provide "convenient guidelines," but ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

145.   In awarding counsel fees in Securities Act receiverships, "[t]he court will consider ... the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented."  *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).

146.   While "results are always relevant," a good result may take a form other than a "bare increase in monetary value."  *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Overall results can be determined only at the conclusion of the Receivership

Proceeding.

147.    Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483.

**B.   Application of the Governing Legal Standard to the Application**

148.    Based on the foregoing, the Receiver, Z&Z, V&L and K&L respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

149.    As more fully set forth throughout this Application and as detailed in the exhibits submitted herewith, the issues addressed by the Receiver, Z&Z, V&L and K&L have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned years, consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions. The Receiver, Z&Z, V&L and K&L have made substantial progress in investigating the Receivership Estate's assets and in commencing and prosecuting litigation on behalf of the Receivership Estate.

150.    The Receiver, Z&Z, V&L and K&L respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed expediently and efficiently. Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

151.    At the same time, the Receiver, Z&Z and V&L have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

152.    Furthermore, the Commission has reviewed this Application and has stated that it

has no objection to the approval of the professional fees and expenses requested herein.

153.    Accordingly, the Receiver, Z&Z, V&L and K&L submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties-in-interest.

### C.  Source and Manner of Payment

154.    The Receivership Estate includes cash held in the Receivership Account. The Receiver, Z&Z, V&L and K&L request that the Court enter an order allowing and permitting the approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees incurred by Z&Z and V&L).   The Receivership Account presently holds sufficient funds to make payment after this Court's approval while maintaining sufficient funds (in his discretion after consultation with the Commission) for various litigation costs such as experts, depositions, transcripts, etc., as well as the ordinary operating costs of the receivership.

**WHEREFORE**, Jed Horwitt, Esq., Receiver, and Zeisler & Zeisler, P.C., counsel to the Receiver, respectfully request that (i) this Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $150,796.20 for legal services rendered during the Compensation Period, and $35,594.89 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (iii) V&L be awarded an allowance of $46,414.80 for services rendered during the Compensation Period, and $272.90 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (v) K&L be awarded an allowance of $5,713.50 for services rendered during the Compensation Period, and $875.00 for the reimbursement of expenses, and (v) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 13th day of February, 2020.

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER


*/s/ Jed Horwitt*
Jed Horwitt, Receiver


By: */s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 245
Email: skindseth@zeislaw.com
His Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen M. Kindseth, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System and also at http://jedhorwittreceiver.com/.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)