**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *Plaintiff*, <br><br> v. <br><br> MARK J. VARACCHI, *et al.*, *Defendants.* | No. 3:17-cv-155 (VAB) |

**RULING AND ORDER ON MOTIONS FOR CLAIM DETERMINATION AND ENTRY OF SUMMARY PROCEDURES**

The Receiver has moved for claim determinations for claims held by Claimants Neila Fortino ("Ms. Fortino") and Flatiron Partners, LP ("Flatiron") (collectively, "Claimants"). Mot. for Claim Held by Fortino, ECF No. 113 (July 2, 2019) ("Mot. on Fortino's Claim"); Mot. for Claim Held by Flatiron, ECF No. 125 (July 19, 2019) ("Mot. on Flatiron's Claim"). Both Claimants objected to the Receiver's motions. Fortino Obj., ECF No. 140 (Aug. 22, 2019); Flatiron Obj., ECF No. 141 (Aug. 23, 2019). After reviewing the Claimants' objections, the Receiver moved for summary procedures. Mot. for Summ. Pros., ECF No. 150 (Dec. 12, 2019).

For the following reasons, the Court **GRANTS** the motion for summary procedures and **DENIES without prejudice to renewal** the motions for determination of Ms. Fortino and Flatiron's claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Fortino Factual Background

In the summer of 2014, Steven Simmons allegedly convinced Ms. Fortino to enter into an investment management agreement with Sideris Capital Partners, LLC ("Sideris"). Mot. on Fortino's Claim at 9. On August 7, 2014, Ms. Fortino transferred $3,850,000.00 to Mind the Gap ("MTG"), "an entity wholly-owned and completely controlled by Simmons, allegedly for the purpose of investing such funds on the Sentinel platform." *Id.* On August 21, 2014, Ms. Fortino transferred $2,100,000.00 to MTG "again allegedly for the purpose of investing such funds on the Sentinel platform." *Id.* Her total principal investment was $5,950,000, allegedly to be invested with Sentinel. Fortino Obj. at 5.

On August 11, 2014, MTG allegedly transferred $700,000.00 directly to Mark Varacchi's personal Bank of America account. Mot. on Fortino's Claim at 9. On September 3, 2014, MTG transferred $4,000,000.00 to Sentinel's Bank of America account. *Id.* From November 2014 to November 2016, "Sentinel [allegedly] transferred a total of $2,560,450 to MTG on account of the $4,000,000 'invested with Sentinel." *Id.*

After the transfers to Sideris were made, "Simmons almost immediately diverted over a million dollars for his own personal use, including to pay his credit card bill and purchase a house." Fortino Obj. at 6. In her view, the "starting point for her Claim was based on the $4.7 million of the $5.95 million that actually reached the Defendants' bank accounts." *Id.* Ms. Fortino's alleged distributions from Sentinel through Sideris totaled $662,000. *Id.*

---

[1] Familiarity with the underlying ponzi scheme is assumed.

In the Receiver's view, "Sideris (through the MTG account) received $2,560,450 in transfers from Sentinel[,]" and that entire sum "should be deducted from Ms. Fortino's Claim[.]" *Id.* at 7.

### B.     Flatiron Factual Background

Flatiron "was an investment fund managed by Flatiron Partners, LLC ('FPLLC') and FPLLC's sole member and principal" was Brett Crawford. Flatiron Obj. at 2. In 2014, Mr. Crawford allegedly began speaking with Mr. Varacchi "about potentially moving Flatiron to Radar's trading platform." *Id.* The platform would enable Flatiron "to take advantage of Radar's relationship with its prime broker and third-party fund administrator[.]" *Id.* Mr. Varacchi allegedly assured Mr. Crawford "that Flatiron's funds would be maintained in a segregated sub-account, that Mr. Crawford would retain the ability to direct all trading activity within Flatiron's sub-account, and that Mr. Crawford would receive monthly account statements from the prime broker and monthly NAV calculations from the fund administrator." *Id.*

