**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. |
| | )    3:17-cv-00155-VAB |
| MARK J. VARACCHI and | ) |
| SENTINEL GROWTH FUND | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants, | ) |
| and | ) |
| | ) |
| RADAR ALTERNATIVE FUND LP and | ) |
| RADAR ALTERNATIVE MASTER FUND SPC, | ) |
| | ) |
| Relief Defendants. | ) |

**AMENDED TWELFTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND
EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS**

## <u>TABLE OF CONTENTS</u>

I.   SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED ...................... 3

   A.   Discounts ........................................................................................................... 7

   B.   Fee Schedules .................................................................................................... 8

   C.   Activity Categories .......................................................................................... 10

II.   SUMMARY OF CASH ON HAND ............................................................... 12

III.   SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE ......................... 12

   A.   The Receiver's Website and Investor Contact ................................................ 13

   B.   The Eleventh Quarterly Status Report .......................................................... 13

   C.   Marshaling of Receivership Assets and Receipt of Assets by Receiver ........................ 14

   D.   Claims Administration .................................................................................. 14

   E.   Litigation – Sarroff Action ............................................................................ 19

   F.   Civil Action Against Ralph Giorgio ............................................................. 23

   G.   Investigation of Private Investments ............................................................. 25

   H.   Actual and Anticipated Disbursement of Assets ........................................... 25

   I.   Anticipated Closure ...................................................................................... 276

IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE ................................ 276

V.   THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES ............ 287

   A.   The Governing Legal Standard ..................................................................... 287

   B.   Application of the Governing Legal Standard to the Application ................................ 29

   C.   Source and Manner of Payment ................................................................... 30

## AMENDED TWELFTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to this Court's Order Appointing Receiver entered May 1, 2017 (ECF No. 12, the "Receivership Order") and Order Reappointing Receiver (ECF No. 47, the "Reappointment Order", and together with the Receivership Order, the "Receivership Orders") entered February 14, 2018, respectfully submits this Amended twelfth interim application (the "Amended Application") for professional fees and expenses incurred on behalf of the Receivership Estate (as defined in the Receivership Orders) by the Receiver, Z&Z, the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L"), and the Receiver's special counsel for transactional services, Karp & Langerman, P.C. ("K&L") during the period commencing January 1, 2020, through and including March 31, 2020 (the "Compensation Period"). In advance of filing, the Receiver provided the Commission with a copy of this Amended Application (including all exhibits), and the Commission's counsel stated that the Commission has no objection to the approval of the professional fees and expenses requested herein.

In support of this Amended Application, the Receiver, V&L, and Z&Z respectfully represent as follows:

## I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED

1.    Jed Horwitt, Esq. serves in his capacity as the Court-appointed Receiver for Sentinel Growth Fund Management, LLC ("Sentinel"), Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC" and, together with Radar LP, collectively,

the "Relief Defendants," and the Relief Defendants together with Sentinel, collectively, the "Receivership Entities").

2.      This Amended Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines") and the Receivership Orders.

3.      Pursuant to the SEC Guidelines, the following exhibits are attached to this Amended Application:

a.      The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

b.      A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c.      A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as Exhibit C;

d.      Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as Exhibits D-1; D-2; D-3; D-4; D-5; D-6; D-7; D-8; D-9; D-10; D-11; D-12; and D-13.[1]

e.      A Certification of Compliance with the SEC Guidelines by V&L is attached hereto as Exhibit E;

f.      A summary of total expenses for which reimbursement is requested for V&L is attached hereto as Exhibit F; and

g.      Time records summarizing the work performed by V&L's accounting professionals and paraprofessionals for each of its Activity Categories (as hereinafter defined) during the Compensation Period are attached hereto as Exhibits G-1; G-2; G-3; G-4; and G-5.

---

[1] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding and related litigation, and pursuant to the Court's Order entered August 11, 2017 (ECF No. 25), Exs. D-1 through D-13 are filed under seal. Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

h.      A Certification of Compliance with the SEC Guidelines by K&L is attached
hereto as Exhibit H;

i.      The time record summarizing the work performed by K&L legal professionals for
a single Activity Category, Asset Analysis and Recovery, during the
Compensation Period is attached hereto as as Exhibit I-1

4.      The Receiver and Z&Z attorneys and paraprofessionals have expended a total of
443.80 hours working on this matter during the Compensation Period. The Receiver and Z&Z seek
allowance of compensation of services rendered during the Compensation Period on behalf of the
Receivership Estate in the amount of $124,994.00, and reimbursement of actual and necessary
expenses in the amount of $18,105.67.

5.      The Receiver's accountant and financial advisor V&L's professionals and
paraprofessional have expended a total of 53.90 hours working on this matter during the
Compensation Period. V&L seeks allowance of compensation of services rendered during the
Compensation Period on behalf of the Receivership Estate in the amount of $13,921.60 and
reimbursement of actual and necessary expenses in the amount of $163.72.

6.      The Receiver's special counsel to provide transactional services, K&L, has
expended a total of 8.24 hours working on this matter during the Compensation Period. K&L seeks
allowance of compensation of services rendered during the Compensation Period on behalf of the
Receivership Estate in the amount of $2,678.00, and reimbursement of actual and necessary
expenses in the amount of $1,369.75.

