# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 3:17-cv-00155-VAB |
| MARK J. VARACCHI and | ) |
| SENTINEL GROWTH FUND | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants, | ) |
| and | ) |
| | ) |
| RADAR ALTERNATIVE FUND LP and | ) |
| RADAR ALTERNATIVE MASTER FUND SPC, | ) |
| | ) |
| Relief Defendants. | ) October 27, 2021 |

## EIGHTEENTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS

## TABLE OF CONTENTS

I.    SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED ...................... 3

   A.   Discounts ................................................................................................. 6

   B.   Fee Schedules ......................................................................................... 7

   C.   Activity Categories ................................................................................. 8

II.   SUMMARY OF CASH ON HAND ................................................................ 10

III.  SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE ......................... 11

   A.   The Receiver's Website and Investor Contact ...................................... 11

   B.   The Seventeenth Quarterly Status Report ............................................ 12

   C.   Marshaling of Receivership Assets and Receipt of Assets by Receiver ...................... 12

   D.   Claims Administration .......................................................................... 12

   E.   Litigation – Sarroff Action ................................................................... 15

   F.   Investigation of Private Investments ..................................................... 19

   G.   Tolling Agreements with Mark J. Varacchi and Jason Rhodes ................... 19

   H.   Actual and Anticipated Disbursement of Assets .................................. 21

   I.   Anticipated Closure .............................................................................. 22

IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE ................................... 22

V.    THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES ............. 23

   A.   The Governing Legal Standard ............................................................ 23

   B.   Application of the Governing Legal Standard to the Application ................ 25

   C.   Source and Manner of Payment ........................................................... 26

**EIGHTEENTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND**
**EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS**

Jed Horwitt, Esq. (the "Receiver"), as the Receiver appointed by this Court in the above-captioned action (the "Receivership Proceeding") commenced by the Securities and Exchange Commission (the "SEC" or "Commission"), by and through his undersigned counsel, and Zeisler & Zeisler, P.C. ("Z&Z"), as counsel for the Receiver, pursuant to this Court's Order Appointing Receiver entered May 1, 2017 (ECF No. 12, the "Receivership Order") and Order Reappointing Receiver (ECF No. 47, the "Reappointment Order", and together with the Receivership Order, the "Receivership Orders") entered February 14, 2018, respectfully submits this eighteenth interim application (the "Application") for professional fees and expenses incurred on behalf of the Receivership Estate (as defined in the Receivership Orders) by the Receiver, Z&Z and the Receiver's accountant and financial advisor, Verdolino & Lowey, P.C. ("V&L"), during the period commencing July 1, 2021, through and including September 30, 2021 (the "Compensation Period"). In advance of filing, the Receiver provided the Commission with a copy of this Application (including all exhibits), and the Commission's counsel stated that the Commission has no objection to the approval of the professional fees and expenses requested herein.

In support of this Application, the Receiver, Z&Z and V&L respectfully represent as follows:

I.      **SUMMARY OF PROFESSIONAL FEES AND EXPENSES REQUESTED**

1.      Jed Horwitt, Esq. serves in his capacity as the Court-appointed Receiver for Sentinel Growth Fund Management, LLC ("Sentinel"), Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC" and, together with Radar LP, collectively, the "Relief Defendants," and the Relief Defendants together with Sentinel, collectively, the "Receivership Entities").

2.      This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines") and the Receivership Orders.

3.      Pursuant to the SEC Guidelines, the following exhibits are attached to this Application:

a.      The completed Standardized Fund Accounting Report ("SFAR"), in the form prescribed by the SEC Guidelines, and certified by Receiver, is attached hereto as Exhibit A;

b.      A Certification of Compliance with the SEC Guidelines by the Receiver and Z&Z is attached hereto as Exhibit B;

c.      A summary of total expenses for which reimbursement is requested for Z&Z is attached hereto as Exhibit C;

d.      Time records summarizing the work performed by the Receiver and his legal professionals and paraprofessionals for each of their Activity Categories (as hereinafter defined) are attached hereto as Exhibits D-1; D-2; D-3; D-4; D-5; D-6; D-7; D-8; D-9; D-10; D-11; D-12; and D-13.[1]

e.      A Certification of Compliance with the SEC Guidelines by V&L is attached hereto as Exhibit E;

f.      A summary of total expenses for which reimbursement is requested for V&L is attached hereto as Exhibit F; and

g.      Time records summarizing the work performed by V&L's accounting professionals and paraprofessionals for each of its Activity Categories (as hereinafter defined) during the Compensation Period are attached hereto as Exhibits G-1; and G-2.