On January 15, 2015, Flatiron wired $2 million to Radar. *Id.* After the transfer and attempts to make test trades, Mr. Crawford allegedly "was informed that Flatiron's sub-account on the trading platform was not yet ready." *Id.* at 3. Between January 15 to February 2015, "Flatiron made no actual trades and received no trading profits[,]" the return of the $2 million allegedly was temporary, and Flatiron allegedly "would wire those funds again once the trading account was ready." *Id.* at 3. The $2 million allegedly was re-wired to Radar after Mr. Varacchi told Mr. Crawford the trading platform was available. *Id.* The $22,132.45 sent from Sentinel "represented compensation to FPLLC (not Flatiron) related to Sentinel's syndicate trading platform." *Id.* at 4.

Flatiron objected to the Receiver's original calculation of Flatiron's distribution under the Rising Tide method. Mot. on Flatiron's Claim at 9. The objection states that the Receiver "overstated the amount of Flatiron's total deposits and the amount of its pre-receivership recoveries" by $2 million each. *Id.* In Flatiron's opinion, an "initial $2 million deposit made on January 15, 2015, the subsequent distribution of $2 million made on February 26, 2015, and the re-investment of $2 million on March 2, 2015, should be treated as a single investment of $2 million made on March 2, 2015." *Id.* In Flatiron's view, "the February 26, 2015 withdrawal was [a] 'temporary refund' to correct the erroneous January 15, 2015 deposit made 'as a result of a miscommunication with Radar about when the trading platform would be available to Flatiron.'" *Id.* at 9-10. The Receiver, however, states that the March 2, 2015 deposit "was not a reinvestment of withdrawn funds, but rather the second of 'two attempts to make a single investment.'" *Id.* at 10.

### C.    Procedural Background

The Court presumes familiarity with the underlying claim and restates procedural history relevant to these motions only.

On July 2, 2019, the Receiver filed a motion for a determination of Ms. Fortino's claim. Mot. on Fortino's Claim.

On July 19, 2019, the Receiver filed a motion for a determination of Flatiron's claim. Mot. on Flatiron's Claim.

On August 22 and 23, 2019, Ms. Fortino and Flatiron filed objections to the Receiver's motions. Fortino Obj., Flatiron Obj.

On December 12, 2019, the Receiver moved for entry of summary procedures regarding the motions for determination of claims. Mot. for Summ. Pros.

On January 17, 2020, both Ms. Fortino and Flatiron opposed the Receiver's motion for summary procedures. Fortino Opp'n Mem., ECF No. 165 (Jan. 17, 2020); Flatiron Opp'n Mem., ECF No. 166 (Jan. 17, 2020).

On January 30, 2020, the Receiver filed a reply. Reply, ECF No. 169 (Jan. 30, 2020).

On February 6, 2020, Ms. Fortino moved to file a sur-reply, which the Court granted. Fortino Sur-Reply, ECF No. 172 (Feb. 6, 2020).

## II.     DISCUSSION

### A.  Motions for Determination of Claims

#### 1.  Ms. Fortino

In the Receiver's motion for claim determination, he argues Ms. Fortino alleges that she has only "personally received $662,000 of the $2,560,450 transferred to MTG by Sentinel." Mot. on Fortino's Claim at 10. Her proof of claim asserts "a claim in the amount of $4,038,000 based upon the alleged transfers to Sentinel totaling $4,700,000 which she intended to 'invest' in Sentinel through Simmons and MTG, and her pre-receivership receipt of $662,000 in return [from] Simmons and MTG." *Id.* Under Ms. Fortino's proof of claim, she asserts a 14.1% pre-receivership recovery, and after applying the Rising Tide distribution method, Ms. Fortino "would be entitled to recover pro-rata with the other Claimants after the distribution percentage exceeded 14.1%." *Id.* Currently, $238,305.87 of the $2,900,00 initial distribution is "in reserve on account of the Fortino claim pending its resolution." *Id.* This amount would "raise her percentage distribution to 19.2% if [the] Court accepts and approves her calculation of her claim and percentage pre-receivership recovery." *Id.*