7.      The Receiver, Z&Z and V&L acknowledge that their fee compensation is subject
to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Orders.
The Receiver requests that K&L not be subject to a twenty percent (20%) holdback considering
the relatively *de minimus* amount incurred to complete the work requested by the Receiver to be

performed by K&L.

8.      The fees assessed reflect the hours worked by the Receiver, Z&Z and K&L attorneys and paraprofessionals, and the V&L professionals and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z and V&L (described below).

9.      These amounts also take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Orders.

10.     Section III below summarizes the Receiver's administration of the Receivership Estate since his appointment. A narrative description of the particular services provided by the Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as Ex. D-1 through D-13. A narrative description of the particular services provided by V&L's professionals and paraprofessionals is included in the time records attached as Ex. G-1 through G-5. A narrative description of the particular services provided by K&L attorneys is included in the time records attached as Ex. I-1.

11.     Z&Z's expense reimbursements requested are principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) expenses associated with the Receiver's website; (iii) expert witness consulting fees; (iv) photocopying; (v) processing and hosting of electronically stored information related to litigation relevant to the Receivership Proceeding; (vi) online legal research;

(vii) conference call charges; (viii) court reporter charges; (x) federal express charges; and (x) discovery charges. (*See* Ex. C.)

12.     The Receiver, Z&Z, V&L and K&L have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime. Nor have the Receiver, Z&Z, V&L and K&L requested reimbursement for any meals during the Compensation Period.

13.     The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies. V&L has not requested reimbursement for photocopying during the Compensation Period.

### A.  **Discounts**

14.     As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Orders, the Receiver, V&L, and Z&Z have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

15.     More specifically, and as shown in the fee schedules set forth below, Z&Z and V&L have consented to 20% public service discounts to its regularly applicable hourly rates for all legal professionals and paraprofessionals.

16.     The Receiver originally agreed to discount his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver to $250 per hour, reflecting a 50% discount. Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time during this period.

17.     The Receiver requests that K&L not be subject to a twenty percent (20%) public service discount considering its counsel's extremely competitive customary hourly rate ($325) and the relatively *de minimus* amount incurred to complete the work requested.

**B.   Fee Schedules**

18.     The fee schedule for the Receiver, showing: his name; the hourly rate applied to his services in this Receivership Proceeding and his customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his services during the Compensation Period; is as follows:

| Receiver | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Horwitt, Jed | $250 ($500) | $250 | 2.0 | $500.00 | $500.00 |

19.     The fee schedule for all Z&Z legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows: [2]

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Kindseth, Stephen | $340 ($425) | $85 | 56.60 | $19,244.00[3] | $4,811.00 |
| Moriarty, James | $320 ($400) | $80 | 15.80 | $5,056.00 | $1,264.00 |

---

[2] The schedule does not include amounts incurred to prepare the prior fee application since Z&Z is not seeking compensation for such services.

[3] This chart contained in the originally filed twelfth fee application, (ECF No. 180, at 8), mistakenly carried over the amount billed for Stephen Kindseth from the previous fee application. The chart has been revised to correctly state the amount incurred by Stephen Kindseth and the total amount incurred by Z&Z legal professionals during the Compensation Period.

| | | | | | |
|---|---|---|---|---|---|
| Romney, Aaron | $320 ($400) | $80 | 250.40 | $80,128.00 | $20,032.00 |
| Cesaroni, John | $240 ($300) | $60 | 25.70 | $6,168.00 | $1,542.00 |
| Mahmoud, Nancy | $260 ($325) | $65 | .80 | $208.00 | $52.00 |
| TOTALS: | | | 349.30 | $110,804.00 | $27,701.00 |

20.     The fee schedule for the Z&Z legal paraprofessional who provided services during the Compensation Period, showing: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprofessional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Accurso, Deborah | $148 ($185) | $37 | .70 | $103.60 | $25.90 |
| O'Brien, Barbara | $148 ($185) | $37 | 1.50 | $222.00 | $55.50 |
| Joseph, Kristin | $148 ($185) | $37 | 7.30 | $1,080.40 | $270.10 |
| Accurso, Ian | $148 ($185) | $37 | 83.0 | $12,284.00 | $3,071.00 |
| TOTALS: | | | 92.50 | $13,690.00 | $3,422.50 |

21.     The fee schedule for all V&L accounting professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Accounting Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Bailey, T | $280 ($350) | $70 | 7.10 | $1,988.00 | $497.00 |
| Brodeur | $252 ($315) | $63 | .60 | $151.20 | $37.80 |
| Lowey | $372 ($465) | $93 | 7.60 | $2,827.20 | $706.80 |

| | | | | | |
|---|---|---|---|---|---|
| Whitehouse | $232 ($290) | $58 | 38.60 | $8,955.20 | $2,238.80 |
| TOTALS: | | | 53.90 | $13,921.60 | $3,480.40 |

22.      The fee schedule for all K&L legal professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Langerman, Noel | $325 ($325) | $0.00 | 8.24 | $2,678.00 | $ n/a |

**C.  Activity Categories**

23.      Pursuant to the SEC Guidelines, the Receiver, Z&Z, V&L and K&L have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