4.      The Receiver and Z&Z attorneys and paraprofessionals have expended a total of

---

[1] Because their contents include privileged and confidential material, protected attorney work-product, and other sensitive information describing, *inter alia*, the Receiver's strategy in this Receivership Proceeding and related litigation, and pursuant to the Court's Order entered August 11, 2017 (ECF No. 25), Exs. D-1 through D-13 are filed under seal. Furthermore, the Receiver and Z&Z have intentionally omitted time records from their Activity Category Six (Application for Professional Fees and Expenses), because they are not requesting compensation for services performed under this Activity Category.

361.80 hours working on this matter during the Compensation Period. The Receiver and Z&Z seek allowance of compensation for services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $106,726.80, and reimbursement of actual and necessary expenses in the amount of $12,263.73.

5.      The Receiver's accountant and financial advisor V&L's professionals and paraprofessional have expended a total of 55.20 hours working on this matter during the Compensation Period. V&L seeks allowance of compensation for services rendered during the Compensation Period on behalf of the Receivership Estate in the amount of $15,648.00.

6.      The Receiver, Z&Z and V&L acknowledge that their fee compensation is subject to a twenty percent (20%) holdback, pursuant to the SEC Guidelines and the Receivership Orders.

7.      The fees assessed reflect the hours worked by the Receiver, Z&Z and V&L attorneys and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z and V&L (described below).

8.      These amounts also take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessional working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver under the Receivership Orders.

9.      Section III below summarizes the Receiver's administration of the Receivership Estate since his appointment. A narrative description of the particular services provided by the Receiver and Z&Z's attorneys and paraprofessionals is included in the time records attached as

Ex. D-1 through D-13. A narrative description of the particular services provided by V&L's professionals and paraprofessionals is included in the time records attached as Ex. G-1 and G-2.

10.     Z&Z's expense reimbursements requested are principally consist in the following: (i) PACER charges for accessing electronic documents in the numerous federal litigations relevant to the Receivership Proceeding; (ii) expenses associated with the Receiver's website; (iii) photocopying; (iv) processing and hosting of electronically stored information related to litigation relevant to the Receivership Proceeding; (v) online legal research; and (vi) court reporter fees for transcripts. (*See* Ex. C.)

11.     The Receiver, Z&Z and V&L have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime. Nor have the Receiver, Z&Z or V&L requested reimbursement for any meals during the Compensation Period.

12.     The Receiver and Z&Z have complied with the SEC Guidelines' internal photocopying rates as follows: $0.15 per page for black and white and $1.00 per page for color copies.

### A.  Discounts

13.     As proposed by the Receiver as part of his application for selection as receiver submitted to the Commission, and as provided in the Receivership Orders, the Receiver, Z&Z and V&L have consented to and implemented substantial public service discounts with respect to their billing rates for services provided in this Receivership Proceeding.

14.     More specifically, and as shown in the fee schedules set forth below, Z&Z and V&L have consented to 20% public service discounts to its regularly applicable hourly rates for all legal professionals and paraprofessionals.

15.     The Receiver originally agreed to discount his generally applicable hourly rate for services provided when serving primarily in his capacity as Receiver to $250 per hour, reflecting a 50% discount. Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver throughout this Receivership Proceeding were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time.

### B.   Fee Schedules

16.     For the Compensation Period, the Receiver is not seeking compensation for any services he provided.

17.     The fee schedule for all Z&Z legal professionals (other than the Receiver) who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:[2]

| Legal Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Kindseth, Stephen | $340 ($425) | $85 | 11.7 | $3,978.00 | $994.50 |
| Moriarty, James | $320 ($400) | $80 | 144.1 | $46,112.00 | $11,528.00 |
| Romney, Aaron | $320 ($400) | $80 | 152.3 | $48,736.00 | $12,184.00 |
| Blau, Christopher | $220 ($275) | $55 | 1.2 | $264.00 | $66.00 |
| Byrd, Daniel | $180 ($240) | $50 | .9 | N/C | $216.00 |
| TOTALS: | | | 310.2 | $99,090.00 | $24,988.50 |

18.     The fee schedule for the Z&Z legal paraprofessional who provided services during

---

[2] The schedule does not include amounts incurred to prepare the prior fee application since Z&Z is not seeking compensation for such services.

the Compensation Period, showing: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Legal Paraprofessional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| O'Brien, Barbara | $148 ($185) | $37 | 2.8 | $414.40 | $103.60 |
| Joseph, Kristin | $148 ($185) | $37 | 1.8 | $266.40 | $66.60 |
| Accurso, Ian | $148 ($185) | $37 | 47 | $6,956.00 | $1,739.00 |
| TOTALS: | | | 51.6 | $7,636.80 | $1,909.20 |