The Receiver, however, believes "that the Fortino Claim should be allowed in the amount of $1,439,550 based upon MTG's receipt of $2,560,450 in pre-receivership transfers . . . on

account of MTG's original transfer of $4,000,000 to Sentinel." *Id.* at 11. Through MTG, Ms. Fortino then realized a 64% return on her pre-receivership investment. *Id.* Applying the Rising Tide methodology, "the Fortino Claim will be entitled to recover pro-rata with the other Allowed Claimants once the percentage distribution in this receivership proceeding[] exceeds 64%." *Id.*

Ms. Fortino argues the Receiver "seeks to reduce her Claim by a $1,898,450 sum that she undisputedly did not receive." Fortino Obj. at 7. "Ms. Fortino should not be penalized because her investment with Sentinel was made through Sideris." *Id.* at 8. Her claim should only be reduced by the amount she received—$662,000—nor should her claim be reduced by $700,000, the amount transferred to Mr. Varacchi's personal account. *Id.* at 9. She requests that the Court "approve her claim in the amount of $4,038,000 and order the Receiver to release to her the $238,305.87 currently being held in the reserve account." *Id.*

### 2. Flatiron Claim

The Receiver argues "that the pre-receivership recovery percentage attained by Flatiron was 43.06%--$3,057,931 recovered on account of $7,100,921 invested." Mot. on Flatiron's Claim at 2. The dispute between the Receiver and Flatiron arises from a $2 million investment made on January 15, 2015 and a subsequent $2 million withdrawal made by Sentinel to Flatiron on February 26, 2015, and whether that "should be included in the pre-receivership calculation." *Id.* "Ignoring the initial investment and subsequent distribution, the pre-receivership recovery percentage realized by Flatiron would be 20.74% ($1,057,931 recovered on $5,100,921 invested)." *Id.*

In the Receiver's view, the original $2 million investment from Flatiron "was quickly misappropriated as part of the Ponzi scheme." *Id.* Because of this initial January 2015 investment, "Flatiron received $22,132.45 on February 20, 2015 from Sentinel." *Id.* The $2

million which was returned on February 26, 2015 was "the proceeds of other defrauded investors' deposits." *Id.*at 2. "Flatiron benefitted from the Ponzi scheme to the extent it received the product of the Ponzi scheme to the detriment of other defrauded investors." *Id.* at 3.

Flatiron "object[s] to the Receiver's calculation of Flatiron's pre-receivership percentage of recovery." Flatiron Obj. at 5. In its view, as proposed, the Receiver "over states Flatiron's pre-receivership percentage of recovery by inflating Flatiron's contributions and pre-receivership distributions by $2 million on each side of the ledger." *Id.* In its view, the Receiver also has "double-counted Flatiron's first contribution of $2 million and mistakenly treated the temporary $2 million refund as a distribution," which inflates its percentage of pre-receivership recovery and "inequitably distorts the economic reality of Flatiron's actual loss." *Id.* at 6. "Flatiron is asking only that the Rising Tide methodology be applied in an equitable manner." *Id.*

### B. Motion for Summary Procedures

"District courts possess broad power to remedy violations of federal securities laws." *Eberhard v. Marcu*, 530 F.3d 122 (2d Cir. 2008); *see also SECv. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) ("The district court has broad powers and wide discretion to determine relief in an equity receivership."). "Although precedents are few and far between, the traditional rule is that summary proceedings are appropriate and proper to protect equity receivership assets." *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 459 (9th Cir. 1984).