Activity Categories Utilized by Receiver and Z&Z Legal Professionals

a.       Category One: Case Administration,  30.60 hours, $7,680.60 (*see* Ex. D-1);

b.       Category Two: Asset Analysis & Recovery, 2.50 hours, $715.60 (*see* Ex. D-2);

c.       Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d.       Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

e.       Category Five: Claims Administration & Objections, 21.10 hours, $6,995.40 (*see* Ex. D-5);

       f.      Category Six: Application for Professional Fees and Expenses (the Receiver and Z&Z does not seek compensation for thefees incurred for these services in this Amended Application) (*see* Ex. D-6);

       g.      Category Seven: Litigation – Taran Asset Management, LLC, *et al*., 0 hours, $0.00 (*see* Ex. D-7); and

       h.      Category Eight: Litigation – A. L. Sarroff Management, LLC, *et al*., 378.30 hours, $105,986.40 (*see* Ex. D-8).

       i.      Category Nine: Litigation – Shay Kostiner, 0 hours, $0.00 (*see* Ex. D-9).

       j.      Category Ten: Litigation – Weeden Prime Services, LLC,  hours, $0.00 (*see* Ex. D-10).

       k.      Category Eleven: Litigation – Rajo Corp., 0 hours, $0.00 (*see* Ex. D-11).

       l.      Category Twelve: Litigation – Ralph Giorgio, 0 hours, $0.00 (*see* Ex. D-12).

       m.      Category Thirteen: Asset Recovery – Ralph Giorgio, 11.30 hours, $3,616.00 (*see* Ex D-13).

Activity Categories Utilized by Accounting Professionals

       a.      Category One: Tax Return Preparation, 3.30 hours, $777.60 (*see* Ex. G-1);

       b.      Category Two: Data Analysis, 0 hours, $0.00 (*see* Ex. G-2);

       c.      Category Three: Forensic Accounting, 0 hours, $0.00 (*see* Ex. G-3);

       d.      Category Four: Expert Report Preparation, 0 hours, $0.00 (w3s*see* Ex. G-4); and

       e.      Category Five: Sarroff Litigation, 50.60 hours, $13,144.00 (*see* Ex. G-5).

Activity Categories Utilized by K&L Professionals

       a.      Category One: Asset Analysis & Recovery, 8.24 hours, $2,678.00 (*see* Ex. I-1);

## II.   **SUMMARY OF CASH ON HAND**

24.     As of March 31, 2020, the Receiver held in the Receivership Account (as defined and discussed in Section IV-D below) the amount of $970,829.40.[4]

25.     In accordance with the Plan Approval Order, prior to the Compensation Period, the Receiver transferred $801,365.01 from the Receivership Account to a newly established segregated account (the "Reserve Account") to "ensure that if a Remaining Disputed Claim is Allowed, the Receiver shall have funds left to pay such Allowed Claim in the amount provided for in the Plan of Distribution for such category of Claimant." *See* Plan Approval Order § 8(xi). Z&Z attorneys consulted with V&L to ensure that the Reserve Account was established as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, and that the establishment and funding of the Reserve Account did not disrupt the Receivership Account's Qualified Settlement Fund status.  After having distributed payment to a secured creditor in accordance with this Court's Order, and depositing additional reserves in connection with the most recent distribution to Claimants (all as explained more fully below), the Reserve Account has a balance of $1,125,284.47 as of March 31, 2020.

26.     Thus, the Receiver's cash on hand held in the Receivership Account and the Reserve Account, therefore, total, as of March 31, 2020, the amount of $2,096,113.87. This combined balance reflects a net decrease of $390,814.46 during the Compensation Period. (*See* Ex. A.)

## III.   **SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE**

27.     During the Compensation Period, the Receiver diligently exercised his duties

---

[4] The originally filed twelfth fee application inverted the money market Receivership Account and the Reserve Account balances. This amended application has been revised to correctly state the corresponding balances.

pursuant to the terms of the Receivership Orders and made significant progress in investigating, marshalling and liquidating Receivership Assets for distribution to the holders of Allowed Claims against the Receivership Estate. Items requiring significant work by the Receiver and his professionals, as discussed in more detail below, were, in summary, continuing to litigate previously commenced civil actions and to move forward with his objections to the Remaining Disputed Claims.

28.     Utilizing Z&Z and K&L as his legal professionals and V&L as his accountants and financial advisors, the Receiver has undertaken the following on behalf of the Receivership Estate.

**A.  The Receiver's Website and Investor Contact**

29.     At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com – that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

30.     The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information.

31.     Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the Receivership Proceeding and the claims management procedures discussed herein.

**B.  The Eleventh Quarterly Status Report**

32.     The Receiver and Z&Z also prepared and, on January 30, 2020, filed the Eleventh Quarterly Status Report (ECF No. 168). In drafting the Eleventh Quarterly Status Report, the Receiver and Z&Z compiled comprehensive information to update the Court, the Commission and all other parties-in-interest as to the Receiver's operations, the Receivership Estate's assets and the status of various litigation and Claims against the Receivership Estate.

**C.  Marshaling of Receivership Assets and Receipt of Assets by Receiver**

33.     Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and like fiduciaries), which account (the "Receivership Account") holds funds marshaled by the Receiver and constitutes a Receivership Asset.[5]

34.     Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.