19.     The fee schedule for all V&L accounting professionals who provided services during the Compensation Period, showing for each: his or her name; the hourly rate applied to his or her services in this Receivership Proceeding and his or her customary hourly rate; the discount reflected in the applied hourly rate; the number of hours of services performed in the Compensation Period; the amount billed for such services in the Compensation Period; and the amount of the discount to his or her services during the Compensation Period; is as follows:

| Accounting Professional | Rate (Cust. Rate) | Rate Discount | Hours | Amount Billed | Amount Discounted |
|---|---|---|---|---|---|
| Bailey, T. | $280 ($350) | $70 | 20.7 | $5,796.00 | $1,449.00 |
| Lowey, K. | $372 ($465) | $93 | 13.2 | $4,910.40 | $1,227.60 |
| Whitehouse, M. | $232 ($290) | $58 | 21.3 | $4,941.60 | $1,235.40 |
| TOTALS: | | | 55.2 | $15,648.00 | $3,912.00 |

## C.  **Activity Categories**

20.     Pursuant to the SEC Guidelines, the Receiver, Z&Z and V&L have utilized the following activity categories (each an "Activity Category," and, collectively, the "Activity Categories") under which the following fees have been incurred during the Compensation Period:

<u>Activity Categories Utilized by Receiver and Z&Z Legal Professionals</u>

a.       Category One: Case Administration, 6.3 hours, $1,746.40 (*see* Ex. D-1);

b.       Category Two: Asset Analysis & Recovery, 0 hours, $0.00 (*see* Ex. D-2);

c.       Category Three: Asset Disposition, 0 hours, $0.00 (*see* Ex. D-3);

d.       Category Four: Business Operations, 0 hours, $0.00 (*see* Ex. D-4);

e.       Category Five: Claims Administration & Objections, 42.1 hours, $13,312.40 (*see* Ex. D-5);

f.       Category Six: Application for Professional Fees and Expenses (the Receiver and Z&Z does not seek compensation for thefees incurred for these services in this Application) (*see* Ex. D-6);

g.       Category Seven: Litigation – Taran Asset Management, LLC, *et al.*, 0 hours, $0.00 (*see* Ex. D-7); and

h.       Category Eight: Litigation – A. L. Sarroff Management, LLC, *et al.*, 304.8 hours, $89,508.00 (*see* Ex. D-8).

i.       Category Nine: Litigation – Shay Kostiner, 0 hours, $0.00 (*see* Ex. D-9).

j.       Category Ten: Litigation – Weeden Prime Services, LLC, 0 hours, $0.00 (*see* Ex. D-10).

k.       Category Eleven: Litigation – Rajo Corp., 0 hours, $0.00 (*see* Ex. D-11).

l.       Category Twelve: Litigation – Ralph Giorgio, 0 hours, $0.00 (*see* Ex. D-12).

m.       Category Thirteen: Asset Recovery – Ralph Giorgio, 8.6 hours, $2,160.00 (*see* Ex D-13).

<u>Activity Categories Utilized by V&L Professionals</u>

a.       Category One: Tax Preparation, 0 hours, $0.00(*see* Ex. G-1); and

b.      Category One: Sarroff Litigation,  55.2 hours, $15,648.00 (*see* Ex. G-2).

II.     **SUMMARY OF CASH ON HAND**

21.     As of September 30, 2021, the Receiver held in the Receivership Account (as defined and discussed in Section IV-D below) the amount of $709,924.68.

22.     In accordance with the Plan Approval Order, prior to the Compensation Period, the Receiver transferred $801,365.01 from the Receivership Account to a newly established segregated account (the "Reserve Account") to "ensure that if a Remaining Disputed Claim is Allowed, the Receiver shall have funds left to pay such Allowed Claim in the amount provided for in the Plan of Distribution for such category of Claimant." *See* Plan Approval Order § 8(xi). Z&Z attorneys consulted with V&L to ensure that the Reserve Account was established as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, and that the establishment and funding of the Reserve Account did not disrupt the Receivership Account's Qualified Settlement Fund status.

23.     The Receiver thereafter distributed payment to a secured creditor in accordance with this Court's Order, and deposited additional reserves in connection with the second distribution to Claimants authorized by this Court all as previously reported by the Receiver in prior quarterly reports.

24.     During the Compensation Period, in accordance with this Court's decision with respect to the Receiver's motion to determine the claim asserted by Flatiron Partners, LP ("Flatiron"), the Receiver transferred the portion of the reserve account held on account Flatiron's claim in the amount of $390,733.81 from the the Reserve Account to the Receivership Account, leaving the Reserve Account with a balance of $734,550.66 as of September 30, 2021.

25.     Thus, the Receiver's cash on hand held in the Receivership Account and the

Reserve Account, therefore, total, as of September 30, 2021, the amount of $1,444,475.34. This combined balance reflects a net decrease of $26,319.77 during the Compensation Period. (*See* Ex. A.)

## III.   SUMMARY OF RECEIVER'S ADMINISTRATION OF THE ESTATE

26.     During the Compensation Period, the Receiver diligently exercised his duties pursuant to the terms of the Receivership Orders and made significant progress in investigating, marshalling and liquidating Receivership Assets for distribution to the holders of Allowed Claims against the Receivership Estate. Items requiring significant work by the Receiver and his professionals, as discussed in more detail below, were, in summary, continuing to litigate previously commenced civil actions and to move forward with his objections to the Remaining Disputed Claims.