Summary proceedings can "reduce[] the time necessary to settle disputes, decrease[] litigation costs, and prevent[] further dissipation of receivership assets." *Elliott*, 953 F.2d at 1566 (citations omitted). "Receivership courts have general power to use summary procedure in allowing, disallowing, and subordinating the claims of creditors." *Arizona Fuels Corp.*, 739 F.2d

at 459; *see Elliott*, 953 F.2d at 1567 ("Summary proceedings are inappropriate when parties would be deprived of a full and fair opportunity to present their claims and defenses.").

In response to the objections filed by Ms. Fortino and Flatiron, the Receiver filed a motion for entry of summary procedures. Mot. for Summ. Pros. at 1. In his opinion, Ms. Fortino's objection has raised factual issues, including but not limited to: (1) "[t]he original intended purpose and structure of the investments including to the extent discussed with Varacchi and . . . Steven Simmons;" (2) "[t]he role of Sideris and MTG in making such investments and receiving returns in exchange;" (3) "For[t]ino's knowledge and understanding from inception and throughout her relationship with Simmons and Sideris; and [(4)] [t]he consideration Fortino received from Simmons, Sideris and MTG in return for her investments in Sideris." *Id.* at 5.

In his opinion, Flatiron's objection has raised factual issues, including but not limited to: (1) "[t]he original intended purpose and structure of investments onto the 'Radar platform' including all communications with Varacchi;" (2) "FPLLC's separate involvement with Varacchi and Relief Defendants in connection with investment in Sentinel's syndicate trading platform;" (3) "[t]he circumstances surrounding the payment of $22,132.45 made by Sentinel to FPPLC on February 20, 2015;" (4) "FPLLC's relationship to Flatiron;" (5) "Flatiron's efforts to recover the original $2 million investment including all communications with Varacchi; and" (6) "[t]he circumstances surrounding Flatiron's reinvestment of $2 million on March 2, 2016." *Id*. at 6.

Flatiron and Ms. Fortino oppose summary procedures. Flatiron states that any discovery "would be a substantial burden on Flatiron and its principal, Brett Crawford." Flatiron Opp'n at 2. Discovery will also further drain the limited resources of the Receivership. *Id.* In its view, the Receiver does not explain why discovery into the intended purchase and structure of the

investments on the Radar platform will explain or describe how "the initial in-and-out $2 million transactions should be counted for rising tide purposes." *Id.* Nor does the Receiver explain how discovery regarding FPLLC's separate involvement or relationship with Mr. Varrachi "could shed light on Flatiron's objection." *Id.* Finally, the Receiver also fails to explain how discovery on the February 26, 2015 refund and March 2, 2015 contribution "would be useful for the Court's consideration of the rising tide issues." *Id.*

Ms. Fortino argues that the issue before the Court can be decided without discovery. Fortino Opp'n at 2. In her opinion, summary procedures are inappropriate because the "Receiver is not contending that there are disputed facts which require discovery, but instead, that it would like 'an opportunity to investigate' certain factual issues." *Id.* at 4. In her opinion, permitting summary procedures would "allow[ ] the Receiver to take discovery in the hope of creating some disputed 'issue of fact,'" when discovery is not needed to determine how to calculate Ms. Fortino's claim under the "Claims Calculation Method." *Id.* at 5. Summary procedures would also be inefficient and would force Ms. Fortino "to incur [fees that] would be greatly disproportionate to the $238,305.87 that Ms. Fortino stands to gain." *Id.* at 6.