35.     During the Compensation Period, the Receivership Account accrued interest at a rate of 0.33% for January and February, and .19% for March, amounting to total interest payments of $1,018.06 for the Compensation Period.

**D.  Claims Administration**

36.     Prior to the Compensation Period, Z&Z attorneys investigated the Receivership Estate's basis for objecting to the Remaining Disputed Claims. The Receiver then objected to such claims.

a.  Claim Asserted by Neila Fortino

37.     With respect to the claim held by Neila Fortino (the "Fortino Claim"), the Receiver thoroughly analyzed the factual and legal basis for her asserted claim in the amount of $4,038,000. After the completion of his investigation, on March 11, 2019, the Receiver's counsel articulated to Fortino's counsel his position with respect to the Fortino Claim and the basis for his objection. On May 1, 2019, Forino's counsel responded. The Receiver continued to disagree with Fortino's

---

[5] In October, 2017, the Receiver opened a separate money market account to hold the majority of the balance he held for the receivership estate. These two accounts (the checking and money market accounts) are referred to herein collectively as the "Receivership Account."

perspective on her claim.

38.     Accordingly, prior to and during the Compensation Period, the Receiver's counsel prepared his Motion for Determination of Claim Held by Neila Fortino.  The Receiver explained his position that the Fortino Claim against the Receivership Estate should be allowed in the amount of $1,439,550 and no more. Although Fortino never invested directly into the Receivership Entities, her claim is based upon the transfer originally made by the intermediary, Mind the Gap Consulting, LLC ("MTG") to Sentinel in the amount of $4 million, and the subsequent returns on account of this amount from Sentinel to MTG in the amount of $2,560,450. The Receiver stated further that he had confirmed that MTG, in fact, made these investments on Fortino's behalf. Considering this and the surrounding circumstances as more fully explained herein, the Receiver submitted that Fortino should hold the claim rather than MTG.

39.     The Receiver believes that the identity of the person who actually holds the claim does not alter the amount of the claim. The claim amount is apparent through the application of the well-established methodology employed by the Receiver in this case with this Court's approval. Based upon the $4 million transfer from MTG to Sentinel and the distributions to MTG from Sentinel in the amount of $2,560,450, the net amount for this claim equals $1,439,550. Accordingly, it is the Receiver's position that Fortino's submitted claim in the amount of $4,038,000 should be disallowed to the extent it exceeds the amount of $1,439,550.

40.     Finally, as presented by the Receiver, under the "Rising Tide" method of distribution (the "Rising Tide Method"), Fortino's pre-receivership recovery percentage would be 64% ($2,560,450/$4,000,000). Since the percentage distribution in this receivership to date has only reached 19.2%, the Receiver further requested that this Court authorize the release of funds held in reserve on account of the Fortino Claim pursuant to the Plan Approval Order (as that term

is defined below).

41.    The Receiver filed on July 2, 2019, his Motion for Determination of Claim held by Neila Fortino. (ECF No. 113.) The Clerk scheduled July 23, 2019, as the deadline for a response. Fortino, through her counsel, then requested a continuance of her response date, which the Receiver agreed to and the Court entered an extension of her time to respond through August 22, 2019.

42.    On August 22, 2019, Fortino filed her objection, (ECF No. 140), to the Receiver's motion to determine her claim.

        b.    Claim Asserted by Flatiron Partners

43.    The Receiver, having fully investigated the facts and circumstances surrounding the Flatiron Claim, and having considered applicable legal authority as well as various equitable factors, concluded that the pre-receivership recovery percentage attained by Flatiron was 43.06%—$3,057,931 recovered on account of $7,100,921 invested.

44.    Flatiron argues that its recovery percentage should be 20.74%.

45.    The difference in these two percentages arises from a dispute over whether the $2 million initial investment made on January 15, 2015, and subsequent $2 million withdrawal made by Sentinel to Flatiron on February 26, 2015, should be included in the pre-receivership percentage calculation. Flatiron seeks to disregard these two initial transfers because it intended at that time to invest only $2 million which it ultimately deposited on March 2, 2015. Ignoring the initial investment and subsequent distribution, the pre-receivership recovery percentage realized by Flatiron would be 20.74% ($1,057,931 recovered on $5,100,921 invested).

46.    The Receiver submits that there is no legal basis to disregard an initial investment and subsequent distribution made by a particular Claimant for purposes of determining the pre-

receivership percentage recovery realized by that Claimant. To do so would be fundamentally inconsistent with the "Claim Calculation Methodology" and Rising Tide Method adopted by this Court and applied to all other Claimants in this receivership proceeding.

47.     Flatiron's original $2 million investment was quickly misappropriated as part of the Ponzi scheme. On account of this January 2015 investment, Flatiron received $22,132.45 on February 20, 2015 from Sentinel. On February 26, 2015, when Sentinel transferred $2 million back to Flatiron, Flatiron did not receive the particular $2 million it had originally deposited. Instead, Flatiron received the proceeds of other defrauded investors' deposits. At that moment, Flatiron had received 100% of its original investment from the Ponzi scheme (plus "profits"). That starting point (100% recovery, subject to further adjustment by later deposits and distributions) is perfectly appropriate to further the goal of equalizing the percentage recoveries realized among the defrauded investors. Flatiron benefitted from the Ponzi scheme to the extent it received the product of the Ponzi scheme to the detriment of other defrauded investors.

48.     While Flatiron then reinvested $2 million, such did not alter where the money had come from to make the prior $2 million distribution to Flatiron.  Flatiron also had, at that moment, the choice not to reinvest. Instead, it chose to invest $2 million on March 2, 2015. The re-investment perpetuated the Ponzi scheme and is taken into account under the Rising Tide Method as an additional investment.

49.     The Receiver has uniformly applied the Rising Tide Method to all Claimants in this receivership proceeding, many of whom would have been materially impacted had the Receiver applied the alternative methodology requested by Flatiron.

50.     In the Receiver's view, there is simply no basis to provide favored treatment to Flatiron or alter the methodologies adopted by this Court and implemented by the Receiver to date.

51.     Accordingly, during the Compensation Period, on July 19, 2019, the Receiver filed his Motion for Determination of Claim held by Flatiron Partners, LP. (ECF No. 125.) The Court scheduled July 23, 2019, as the deadline for a response.

52.     On August 7, 2019, Flatiron, through its counsel, requested a continuance of its response date, (ECF No. 130), which the Receiver agreed to and the Court ordered, (ECF No. 133), extending the time to respond through and including August 23, 2019.

53.     On August 23, 2019, Flatiron filed her objection, (ECF No. 141), to the Receiver's motion to determine her claim

c.   Procedural Posture of Claims Determination

54.     The Receiver attempted to reach with Fortino's and Flatiron's respective counsel an agreed upon schedule for limited discovery and a claims adjudication process which ultimately Fortino and Flatiron opposed.

55.     On December 12, 2019, the Receiver filed his Motion for Entry of Summary Procedures Regarding Receiver's Motions for Determination of Claims Asserted by Neila Fortino and Flatiron Partners, LP. (ECF No. 150.) The Receiver proposed a brief four month period within which to conduct discovery pursuant to the Federal Rules of Civil Procedure.

56.     In response, Fortino and Flatiron sought brief extensions of time to respond to the proposed summary procedures motion. The Receiver consented to such extensions and the deadline for them to respond is currently January 17, 2020, and they each timely filed their opposition on that day. The Receiver's reply was filed on January 30, 2020. (ECF No. 169.)

57.     On March 20, 2020, this Court entered its Ruling and Order on Motions for Claim Determination and Entry of Summary Procedures (ECF No. 175), which (i) granted the Receiver's request for summary procedures to conduct discovery, and (ii) denied without prejudice the

Receiver's motions to determine the claims asserted by Fortino and Flatiron

58.     The parties thereafter agreed upon the specific time frame for the summary procedures and submitted such proposed to this Court on April 16, 2020. (ECF No. 178.) This Court entered such scheduling order on April 17, 2020, (ECF No. 179), which, *inter alia*, provide dthat third-party discovery shall be completed, not propounded, by August 31, 2020.

59.     The Receiver expects that promptly after the completion of discovery, he will revise his motions for the determination of the claims asserted by Flatiron and Fortino to incorporate the information he obtained and then refile them with this Court.

**E.  <u>Litigation – Sarroff Action</u>**

60.     During the Compensation Period, the Receiver and Z&Z continued to prosecute the lawsuit captioned, *Jed Horwitt Esq., Receiver v. Alan Sarroff et al.*, (Civil Action No.: 3:17-cv-01902-VAB) (the "Sarroff Action"), against Alan L. Sarroff ("Sarroff"), A.L. Sarroff Management, LLC ("Sarroff Management"), and A.L. Sarroff Fund, LLC ("Sarroff Fund," and all of them collectively, the "Sarroff Defendants"), in the United States District Court for the District of Connecticut.

61.     The Sarroff Action seeks to recover pursuant to Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA") over $14 million that Varacchi caused Sentinel and Radar LP to pay to or for the benefit of the Sarroff Defendants (the "Sarroff Transfers").

62.     The Sarroff Transfers sought to be avoided as fraudulent transfers consist of: (i) a $7.3 million three-day loan repayment on a loan originally made to cover a day trading margin call; (ii) a $125,000 "fee" for that loan and an additional $25,000 "kicker"; and (iii) "investment" related transfers totaling in excess of $7.7 million

a. <u>Receiver's Application for Prejudgment Remedy</u>

63.     Prior to the Compensation Period, Z&Z attorneys drafted and, on December 14, 2018, filed an application for prejudgment remedy (ECF No. 65, the "PJR Application") and a Motion for Disclosure of Assets (ECF No. 66, the "Motion for Disclosure") against the Sarroff Defendants. The PJR Application seeks a court order attaching property of the Sarroff Defendants in an amount sufficient to satisfy the entry of a $7,744,109.23 judgment ($7,306,768.57 against Sarroff Management and Sarroff Fund, and $437,340.66 against Sarroff, individually)

64.     This Court scheduled the hearing to considering the Receiver's PJR Application for May 7, 2019, at 9:00 a.m. and continuing through May 9, 2019.

65.     On May 3, 2019, the Sarroff Defendants, by their counsel, requested an adjournment of the hearing to consider the PJR Application, which the Receiver agreed to on the condition that pending such hearing certain assets in the Sarroff Fund's brokerage account remained there. The Sarroff Defendants agreed. The parties submitted their proposal to this Court on May 3, 2019, (ECF No. 99), which it entered as its order on May 4, 2019. (ECF No. 100.) Pending the adjudication of the PJR Application (and subject to other certain terms), "A.L. Sarroff Fund, LLC shall at all time maintain cash and securities in its account with a total market value of at least $4.15 million."

66.     This Court then entered an Amended Scheduling Order which, *inter alia*, scheduled the hearing to consider the PJR Application for June 26th – June 28th, 2019. (ECF No. 104.)

67.     The parties ultimately resolved the PJR Application and on June 17, 2019, filed their Joint Motion for Entry of Stipulated Order Regarding Application for Prejudgment Remedy, (ECF No. 120), which this Court entered that day. (ECF No. 121.)

68.     In summary, the stipulated order required the Sarroff Defendants, within thirty (30)

days to "provide security in favor and to the reasonable satisfaction of the Plaintiff sufficient to fully and adequately secure a potential judgment entered in this Action against the Defendants, any of them individually or in any combination thereof, including all of the Defendants, which security shall secure up to the amount of $5 million."

69.     Over the course of the following months, the parties negotiated and ultimately agreed that the Sarroff Defendants would pledge the following collateral to secure a potential judgment in this action: (i) all of Alan Sarroff's and Eileen Sarroff's interest in 43 Meadow Wood, LLC, which solely owns 43 Meadow Wood Lane, Lake Success, New York; (ii) all of Alan Sarroff's interest in 55 Liberty Owners Corp., which corresponds to Apartment No. 17-B, in the premises located at and known as 55 Liberty Street, New York, New York; and (iii) all of A.L. Sarroff, LLC's membership interest in Gagnon Investment Associates, LLC, which corresponds to a specific capital account (collectively, the "Sarroff Collateral").

70.     The Trustee retained K&L to represent him in documenting the conditional debt due the Receiver and Receivership Estate (conditioned upon a favorable judgment) and security interests in the Sarroff Collateral. K&L finalized the documents and reached an agreement with the Sarroff Defendants's counsel as to their form and content. All security documents were executed effective as of December 17, 2020.

71.     On February 20, 2020, the Receiver filed his notice with this Court that he has been provided with security in favor and to the reasonable satisfaction of the Receiver.[6]

72.     The Receiver obtained the pledged Sarroff Collateral to secure up to $5 million to

---

[6] Notwithstanding, the Defendant, Alan Sarroff, and Eileen Sarroff are required pursuant to a certain pledge agreement by and between them and the Plaintiff dated December 17, 2019, to take actions, in the manner set forth and within the time frame set forth in Section 3 of said pledge agreement, to remedy a certain improperly released mortgage that concerns the real property known as 43 Meadow Woods Road, Lake Success, New York.

recover upon in the event of a judgment entered in the Sarroff Action in favor of the Receiver and against the Sarroff Defendants.

      b.  <u>Summary Judgment</u>

73.    On December 17, 2019, the Receiver filed Plaintiff's Motion for Partial Summary Judgment (ECF No. 184), seeking summary judgment "on Counts One, Five and Nine of the Receiver's Third Amended Complaint—the Receiver's claims to avoid Intentional Fraudulent Transfers caused by Mark J. Varacchi from the Receivership Entities' accounts to accounts owned by defendants Alan L. Sarroff and A.L. Sarroff Management, LLC pursuant to Conn. Gen. Stat. § 52-552e(a)(1)."

74.    In summary, the Receiver argued that no genuine issue of material fact existed with respect to Varacchi's and Rhodes' operation of a Ponzi scheme from 2013 through 2016, and, the transfers of property made by the Ponzi scheme to the Sarroff Defendants during this time frame. Therefore, the Receiver submitted, the transfers received by them constituted avoidable fraudulent transfers as a matter of law. Even if successful, any recovery from the Sarroff Defendants would be subject to their asserted "good faith" defense and any other defenses.

75.    On December 17th and early on December18th, 2019, the Sarroff Defendants filed their Defendants' Motion for Summary Judgment (ECF Nos. 184-200) asking this Court to "enter summary judgment for Defendants denying (i) the Receiver's [Connecticut Uniform Fraudulent Coneyance Act] claims as to the Sarroff Principal Transfers and (ii) his claim for unjust enrichment."

76.    On January 17, 2020, the Receiver filed his Memorandum in Opposition to the Sarroff Defendants' Motion for Summary Judgment. (ECF No. 210.) The Receiver also filed all related papers in further support of such opposition. (ECF Nos. 202-09.)

77.    Early on January 18, 2020, the Sarroff Defendants filed their Memorandum in Opposition to the Receiver's Motion for Summary Judgment. (ECF. No. 217.) They also filed their related papers in further opposition. (ECF Nos. 211-16 & 218.)

78.    The parties then each filed on February 18, 2020, replies to the other side's Memorandum in Opposition.

79.    This Court scheduled oral argument to take place with respect to the motions for summary judgment on July 17, 2020, at 2:00 p.m.

## F.  Civil Action Against Ralph Giorgio

80.    Prior to the Compensation Period, Z&Z attorneys investigated potential causes of action against Ralph Giorgio ("Giorgio").

81.    Giorgio became a manager on the Sentinel platform and was added to Sentinel's payroll in December 2015. From December 2015 to May 2016, Giorgio received a gross monthly salary of $2,058.34 from Sentinel. In June 2016, at Giorgio's request, Varacchi caused Sentinel to increase Giorgio's gross monthly salary to $20,000. From June 2016 until the collapse of Varacchi's Ponzi scheme, Giorgio received more than $120,000 from Sentinel (the "Giorgio Transfers").

82.    Upon information and belief, Sentinel did not receive reasonably equivalent value in exchange for the Giorgio Transfers. The Giorgio Transfers were not a draw upon incentive-based payments as Giorgio did not manage sufficient assets on the Sentinel platform to justify the amount received. Rather, upon information and belief, the Giorgio Transfers were made with the expectation that the money would be repaid either to Sentinel or Varacchi.

83.    The Receiver prepared a request for leave to commence an action against Giorgio to recover the Giorgio Transfers.  The Receiver also prepared a Complaint against Giorgio seeking such relief.

84.     The Receiver's counsel shared both the motion for leave and the draft Complaint with Giorgio's counsel, and requested that the parties engage in settlement discussions. The Receiver's counsel did not receive any response.

85.     On July 15, 2019, the Receiver filed the Receiver's Motion *On Consent* For Leave To Commence Litigation Against Ralph Giorgio, (ECF No. 119), seeking leave of this Court to commence a civil action against Giorgio. On July 16, 2019, the Court approved the motion and granted the Receiver such leave. (ECF No. 121.)

86.     On October 1, 2019, the Receiver commenced his civil action against Ralph Giorgio, before the United States District Court for the District of Connecticut.

87.     Mr. Giorgio has not appeared in that action against him until January 28, 2020.  On February 10, 2020, Mr. Giorgio sought an extension of time to respond to the Complaint through and including March 11, 2020. Counsel for Mr. Giorgio informed the Receiver's counsel that he was ill and would require an extension of time to respond to the complaint. The Receiver's counsel reached out to defendant's counsel on several occasions after March 16, 2020, regarding the deadline, original and extended, and the deadline to file a Scheduling Order, but did not receive a response until the evening of April 12, 2020. On the evening of April 12, defendant's counsel informed the Receiver's counsel via email that he had been under quarantine on two separate occasions due to contact with an individual who was Covid-19 positive and thereafter because counsel was exhibiting symptoms of Covid-19.

88.     Based upon the foregoing, the Receiver has not yet moved to default Mr. Giorgio for his failure to respond to the Complaint. The Receiver intends to inquire as to counsel's status in the near future and will take such actions in the civil action as he deems appropriate under the circumstances.

89.     The Receiver also moved to extend the time to file a proposed scheduling order  on the district's form of Report of Parties' Planning Meeting until May 8, 2020, which this the District Court granted on April 13, 2020. (ECF No. 17.)

### G.  Investigation of Private Investments

90.     The Receiver has investigated the Private Investments. The Receiver has researched and analyzed various entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

91.     After reviewing the records of the Receivership Estate, as well as the documents produced pursuant to the Receiver's requests, the Receiver has preliminarily determined that the investments in Zipway LLC, Gravy, Inc., Invigilio, LLC, and Greenhouse Solutions, Inc. are unlikely to provide any value to the Estate. Comparatively, the Receiver has not yet determined if the value realized by liquidating the Receivership Estate's interests in Kizzang, Entourage, Roots, and StereoCast would justify the costs of doing so.

### H.  Actual and Anticipated Disbursement of Assets

92.     On January 23, 2020, during the Compensation Period, the Receiver filed his Notice of Second Interim Distribution ("Distribution Notice") submitted in accordance with paragraph 9(ix) of the Order Approving Plan.  In the Distribution Notice, he proposed to distribute $750,000. In **Exhibit A** to the Notice, the Receiver provided a complete breakdown of holders of Allowed Claims receiving such distribution and the amounts that would be distribued to them. The Distribution Notice and **Exhibit A** also described the amounts that would be reserved for claimants asserting claims that are disputed pending a resolution or adjudication of such objections.

93.     Also, in accordance with paragraph 8(ix), in the Distribution Notice, the Receiver stated that holders of Allowed Claims may, within twenty-one (21) days of the filing of the notice, object to such proposed interim distribution solely on the grounds that the proposed distribution

conflicts with the Plan of Distribution or the Claims Procedure Order, if applicable.

94.     No party objected to the proposed second interim distribution.

95.     Accordingly, on or about February 20, 2020, the Receiver made the distrubtions and reserved the funds set forth in **Exhibit A** to the Notice. In total, the Receiver distributed $391,350.54 to holders of Allowed Claims and transferred $358,649.46 to the Reserve Acount on account of disputed claims.

96.     On February 13, 2020, the Receiver filed his Eleventh Interim Application for Professional Fees and Expenses Incurred By the Receiver and His Professionals for the period from October 1, 2019, through December 31, 2019, requesting that (i) the Receiver and Z&Z be awarded an allowance of $150,796.20 for legal services rendered during the compensation period, and $35,594.89 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (ii) V&L be awarded an allowance of $46,414.80 for services rendered during the compensation period, and $272.90 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; and (iii) K&L be awarded an allowance of $5,713.50 for services rendered during the compensation period, and $875.00 for the reimbursement of expenses. (ECF No. 173.)

97.     Additionally, the Receiver, Z&Z, V&L and K&L have incurred fees for their services and Z&Z has advanced all necessary expenses, which are requested for reimbursement through this Amended Application.

98.     Provided that the Court awards the fees and expenses requested in this Amended Application, appropriate disbursements, if made, will be reflected on the Receiver's next interim fee application filed after such award.

99.     The Receiver holds cash on hand the Receivership Account and the Reserve

26

Account. As of March 31, 2020, the balance of the Receivership Account is $970,829,40, and the balance of the Reserve Account is $1,125,284.47. Thus, the total cash on hand in the Receivership Account and the Reserve Account is $2,096,113.87.

100.    The Receiver is hopeful that additional funds (in addition to those currently held in the Receivership Account) will be available in the future. Such will depend upon, *inter alia*, the liquidation of additional assets, the resolution or favorable adjudication of the Remaining Disputed Claims, and the successful prosecution of the pending civil litigation and other causes of action held by the Receivership Estate.

## I.   <u>Anticipated Closure</u>

101.    At this time, it is premature for the Receiver to speculate as to when this Receivership Proceeding will be ready to close.

## IV.   <u>DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE</u>

102.    As of the end of the Compensation Period, the following assets are a part of the Receivership Estate:

    a.   The Receivership Account, which is valued at $970,829.40;

    b.   The Reserve Account, which is valued at $1,125,284.47;

    c.   The Private Investments, which value the Receiver is presently investigating; and

    d.   Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, or vigorously pursuing, including, but not limited to, the claims against the Sarroff Defendants and Giorgio.

103.    With respect to the Private Investments, the Receiver has identified the following

securities:

    a.    Kizzang: 3,600,000 Class C shares, 5,400,000 Class D shares, and 1,152,666 Class E evidenced by certificates identifying Varacchi as the owner of such interest;

    b.    Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and

    c.    StereoCast: 150,000 shares in the name of Varacchi, evidenced by a certificate identifying Varacchi as the owner of such interest.

104.    The Receiver is investigating how best to liquidate and maximize the value of these equity interests in Kizzang, Entourage, Roots, and StereoCast.

## V.    **THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES**

### A.  **The Governing Legal Standard**

105.    The District Court has the power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the Receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953 F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties.).

106.    The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his counsel and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).

107.    The case law and other authority may provide "convenient guidelines," but ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F.

2d 1087 (5th Cir. 1975).

108.   In awarding counsel fees in Securities Act receiverships, "[t]he court will consider ... the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).

109.   While "results are always relevant," a good result may take a form other than a "bare increase in monetary value." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Overall results can be determined only at the conclusion of the Receivership Proceeding.

110.   Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483.

### B.   Application of the Governing Legal Standard to the Amended Application

111.   Based on the foregoing, the Receiver, Z&Z, V&L and K&L respectfully submit that the services for which they seek compensation in this Amended Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

112.   As more fully set forth throughout this Amended Application and as detailed in the exhibits submitted herewith, the issues addressed by the Receiver, Z&Z, V&L and K&L have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned years,

consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions. The Receiver, Z&Z, V&L and K&L have made substantial progress in investigating the Receivership Estate's assets and in commencing and prosecuting litigation on behalf of the Receivership Estate.

113.    The Receiver, Z&Z, V&L and K&L respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed expediently and efficiently. Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

114.    At the same time, the Receiver, Z&Z and V&L have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

115.    Furthermore, counsel for the Commission has reviewed this Amended Application and has stated that it has no objection to the approval of the professional fees and expenses requested herein.

116.    Accordingly, the Receiver, Z&Z, V&L and K&L submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties-in-interest.

**C.  Source and Manner of Payment**

117.    The Receivership Estate includes cash held in the Receivership Account. The Receiver, Z&Z, V&L and K&L request that the Court enter an order allowing and permitting the approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees incurred by Z&Z and V&L).  The Receivership Account presently holds sufficient funds to make payment after this Court's approval while maintaining

sufficient funds (in his discretion after consultation with the Commission) for various litigation costs such as experts, depositions, transcripts, etc., as well as the ordinary operating costs of the receivership.

WHEREFORE, Jed Horwitt, Esq., Receiver, and Zeisler & Zeisler, P.C., counsel to the Receiver, respectfully request that (i) this Amended Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $124,994.00 for legal services rendered during the Compensation Period, and $18,105.67 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (iii) V&L be awarded an allowance of $13,921.60 for services rendered during the Compensation Period, and $163.72 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; (v) K&L be awarded an allowance of $2,678.00 for services rendered during the Compensation Period, and $1,369.75 for the reimbursement of expenses, and (v) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 11th day of August, 2020.

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER


*/s/ Jed Horwitt*
Jed Horwitt, Receiver



By: */s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 245
Email: skindseth@zeislaw.com
His Attorneys

<u>**CERTIFICATE OF SERVICE**</u>

I, Stephen M. Kindseth, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System and also at http://jedhorwittreceiver.com/.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)