27.     Utilizing Z&Z and V&L, the Receiver has undertaken the following on behalf of the Receivership Estate.

### A.   The Receiver's Website and Investor Contact

28.     At all times during the Compensation Period, the Receiver has maintained a website – http://jedhorwittreceiver.com – that has provided information to the public concerning the Receivership Proceeding, in addition to the more particular notices provided to parties-in-interest.

29.     The website states who the Receiver is and describes his role, provides access to filings in the Receivership Proceeding, and contains contact information such that interested parties may contact Z&Z attorneys by e-mail or telephone with questions, concerns or information.

30.     Z&Z's professionals, on behalf of the Receiver, have fielded and effectively responded to inquiries from investors in order to ensure that they are educated concerning the Receivership Proceeding and the claims management procedures discussed herein.

### B.  **The Seventeenth Quarterly Status Report**

31.     The Receiver and Z&Z also prepared and, on July 30, 2021, filed the Sixteenth Quarterly Status Report (ECF No. 237). In drafting the Seventeenth Quarterly Status Report, the Receiver and Z&Z compiled comprehensive information to update the Court, the Commission and all other parties-in-interest as to the Receiver's operations, the Receivership Estate's assets and the status of various litigation and Claims against the Receivership Estate.

### C.  **Marshaling of Receivership Assets and Receipt of Assets by Receiver**

32.     Shortly after his appointment, pursuant to the Receivership Order, the Receiver opened an account at a financial institution experienced in servicing court-appointed receivers (and like fiduciaries), which account holds funds marshaled by the Receiver and constitutes a Receivership Asset. In October, 2017, the Receiver opened a separate money market account with the institution to hold a significant portion of the Receivership Account funds. A separate account held the Reserve Account funds. Then, in April 2021 the Receiver transferred all three account balances to three corresponding accounts with a separate financial institution; two accounts now holding the non-reserved funds (collectively, the "Receivership Account"), and a third account holding the Reserve Account funds.

33.     Pursuant to the Court's orders, the Receiver and Z&Z previously undertook to assume control and possession over the funds held in certain frozen accounts and to transfer them to the Receivership Account.

34.     During the Compensation Period, the prior accounts (before the balances were transferred) accrued interest at the rate of .01% for a total amount of $6.76 in interest earned for the Compensation Period. The Receivership Account was also assessed a "Bank & Tech Fee" each month during the Compensation Period in the amount of $300.

### D.  **Claims Administration**

12

35.     Prior to the Compensation Period, Z&Z attorneys investigated the Receivership Estate's basis for objecting to the Remaining Disputed Claims. The Receiver then objected to such claims.

a.     Claim Asserted by Neila Fortino

36.     With respect to the claim held by Neila Fortino (the "Fortino Claim"), the Receiver thoroughly analyzed the factual and legal basis for her asserted claim in the amount of $4,038,000. After the completion of his investigation, the Receiver concluded that the Fortino Claim against the Receivership Estate should be allowed in the amount of $1,489,550 and no more.[3] Although Fortino never invested directly into the Receivership Entities, her claim is based upon the transfer originally made by the intermediary, Mind the Gap Consulting, LLC ("MTG") to Sentinel in the amount of $4 million, and the subsequent returns on account of this amount from Sentinel to MTG in the amount of $2,560,450. The Receiver had confirmed that MTG, in fact, made these investments on Fortino's behalf. Considering this and the other surrounding circumstances, the Receiver submitted that Fortino should hold the claim rather than MTG. Furthermore, based upon these amounts, under the "Rising Tide" method of distribution (the "Rising Tide Method"), Fortino's pre-receivership recovery percentage would be 62.76% ($2,510,450/$4,000,000).

b.     Claim Asserted by Flatiron Partners

37.     The Receiver, having fully investigated the facts and circumstances surrounding the Flatiron Claim, and having considered applicable legal authority as well as various equitable factors, concluded that the pre-receivership recovery percentage attained by Flatiron was

---

[3] As a result of discovery conducted pursuant to this Court's summary procedures order, as referenced herein, the Reciver determined that a $50,000 transfer previously credited against Fortino's claim was not actually paid to her agent, Mind the Gap Consulting, LLC. Accordingly, the Receiver had adjusted his position accordingly such that the allowed amount of Fortino's claim should be $1,489,550 (rather than $1,439,550 as previously represented by the Receiver).

43.06%—$3,057,931 recovered on account of $7,100,921 invested.

        c.  <u>Procedural Posture of Claims Determination</u>

38.     The parties thereafter agreed upon the specific time frame for the summary procedures and submitted such proposed to this Court on April 16, 2020. (ECF No. 178.) This Court entered such scheduling order on April 17, 2020, (ECF No. 179), which, *inter alia*, provided that discovery shall be completed, not propounded, by August 31, 2020.

39.     On December 18, 2020, the Receiver filed his Motion, On Consent, for Procedures and Deadlines for the Final Determination of the Claims of Neila Fortino and Flatiron Partners, L.P.  The motion propsed the the Receiver shall file his inition motion on January 15, 2021, the claimants would file their memorandum in opposition on or before February 26, 2021, and the Receiver shall file his reply on or before March 19, 2021. On December 19, 2020, this Court entered the proposed procedures and deadlines.  (ECF No. 205.)

40.     Accordingly, on January 15, 2021, the Receiver filed the following: (i) The Receiver's Renewed Motion to Determine the Claim of Neila Fortino, (ECF No. 205), accompanied by The Receiver's Memorandum of Law in Support of His Renewed Motion to Determine the Claim of Neila Fortino, (ECF No. 207); and (i) The Receiver's Renewed Motion to Determine the Claim of Flatiron Partners, LP, (ECF No. 208), accompanied by The Receiver's Memorandum of Law in Support of His Renewed Motion to Determine the Claim of Flatiron Partners, LP, (ECF No. 209).

41.     On February 26, 2021, Fortino filed her Objection and Memorandum in Opposition to Motion for Determination of Claim Held by Neila Fortino. (ECF No. 214).

42.     On March 1, 2021, Flatiron filed its Motion for Extension of Time to Respond to Receiver's Renewed Motion to Determine the Claim of Flatiron Partners, LP, (ECF No. 215),

through March 5, 2021, with the Receiver's consent, which this Court granted on March 2, 2021. (ECF No. 216.)

43.    On March 5, 2021, Flatiron filed its Objection to Receiver's Renewed Motion for Determination of Claim Held by Flatiron Partners, LP. (ECF No. 217.)

44.    On March 19, 2021, the Receiver filed his reply to each of the objections filed by Fortino and Flatiron. (ECF No. 218 & 19.)

45.    On July 22, 2021, this Court heard oral argument with respect to the Receiver's motions for determination of claims held by Flatiron and Fortino, and such claimants' objections.

46.    On July 30, 2021, this Court entered its Ruling and Order on Pending Motions, (ECF No. 238), granting both of the Receiver's motions.  This Court concluded that "Fortino holds a claim against the Receivership Estate based upon the pre-receivership transfer made and distributions received by MTG," and allowed her claim in the amount of $1,489,550.  This Court also determined that the pre-receivership recovery realized by Fortino under the Rising Tide method equaled 62.76%, and released for the use and benefit of the Receivership Estate $390,733.81 in funds currently held by the Receiver in reserve on account of Fortino's originally asserted claim. This Court also concluded in its Ruling and Order on Pending Motions that the pre-receivership recovery percentage realized by Flatiron under the Rising Tide method was 43.06%.

47.    On September 17, 2021, Flatiron and Fortino each filed a Notice of Appeal appealing this Court's Ruling and Order on Pending Motions to the Court of Appeals for the Second Circuit.  (ECF Nos. 240 & 241.)

48.    The Receiver intends to defend against these appeals and seek the affirmance of this Court's Ruling and Order on Pending Motions.

### E.  Litigation – Sarroff Action

49.    During the Compensation Period, the Receiver and Z&Z continued to prosecute the

lawsuit captioned, *Jed Horwitt Esq., Receiver v. Alan Sarroff et al.*, (Civil Action No.: 3:17-cv-01902-VAB) (the "Sarroff Action"), against Alan L. Sarroff ("Sarroff"), A.L. Sarroff Management, LLC ("Sarroff Management"), and A.L. Sarroff Fund, LLC ("Sarroff Fund," and all of them collectively, the "Sarroff Defendants"), in the United States District Court for the District of Connecticut.

50.     The Sarroff Action seeks to recover pursuant to Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA") over $14 million that Mark J. Varacchi ("Varacchi") had caused Sentinel and Radar LP to pay to or for the benefit of the Sarroff Defendants (the "Sarroff Transfers").

51.     The Sarroff Transfers sought to be avoided as fraudulent transfers consist of: (i) a $7.3 million three-day loan repayment on a loan originally made to cover a day trading margin call; (ii) a $125,000 "fee" for that loan and an additional $25,000 "kicker"; and (iii) "investment" related transfers totaling in excess of $7.7 million

52.     On December 17, 2019, the Receiver filed Plaintiff's Motion for Partial Summary Judgment (ECF No. 184), seeking summary judgment "on Counts One, Five and Nine of the Receiver's Third Amended Complaint—the Receiver's claims to avoid Intentional Fraudulent Transfers caused by Varacchi from the Receivership Entities' accounts to accounts owned by defendants Alan L. Sarroff and A.L. Sarroff Management, LLC pursuant to Conn. Gen. Stat. § 52-552e(a)(1)."

53.     In summary, the Receiver argued that no genuine issue of material fact existed with respect to Varacchi's and Jason Rhodes' operation of a Ponzi scheme from 2013 through 2016, and, the transfers of property made by the Ponzi scheme to the Sarroff Defendants during this time frame.  Therefore, the Receiver submitted, the transfers received by them constituted avoidable

fraudulent transfers as a matter of law. Even if successful, any recovery from the Sarroff Defendants would be subject to their asserted "good faith" defense and any other defenses.

54.     On December 17th and early on December18th, 2019, the Sarroff Defendants filed their Defendants' Motion for Summary Judgment (ECF Nos. 184-200) asking this Court to "enter summary judgment for Defendants denying (i) the Receiver's [Connecticut Uniform Fraudulent Coneyance Act] claims as to the Sarroff Principal Transfers and (ii) his claim for unjust enrichment."

55.     On January 17, 2020, the Receiver filed his Memorandum in Opposition to the Sarroff Defendants' Motion for Summary Judgment. (ECF No. 210.) The Receiver also filed all related papers in further support of such opposition. (ECF Nos. 202-09.)

56.     Early on January 18, 2020, the Sarroff Defendants filed their Memorandum in Opposition to the Receiver's Motion for Summary Judgment. (ECF. No. 217.) They also filed their related papers in further opposition. (ECF Nos. 211-16 & 218.)

57.     The parties then each filed on February 18, 2020, replies to the other side's Memorandum in Opposition.

58.     This Court scheduled oral argument to take place with respect to the motions for summary judgment on July 17, 2020, and then continued such argument to July 30, 2020.

59.     On July 30, 2020, the Court heard oral agument with respect to the cross-motions for summary judgment and then took the matters under advisement.

60.     On September 11, 2020, this Court entered its Ruling and Order on Cross-Motions for Summary Judgment (ECF No. 256), denying both motions for summary judgment.  The Court determined, in summary, that the postions asserted by each movant raised genuine issues of material fact for the trier of fact to determine at trial

61.     On September 19, 2020, following a telephonic status conference, this Court scheduled the jury trial in this action to commence on May 10, 2021.

62.     Since then, the parties have proposed and this Court has entered various scheduling orders with respect to pre-trial matters as well as orders mofidying and/or extending those deadlines.

63.     This Court then held a telephonic status conference on March 18, 2021, and informed the parties that due to the pandemic and various related logistical issues, the District Court would not be in a position to conduct a jury trial in May, 2021.  Accordingly, the Court adjourned the jury trial to commence on November 15, 2021.  (ECF 274.)

64.     On July 15, 2021, this Court conducted another status conference following which it adjourned the jury trial to commence with jury selection on November 29, 2021.

65.     In accordance with the then pending deadline, the parties on October 5, 2021, filed their motions in limine seeking to preclude various evidence expected to be offered by the other party. (ECF Nos. 295-301.)

66.     The Receiver perceived one of the motions in limine filed by the Sarroff Defendants, specifically, the Motion in Limine for an Order Establishing the Proper Measure of Damages Recoverable by Plaintiff (ECF No. 301) (the "Damages Motion"), to be a disguised summary judgment motion through which the Sarroff Defendants sought to cap the amount of damages the Receiver may recover.

67.     The Sarroff Defendants also filed on October 6, 2021, their Motion for Partial Summary Judgment requesting the dismissal of the Receiver's "claims for intentional and constructive fraudulent transfers, as well as unjust enrichment, in connection with the repayment of the principal amount of the $7.3 million Bridge Loan in November 2013." (ECF No. 302.)

68.     The Received responded on October 6, 2021, by filing an Emergency Motion for Status Conference Regarding Defendants' Motions for Summary Judgment seeking such a status conference to address what the Receiver believed to be procedurally improper motions by the Sarroff Defendants. (ECF No. 303.)

69.     On October 8, 2021, this Court denied the Sarroff Defendants Motion for Partial Summary Judgment on multiple grounds, and stated that it would consider the issues raised by the Damages Motion in the context of the post-jury trial instructions to be sent to the jury.  (ECF No. 305.)

70.     At this time, the following pre-trial deadlines apply: responses to pretrial motions are due October 21, 2021, replies to pretrial motions are due November 4, 2021, and the Joint Trial Memorandum is due November 4, 2021.

71.     The jury trial is presently scheduled in the Sarroff Action to commence, with jury selection, on November 29, 2021, and the Receiver's counsel continues to prepare for that trial.

**F.   Investigation of Private Investments**

72.     The Receiver has investigated the Private Investments. The Receiver has researched and analyzed various entities that identified as potentially constituting Private Investments which the Receiver may recover for the benefit of the Receivership Estate.

73.     After reviewing the records of the Receivership Estate, as well as the documents produced pursuant to the Receiver's requests, the Receiver has preliminarily determined that the investments in Zipway LLC, Gravy, Inc., Invigilio, LLC, and Greenhouse Solutions, Inc. are unlikely to provide any value to the Estate. Comparatively, the Receiver has not yet determined if the value realized by liquidating the Receivership Estate's interests in Kizzang, Entourage, Roots, and StereoCast would justify the costs of doing so.

**G.   Tolling Agreements with Mark J. Varacchi and Jason Rhodes**

74.     The Receiver has investigate potential causes of action against Mr. Varacchi and Mr. Rhodes based upon their conduct in orchestrating and operating a Ponzi scheme through Sentinel and the Relief Defendants, and otherwise engaging in actionable conduct. Due to the pending criminal proceedings involving them, the potential need for their testimony in various civil proceedings, and the possibility of a settlement, the Receiver has not yet commenced a civil action against them and has thought to postpone being compelled to do so by applicable statute of limitations.

75.     In order to preserve the *status quo*, the Receiver's counsel approached each of Mr. Varrachi's and Mr. Rhodes' criminal counsel and asked if their respective clients would enter into a Tolling Agreement and Stipulation which would "toll, suspend, and extend the running of any and all applicable statutes and periods of limitations and other time-related claims and/or defenses which he might otherwise be or become entitled to assert." The Receiver counsel proposed a tolling period through July 1, 2020.  Mr. Varacchi and Mr. Rhodes agreed to enter into such agreements.

76.     Effective December 13, 2019, Mr. Varacchi and the Receiver entered into their Tolling Agreement and Stipulation, providing for the tolling of all applicable statutes of limitations through and including July 1, 2020.

77.     Effective December 18, 2019, Mr. Rhodes and the Receiver entered into their Tolling Agreement and Stipulation, providing for the tolling of all applicable statutes of limitations through and including July 1, 2020.

78.      In June, 2020, counsel for the Receiver again approached counsel for each of Mr. Rhodes and Mr. Varacchi and requested that they enter into a second tolling agreement through and including December 1, 2020.  They each agreed.

79.     Each of Mr. Rhodes and Mr. Varacchi thereafter entered into a Second Tolling

Agreement and Stipulation made effective June 17, 2020, expressly tolling all application of statutes of limitations and related deadlines through and including December 1, 2020

80.     Once again, in November, 2020, the Receiver's counsel requested that Mr. Rhodes and Mr. Varacchi enter into a Third Tolling Agreement and Stipulation through July 1, 2021. They each agreed and thereafter entered into the Third Tolling Agreement and Stipulation made effective November 23, 2020, expressly tolling all application of statutes of limitations and related deadlines through and including July 1, 2021.

81.     Most recently, the Receiver's counsel again requested the Mr. Rhodes and Mr. Varacchi enter into a tolling agreement and stipulation through February 1, 2022. They each agreed and thereafter entered into the Fourth Tolling Agreement and Stipulation made effective June 21, 2021, expressly tolling all application of statutes of limitations and related deadlines through and including February 1, 2022.

### H.   Actual and Anticipated Disbursement of Assets

82.     On July 26, 2021, the Receiver filed his Seventeenth Interim Application for Professional Fees and Expenses Incurred by the Receiver and His Professionals ("Seeventeenth Interim Application") (ECF No. 235) for the period from April 1, 2021, through June 30, 2021, requesting that (i) the Receiver and Z&Z be awarded an allowance of $19,384.40 for legal services rendered during the Compensation Period, and $9,142.65 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services, and (ii) V&L be awarded an allowance of $962.00, subject to a 20% holdback applicable to fees, for the services it rendered during Compensation Period.

83.     On August 31, 2021, this Court granted the Seventeenth Interim Application. (ECF No. 239.)

84.     Accordingly, on September 2, 2021, the Receiver disbursed $24,650.17 from the

Receivership Account to the Receiver and Z&Z, and $769.60 to V&L (reflecting the awarded fees less the 20% holdback plus the reimbursed expenses).

85.     Additionally, during the Compensation Period, the Receiver, Z&Z and V&L have incurred fees for their services and Z&Z has advanced all necessary expenses, which are requested for reimbursement through this Application.

86.     The Receiver holds cash on hand in the Receivership Account and the Reserve Account. As of September 30, 2021, the balance of the Receivership Accounts is $709,924.68, and the balance of the Reserve Account is $734,550.66. Thus, the total cash on hand in the Receivership Account and the Reserve Account is $1,444,475.34.

87.     The Receiver is hopeful that additional funds (in addition to those currently held in the Receivership Account) will be available in the future. Such will depend upon, *inter alia*, the liquidation of additional assets, the Second Circuit Court of Appeal's affirmance of this Court Ruling and Order on Pending Motions with respect to the Remaining Disputed Claims, and the recovery upon judgments recovered and settlements entered into by the Receiver.

**I.   Anticipated Closure**

88.     At this time, it is premature for the Receiver to speculate as to when this Receivership Proceeding will be ready to close.

**IV.   DESCRIPTION OF ASSETS OF THE RECEIVERSHIP ESTATE**

89.     As of the end of the Compensation Period, the following assets are a part of the Receivership Estate:

> a.   The Receivership Account, which is valued at $709,924.68;
>
> b.   The Reserve Account, which is valued at $734,550.66;
>
> c.   The Private Investments, which value is unknown;

    d.   The judgment entered against Ralph Giorgio in the amount of $153,491.70, plus interest;

    e.   The settlement payment due from Carroll Christopher Geason and Robin B. Taxman in the amount of $50,000, plus interest;

    f.   Any and all causes of action to recover money and possibly other assets for the benefit of the Receivership Estate, which causes of action the Receiver is presently investigating and evaluating, or vigorously pursuing, including, but not limited to, the claims against the Sarroff Defendants and Giorgio.

90.    With respect to the Private Investments, the Receiver has identified the following securities:

    a.   Kizzang: 3,600,000 Class C shares, 5,400,000 Class D shares, and 1,152,666 Class E evidenced by certificates identifying Varacchi as the owner of such interest;

    b.   Greenhouse: 250,000 shares, evidenced by a certificate identifying Varacchi as the owner of such interest; and

    c.   StereoCast: 150,000 shares in the name of Varacchi, evidenced by a certificate identifying Varacchi as the owner of such interest.

91.    The Receiver is investigating how best to liquidate and maximize the value of these equity interests in Kizzang, Entourage, Roots, and StereoCast.

## V.   THE COURT SHOULD AWARD THE REQUESTED FEES AND EXPENSES

### A.  The Governing Legal Standard

92.    The District Court has the power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the Receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *see also Securities & Exchange Comm'n v. Elliott*, 953

F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties.).

93.     The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his counsel and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).

94.     The case law and other authority may provide "convenient guidelines," but ultimately "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

95.     In awarding counsel fees in Securities Act receiverships, "[t]he court will consider ... the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).

96.     While "results are always relevant," a good result may take a form other than a "bare increase in monetary value." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Overall results can be determined only at the conclusion of the Receivership Proceeding.

97.     Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483.

**B.   Application of the Governing Legal Standard to the Application**

98.     Based on the foregoing, the Receiver, Z&Z and V&L respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

99.     As more fully set forth throughout this Application and as detailed in the exhibits submitted herewith, the issues addressed by the Receiver, Z&Z and V&L have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned years, consisted of many poorly-documented transactions and involved numerous investors, Private Investments and financial institutions. The Receiver and Z&Z have made substantial progress in investigating the Receivership Estate's assets and in commencing and prosecuting litigation on behalf of the Receivership Estate.

100.    The Receiver, Z&Z and V&L respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed expediently and efficiently. Substantial progress has been accomplished during the Compensation Period and since the Receiver's appointment May 1, 2017.

101.    At the same time, the Receiver and Z&Z have agreed to considerable public service discounts, which exceeded even those generous discounts offered in the Receiver's initial application.

102.    Furthermore, counsel for the Commission has reviewed this Application and has stated that it has no objection to the approval of the professional fees and expenses requested

herein.

103.     Accordingly, the Receiver, Z&Z and V&L submit that the compensation requested herein is fair, reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties-in-interest.

### C.  Source and Manner of Payment

104.     The Receivership Estate includes cash held in the Receivership Account. The Receiver, Z&Z and V&L request that the Court enter an order allowing and permitting the approved fees and reimbursed expenses to be paid from the Receivership Account, less the 20% holdback (applicable only to fees incurred by Z&Z). The Receivership Account presently holds sufficient funds to make payment after this Court's approval while maintaining sufficient funds (in his discretion after consultation with the Commission) for various litigation costs such as experts, depositions, transcripts, etc., as well as the ordinary operating costs of the receivership.

**WHEREFORE**, Jed Horwitt, Esq., Receiver, and Zeisler & Zeisler, P.C., counsel to the Receiver, respectfully request that (i) this Application be granted; (ii) the Receiver and Z&Z be awarded an allowance of $106,726.80 for legal services rendered during the Compensation Period, and $12,263.73 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services, (iii)  V&L be awarded an allowance of $15,648.00 for services rendered during the Compensation Period, subject to a 20% holdback applicable to fees for services, and (iv) grant such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut, this 27th day of October, 2021.

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER


*/s/ Jed Horwitt*
Jed Horwitt, Receiver



By: */s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234
Email: skindseth@zeislaw.com
His Attorneys

## CERTIFICATE OF SERVICE

I, Stephen M. Kindseth, hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System and also at http://jedhorwittreceiver.com/.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)

28