The Receiver replies that both Flatiron and Ms. Fortino "resort to additional disputed facts to make equitable arguments in support of their analysis." Reply at 2. In this situation, "the Receiver is entitled as a matter of due process and in furtherance of his duty to preserve and administer the Receivership Estate to conduct the limited discovery he proposes." *Id.*

With respect to Flatiron's claim, "Flatiron makes factual contentions to support its application of the Rising Tide Method of distribution and its equitable arguments while at the same time contending that there are no factual issues and seeking to preclude the Receiver from conducting even a minimal amount of discovery." *Id.* at 5. "[T]o the extent Flatiron seeks to

interject facts to support its resort to equity considerations, the Receiver [feels] compelled, as an advocate for the Receivership Estate and its claimants, to test those factual contentions in a cost-effective manner through minimal discovery." *Id.* at 5. In his view, "[t]he fundamental problem with Flatiron's contention is that the Receiver has not uncovered any investment by Flatiron Partners, LLC reflecting is participation in 'Sentinel's syndicate trading platform' in January and February of 2015[,]" indicating the $22,132.45 could be profits transferred to FPLLC. *Id.* at 6. Further, "the amount in controversy with Flatiron is extremely meaningful and warrants verification through discovery of the facts it relies upon to make its arguments." *Id.* at 7.

With respect to Ms. Fortino's claim, the factual issue raised by the Receiver "goes directly to determining whether Simmons, Sideris and MTG legally and/or equitably should be completely disregarded, and Fortino should be treated as a direct investor in Sentinel from the inception of the $4 million investment by MTG on September 4, 2014." *Id.* at 3. Furthermore, "the Receiver has never acknowledged that the ***total*** amount received by Fortino from Simmons, Sideris and MTG equaled $662,000." *Id.* (emphasis in the original). In the Receiver's view, "how much Fortino ultimately received from Simmons, Sideris and MTG is irrelevant under the Rising Tide Method of distribution since the transfers between MTG and Sentinel controlled the analysis." *Id.* However, should the Court determine that Fortino be treated as a direct investor to Sentinel, "then the ***total*** amount she ***actually*** received from Simons, Sideris and MTG should be incorporated into the calculation of her pre-receivership return percentage." *Id.* (emphasis in the original). "[T]o the extent Fortino has separately recovered funds from Simmons, Sideris and MTG[,]" for example, any payments to the Internal Revenue Service on Ms. Fortino's behalf, "such amounts should be disclosed and considered as part of her recovery." *Id.* at 4.

In her sur-reply, Ms. Fortino argues that the Receiver has already "reviewed all relevant tax payment documents and distributions from Sentinel[.]" Sur-Reply at 3. She states that "[t]here was no proposed deduction for any tax payments," and that issue is moot and should not be revisited. *Id.* She also reiterates that "[t]he fact that her investments were made through Simmons' purported investment vehicle, Sideris, of that Sideris's bank account was in the name of MTG, had absolutely no bearing on the fact that Ms. Fortino's investment was with Sentinel." *Id.*

The Court disagrees.

The Receiver has articulated questions of fact relevant to the determination of Flatiron and Ms. Fortino's claims. With respect to Flatiron, there are disagreements between the claimant and the Receiver regarding a $2 million transfer on different dates and the "circumstances surrounding the payment of $22,132.45 made by Sentinel to FPPLC . . . . " Mot. for Summ. Pros. at 6. With respect to Ms. Fortino, questions exist as to the roles various entities played in making her investments and the purpose and structure of those investments. *Id.* at 5. These questions go directly to the accurate calculation of their claims.

Moreover, the Receiver's responsibilities extend beyond Flatiron and Ms. Fortino to all other claimants. *See Eberhard*, 530 F.3d at 131 ("Receivers are directed to 'marshal the assets' of the defendant, and 'prevent the dissipation of [the] defendant's assets pending further action by the court[.]'" (citation omitted)). The limited discovery proposed by the Receiver would enable an accurate determination of the claims submitted by Flatiron and Ms. Fortino.

Accordingly, the motion for summary procedures will be granted, and the motions for determination of Ms. Fortino and Flatiron's claims will be denied without prejudice to renewal.

**III.    CONCLUSION**

For the reasons explained above, the Court **GRANTS** the motion for summary

procedures and **DENIES without prejudice to renewal** the motions for determination of Ms.

Fortino and Flatiron's claims.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of March, 2020.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge
